**EXHIBIT B**

**The Carry Guaranty**

## CARRY GUARANTY

THIS CARRY GUARANTY (this "**Guaranty**") is entered into as of May 4, 2022 (the "**Effective Date**") by **ALBERTO SMEKE SABA**, an individual, residing at 2008 East 3rd Street, Brooklyn, New York 11223 ("**A Saba**"), and **SALOMON SMEKE SABA**, an individual, residing at 4 Lady Bess Drive, Deal, New Jersey 07723 ("**S Saba**"; and together with A Saba, individually and collectively as the context may require, on a joint and several basis, "**Guarantor**"), in favor of **356W58 GROUND LESSOR LLC**, a Delaware limited liability company (together with its successors and assigns, "**Landlord**"), having an address at c/o MSP Capital Investments, L.L.C., Woodlawn Hall at Old Parkland, 3953 Maple Ave., Suite 350, Dallas, Texas 75219.

### RECITALS

A.      On the Effective Date, (i) Landlord and Hudson 1701/1706, LLC, a Delaware limited liability company ("**Tenant 1701/1706**") and Hudson 1702, LLC, a Delaware limited liability company ("**Tenant 1702**"; and together with Tenant 1701/1706, collectively, on a joint and several basis, "**Tenant**") are entering into that certain Ground Lease (as the same may be amended, restated, and/or supplemented from time to time, the "**Ground Lease**"), with respect to the EBC Unit and the Modified Hotel Unit of that certain 353 West 57th Street Condominium (the "**Condominium**"), established pursuant to that certain Amended and Restated Declaration pursuant to Article 9-B of the Real Leased Premises Law of the State of New York, dated February 12, 1999, and recorded on July 16, 1999, in Reel 2913 Page 1753, as amended by that certain Amendment to Amended and Restated Declaration, dated September 30, 1999, and recorded on October 27, 1999, in Reel 2979 Page 2159, as the same may be amended, restated, and/or supplemented by from time to time (the "**Condominium Declaration**"), located at 353-361 West 57th Street, New York, New York (collectively, the "**Ground Leased Premises**") and (ii) Landlord, as sublandlord, and Tenant 1701/1706, as subtenant, are entering into that certain Sublease (as the same may be amended, restated, and/or supplemented from time to time, the "**Sublease**"; and together with the Ground Lease, collectively, the "**Lease**") with respect to the 10th Floor Unit of the Condominium (the "**Subleased Premises**"; and together with the Ground Leased Premises, collectively, the "**Leased Premises**");

B.      Guarantor's execution and delivery of this Guaranty is a condition precedent to Landlord entering into the Lease. Guarantor is willing to enter into this Guaranty to induce Landlord to enter into the Lease; and

C.      Capitalized terms used herein but not defined herein shall the meanings ascribed to such terms in the Ground Lease.

**NOW THEREFORE,** in consideration of the foregoing, the parties hereto agree as follows:

4894-0995-9197, v. 6

**AGREEMENT**

1.    Guaranty.

(a)    Subject to the provisions of Section 2 below, the Guarantor hereby absolutely, irrevocably and unconditionally guarantees the due and punctual payment and performance of all Base Rent and Additional Rent due from Tenant when and as the same shall become due and payable under the Lease (including, without limitation, all Taxes, insurance premiums for all insurance policies required pursuant to the terms of the Lease, any interest due on unpaid Rent at the Default Rate, any Late Charges and all other operating expenses with respect to the Leased Premises) (collectively, the "**Guaranteed Obligations**") (it being understood that, as of the date of satisfaction of the Guaranty Termination Conditions (as hereinafter defined) (the "**Termination Date**"), Guarantor's liability under this Guaranty shall terminate; provided however, Guarantor shall be liable for any and all of the Guaranteed Obligations pursuant to this Guaranty that became due and payable prior to such Termination Date). Landlord may accept such tender or may decline to accept such tender in its sole and absolute discretion (provided that any such nonacceptance shall not affect the occurrence of the Tender Date). Notwithstanding the foregoing or anything to the contrary set forth in this Guaranty, the Guaranteed Obligations shall not include the Right-Size Payment.

