## EXHIBIT D

**Completion Guaranty**

## COMPLETION GUARANTY

THIS COMPLETION GUARANTY (this "**Guaranty**") is entered into as of May 4, 2022 by ALBERTO SMEKE SABA, an individual residing at 2008 East 3rd Street, Brooklyn, New York 11223 and SALOMON SMEKE SABA, an individual residing at 4 Lady Bess Drive, Deal, New Jersey 07723 (individually and collectively "**Guarantor**"), in favor of Parkview Financial REIT, LP, a Delaware limited partnership, both as a lender and in its capacity as Administrative Agent ("**Administrative Agent**") for the benefit of each financial institution or entity initially a signatory to the Loan Agreement (hereinafter defined) and all other financial institutions or other entities which from time to time become a "Lender" thereunder (collectively the "**Lenders**" and individually a "**Lender**").

## RECITALS

A.      Pursuant to the terms of a Building Loan Agreement and a Project Loan Agreement, each among Hudson 1702, LLC and Hudson 1701/1706, LLC, each a Delaware limited liability company (collectively "**Borrower**") and Administrative Agent and Lenders and each of even date herewith (collectively, the "**Loan Agreement**"), Lenders have agreed to lend to Borrower the principal sum of up to $207,000,000.00 (the "**Loan**") for the purposes specified in the Loan Agreement, said purposes relating to the real property and improvements described in the Loan Agreement (which real property and improvements are collectively referred to herein as the "**Property**").

B.      The Loan Agreement provides that the Loan shall be evidenced by one or more promissory notes (collectively, the "**Note**") executed by Borrower payable to the order of Lenders in the principal amount of the Loan and shall be secured by one or more mortgages on the Property (collectively, the "**Mortgage**") and by other security instruments, if any, specified in the Loan Agreement (the term "**Loan Documents**", wherever appearing herein, shall be deemed to mean and refer, collectively, to the Note, the Mortgage, and to the other documents identified as "**Loan Documents**" in the Loan Agreement).

C.      Borrower and Guarantor are executing in favor of Administrative Agent and Lenders in connection with the Loan an Environmental Indemnity Agreement dated as of the date hereof ("**Environmental Indemnity**").

D.      Guarantor acknowledges that Guarantor has been provided with copies of the Environmental Indemnity and the Loan Documents and has made such review as it has deemed necessary of (i) all provisions of the Environmental Indemnity, (ii) all provisions of the Loan Documents, and (iii) all agreements, including but not limited to any loan or escrow agreements, between Lenders and Borrower for the disbursement and repayment of loan proceeds.

E.      Guarantor's execution and delivery of this Guaranty is a condition precedent to Lenders making the Loan. Guarantor is willing to enter into this Guaranty to induce Lenders to make the Loan to Borrower.

THEREFORE, to induce Lenders to enter into the Loan Agreement and to make the Loan, and in consideration thereof, Guarantor unconditionally guarantees and agrees as follows:

1.    Completion Guaranty and Agreement. Guarantor unconditionally guarantees the full performance by Borrower of, and agrees to perform all of Borrower's obligations under the Loan Documents which pertain to construction of the Improvements. Guarantor unconditionally guaranties the lien free completion of the Improvements in accordance with the requirements of the Loan Agreement and the terms herein ("**Completion**"). Further, Guarantor hereby guarantees the payment by Borrower of any funds necessary so that the Loan is In Balance, as required by the Loan Agreement. Guarantor shall assume responsibility for and shall fully perform all of such obligations promptly on receiving written notice from Administrative Agent that Borrower has failed to perform any of such obligations in accordance with the Loan Documents.

2.    Lien Free Completion. Completion of the Improvements free and clear of liens shall be deemed to have occurred upon: (a) (i) Administrative Agent's receipt of a written statement or certificate executed by a licensed contractor approved by Administrative Agent certifying, without qualification or exception, that the construction of Improvements is substantially complete, and (ii) Administrative Agent's receipt of a temporary certificate of occupancy for the Improvements, issued by the local government agency having jurisdiction and authority to issue same, if required to be issued or confirmation that units can be rented to tenants pursuant to any existing certificate of occupancy, and (iii) the expiration of any statutory periods within which valid mechanic's liens, materialman's liens and/or stop notices may be recorded and/or served by reason of the Improvements, or, alternatively, Administrative Agent's receipt of valid, unconditional releases thereof from all persons entitled to record said liens or serve said stop notices; or (b) Administrative Agent's receipt of such other evidence of lien-free Completion of the Improvements as Administrative Agent deems satisfactory in its sole discretion.