(b)    As used herein, the term, "**Guaranty Termination Conditions**" shall be satisfied upon compliance with any of the following conditions:  (A) satisfaction of the CONH Requirement with respect to the entire Leased Premises in accordance with the Lease and Tenant's receipt of all Permits necessary to achieve Substantial Completion of the Multifamily Project; (B) following Landlord's delivery to Tenant of a Fallback Business Plan Notice, the earlier to occur of (x) Completion of the Fallback Project or (y) the Leased Premises having achieved a 1.25x Coverage Ratio; or (C) subsequent to the occurrence of an Event of Default, within sixty (60) days of receipt of a notice of Landlord's intention to terminate the Lease, subject to extension by Landlord in its sole discretion, Guarantor has tendered, or caused to be tendered to Landlord all of the items set forth on Exhibit A attached hereto and made a part hereof (the date of such full tender, the "**Tender Date**").

(c)    For purposes of this Guaranty, the following terms shall have the following meanings: "**Coverage Ratio**" means, as of any date of determination, the ratio of Net Operating Income for the trailing three (3) months prior to the date of determination, *divided by* all Rent due during such period; and "**Net Operating Income**" means, for the applicable period tested, all gross income derived from Subleases and other operations on the Leased Premises, *less* Taxes, insurance premiums and reasonable operating expenses with respect to the Leased Premises, as reasonably determined by Landlord from financial statements and related reporting received from Tenant.

2.    Intentionally Omitted.

3.    Changes Do Not Affect Liability. Guarantor agrees that Landlord may without notice to Guarantor and without limiting Guarantor's liability under, or affecting the enforceability of, this Guaranty:

2

(a)　　　grant extensions of time, renewals or other indulgences and modifications to Tenant or any other party under the Lease;

(b)　　　change, amend or modify the Lease;

(c)　　　discharge or release any party or parties liable under the Lease or any Leased Documents;

(d)　　　accept or make compositions or other arrangements or file or refrain from filing a claim in any bankruptcy proceeding of Tenant, any other Guarantor of the Lease, or any other Person related to the Lease;

(e)　　　credit payments in such manner and order of priority to Base Rent, Additional Rent or other obligations as any Landlord may determine; and

(f)　　　otherwise deal with Tenant, any other Guarantor of the Lease, or any other person related to the Lease as Landlord may determine in its discretion.

4.　　　<u>Waiver of Estoppel Defense</u>. Guarantor hereby waives the right to require Landlord to (a) proceed against Tenant or any other guarantor or pledgor, (b) proceed against or exhaust any other guaranty or indemnity Landlord may in connection with the Lease, or (c) pursue any other right or remedy for Guarantor's benefit. Guarantor agrees that Landlord may proceed against Guarantor for the Guaranteed Obligations guaranteed herein without taking any action against Tenant or any other, guarantor or pledgor, and without proceeding against or exhausting any other guaranty or indemnity Landlord may be entitled in connection with the Lease. Guarantor agrees that Landlord may unqualifiedly exercise, in Landlord' absolute discretion, any and all rights and remedies available to it against Tenant or any other, guarantor or pledgor without impairing Landlord' rights and remedies in enforcing this Guaranty, under which Guarantor's liabilities shall remain independent and unconditional. Guarantor agrees that Landlord's exercise of certain of such rights or remedies may affect or eliminate Guarantor's right of subrogation or recovery against Tenant and that Guarantor may incur a partially or totally nonreimbursable liability under this Guaranty.

5.　　　<u>Additional Waivers</u>.

(a)　　　Guarantor agrees that its liability under, and the enforceability of, this Guaranty are absolute and are not contingent upon the genuineness, validity or enforceability of any of the Lease or the availability of any defense to Tenant, any other guarantor of the Lease, or any other person related to the Lease.

(b)　　　Guarantor acknowledges and agrees that Guarantor's liability may be larger in amount and more burdensome than that of Tenant. Guarantor's liability under this Guaranty shall continue until all sums due under the Lease have been paid in full and shall not be limited or affected in any way by any impairment or any diminution or loss of value of the Leased Premises, from whatever cause.

(c)　　　Guarantor waives diligence and all demands, protests, presentments and notices of every kind or nature, including notices of protest, dishonor, nonpayment, acceptance of

3

this Guaranty and creation, renewal, extension, modification or accrual of any of the obligations under the Lease.

(d)    To the extent permitted by Legal Requirements, Guarantor waives the right to plead any and all statutes of limitations as a defense to Guarantor's liability hereunder or the enforcement of this Guaranty. No failure or delay on Landlord' part in exercising any power, right or privilege hereunder shall impair any such power, right or privilege or be construed as a waiver of or an acquiescence therein. In addition, Guarantor waives any and all rights or defenses arising by reason of the application by Tenant of the proceeds of any advances by Landlord under the Lease for purposes other than the purposes represented by Tenant to Landlord were intended or understood by Landlord.