3.    Obligations of Guarantor Upon Default of Borrower. If construction of the Improvements is not commenced and completed in the manner and within the time required by the Loan Agreement, or if, prior to the expiration of the time limits for said Completion set forth in the Loan Agreement, construction of the Improvements should cease or be halted prior to Completion, and such cessation or halt constitutes an Event of Default (as defined in the Loan Agreement), Guarantor shall, promptly upon demand of Administrative Agent: (a) diligently proceed to complete the applicable Improvements at Guarantor's sole cost and expense; (b) fully pay and discharge all claims for labor performed and material and services furnished in connection with the applicable Improvements; and (c) release and discharge all claims of stop notices, mechanic's liens, materialman's liens and equitable liens that may arise in connection with the applicable Improvements.

4.    Remedies. If Guarantor fails to promptly perform its obligations under this Guaranty, Lenders shall have the following remedies:

4.1    At Lenders option, and without any obligation to do so, to proceed to perform on behalf of Guarantor any or all of Guarantor's obligations hereunder and Guarantor shall, upon demand and whether or not construction is actually completed by Lenders, pay to Lenders all sums expended by Lenders in performing Guarantor's obligations hereunder together with interest thereon at the highest rate specified in the Note; and

2

FF\12511580.4

4.2     From time to time and without first requiring performance by Borrower or exhausting any or all security for the Loan, to bring any action at law or in equity or both to compel Guarantor to perform its obligations hereunder, and to collect in any such action compensation for all loss, cost, damage, injury and expense sustained or incurred by Lenders as a consequence of the failure of Guarantor to perform its obligations together with interest thereon at the rate of interest applicable to the principal balance of the Note.

4.3     NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, IN ADDITION TO ALL OF LENDERS' OTHER RIGHTS HEREUNDER AND UNDER THE OTHER LOAN DOCUMENTS, WHETHER OR NOT LENDER SHALL ELECT TO COMPLETE THE IMPROVEMENTS IN ACCORDANCE WITH SECTION 4.1 ABOVE, LENDERS SHALL HAVE THE OPTION, IN THEIR SOLE DISCRETION, TO REQUIRE THAT GUARANTOR PAY (AS THE GUARANTOR'S SOLE AND EXCLUSIVE LIABILITY HEREUNDER IN SUCH EVENT) TO LENDERS AS LIQUIDATED DAMAGES AN AMOUNT EQUAL TO THE EXCESS, IF ANY, OF (I) ALL OF THE HARD COSTS AND SOFT COSTS WHICH WOULD HAVE BEEN INCURRED IN CONNECTION WITH THE COMPLETION OF THE CONSTRUCTION OF THE IMPROVEMENTS (EVEN IF LENDERS DO NOT INTEND TO SO COMPLETE THE CONSTRUCTION WORK) FREE OF LIENS AND IN ACCORDANCE WITH THE PLANS AND SPECIFICATIONS, AND THE OTHER PROJECT DOCUMENTS, INCLUDING, WITHOUT LIMITATION, THOSE HARD COSTS AND SOFT COSTS OCCASIONED BY, OR ARISING AS A RESULT OF, ANY EVENT OF DEFAULT UNDER ANY DOCUMENTS EVIDENCING, SECURING OR RELATING TO THE LOAN (IRRESPECTIVE OF THE ABSENCE OF ANY AMOUNT IN THE BUDGET FOR A PARTICULAR ITEM OF SUCH HARD COST OR SOFT COST), OVER (II) AN AMOUNT EQUAL TO (A) THE UNDISBURSED PORTION OF THE LOAN AND THE BORROWERS FUNDS AS OF THE EARLIER OF THE MATURITY DATE OR THE ACCELERATION OF THE LOAN FOLLOWING AN EVENT OF DEFAULT UNDER THE LOAN AGREEMENT LESS (B) ANY FURTHER AMOUNTS DISBURSED PURSUANT TO THE LOAN AGREEMENT PRIOR TO PAYMENT TO LENDERS OF THE AMOUNT DETERMINED IN ACCORDANCE WITH THIS SECTION 4.3; BUT IN NO EVENT SHALL THE LIQUIDATED DAMAGES EXCEED THE OUTSTANDING PRINCIPAL AMOUNT OF THE LOAN TOGETHER WITH ALL ACCRUED AND UNPAID INTEREST (EXCLUDING DEFAULT INTEREST) THEREON AND ALL FEES (EXCLUDING LATE FEES) OWING THEREUNDER. FOR PURPOSES OF THIS SECTION 4.3, THE AFORESAID HARD COSTS AND SOFT COSTS SHALL INITIALLY BE EQUAL TO THE AMOUNT OF SUCH HARD COSTS AND SOFT COSTS AS ESTIMATED, IN GOOD FAITH, BY ADMINISTRATIVE AGENT, TOGETHER WITH REASONABLE DOCUMENTATION TO SUPPORT SUCH ESTIMATE (AND SUCH OTHER DOCUMENTATION REASONABLY REQUESTED BY GUARANTOR TO FURTHER SUPPORT SUCH ESTIMATE); PROVIDED HOWEVER THAT, IN THE EVENT GUARANTOR DISPUTES SUCH AMOUNTS, GUARANTOR SHALL DELIVER NOTICE THEREOF WITHIN TEN (10) BUSINESS DAYS AND SHALL WITHIN FIFTEEN (15) BUSINESS DAYS THEREAFTER, SUBMIT TO ADMINISTRATIVE AGENT A GOOD FAITH ESTIMATE OF SUCH AMOUNTS PREPARED BY A CONSULTANT APPOINTED BY GUARANTOR TO BE REVIEWED BY ADMINISTRATIVE AGENT, TOGETHER WITH REASONABLE DOCUMENTATION