6.    <u>Guarantor Informed of Tenant's Condition</u>. Guarantor acknowledges that it has had an opportunity to review the Lease, the Indemnity Agreement, the value of the security for the Lease and Tenant's financial condition and ability to pay its Guaranteed Obligations under the Lease. Guarantor agrees to keep itself fully informed of all aspects of Tenant's financial condition and the performance of Tenant's obligations to Landlord and that Landlord has no duty to disclose to Guarantor any information pertaining to Tenant or any security for the Lease. Guarantor represents and warrants to Landlord that: (a) Guarantor has received copies of the Lease; (b) Landlord has not made any representations or warranties to Guarantor regarding the credit worthiness of Tenant or the prospects of sources of payment under the Lease, other than Tenant; and (c) this Guaranty is executed at the request of Tenant.

7.    <u>Subrogation, Reimbursement and Contribution Rights</u>. Guarantor agrees that its rights of subrogation and reimbursement against Tenant, its right of subrogation against any other security for the Lease or the pledgor of such security and its right of contribution from any guarantor of the Lease shall be subordinate to Landlord' rights against Tenant, in such security, against any such pledgor and against any such guarantor.

8.    <u>Guaranty Continues if Payments Are Avoided or Recovered from Landlord</u>. If all or any portion of the obligations guaranteed under this Guaranty are paid or performed, Guarantor's obligations under this Guaranty shall continue and remain in full force and effect if all or any part of such payment or performance is avoided or recovered directly or indirectly from Landlord as a preference, fraudulent transfer or otherwise, irrespective of (a) any notice of revocation given by Guarantor prior to such avoidance or recovery, and (b) payment in full of the Lease.

9.    <u>Subordination</u>. Until all of the Guaranteed Obligations have been paid in full, Guarantor agrees that all existing and future debts, obligations and liabilities of Tenant to Guarantor (collectively referred to as "**Subordinated Debt**") shall be and hereby are expressly subordinated to the Guaranteed Obligations, and the right of payment of the Subordinated Debt is expressly deferred to the prior payment in full of the Guaranteed Obligations. For purposes of this <u>Section 9</u>, any Guaranteed Obligation shall not be deemed paid in full until it has been paid in full in U.S. Dollars.

(a)    Until the Guaranteed Obligations have been paid in full, without Landlord's prior written consent:

4

(i)      Guarantor shall not (i) collect or receive any cash or non-cash payments on the Subordinated Debt, (ii) assert rights or declare a default under or enforce payment of the Subordinated Debt by legal proceedings or otherwise, or (iii) assign or transfer all or any part of the Subordinated Debt;

(ii)      Guarantor shall not permit Tenant to (i) pay to any Guarantor all or any part of the Subordinated Debt, (ii) transfer any of the Leased Premises to Guarantor in payment of or as security for the payment of all or any part of the Subordinated Debt, (iii) execute or deliver any instrument as evidence of all or any part of the Subordinated Debt, or (iv) establish any sinking fund, reserve, or like set aside of funds or other Leased Premises for the redemption, retirement or repayment of all or any part of the Subordinated Debt; and

(iii)      Guarantor shall not file any petition against Tenant under any chapter or provision of any present or future federal bankruptcy legislation, or amendments to such legislation, or any complaint, petition or other pleading against Tenant calling for its reorganization, liquidation, composition or receivership, or for other similar relief under federal or state law.

(b)      Upon any distribution of assets of Tenant upon any dissolution, winding up, liquidation or reorganization of Tenant, whether in bankruptcy, insolvency, reorganization or receivership proceedings, or upon an assignment for the benefit of creditors or any other marshaling of the assets and liabilities of Tenant, or otherwise:

(i)      Landlord shall be entitled to receive payment in full of the Guaranteed Obligations before Guarantor is entitled to receive any payment on account of the Subordinated Debt; and

(ii)      any payment by, or distribution of assets of, Tenant of any kind or character, whether in cash, Leased Premises or securities, to which Guarantor would be entitled except for this subordination shall be paid or delivered by the Person making such payment or distribution, whether a trustee in bankruptcy, a receiver or liquidating trustee, or otherwise, directly to Landlord for the benefit of Landlord to be held as additional security for the Guaranteed Obligations in an interest bearing account until all of the Guaranteed Obligations have been paid in full.