3

FF\12511580.4

TO SUPPORT SUCH ESTIMATE. IN THE EVENT THAT ADMINISTRATIVE AGENT AND THE CONSULTANT APPOINTED BY GUARANTOR ARE UNABLE TO AGREE AS TO SUCH AMOUNTS, THEY SHALL JOINTLY SELECT A MUTUALLY ACCEPTABLE NEUTRAL EXPERT (HAVING AT LEAST TEN (10) YEARS OF MULTIFAMILY CONSTRUCTION EXPERIENCE IN HUDSON COUNTY, NEW JERSEY) TO MAKE A FINAL DETERMINATION. THE NEUTRAL EXPERT SHALL REVIEW EACH APPLICABLE ESTIMATE AND THE SUPPORTING DOCUMENTATION AND SHALL SELECT ONE OF THE TWO ESTIMATES AS THE FINAL AMOUNT. ANY SUCH AMOUNT DETERMINED PURSUANT TO THE AFORESAID SHALL BE CONCLUSIVE FOR PURPOSES OF DETERMINING THE GUARANTOR'S LIABILITY HEREUNDER AND THE UNSUCCESSFUL PARTY SHALL PAY THE COSTS OF SUCH NEUTRAL EXPERT. GUARANTOR'S OBLIGATIONS TO MAKE SUCH PAYMENT SHALL BE DUE NO LATER THAN TEN (10) DAYS FOLLOWING THE GIVING OF A WRITTEN DEMAND THEREFOR FROM ADMINISTRATIVE AGENT, THE AGREEMENT OF THE APPLICABLE CONSULTANTS OR THE DECISION OF THE NEUTRAL EXPERT. IT IS AGREED THAT IF LENDERS SO ELECT TO RECEIVE SUCH PAYMENT, ANY SUCH PAYMENT SHALL BE RETAINED BY LENDERS AS LIQUIDATED DAMAGES. THE PARTIES ACKNOWLEDGE AND AGREE THAT THE ACTUAL DAMAGES OF LENDERS IN SUCH EVENT WOULD BE EXTREMELY DIFFICULT OR IMPRACTICABLE TO DETERMINE. AFTER NEGOTIATION, THE PARTIES HAVE AGREED THAT, CONSIDERING ALL THE CIRCUMSTANCES EXISTING ON THE DATE OF THIS GUARANTY, THE LIQUIDATED DAMAGES AMOUNT AS DETERMINED IN ACCORDANCE WITH THE FOREGOING IS A REASONABLE ESTIMATE OF THE DAMAGES THAT LENDERS WOULD INCUR IN THE EVENT THAT BORROWER HAS NOT TIMELY AND FULLY COMPLETED THE CONSTRUCTION OF THE IMPROVEMENTS IN ACCORDANCE WITH THE LOAN DOCUMENTS. THE PAYMENT OF THE LIQUIDATED DAMAGES AMOUNT TO LENDERS UNDER THE CIRCUMSTANCES PROVIDED FOR HEREIN IS NOT INTENDED AS A FORFEITURE OR PENALTY, BUT IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO LENDERS. FOR THE AVOIDANCE OF DOUBT, UPON GUARANTOR'S PAYMENT OF SUCH LIQUIDATED DAMAGES AMOUNT, THIS GUARANTY SHALL TERMINATE AND GUARANTOR SHALL HAVE NO FURTHER LIABILITY HEREUNDER.