(c)      Should Guarantor receive any payment or distribution of any kind in conflict with this Section 9, Guarantor shall hold such funds or Leased Premises as trustee for Landlord, and shall pay or transfer to Landlord for the benefit of Landlord all such funds promptly upon receipt on account of the Guaranteed Obligations, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty; provided, however, nothing herein shall limit Guarantor's right to receive distributions from Tenant so long as no Event of Default has occurred and is continuing.

(d)      Guarantor authorizes and directs Tenant to take all necessary or appropriate action to effectuate and maintain the subordination provided in this Guaranty.

(e)      No right of Landlord to enforce the subordination in this Guaranty shall at any time or in any way be prejudiced or impaired by any act or failure to act by Tenant, Landlord

5

or any other Person or by any noncompliance by the Tenant, Landlord or any other Person with the terms, provisions and covenants of this Guaranty or of the Lease regardless of any knowledge of such acts, failures to act, or non-compliance that Landlord may have or be otherwise charged with.

(f)        Nothing express or implied in this Section 9 shall give any Person other than Tenant, Landlord and Guarantor any benefit or any legal or equitable right, remedy or claim under this Section 9.

(g)        If Guarantor institutes or participates in any suit, action or proceeding against Tenant in violation of the terms of Guarantor's subordination Tenant may interpose as a defense or dilatory plea this subordination, and Landlord are irrevocably authorized to intervene and to interpose such defense or plea in its name or in Tenant's name.

10.        Financial Reporting.

(a)        Guarantor to deliver to Landlord as soon as available, but in no event later than ninety (90) days after such Guarantor's fiscal year end (if such Guarantor is an entity) or the calendar year (if such Guarantor is an individual), current financial statements in a form reasonably acceptable to Landlord (including, without limitation, an income and expense statement, balance sheet, and statement of cash flow), together with supporting property and mortgage debt schedules and any other financial information reasonably requested by Landlord for such Guarantor.

(b)        If requested by Landlord, Guarantor shall deliver true, correct, and complete copies of such Guarantor's federal, state and local tax returns to Landlord, within thirty (30) days after the filing of such tax returns.

(c)        Within ten (10) Business Days' after receipt of Landlord's written request therefor, Guarantor shall deliver to Landlord such other supplemental information related to such Guarantor's financial statements as is reasonably requested by Landlord.

11.        Representations and Warranties. Guarantor represents and warrants to Landlord that:

(a)        Authority of Guarantor. Guarantor has all requisite power and authority to conduct its business, manage its affairs, and to own and lease its properties.

(b)        Execution, Delivery and Performance of Guaranty. Guarantor has all requisite power and authority to execute and deliver this Guaranty, and perform all Guaranteed Obligations. The execution and delivery of this Guaranty, and performance by Guarantor of all Guaranteed Obligations have been duly authorized by all necessary action and do not and will not:

(i)        result in or require the creation or imposition of any lien, right of others, or other encumbrance of any nature (other than under this Guaranty, the Lease and any related documents) upon any Leased Premises now or in the future owned or leased by Guarantor;

(ii)        violate any provision of any law, regulation, judgment, decree or award having applicability to Guarantor;

6

4894-0995-9197, v. 6

(iii)    result in a breach of, constitute a default under, or cause or permit the acceleration of any obligation owed under, any indenture, loan agreement, lease, or any other agreement or instrument, to which Guarantor is a party or by which Guarantor or any of its Leased Premises is bound or affected; or

(iv)    require any consent or approval not already obtained of any Person having any interest in Guarantor.

(c)    Enforceability. This Guaranty, when executed and delivered, shall constitute the valid and binding obligation of Guarantor, enforceable in accordance with its terms.

(d)    Financial and Other Information. All Guarantor's financial information furnished to Landlord for the benefit of Landlord in connection with the Lease: (a) is complete and fairly represents Guarantor's financial condition in all material respects; and (b) accurately presents the financial condition of Guarantor as of the date of such financial information in all material respects. All other reports, papers, data and information furnished to Landlord for the benefit of Landlord by and regarding Guarantor in connection with the Lease are accurate and correct in all material respects and complete in all material respects insofar as completeness in all material respects is necessary in all material respects to give Landlord a true and accurate knowledge of their subject matter in all material respects. Without limiting the generality of the foregoing, there has been no material adverse change in the condition, financial or otherwise, of Guarantor since the date of the financial statements and other reports, papers, data and information furnished to Landlord for the benefit of Landlord.

(e)    Tax Liability. Guarantor has filed or filed extensions for all required tax returns (federal, state and local) and has paid all taxes shown on them to be due and all Leased Premises taxes due, including interest and penalties, if any. The charges, accruals and reserves on the books of Guarantor for taxes or other governmental charges are adequate.