5.    <u>Rights of Lenders</u>. Guarantor authorizes Lenders, without giving notice to Guarantor or obtaining Guarantor's consent and without affecting the liability of Guarantor, from time to time to: (a) approve modifications to the Plans and Specifications so long as such modifications do not materially increase the cost of completing the Improvements nor materially increase the time necessary to complete the Improvements; (b) change the terms or conditions of disbursement of the Loan so long as such changes do not materially interfere with Borrower's ability to complete the Improvements as and when required under the Loan Agreement; (c) otherwise modify the Loan Documents, including, without limitation, making changes in the terms of repayment of the Loan or modifying, extending or renewing payment dates; releasing or subordinating security in whole or in part; changing the interest rate; or advancing additional funds in its discretion for purposes related to the purposes specified in the Loan Agreement; or (d) assign this Guaranty in whole or in part.

4

6.      Waiver of Estoppel Defense. Guarantor hereby waives the right to require Lenders to (a) proceed against Borrower or any other guarantor or pledgor, (b) proceed against or exhaust any security or collateral Lenders may hold, or (c) pursue any other right or remedy for Guarantor's benefit. Guarantor agrees that Lenders may proceed against Guarantor for the obligations guaranteed herein without taking any action against Borrower or any other, guarantor or pledgor, and without proceeding against or exhausting any security or collateral Lenders hold. Guarantor agrees that Lenders may unqualifiedly exercise, in Lenders' absolute discretion, any and all rights and remedies available to it against Borrower or any other, guarantor or pledgor without impairing Lenders' rights and remedies in enforcing this Guaranty, under which Guarantor's liabilities shall remain independent and unconditional. Guarantor agrees that Lenders' exercise of certain of such rights or remedies may affect or eliminate Guarantor's right of subrogation or recovery against Borrower and that Guarantor may incur a partially or totally nonreimbursable liability under this Guaranty.

7.      Additional Waivers.

7.1      Guarantor agrees that its liability under, and the enforceability of, this Guaranty are absolute and are not contingent upon the genuineness, validity or enforceability of any of the Loan Documents or the availability of any defense to Borrower, any other guarantor of the Loan, any pledgor of collateral for any person's obligations to Lenders or any other person related to the Loan.

7.2      Guarantor acknowledges and agrees that Guarantor's liability may be larger in amount and more burdensome than that of Borrower. Guarantor's liability under this Guaranty shall continue until all sums due under the Loan Documents have been paid in full and shall not be limited or affected in any way by any impairment or any diminution or loss of value of any security or collateral for the Loan, from whatever cause, including, without limitation, lenders' failure to perfect a security interest in any such security or collateral or any disability or other defense of Borrower, any other guarantor of the Loan, any pledgor of collateral for any person's obligations to Lenders or any other person related to the Loan.

7.3      Guarantor waives diligence and all demands, protests, presentments and notices of every kind or nature, including notices of protest, dishonor, nonpayment, acceptance of this Guaranty and creation, renewal, extension, modification or accrual of any of the obligations under the Note or the other Loan Documents. Guarantor also waives the right to plead all statutes of limitation as a defense to Guarantor's liability under, or the enforceability of, this Guaranty.

7.4      Guarantor waives the right to plead any and all statutes of limitations as a defense to Guarantor's liability hereunder or the enforcement of this Guaranty. No failure or delay on lenders' part in exercising any power, right or privilege hereunder shall impair any such power, right or privilege or be construed as a waiver of or an acquiescence therein. In addition, Guarantor waives any and all rights or defenses arising by reason of the application by Borrower of the proceeds of any advances by Lenders under the Loan Documents for purposes other than the purposes represented by Borrower to Lenders were intended or understood by Lenders.

8.      Guarantor Informed of Borrower's Condition. Guarantor acknowledges that it has had an opportunity to review the Environmental Indemnity, the Loan Documents, the value of the

5

security for the Loan and Borrower's financial condition and ability to repay the Loan. Guarantor agrees to keep itself fully informed of all aspects of Borrower's financial condition and the performance of Borrower's obligations to Lenders and that Lenders have no duty to disclose to Guarantor any information pertaining to Borrower or any security for the Loan. Guarantor represents and warrants to Lenders that: (a) Guarantor has received copies of the Loan Documents; (b) Lenders have not made any representations or warranties to Guarantor regarding the credit worthiness of Borrower or the prospects of repayment from sources other than Borrower; and (c) this Guaranty is executed at the request of Borrower.

9.      Subrogation, Reimbursement and Contribution Rights. Guarantor agrees that its rights of subrogation and reimbursement against Borrower, its right of subrogation against any other collateral or security for the Loan or the pledgor of such collateral or security and its right of contribution from any guarantor of the Loan shall be subordinate to lenders' rights against Borrower, in such collateral or security, against any such pledgor and against any such guarantor. Guarantor shall have no such rights of subrogation, reimbursement or contribution until all amounts due under the Loan Documents have been paid in full and Lenders have released, transferred or disposed of all of their rights in any collateral or security.