(f)    Intentionally Omitted.

(g)    Compliance With Agreements. Guarantor has complied in all material respects with all indentures, credit agreement, leases and all other agreements and instruments to which Guarantor is a party or by which Guarantor or any of its Leased Premises is bound or affected.

(h)    Litigation. To Guarantor's actual knowledge, there are no actions, suits or proceedings pending or threatened (in writing) against or affecting Guarantor or property of Guarantor before any court or governmental department, public body or authority that would have a material adverse effect on Guarantor's ability to perform its obligations under this Guaranty.

(i)    No Default. To Guarantor's actual knowledge, no Event of Default with respect to the Lease, or condition, event, act or omission which, with the giving of notice or the passage of time, or both, would be an Event of Default, has occurred and is continuing.

12.    Tenant. As used in this Guaranty, "Tenant" shall include any successor to Tenant with respect to the Lease and any estate created by the commencement of a case under the Bankruptcy Code or any other insolvency, bankruptcy, reorganization or liquidation proceeding,

or by any trustee under the Bankruptcy Code, liquidator, sequestrator or receiver of Tenant or Tenant's property or similar person duly appointed pursuant to any law generally governing any insolvency, bankruptcy, reorganization, liquidation, receivership or like proceeding.

13.     Opportunity to Review. Guarantor acknowledges that it has had the opportunity to review the matters discussed and contemplated by the Lease, including the remedies Landlord may pursue against Tenant in the event of a default under the Lease, the value of the security or collateral for the Lease and Tenant's financial condition and ability to perform under the Lease. Guarantor further has had the opportunity to review this Guaranty with its counsel.

14.     Changes, Waivers, Revocations and Amendments in Writing. No terms or provisions of this Guaranty may be changed, waived, revoked or amended without Landlord' prior written consent. No delay or failure of Landlord in exercising any right hereunder shall affect such right, nor shall any single or partial exercise of any right preclude any further exercise thereof. Should any provision of this Guaranty be determined by a court of competent jurisdiction to be unenforceable, all of the other provisions shall remain effective.

15.     Reasonableness and Effect of Waivers. Guarantor warrants and agrees that each of the waivers set forth in this Guaranty is made with full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any of such waivers is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the maximum extent permitted by law.

16.     Cumulative Remedies; No Waiver. The rights, powers and remedies of Landlord under this Guaranty are cumulative and not exclusive of any other right, power or remedy which Landlord would otherwise have. No failure or delay on the part of Landlord in exercising any such right, power or remedy may be, or may be deemed to be, a waiver thereof; nor may any single or partial exercise of any such right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy under this Guaranty or under the other Lease.

17.     No Third Parties Benefited. This Guaranty is made for the purpose of setting forth certain rights and obligations of Guarantor and Landlord, and no other person shall have any rights under or by reason of this Guaranty.

18.     Interpretation. Whenever the context requires, all terms used herein in the singular shall be construed in the plural and vice versa, and each gender shall include each other gender. The term "Tenant" shall mean both the named Tenant and any other person at any time and from time to time assuming or otherwise becoming primarily liable on any or all Guaranteed Obligations prior to any foreclosure sale. Section headings in this Guaranty are included for convenience of reference only and are not a part of this Guaranty for any other purpose.

19.     Effectiveness Independent of Other Guaranty(ies). This Guaranty shall be effective regardless of whether any other individual or entity executes a guaranty of any or all Guaranteed Obligations, and regardless of whether any other guaranty of any or all Guaranteed Obligations is ever released by Landlord or otherwise unenforceable for any reason.

20.     Assignment of Guaranty. Landlord may assign this Guaranty with the Lease, without in any way affecting Guarantor's liability under this Guaranty or the Lease. This Guaranty

4894-0995-9197, v. 6

shall inure to the benefit of Landlord and its successors and assigns, and shall bind Guarantor and such Guarantor's respective heirs, executors, administrators, successors and assigns.

21.    Consent to Jurisdiction; Waiver of Immunities.

(a)    Guarantor irrevocably submits to the jurisdiction of any New York or federal court sitting in New York City in any action or proceeding arising out of or relating to this Guaranty, and Guarantor irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined in such New York or federal court. Guarantor irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding. Guarantor agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Legal Requirements.

(b)    Nothing in this Section shall affect the right of Landlord to serve legal process in another manner permitted by law or affect the right of Landlord to bring any action or proceeding against Guarantor or its Leased Premises in the courts of any other jurisdictions.