10.      Guaranty Continues if Payments Are Avoided or Recovered from Lenders. If all or any portion of the obligations guaranteed under this Guaranty are paid or performed, Guarantor's obligations under this Guaranty shall continue and remain in full force and effect if all or any part of such payment or performance is avoided or recovered directly or indirectly from Lenders as a preference, fraudulent transfer or otherwise, irrespective of (a) any notice of revocation given by Guarantor prior to such avoidance or recovery, and (b) payment in full of the Loan.

11.      Subordination. Until all of the Obligations have been paid in full, Guarantor agrees that all existing and future debts, obligations and liabilities of Borrower to Guarantor (collectively referred to as "Subordinated Debt") shall be and hereby are expressly subordinated to the Obligations, and the right of payment of the Subordinated Debt is expressly deferred to the prior payment in full of the Obligations. For purposes of this Section 11, any Guaranteed Obligation shall not be deemed paid in full until it has been paid in full in U.S. Dollars.

11.1      Until the Obligations have been paid in full, without Lenders' prior written consent:

(a)      Guarantor shall not (i) collect or receive any cash or non-cash payments on the Subordinated Debt, (ii) assert rights or declare a default under or enforce payment of the Subordinated Debt by legal proceedings or otherwise, or (iii) assign or transfer all or any part of the Subordinated Debt;

(b)      Guarantor shall not permit Borrower to (i) pay to any Guarantor all or any part of the Subordinated Debt, (ii) transfer any property to Guarantor in payment of or as security for the payment of all or any part of the Subordinated Debt, (iii) execute or deliver any instrument as evidence of all or any part of the Subordinated Debt, or (iv) establish any sinking fund, reserve, or like set aside of funds or other property for the redemption, retirement or repayment of all or any part of the Subordinated Debt; and

(c)     Without the prior written consent of Lenders, Guarantor shall not file any petition against Borrower under any chapter or provision of any present or future federal bankruptcy legislation, or amendments to such legislation, or any complaint, petition or other pleading against Borrower calling for its reorganization, liquidation, composition or receivership, or for other similar relief under federal or state law.

11.2    Upon any distribution of assets of Borrower upon any dissolution, winding up, liquidation or reorganization of Borrower, whether in bankruptcy, insolvency, reorganization or receivership proceedings, or upon an assignment for the benefit of creditors or any other marshaling of the assets and liabilities of Borrower, or otherwise:

(a)     Lenders shall be entitled to receive payment in full of the Obligations before Guarantor is entitled to receive any payment on account of the Subordinated Debt; and

(b)     any payment by, or distribution of assets of, Borrower of any kind or character, whether in cash, property or securities, to which Guarantor would be entitled except for this subordination shall be paid or delivered by the Person making such payment or distribution, whether a trustee in bankruptcy, a receiver or liquidating trustee, or otherwise, directly to Administrative Agent for the benefit of Lenders to be held as additional security for the Obligations in an interest bearing account until all of the Obligations have been paid in full.

11.3    Should Guarantor receive any payment or distribution of any kind in conflict with this Section 11, Guarantor shall hold such funds or property as trustee for Lenders, and shall pay or transfer to Administrative Agent for the benefit of Lenders all such funds or property promptly upon receipt on account of the Indebtedness, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty; provided, however, nothing herein shall limit Guarantor's right to receive distributions so long as no Event of Default has occurred and is continuing.

11.4    Guarantor authorizes and directs Borrower to take all necessary or appropriate action to effectuate and maintain the subordination provided in this Guaranty.

11.5    No right of Lenders to enforce the subordination in this Guaranty shall at any time or in any way be prejudiced or impaired by any act or failure to act by Borrower, Lenders or any other Person or by any noncompliance by the Borrower, Lenders or any other Person with the terms, provisions and covenants of this Guaranty or of the Loan Documents regardless of any knowledge of such acts, failures to act, or non-compliance that Lenders may have or be otherwise charged with.

11.6    Nothing express or implied in this Section 11 shall give any Person other than Borrower, Lenders and Guarantor any benefit or any legal or equitable right, remedy or claim under this Section 11.

11.7    If Guarantor institutes or participates in any suit, action or proceeding against Borrower in violation of the terms of Guarantor's subordination Borrower may interpose as a defense or dilatory plea this subordination, and Lenders are irrevocably authorized to intervene and to interpose such defense or plea in its name or in Borrower's name.

7

FF\12511580.4

12. <u>Representations and Warranties</u>. Guarantor represents and warrants to Lenders that:

12.1    <u>Authority of Guarantor</u>. Guarantor has all requisite power and authority to conduct its business, manage its affairs, and to own and lease its properties.