(c)    To the extent that Guarantor has or may later acquire any immunity from jurisdiction of any court or from any legal process (whether through service of notice, attachment prior to judgment, attachment in aid of execution, execution or otherwise) with respect to itself or its Leased Premises, Guarantor irrevocably waives such immunity in respect of its obligations under this Guaranty.

22.    Miscellaneous.

(a)    Notices. All notices, demands, requests, consents, approvals, offers, statements and other instruments or communications required or permitted to be given pursuant to the provisions of this Guaranty (collectively "Notice" or "Notices") must, to be effective for purposes of this Guaranty, be in writing, and they will be deemed to have been given for all purposes (i) three (3) Business Days after having been sent by United States registered or certified mail, return receipt requested, postage prepaid, addressed to the other party at its address as stated below, (ii) one (1) day after having been sent by Federal Express or other nationally recognized air courier service, to the addresses stated below, or (iii) if such Notice is sent via email (which email shall be addressed to the email addresses set forth below and shall include the notice as a .pdf attachment thereto) (x) as of the date of the email, if such email was sent prior to 4 P.M. EST on a Business Day or (y) on the Business Day immediately succeeding the date of the email, if such email was sent on a day that is not a Business Day or after 4 P.M. EST on a Business Day, provided if a Notice is delivered via email, such Notice shall not be effective unless a hardcopy of such Notice is delivered via the method described in clauses (i) and (ii) above:

If to Guarantor:

Alberto Smeke Saba
2008 East 3rd Street
Brooklyn, New York 11223
Email: AS@csc-coliving.com

9

Salomon Smeke Saba
4 Lady Bess Drive
Deal, New Jersey 07723
Email: SS@csc-coliving.com

With a copy to:

Cole Schotz, P.C.
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Attention: Jordan Metzger, Esq.
Email: jmetzger@coleschotz.com

If to Landlord:

356W58 GROUND LESSOR LLC
c/o MSP Capital Investments, L.L.C.
Woodlawn Hall at Old Parkland
3953 Maple Ave., Suite 350
Dallas, Texas 75219
Attn: Luke Pak
Telephone: 214-545-5576
E-mail:  pak@mspcm.com

With a copy to:

356W58 GROUND LESSOR LLC
c/o MSP Capital Investments, L.L.C.
Woodlawn Hall at Old Parkland
3953 Maple Ave., Suite 350
Dallas, Texas 75219
Attn: Max Lamont
Telephone: 214-545-5577
E-mail:  lamont@mspcm.com

And with a copy to:

Duval & Stachenfeld LLP
555 Madison Avenue, 6th Floor
New York, NY 10022
Attention: Danielle Ash, Esq.  & File Manager
File No. 4308.0014
Email: Dash@dsllp.com

For the purposes of this Section 22(a), any party may substitute or supplement its address by giving ten (10) Business Days' notice to the other party in the manner provided above.

10

(b)     <u>Governing Law</u>. All questions with respect to the construction of this Guaranty and the rights and liabilities of the parties to this Guaranty shall be governed by the laws of the State of New York, without regard to conflicts of law principles.

(c)     <u>Binding on Successors</u>. This Guaranty shall inure to the benefit of, and shall be binding upon, the successors and assigns of each of the parties to this Guaranty.

(d)     <u>Attorneys' Fees</u>.

(i)     Guarantor shall reimburse Landlord for all reasonable out-of-pocket attorneys' fees, costs and expenses, incurred by Landlord in connection with the enforcement of Landlord' rights under this Guaranty and the Lease, including, without limitation, reasonable attorneys' fees, costs and expenses for trial, appellate proceedings, out-of-court negotiations, workouts and settlements or for enforcement of rights under any state of federal statute, including, without limitation, reasonable attorneys' fees, costs and expenses incurred to protect Landlord's security and attorneys' fees, costs and expenses incurred in bankruptcy and insolvency proceedings such as (but not limited to) seeking relief from stay in a bankruptcy proceeding. The term "expenses" means any expenses incurred by Landlord in connection with any of the out-of-court, or state, federal or bankruptcy proceedings referred to above, including, without limitation, the fees and expenses of any appraisers, consultants and expert witnesses retained or consulted by Landlord in connection with any such proceeding.

(ii)     Landlord shall also be entitled to its reasonable attorneys' fees, costs and expenses incurred in any post-judgment proceedings to collect and enforce the judgment. This provision is separate and several and shall survive the merger of this Guaranty into any judgment on this Guaranty.