12.2    <u>Execution, Delivery and Performance of Guaranty</u>. Guarantor has all requisite power and authority to execute and deliver this Guaranty, and perform all Obligations. The execution and delivery of this Guaranty, and performance by Guarantor of all Obligations have been duly authorized by all necessary action and do not and will not:

(a)    result in or require the creation or imposition of any lien, right of others, or other encumbrance of any nature (other than under this Guaranty and any related security documents) upon any property now or in the future owned or leased by Guarantor;

(b)    violate any provision of any law, regulation, judgment, decree or award having applicability to Guarantor;

(c)    result in a breach of, constitute a default under, or cause or permit the acceleration of any obligation owed under, any indenture, loan agreement, lease, or any other agreement or instrument, to which Guarantor is a party or by which Guarantor or any of its property is bound or affected; or

(d)    require any consent or approval not already obtained of any person having any interest in Guarantor.

12.3    <u>Enforceability</u>. This Guaranty, when executed and delivered, shall constitute the valid and binding obligation of Guarantor, enforceable in accordance with its terms.

12.4    <u>Financial and Other Information</u>. All Guarantor's financial information furnished to Administrative Agent for the benefit of Lenders in connection with the Loan Documents: (a) is complete and fairly represents Guarantor's financial condition; and (b) accurately presents the financial condition of Guarantor. All other reports, papers, data and information furnished to Administrative Agent for the benefit of Lenders by and regarding Guarantor in connection with the Loan Documents are accurate and correct in all material respects and complete insofar as completeness is necessary to give Lenders a true and accurate knowledge of their subject matter. Without limiting the generality of the foregoing, there has been no material adverse change in the condition, financial or otherwise, of Guarantor since the date of the financial statements and other reports, papers, data and information furnished to Administrative Agent for the benefit of Lenders. Within ninety (90) days of Guarantor's fiscal year end, Guarantor shall deliver to Administrative Agent for the benefit of Lenders financial statements of Guarantor, including a balance sheet, and an income statement certified to be true and accurate as of the date thereof by Guarantor and a copy of Guarantor's most recently filed tax returns (subject to any filed extensions).

12.5    <u>Tax Liability</u>. Guarantor has filed all required tax returns (federal, state and local) and has paid all taxes shown on them to be due and all property taxes due, including interest and penalties, if any. The charges, accruals and reserves on the books of Guarantor for taxes or other governmental charges are adequate.

FF\12511580.4

12.6    Compliance with Laws. Guarantor has substantially complied in all material respects with all laws, regulations and requirements applicable to his business and has obtained all authorizations, consents, approvals, orders, licenses, exemptions from, and has accomplished all filings or registrations or qualifications with, any court or governmental department, public body, authority, commission, board, bureau, agency or instrumentality, that may be necessary for the transaction of its business.

12.7    Compliance With Agreements. Guarantor has complied in all material respects with all indentures, credit agreement, leases and all other agreements and instruments to which Guarantor is a party or by which Guarantor or any of its property is bound or affected.

12.8    Litigation. To Guarantor's actual knowledge, there are no material actions, suits or proceedings pending or threatened (in writing) against or affecting Guarantor or any property of Guarantor before any court or governmental department, public body or authority.

12.9    No Default. No Event of Default with respect to the Loan Documents, or condition, event, act or omission which, with the giving of notice or the passage of time, or both, would be an Event of Default, has occurred and is continuing.

13.    Borrower. As used in this Guaranty, "Borrower" shall include any successor to Borrower with respect to the Loan and any estate created by the commencement of a case under the Bankruptcy Code or any other insolvency, bankruptcy, reorganization or liquidation proceeding, or by any trustee under the Bankruptcy Code, liquidator, sequestrator or receiver of Borrower or Borrower's property or similar person duly appointed pursuant to any law generally governing any insolvency, bankruptcy, reorganization, liquidation, receivership or like proceeding.

14.    Opportunity to Review. Guarantor acknowledges that it has had the opportunity to review the matters discussed and contemplated by the Loan Documents, including the remedies Lenders may pursue against Borrower in the event of a default under the Loan Documents, the value of the security or collateral for the Loan and Borrower's financial condition and ability to perform under the Loan. Guarantor further has had the opportunity to review this Guaranty with its counsel.

15.    Changes, Waivers, Revocations and Amendments in Writing. No terms or provisions of this Guaranty may be changed, waived, revoked or amended without lenders' prior written consent. No delay or failure of Lenders in exercising any right hereunder shall affect such right, nor shall any single or partial exercise of any right preclude any further exercise thereof. Should any provision of this Guaranty be determined by a court of competent jurisdiction to be unenforceable, all of the other provisions shall remain effective.