(e)     <u>Counterparts</u>. This Guaranty may be executed in any number of original counterparts, each of which shall be deemed an original, but all of which when taken together shall constitute one instrument. The original signature page of any counterpart may be detached from such counterpart and attached to any other counterpart identical to such counterpart (except having additional signature pages executed by other parties to this Guaranty) without impairing the legal effect of any such signature(s).

(f)     <u>Entire Agreement</u>. This Guaranty constitutes the entire agreement and understanding between the parties in respect of the subject matter of this Guaranty and supersedes all prior agreements and understandings with respect to such subject matter, whether oral or written.

(g)     <u>Waivers</u>. Waiver by any Landlord of any term, covenant or condition under this Guaranty or the Lease, or of any default by Guarantor under this Guaranty or the Lease, or any failure by any Landlord to insist upon strict performance by Guarantor of any term, covenant or condition contained in this Guaranty or the Lease, shall be effective or binding on such Landlord only if made in writing by such Landlord; no such wavier shall be implied from any omission by such Landlord to take action with respect to any such term, covenant, condition or default. No express written waiver by any Landlord of any term, covenant, condition or default shall affect any other term, covenant, condition or default or cover any other time period than the application

4894-0995-9197, v. 6

of any such term, covenant or condition to the matter as to which a waiver has been given or the default or time period specified in such express waiver. This Guaranty may be amended only by an instrument in writing signed by the parties to this Guaranty.

(h)     Severability. If any part of this Guaranty is declared invalid for any reason, such shall not affect the validity of the rest of the Guaranty. The other parts of this Guaranty shall remain in effect as if this Guaranty had been executed without the invalid part. The parties declare that they intend and desire that the remaining parts of this Guaranty continue to be effective without any part or parts that have been declared invalid.

(i)     Joint and Several Liability. If more than one person has signed this Guaranty, it shall be the joint and several obligation of all such persons.

23.     Waiver of Trial by Jury. EACH OF LANDLORD AND GUARANTOR WAIVES TRIAL BY JURY WITH RESPECT TO ANY ACTION, CLAIM, SUIT OR PROCEEDING IN RESPECT OF OR ARISING OUT OF THIS GUARANTY OR THE OTHER LEASE OR THE CONDUCT OF THE RELATIONSHIP BETWEEN LANDLORD AND GUARANTOR. BOTH LANDLORD AND GUARANTOR HAVE OBTAINED THE ADVICE OF THEIR RESPECTIVE LEGAL COUNSEL BEFORE SIGNING THIS GUARANTY AND ACKNOWLEDGE THAT THEY VOLUNTARILY AGREED TO THIS WAIVER OF THEIR RIGHT TO TRIAL BY JURY WITH FULL KNOWLEDGE OF ITS SIGNIFICANCE AND LEGAL CONSEQUENCE.

[*Remainder of page intentionally left blank; signatures begin on following page*]

4894-0995-9197, v. 6

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the date first above written.

GUARANTOR:

_____

**ALBERTO SMEKE SABA**

_____

**SALOMON SMEKE SABA**

## **EXHIBIT A**
Tender Requirements

(i)      Payment of all sums then due and payable under this Guaranty, together with an amount equal to the sum of all Guaranteed Obligations reasonably projected by Landlord to be incurred by Tenant during the period from the Tender Date through and including the date that is six (6) months following the Tender Date.

(ii)     An assignment of the Lease conveying to Landlord or its nominee, such entity to be designated (the date of such designation, the "**Notice Date**") by Landlord promptly upon request therefor by Guarantor, the Leasehold Estate created pursuant to the Lease (the "**Leased Premises**"), subject to no liens or encumbrances other than Permitted Encumbrances or which are otherwise specifically approved of by Landlord in writing from time to time during the term of the Lease.

(iii)    All transfer taxes and other sums of any nature whatsoever which are required to be paid in connection with any such transfer of the Leased Premises to Landlord (Landlord agreeing to execute promptly any required transfer tax returns).

(iv)    [intentionally omitted].