16.    Reasonableness and Effect of Waivers. Guarantor warrants and agrees that each of the waivers set forth in this Guaranty is made with full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any of such waivers is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the maximum extent permitted by law.

9

FF\12511580.4

17. <u>Cumulative Remedies; No Waiver</u>. The rights, powers and remedies of Lenders under this Guaranty are cumulative and not exclusive of any other right, power or remedy which Lenders would otherwise have. No failure or delay on the part of Lenders in exercising any such right, power or remedy may be, or may be deemed to be, a waiver thereof; nor may any single or partial exercise of any such right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy under this Guaranty or under the other Loan Documents.

18. <u>No Third Parties Benefited</u>. This Guaranty is made for the purpose of setting forth certain rights and obligations of Guarantor and Lenders, and no other person shall have any rights under or by reason of this Guaranty.

19. <u>Interpretation</u>. Whenever the context requires, all terms used herein in the singular shall be construed in the plural and vice versa, and each gender shall include each other gender. The term "Borrower" shall mean both the named Borrower and any other person at any time and from time to time assuming or otherwise becoming primarily liable on any or all Guaranteed Obligations. Section headings in this Guaranty are included for convenience of reference only and are not a part of this Guaranty for any other purpose.

20. <u>Effectiveness Independent of Other Guaranty(ies)</u>. This Guaranty shall be effective regardless of whether any other individual or entity executes a guaranty of any or all Guaranteed Obligations, and regardless of whether any other guaranty of any or all Guaranteed Obligations is ever released by Lenders or otherwise unenforceable for any reason.

21. <u>Assignment of Guaranty</u>. Each Lender may assign this Guaranty with one or more of the Loan Documents, without in any way affecting Guarantor's liability under it or them. This Guaranty shall inure to the benefit of each Lender and its successors and assigns, and shall bind Guarantor and such Guarantor's respective heirs, executors, administrators, successors and assigns.

22. <u>Consent to Jurisdiction; Waiver of Immunities</u>.

22.1   Guarantor irrevocably submits to the jurisdiction of any New York or federal court sitting in New York City in any action or proceeding arising out of or relating to this Guaranty, and Guarantor irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined in such New York or federal court. Guarantor irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding. Guarantor irrevocably appoints Cole Schotz, P.C., 1325 Avenue of the Americas, 19th Floor, New York, New York 10019 (the "Process Agent"), as their agent to receive on behalf of Guarantor service of copies of the summons and complaint and any other process that may be served in any such action or proceeding. Such service may be made by mailing or delivering a copy of such process to Guarantor in care of the Process Agent at the Process Agent's address above, and Guarantor irrevocably authorizes and directs the Process Agent to accept such service on its behalf. As an alternative method of service Guarantor also irrevocably consents to the service of any process in any such action or proceeding by the mailing of copies of such process to Guarantor at its address specified in Section 23.1. Guarantor agrees

10

that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

22.2    Nothing in this Section shall affect the right of Lenders to serve legal process in another manner permitted by law or affect the right of Lenders to bring any action or proceeding against Guarantor or its property in the courts of any other jurisdictions.

22.3    To the extent that Guarantor has or may later acquire any immunity from jurisdiction of any court or from any legal process (whether through service of notice, attachment prior to judgment, attachment in aid of execution, execution or otherwise) with respect to itself or its property, Guarantor irrevocably waives such immunity in respect of its obligations under this Guaranty.

23.    Miscellaneous.

23.1    Notices. Any notice, demand or request required under this Guaranty shall be given in writing at the addresses set forth below by personal service; email; overnight courier; or registered or certified, first class mail, return receipt requested.

If to Guarantor:

Alberto Smeke Saba
2008 East 3rd Street
Brooklyn, New York 11223
Email: AS@csc-coliving.com

Salomon Smeke Saba
4 Lady Bess Drive
Deal, New Jersey 07723
Email: SS@csc-coliving.com

With a copy to:

Cole Schotz P.C.
1325 Avenue of the Americas
19th Floor
New York, New York 10019
Attention:  Jordan Metzger, Esq.
Email: jmetzger@coleschotz.com

If to Administrative Agent or Lenders:

Parkview Financial REIT, LP
11601 Wilshire Boulevard, Suite 2100
Los Angeles, CA 90025
Attention: Paul S. Rahimian
Email: paul@parkviewfinancial.com

11

FF\12511580.4

Such addresses may be changed by notice to the other parties given in the same manner as required above. Any notice, demand or request shall be deemed received as follows: (i) if sent by personal service, at the time such personal service is effected; (ii) if sent by overnight courier, on the business day immediately following deposit with the overnight courier; and (iii) if sent by mail, 48 hours following deposit in the mail.