(v)     Phase I environmental report dated not more than thirty (30) days prior to the date of the Tender, issued by a qualified environmental consultant and otherwise in conformity with any applicable regulatory requirements binding upon Landlord and relating to environmental reports and their acceptance by Landlord and indicating that the Leased Premises is in compliance or deemed compliance with all Environmental Laws relating to Hazardous Substances; provided, however, that if such Phase I report discloses potential contamination, Landlord shall have the right, at Tenant's expense, to secure a Phase II assessment within ninety (90) days after receipt of the Phase I report (the "**Phase II Assessment Period**") and to perform, at Tenant's expense, tests incidental thereto, which Phase II report shall establish an estimated cost of remediation and Tenant shall complete the following requirements (collectively, the "**Phase II Requirements**"): (A) deposit with Landlord an amount equal to 110% of the estimated remediation costs, and (B) if then available in the insurance market, (1) secure and procure, for the benefit of Landlord, an environmental insurance policy in form and substance and from an insurer reasonably acceptable to Landlord, which policy shall insure against all remediation costs in excess of such estimated remediation costs, and (2) if such environmental remediation policy shall provide for a deductible in excess of the estimated remediation costs, then Tenant shall deposit with Landlord the amount of such excess in addition to the deposit of the estimated remediation costs;  and upon commencement and through the expiration of the Phase II Assessment Period, Guarantor's liability for interest on the Lease (provided no Event of Default is occurring) shall be limited to the then current non-default rate of interest provided for in the Lease Agreement; if upon expiration of the Phase II Assessment Period, the Phase II Requirements have not been completed, from and after such date

4894-0995-9197, v. 6

Guarantor shall be liable for interest on any unpaid Rent under Lease at the Default Rate.

(vi) [intentionally omitted]

(vii) A certification from Tenant (which is subject to verification by Landlord to its accuracy) that Tenant or any party affiliated with Tenant has not entered into any management or leasing agreements or service contracts for the Leased Premises which must be assumed by Landlord and which cannot be cancelled on not more than sixty (60) days' notice without material penalty, unless in the case of a service contract the same is at market and is with a person, party or entity not affiliated with Tenant, in which event the same shall be cancelable on not more than twelve (12) months' notice without material penalty.

(viii) A certification from Tenant (which is subject to verification by Landlord as to its accuracy) that there exist no expenses, whether for capital items or operating expenses, relating to the Leased Premises, which are unpaid and in respect of which Landlord is obliged to assume liability, except for expenses (a) which are due and payable for less than thirty (30) days and for which there is money available from the Leased Premises sufficient to pay the same, or (b) which Tenant is contesting (which may be due and payable for more than thirty (30) days) in good faith and for which there is money available from the Leased Premises sufficient to pay the same.

(ix) Tenant's execution of notices to subtenants of the Leased Premises of the transfer in a form to be provided by Landlord no later than the Notice Date.

(x) All subtenant deposits, interest thereon and prepaid rents, and Tenant's agreement and the agreement of Guarantor to hold Landlord harmless against any claims of any subtenant in respect of such deposits, interest thereon and prepaid rents which were not properly held or applied by Tenant. It is understood that Landlord will timely execute an assumption of and hold Tenant and Guarantor harmless from and against any claims of subtenants in respect of any such subtenant deposits, interest and prepaid rents which are turned over by Tenant to Landlord and which are subsequent thereto not properly held or applied by Landlord.

(xi) All personal property of Tenant located upon and used in connection with the operation of the Leased Premises (together with a bill of sale therefor), an assignment of all Subleases, construction contracts, architect's agreements, insurance policies, building permits, any purchase contract relating to the Penthouse Unit (if any) and all correspondence relating thereto, development rights and agreements, other permits and warranties, together with all original leases, lease correspondence, keys, combination to locks, plans and specification, certificates of occupancy, and all occupancy, construction and operation files related to the Leased Premises (together with a general instrument of transfer transferring the same) all to the extent any of the above exist and are in the possession or control of the Tenant, Guarantor or their agents.

4894-0995-9197, v. 6

(xii)      Tenant's share (as pro-rated through the date of transfer) of all real estate taxes, sewer and water rents (based upon estimated readings) and other assessments for the term of Tenant's ownership.

(xiii)      Certificate by Tenant of non-foreign status.

(xiv)      Any net cash flow generated by the Leased Premises from and after the Default which causes a demand for payment under this Guaranty and any reserves held by Tenant as of the Tender Date.

(xv)      Written confirmation from Tenant that in the event Landlord subsequently elects to exercise remedies under the Lease and take possession of the Leased Premises through an eviction proceeding, Tenant shall not file an answer in any such action, or contest, attempt to stay or raise any defense in such action.

(xvi)      Such other documents and instruments as may be reasonably and customarily required in order to conclude the transfer of the Leasehold Estate in the Leased Premises of record.

All defined terms used in this Exhibit A, unless defined in this Exhibit A or the Guaranty to which this Exhibit A is attached, shall have the meanings ascribed to them in the Ground Lease.

S - 4