23.2    Governing Law. All questions with respect to the construction of this Guaranty and the rights and liabilities of the parties to this Guaranty shall be governed by the laws of the State of New York.

23.3    Binding on Successors. This Guaranty shall inure to the benefit of, and shall be binding upon, the successors and assigns of each of the parties to this Guaranty. Each Lender may assign this Guaranty with one or more of the Loan Documents, without in any way affecting Guarantor's liability under it or them.

23.4    Attorneys' Fees.

(a)    Guarantor shall reimburse Lenders for all reasonable out-of-pocket attorneys' fees, costs and expenses, incurred by Lenders in connection with the enforcement of Lenders' rights under this Guaranty and each of the other Loan Documents, including, without limitation, reasonable attorneys' fees, costs and expenses for trial, appellate proceedings, out-of-court negotiations, workouts and settlements or for enforcement of rights under any state of federal statute, including, without limitation, reasonable attorneys' fees, costs and expenses incurred to protect Lenders' security and attorneys' fees, costs and expenses incurred in bankruptcy and insolvency proceedings such as (but not limited to) seeking relief from stay in a bankruptcy proceeding. The term "expenses" means any expenses incurred by Administrative Agent and/or Lenders in connection with any of the out-of-court, or state, federal or bankruptcy proceedings referred to above, including, without limitation, the fees and expenses of any appraisers, consultants and expert witnesses retained or consulted by Lenders in connection with any such proceeding.

(b)    Each Lender shall also be entitled to its reasonable attorneys' fees, costs and expenses incurred in any post-judgment proceedings to collect and enforce the judgment. This provision is separate and several and shall survive the merger of this Guaranty into any judgment on this Guaranty.

23.5    Counterparts. This Guaranty may be executed in any number of original counterparts, each of which shall be deemed an original, but all of which when taken together shall constitute one instrument. The original signature page of any counterpart may be detached from such counterpart and attached to any other counterpart identical to such counterpart (except having additional signature pages executed by other parties to this Guaranty) without impairing the legal effect of any such signature(s).

23.6    Entire Agreement. This Guaranty constitutes the entire agreement and understanding between the parties in respect of the subject matter of this Guaranty and supersedes all prior agreements and understandings with respect to such subject matter, whether oral or written.

12

23.7    Waivers. Waiver by any Lender of any term, covenant or condition under this Guaranty or the Loan Documents, or of any default by Guarantor under this Guaranty or the Loan Documents, or any failure by any Lender to insist upon strict performance by Guarantor of any term, covenant or condition contained in this Guaranty or the Loan Documents, shall be effective or binding on such Lender only if made in writing by such Lender; no such wavier shall be implied from any omission by such Lender to take action with respect to any such term, covenant, condition or default. No express written waiver by any Lender of any term, covenant, condition or default shall affect any other term, covenant, condition or default or cover any other time period than the application of any such term, covenant or condition to the matter as to which a waiver has been given or the default or time period specified in such express waiver. This Guaranty may be amended only by an instrument in writing signed by the parties to this Guaranty.

23.8    Severability. If any part of this Guaranty is declared invalid for any reason, such shall not affect the validity of the rest of the Guaranty. The other parts of this Guaranty shall remain in effect as if this Guaranty had been executed without the invalid part. The parties declare that they intend and desire that the remaining parts of this Guaranty continue to be effective without any part or parts that have been declared invalid.

23.9    Joint and Several Liability. If more than one person has signed this Guaranty, it shall be the joint and several obligation of all such persons.

24.    Waiver of Trial by Jury. EACH OF LENDERS AND GUARANTOR WAIVES TRIAL BY JURY WITH RESPECT TO ANY ACTION, CLAIM, SUIT OR PROCEEDING IN RESPECT OF OR ARISING OUT OF THIS GUARANTY OR THE OTHER LOAN DOCUMENTS OR THE CONDUCT OF THE RELATIONSHIP BETWEEN LENDERS AND GUARANTOR. BOTH LENDERS AND GUARANTOR HAVE OBTAINED THE ADVICE OF THEIR RESPECTIVE LEGAL COUNSEL BEFORE SIGNING THIS GUARANTY AND ACKNOWLEDGE THAT THEY VOLUNTARILY AGREED TO THIS WAIVER OF THEIR RIGHT TO TRIAL BY JURY WITH FULL KNOWLEDGE OF ITS SIGNIFICANCE AND LEGAL CONSEQUENCE.

*[Remainder of page intentionally left blank;
signatures begin on following page]*

13

FF\12511580.4

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the date first above written.

GUARANTOR:

_____
Alberto Smeke Saba

_____
Salomon Smeke Saba

*Signature page to Guaranty of Completion*