# EXHIBIT G

<table>
<tr><td>

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

</td><td>



2022051301162007002E4AF1

</td></tr>
</table>

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 40 |
|---|---|---|
| **Document ID:** 2022051301162007 | Document Date: 05-04-2022 | Preparation Date: 06-13-2022 |

Document Type: MORTGAGE
Document Page Count: 38

| PRESENTER: | RETURN TO: |
|---|---|
| ROYAL ABSTRACT OF NEW YORK LLC (TITLE#915047) 125 PARK AVENUE, SUITE 1610 NEW YORK, NY 10017 212-376-0900 lrivera@ROYALABSTRACT.COM | ROYAL ABSTRACT OF NEW YORK LLC (TITLE#915047) 125 PARK AVENUE, SUITE 1610 NEW YORK, NY 10017 212-376-0900 lrivera@ROYALABSTRACT.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1048 | 1701 Entire Lot | 1 | 353 WEST 57TH STREET |

**Property Type:** COMMERCIAL CONDO UNIT(S)

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1048 | 1702 Entire Lot | 2 | 353 WEST 57TH STREET |

**Property Type:** COMMERCIAL CONDO UNIT(S)

☒ Additional Properties on Continuation Page

### CROSS REFERENCE DATA

CRFN_____  *or*  DocumentID_____  *or*  _____ Year_____ Reel____ Page_____  *or*  File Number_____

### PARTIES

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| HUDSON 1702, LLC C/O CSC CO-LIVING 6 ST. JOHNS LANE NEW YORK, NY 10013 | PARKVIEW FINANCIAL REIT, LP 11601 WILSHIRE BOULEVARD, SUITE 2100 LOS ANGELES, CA 90025 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 81,782,527.00 | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 81,782,587.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 408,913.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 920,054.25 | $ | 0.00 |
| Spec (Additional): | $ | 204,456.50 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 245,347.80 | | |
| NYCTA: | $ | 511,141.25 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 2,289,912.80 | | |
| Recording Fee: | $ | 233.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed          06-15-2022 16:38
City Register File No.(CRFN):
**2022000240500**

*City Register Official Signature*

| **NYC DEPARTMENT OF FINANCE**<br>**OFFICE OF THE CITY REGISTER** | <br>2022051301162007002C4871 |
|---|---|

| **RECORDING AND ENDORSEMENT COVER PAGE  (CONTINUATION)** | | **PAGE 2 OF 40** |
|---|---|---|
| **Document ID:** 2022051301162007 | Document Date: 05-04-2022 | Preparation Date: 06-13-2022 |
| **Document Type:** MORTGAGE | | |

**PROPERTY DATA**

| **Borough** | **Block Lot** | **Unit** | **Address** |
|---|---|---|---|
| MANHATTAN | 1048  1706 Entire Lot | | 353 WEST 57TH STREET |
| **Property Type:** OTHER | | | |

**PARTIES**

**MORTGAGOR/BORROWER:**
HUDSON 1701/1706, LLC
C/O CSC CO-LIVING 6 ST. JOHNS LANE
NEW YORK, NY 10013

===================================================================

## HUDSON 1702, LLC

**and**

## HUDSON 1701/1706, LLC

## TO

## PARKVIEW FINANCIAL REIT, LP,
### as Administrative Agent

===================================================================

## BUILDING LOAN LEASEHOLD MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING

Dated:          As of May 4, 2022

Location:       County of New York
                State of New York

Tax Map Designation:

| Street Address: | 353-361 West 57th Street a/k/a 356 West 58th Street, Condominium Units ##1, 2 and 6 |
|---|---|
|  | New York, New York |
| Section: |  |
| Block: | 1048 |
| Lots: | 1701, 1702, 1706 |

===================================================================

RECORD AND RETURN TO:

Parkview Financial REIT, LP
11601 Wilshire Boulevard, Suite 2100
Los Angeles, CA  90025
Attention:  Paul S. Rahimian

===================================================================

1

FF 12511410.4

## BUILDING LOAN LEASEHOLD MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING

THIS BUILDING LOAN MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING ("**Mortgage**") is made as of May 4, 2022 (the "**Effective Date**"), by HUDSON 1702, LLC and HUDSON 1701/1706, LLC, each a Delaware limited liability company having an office at c/o CSC CoLiving LLC, 6 St. Johns Lane, New York, New York 10013 (collective "**Mortgagor**") to PARKVIEW FINANCIAL REIT, LP, a Delaware limited partnership having an office at 11601 Wilshire Boulevard, Suite 2100, Los Angeles, California 90025, as Administrative Agent for Holders as hereafter defined ("**Mortgagee**").

## W I T N E S S E T H:

A.    Mortgagor is the owner of the leasehold estate in that certain piece or parcel of land located at and known as Units 1, 2 and 6 in the 353 West 57th Street Condominium, as more particularly described in Exhibit A attached hereto and by this reference made a part hereof (the "**Premises**"), which leasehold estate was demised pursuant to the Ground Lease described in Exhibit B attached hereto (as it may be amended, restated, renewed, modified or supplemented from time to time, in each case with the written approval of Mortgagee, the "**Ground Lease**");

B.    This Mortgage is given to secure a loan (the "**Loan**") in the maximum principal sum of **EIGHTY-ONE MILLION SEVEN HUNDRED EIGHTY-TWO THOUSAND FIVE HUNDRED TWENTY-SEVEN and 00/100 Dollars ($81,782,527.00)**, or so much thereof as may be advanced pursuant to that certain Building Loan Agreement dated as of the date hereof, by and between Mortgagor and Mortgagee (as the same may be extended, amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**");

C.    The Loan is evidenced by that certain Building Loan Mortgage Note, dated as of the date hereof, in the maximum principal amount of **EIGHTY-ONE MILLION SEVEN HUNDRED EIGHTY-TWO THOUSAND FIVE HUNDRED TWENTY-SEVEN and 00/100 Dollars ($81,782,527.00)**, made by Mortgagor in favor of Parkview Financial REIT, LP, as a lender ("**Holder**") (as the same may be amended, supplemented, restated, replaced (whether by one or more replacement notes), extended or otherwise modified from time to time, the "**Note**");

D.    This Mortgage is given pursuant to the Loan Agreement, and payment, fulfillment, and performance by Mortgagor of its obligations thereunder and under the Note and all other documents and agreements executed and delivered and evidencing and/or securing the Loan are secured hereby;

E.    Mortgagor and Mortgagee intend these Recitals to be a material part of this Mortgage; and

F.    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Loan Agreement.

2

FF 12511410.4

NOW THEREFORE, in consideration of the making of the Loan by Mortgagee and the covenants, agreements, representations and warranties set forth in this Mortgage:

## ARTICLE I
## GRANTS AND OBLIGATIONS SECURED

1.1    Mortgage of Property.

NOW THEREFORE, to secure the payment of an indebtedness in the principal sum of **EIGHTY-ONE MILLION SEVEN HUNDRED EIGHTY-TWO THOUSAND FIVE HUNDRED TWENTY-SEVEN and 00/100 Dollars ($81,782,527.00)**, lawful money of the United States of America, to be paid with interest (said indebtedness, interest and all other sums which may or shall become due hereunder, collectively, the "**Debt**") according to the Note, or so much thereof as may be advanced pursuant to the Loan Agreement, the Mortgagor has mortgaged, given, granted, bargained, sold, aliened, enfeoffed, conveyed, confirmed and assigned, and by these presents does mortgage, give, grant, bargain, sell, alien, enfeoff, convey, confirm and assign unto the Mortgagee forever all right, title and interest of the Mortgagor now owned, or hereafter acquired, in and to the following property, rights and interest (such property, rights and interests, being collectively, the "**Property**" and, unless otherwise provided, the term "Property" shall include all or any portion thereof or any interest therein):

(a)    the Premises;

(b)    all improvements now or hereafter located on the Premises (the "**Improvements**");

(c)    the Ground Lease and the leasehold estate created thereunder and all other interests acquired pursuant thereto;

(d)    all modifications, extensions and renewals of the Ground Lease and all credits, deposits, options, purchase options, privileges and rights of the Mortgagor under the Ground Lease, including, but not limited to, the right, if any, to renew or extend the Ground Lease for a succeeding term or terms or to acquire fee title to or other interest in all or any portion of the Premises or the Improvements;

(e)    all of the Mortgagor's rights and remedies at any time arising under or pursuant to Section 365(h) of the Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "**Bankruptcy Code**"), including, without limitation, all of the Mortgagor's right thereunder to remain in possession of the Premises and the Improvements;

(f)    all of the estate, right, title, claim or demand of any nature whatsoever of the Mortgagor, either in law or in equity, in possession or expectancy, in and to the Property or any part thereof;

(g)    all easements, rights-of-way, gores of land, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments, and appurtenances of any nature

3

FF\12511410.4

whatsoever, in any way belonging, relating or pertaining to the Property (including, without limitation, any and all development rights, air rights or similar or comparable rights of any nature whatsoever now or hereafter appurtenant to the Premises or now or hereafter transferred to the Premises) and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Premises to the center line thereof;

(h)    all machinery, apparatus, equipment, fittings, fixtures and other property of every kind and nature whatsoever and all additions thereto and renewals and replacements thereof, and all substitutions therefor now owned or hereafter acquired by the Mortgagor, or in which the Mortgagor has or shall have an interest, now or hereafter located upon or in, or attached to, the Property or appurtenances thereto, or located off-site the Property but purchased with the proceeds of the Debt, and used or usable in connection with the present or future operation and occupancy of the Property and all building equipment, materials and supplies of any nature whatsoever owned by the Mortgagor, or in which the Mortgagor has or shall have an interest, now or hereafter located upon the Property and whether stored at the Property or off-site (collectively, the "**Equipment**"), and the right, title and interest of the Mortgagor in and to any of the Equipment which may be subject to any security agreements (as defined in the Uniform Commercial Code of the State of New York (the "**UCC**"), superior in lien to the lien of this Mortgage and all proceeds and products of any of the above;

(i)    all awards or payments, including interest thereon, and the right to receive the same, which may be made with respect to the Property, whether from the exercise of the right of eminent domain (including any transfer made in lieu of the exercise of said right), or for any other injury to or decrease in the value of the Property;

(j)    all leases (other than the Ground Lease) and other agreements affecting the use or occupancy of the Property now or hereafter entered into (the "**Leases**") and the right to receive and apply the rents, issues and profits of the Property (the "**Rents**") to the payment of the Debt;

(k)    all right, title and interest of the Mortgagor in and to (i) all contracts from time to time executed by the Mortgagor or any manager or agent on its behalf relating to the ownership, construction, maintenance, repair, operation, occupancy, sale or financing of the Property and all agreements relating to the purchase or lease of the Property (including, without limitation, any condominium units to be created), together with the right to exercise such options and all leases of Equipment, (ii) all consents, licenses, building permits, certificates of occupancy and other governmental approvals relating to construction, completion, occupancy, use or operation of the Property, and (iii) all drawings, plans, specifications and similar or related items relating to the Property;

(l)    all general intangibles relating to design, development, operation, management and use of the Premises and construction of the Improvements, including, without limitation, (i) all names under which or by which the Premises may at any time be operated or known, all rights to carry on business under any such names or any variant of such names, and all goodwill in any way relating to the Premises, (ii) all permits, licenses, authorizations, variances, land use entitlements, approvals and consents issued or obtained in connection with the construction of the Improvements or the use, occupancy or operation of the Premises, (iii) all

4

FF\12511410.4

rights as a declarant (or its equivalent) under any covenants, conditions and restrictions or other matters of record affecting the Premises, (iv) all materials prepared for filing or filed with any governmental agency, (v) all trademarks and (vi) all rights under any contract entered into in with contractors, architects, designers, engineers, consultants, managers, brokers and similar persons in connection with the development, design, use, operation, management and construction of the Premises;

(m)    all architectural drawings, plans, specifications, soil tests and reports, feasibility studies, appraisals, engineering reports, financial analyses and reports and similar materials relating to the Premises and the Improvements;

(n)    all payment and performance bonds or guarantees relating to the Premises and the Improvements;

(o)    all reserves, deferred payments, deposits, refunds (including, without limitation, tax and insurance refunds), costs savings and payments of any kind relating to the construction, design, development, operation, occupancy, use and disposition of the Premises;

(p)    all deposit accounts or related rights to receive payment from depositories or institutions into which Mortgagor deposits (i) the Rents, (ii) any other income derived from the Property, (iii) any security deposits or other monies paid to Mortgagor or Mortgagor's property manager whether pursuant to the terms of a Lease or otherwise or, (iv) any proceeds of the Loan made pursuant to the Loan Agreement, (v) any Mortgagor's Funds, as that term is defined in the Loan Agreement, the (vi) Mortgagor's Funds Account, as that term is defined in the Loan Agreement, and (vii) any other amounts described in this Section 1.1 or 1.2;

(q)    all proceeds, both cash and non-cash, of the foregoing;

(r)    all refunds of real estate tax payments and all proceeds of and any unearned premiums on any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property; and

(s)    the right, in the name and on behalf of the Mortgagor, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of the Mortgagee in the Property.

TO HAVE AND TO HOLD the above granted and described Property unto and to the proper use and benefit of the Mortgagee, and the successors and assigns of the Mortgagee, forever.

1.2    Personal Property.    This Mortgage constitutes both a real property mortgage and a "security agreement," within the meaning of the UCC, and the Property includes both real and personal property and all other rights and interest, whether tangible or intangible in nature, of the Mortgagor in the Property. The Mortgagor, by executing and delivering this Mortgage, has granted to the Mortgagee, as security for the Debt, a security interest in the Equipment. If an Event of Default shall occur and be continuing, the Mortgagee, in addition to any other rights and remedies which it may have, shall have, and may exercise immediately and

5

FF\12511410.4

without demand, any and all rights and remedies granted to a secured party upon default under the UCC, including, without limiting the generality of the foregoing, the right to take possession of the Equipment or any part thereof, and to take such other measures as the Mortgagee may deem necessary for the care, protection and preservation of the Equipment. Upon request or demand of the Mortgagee after the occurrence and during the continuance an Event of Default, the Mortgagor shall at its expense assemble the Equipment and make it available to the Mortgagee at a convenient place acceptable to the Mortgagee. The Mortgagor shall pay to the Mortgagee on demand any and all actual out of pocket expenses, including reasonable legal expenses and reasonable attorneys' fees, incurred or paid by the Mortgagee in protecting its interest in the Equipment and in enforcing its rights hereunder with respect to the Equipment. Any notice of disposition by the Mortgagee with respect to the Equipment sent to the Mortgagor in accordance with the provisions of this Mortgage and the UCC at least ten (10) days prior to the date of any such disposition shall constitute reasonable notice. The proceeds of any disposition of the Equipment, or any part thereof, may be applied by the Mortgagee to the payment of the Debt in such order, priority and proportions as the Mortgagee, in its discretion, shall deem proper. If any change shall occur in the Mortgagor's name, the Mortgagor hereby authorizes the Mortgagee to file, at the Mortgagor's own expense, an amendment to the financing statements as required under the UCC.

1.3 <u>Fixture Filing</u>. The Property in which Mortgagee has a security interest includes goods which are or shall become fixtures on the Premises or Improvements. This Mortgage is intended to serve as a fixture filing pursuant to the terms of Section 9-502(c) of the UCC. This filing shall remain in effect as a fixture filing until this Mortgage is released or satisfied of record or its effectiveness otherwise terminates as to the Property. In that regard, the following information is provided:

Name of Debtors: Hudson 1702, LLC and Hudson 1701/1706, LLC
Address of Debtors: See Section 5.5 below.
Name of Secured Party: Parkview Financial REIT, LP, as Administrative Agent
Address of Secured Party: See Section 5.5 below.

1.4 <u>Obligations Secured</u>. The grants, transfers, assignments and security interests made in Section 1.1 and 1.2 are for the purpose of securing, in such order of priority as Mortgagee may determine:

(a) the payment of all amounts owing under the Note, and any renewals, extensions, substitutions or modifications of the Note;

(b) Payment and performance of all obligations of Mortgagor under the Loan Agreement and any and all other "Loan Documents" (as defined in the Loan Agreement);

(c) performance of and compliance with all of the terms and conditions of each agreement of Mortgagor contained in this Mortgage and any modifications or substitutions of this Mortgage;

6

FF 12511410.4

(d)    payment of all amounts advanced by Mortgagee pursuant to the terms of this Mortgage or any other Loan Document; the payment of such additional sums and the performance of all other obligations now or later owing from Mortgagor to Mortgagee, whether otherwise secured or not, payable to or otherwise acquired by Mortgagee, when the instrument evidencing such obligation recites that it is intended to be secured by this Mortgage; and

(e)    All modifications, extensions and renewals of any of the obligations secured hereby, however evidenced, including, without limitation: (i) modifications of the required principal payment dates or interest payment dates or both, as the case may be, deferring or accelerating payment dates wholly or partly; or (ii) modifications, extensions or renewals at a different rate of interest whether or not in the case of a note, the modification, extension or renewal is evidenced by a new or additional promissory note.

Notwithstanding anything to the contrary contained in this Mortgage, the maximum amount of the principal indebtedness secured by this Mortgage at execution or which under any contingency may become secured by this Mortgage is **EIGHTY-ONE MILLION SEVEN HUNDRED EIGHTY-TWO THOUSAND FIVE HUNDRED TWENTY-SEVEN and 00/100 Dollars ($81,782,527.00)**, plus all amounts expended by the Mortgagee after default by the Mortgagor, as set forth in Section 4.2 hereof.

## ARTICLE II
## MORTGAGOR'S COVENANTS

2.1    Condition of Property.    Mortgagor shall maintain and preserve the Property and the adjoining sidewalks and grounds in good condition and repair and in a prudent and businesslike manner, and shall not commit or permit any waste to or deterioration of the Property.    Mortgagor shall undertake all acts reasonably necessary to protect and preserve Mortgagee's security under this Mortgage.

2.2    Alteration of Improvements.    Mortgagor shall not remove, demolish or structurally alter any Improvement or permit or suffer the same to be done, except such alterations as may be required by laws, ordinances, rules, regulations or orders of governmental authorities or by the terms of any Loan Document.    Mortgagor shall complete promptly and in a good and workmanlike manner any Improvement which may be constructed on the Property and promptly restore in like manner any Improvement which may be damaged or destroyed by any cause whatsoever.    Notwithstanding anything contained herein to the contrary, Mortgagor shall be permitted to alter the Improvements in accordance with the work contemplated by the Building Loan Agreement.

2.3    Compliance with Laws.    Mortgagor shall comply with all laws, ordinances, rules, regulations and orders of any governmental authority affecting the Property, except as provided in Section 5.3 below.    Mortgagor shall not commit, suffer or permit any act to be done with respect to the Property in violation of any law or ordinance, or any covenant, condition or restriction affecting the Property.

7

FF 12511410 4

2.4    Liens. Except as provided below or as specifically provided otherwise in the Building Loan Agreement, Mortgagor shall not, without the prior written consent of Mortgagee, suffer any liens or encumbrances to attach to the Property, and shall promptly pay and promptly discharge, at Mortgagor's sole cost and expense, all liens and other encumbrances affecting the Property, except those items so consented to by Mortgagee or shown on Schedule B of the policy of title insurance of this date issued to Mortgagee in connection with this Mortgage and taxes and assessments not delinquent. The existence of any mechanic's, laborer's, materialman's, supplier's, vendor's or statutory lien or right to any such lien shall not constitute a violation of this Section if payment is not yet due under the contract, obligation, or statute which is the foundation of such lien or if Mortgagor is contesting in good faith the validity of any such lien or other encumbrance pursuant to Section 5.3 below.

2.5    Hazardous Materials.

(a)    Mortgagor (i) shall keep and maintain the Property in compliance with, and shall not cause or permit a violation of, any "Hazardous Materials Laws" (as defined in the Loan Agreement) on or about the Property, and (ii) shall not permit its tenants to engage in any activity on or about the Property in violation of any Hazardous Materials Law.

(b)    Mortgagor shall immediately advise Mortgagee in writing of (i) any enforcement, cleanup, removal or other governmental or regulatory actions threatened or instituted with respect to the Property pursuant to any Hazardous Materials Law; (ii) any claim made or threatened in writing by any third party against Mortgagor or the Property relating to damage, contribution, cost recovery, compensation, loss or injury resulting from the existence or threatened existence of any "Hazardous Materials" (as defined in the Loan Agreement) (the matters set forth in clauses (i) and (ii) above are referred to as "Hazardous Materials Claims"); and (iii) Mortgagor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Property that could cause the Property to be subject to any restrictions on the ownership, occupancy, transferability or use of the Property under any Hazardous Materials Laws.

(c)    Mortgagee shall have the right to join and participate in, as a party if it so elects, any legal proceedings or actions initiated in connection with any Hazardous Materials Claims if Mortgagee, in its reasonable judgment, believes such joinder or participation to be necessary to ensure the timely repayment of the obligations secured by this Mortgage, or to protect the security of this Mortgage or Mortgagee from incurring liability in connection with any Hazardous Materials Claim. Mortgagor shall pay Mortgagee's reasonable attorneys' fees incurred in connection with any such proceeding. Mortgagor shall be solely responsible for, and shall indemnify and hold harmless Mortgagee, its directors, officers, employees, agents, successors and assigns from and against, any loss, damage, cost, expense, claim or liability directly or indirectly arising out of or attributable to the use; generation; storage; release; threatened release, discharge; or disposal or presence of Hazardous Materials on or about the Property, including, without limitation: (i) all foreseeable consequential damages incurred by Mortgagee; (ii) the costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, remedial or other required plans; and (iii) all reasonable costs and expenses incurred by Mortgagee in connection with clauses (i) and (ii), including, without limitation, reasonable attorneys' fees.

8

FF 12511410.4

(d)     Mortgagor shall promptly undertake all necessary remedial work ("Remedial Work") in response to any Hazardous Materials Claims or the actual or threatened presence or release of any Hazardous Materials on or about the Property. All Remedial Work shall be conducted (i) in a diligent and timely fashion by licensed contractors acting under the supervision of a consulting environmental engineer; (ii) pursuant to a detailed written plan for the Remedial Work approved by each agency or person whose approval is legally required or who has a legal or contractual right to such approval; and (iii) only following receipt of any required permits, licenses or approvals. Mortgagor shall not undertake any Remedial Work or enter into any settlement agreement, consent decree, or other compromise in respect of any Hazardous Materials Claim without Mortgagee's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed. Notwithstanding the foregoing sentence, Mortgagee's prior written consent shall not be necessary if the presence of Hazardous Materials on or about the Property either poses an immediate threat to the health or safety of any person or is of such a nature that an immediate remedial response is necessary and it is not possible to obtain Mortgagee's consent before taking such action. In any such event, Mortgagor shall notify Mortgagee as soon as practicable of any action so taken. Mortgagor shall submit to Mortgagee, promptly upon receipt or preparation, copies of all reports, studies, analyses, correspondence, governmental comments or approvals, proposed removal or other Remedial Work contracts and similar information prepared or received by Mortgagor in connection with any Remedial Work or Hazardous Materials relating to the Property. Mortgagor shall pay Mortgagee's reasonable fees and costs incurred in connection with monitoring or review of the Remedial Work.

(e)     The obligations of Mortgagor and the rights of Mortgagee under this Section 2.5 are in addition to and not in substitution of the obligations of Mortgagor and the rights of Mortgagee under any applicable Hazardous Materials Law. Mortgagee's rights and Mortgagor's obligations under Section 2.5(c) above shall survive the repayment of the loan evidenced by the Note, the reconveyance of the lien of this Mortgage, foreclosure under this Mortgage and Mortgagee's acceptance of a deed in lieu of such foreclosure, except to the extent limited pursuant to Section 8 of the Environmental Indemnity (as defined in the Building Loan Agreement).

2.6     Indemnity and Reimbursement. Mortgagor shall defend (by attorneys and other professionals approved by Mortgagee, which approval shall not be unreasonably withheld, conditioned or delayed), indemnify and hold Mortgagee harmless from any loss, damage, cost, expense, claim or liability arising out of Mortgagee's interest under this Mortgage or in connection with the Property and shall appear in and defend any action or proceeding which purports to affect Mortgagee's interests relative to the loan evidenced by the Note. In addition, Mortgagor shall pay upon demand, after expenditure, all sums expended for expenses paid or incurred by Mortgagee pursuant to any of the terms of this Mortgage or in any action or proceeding in which Mortgagee may appear or be made a party, whether or not pursued to final judgment, and in any exercise of any of the rights or remedies granted to Mortgagee by this Mortgage or any of the Loan Documents, whether or not any such right or remedy is exercised to completion. Such expenses shall include, without limitation, court costs, expenses for evidence of title, appraisals, inspections and surveys and trustees' and reasonable attorneys' fees. All such amounts shall bear interest from the date of expenditure by Mortgagee or the date any such fees were incurred at the rate then in effect under the Note.

9

FF 12511410.4

2.7    Taxes and Impositions.

(a)    Mortgagor shall pay, prior to delinquency, all real and personal property taxes and assessments and all other taxes and assessments of any kind, including, without limitation, nongovernmental levies or assessments such as maintenance charges, owner association dues or charges and levies or charges resulting from covenants, conditions and restrictions affecting the Property, which are assessed or imposed upon the Property, or become due and payable, and which create or may create a lien upon any part of the Property (all such taxes, assessments and other charges are referred to in this Mortgage as "Impositions").

(b)    If at any time after the date of this Mortgage there shall be a license fee, tax or assessment imposed on Mortgagee and measured by or based in whole or in part upon the amount of the outstanding obligations secured by this Mortgage, then all such taxes, assessments or fees shall be deemed to be included within the term "Impositions" as defined in subsection (a) above, and Mortgagor shall pay and discharge such amounts upon Mortgagee's demand accompanied by a statement showing the calculation of the tax, assessment or fee. Anything to the contrary in this Mortgage notwithstanding, Mortgagor shall have no obligation to pay any franchise, estate, inheritance, income, excess profits or similar tax levied on Mortgagee.

(c)    Mortgagor shall furnish Mortgagee official receipts of the appropriate taxing authority, or other proof satisfactory to Mortgagee, evidencing payment of the Impositions at least ten (10) days before they become delinquent.

(d)    Upon Mortgagee's request, Mortgagor shall cause to be furnished to Mortgagee a tax reporting service covering the Property of a type, duration and with a company reasonably satisfactory to Mortgagee.

(e)    Mortgagee may require that Mortgagor deposit with Mortgagee, in monthly installments, an amount equal to one-twelfth of the estimated aggregate annual Impositions. In such event, Mortgagor shall cause all bills, statements or other documents relating to Impositions to be sent or mailed directly to Mortgagee. Upon receipt of such bills or statements, and providing Mortgagor has deposited sufficient funds with Mortgagee pursuant to this Section, Mortgagee shall pay such amounts as may be due under such bills or statements out of the funds so deposited with Mortgagee. If at any time and for any reason the funds deposited with Mortgagee are or will be insufficient to pay such amounts as may then or subsequently be due, Mortgagee shall notify Mortgagor and Mortgagor shall promptly deposit an amount equal to such deficiency with Mortgagee. Notwithstanding the foregoing, nothing in this Mortgage shall cause Mortgagee to be deemed a trustee of such funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Mortgagee pursuant to this Section. Mortgagee may commingle such reserve with its own funds and Mortgagor shall not be entitled to interest on any amounts so held.

2.8    Utilities. Mortgagor shall pay when due all utility charges which are incurred by Mortgagor for the benefit of the Property or which may become a lien against the Property, including, without limitation, all charges for gas, electricity, water or sewer services furnished to the Property and all other assessments or charges of a similar nature, whether public

10

FF 12511410 4

or private, affecting the Property, whether or not such taxes, assessments or charges are or may become a lien on the Property.

2.9     Loan Statement Fees. Mortgagor shall pay the amount demanded by Mortgagee or its authorized loan servicing agent (but in no case an amount greater than the maximum amount allowed by law) for any statement regarding the obligations secured by this Mortgage.

2.10     Books and Records. Except as otherwise expressly provided otherwise in the Loan Agreement, Mortgagor shall keep and maintain or cause to be kept and maintained at its place of business set forth in Section 5.5 below (or such other address in the County of New York of which Borrower has given notice pursuant to this Mortgage),, proper and accurate books, records and accounts reflecting all items of income and expense in connection with the operation of the Property, whether such income and expenses are realized by Mortgagor or by any other person or entity. Mortgagee or its designees shall have the right, from time to time upon reasonable notice during normal business hours, to examine such books, records and accounts at the office of Mortgagor or other person or entity maintaining such books, records and accounts and to make copies of any such books, records or accounts, and Mortgagor shall make its officers, personnel and independent accountants available to discuss the affairs, finances and accounts of Mortgagor with Mortgagee. Mortgagor shall promptly inform Mortgagee of any change in the location of Mortgagor's principal office or books and records or any change in Mortgagor's name.

2.11     Insurance. Mortgagor shall at all times provide, maintain, deliver to Mortgagee and keep in full force and effect:

(a)     policies of insurance insuring the Property against loss or damage by risks embraced in coverage of the type now known as the broad form of all-risk, extended coverage, in an amount not less than the full replacement cost of the Improvements (exclusive of the cost of excavations, foundations, and footings below the lowest basement floor); and with not more than $5,000 deductible from the loss payable for any casualty. The policies of insurance carried in accordance with this subsection (a) shall contain the "Replacement Cost Endorsement;"

(b)     commercial general liability insurance (including coverage for elevators and escalators, if any on the Property, and, if any construction of new Improvements occurs after the execution of this Mortgage, Construction Operations coverage and, products & completed operations coverage for 10 years or the applicable statute of repose after the construction of such Improvements has been completed, satisfactory to Lender) on an "occurrence basis" against claims for "personal injury," including, without limitation, bodily injury, death or property damage, occurring on, in or about the Property and the adjoining streets and sidewalks, or arising from or connected with the use, conduct or operation of Mortgagor's business or interest, in an amount of not less than $1,000,000 with respect to personal injury or death of one or more persons and with respect to damage to property. Mortgagee shall have the right from time to time to require an increase in the amount of coverage based on the standard practices in the industry and the risks involved in Mortgagor's business, operations or interest;

11

FF 12511410.4

(c)     business interruption insurance or loss of "rental value" insurance in an amount not less than one year's income from the Property or otherwise in an amount satisfactory to Mortgagee;

(d)     workers' compensation, employers' liability, commercial automobile liability, excess umbrella liability coverage and commercial general liability insurance;

(e)     Mortgagor shall cause each Subcontractor to maintain commercial general liability, commercial automobile liability, workers' compensation, employers' liability and excess umbrella liability coverage, in form and amount satisfactory to Lender;

(f)     insurance against damage by flood or similar occurrences in the event such insurance is available pursuant to the provisions of the Flood Disaster Protection Act of 1973 or other applicable legislation, such insurance to be in an amount equal to the lesser of one hundred percent of the insurable value of the Property or the maximum amount obtainable under such legislation; and

(g)     such other insurance against such risks or hazards, or other risks and hazards, and in such amounts, as may from time to time be reasonably required by Mortgagee, including, without limitation, policies insuring against earthquakes or other specified hazards affecting Mortgagee's security as may be required by governmental regulations, or as may be reasonably available for improvements similar to the Improvements located in the same locality as the Property.

All policies of insurance shall be with companies reasonably approved by Mortgagee, shall contain the Standard Non-Contributory Mortgagee Clause and the Standard Lenders' Loss Payable Clause, or their equivalents, in favor of Mortgagee, and shall provide that the proceeds thereof shall be payable to Mortgagee to the extent of its interest. In the event of the foreclosure of this Mortgage or other transfer of title to the Property in extinguishment, in whole or in part, of the indebtedness secured by this Mortgage, all right, title and interest of Mortgagor in and to any insurance policy then in force shall pass to the purchaser or grantee. Upon Mortgagee's demand, Mortgagor shall furnish Mortgagee with the original of each policy required to be obtained. Each insurance policy shall provide that it shall not be modified or canceled without 30 days' prior written notice to Mortgagee. Mortgagor shall furnish Mortgagee with receipts for the payment of premiums of such insurance policies or other evidence of such payment reasonably satisfactory to Mortgagee. If Mortgagor does not deliver to Mortgagee evidence of payment of the premium for each insurance policy required under this Mortgage at least 30 days prior to the expiration of any expiring policy, then Mortgagee may, but shall not be obligated to, procure such insurance and Mortgagor shall pay the premiums promptly upon demand. Mortgagee shall not by the fact of approving, disapproving, accepting, preventing the obtaining or failing to obtain any such insurance, incur any liability for the form or legal sufficiency of insurance contracts, solvency of insurers, or payment of losses, and Mortgagor assumes full responsibility for such matters and any resulting liability.

Upon the occurrence and during the continuance of an Event of Default or any event which with the giving of notice, the lapse of time, or both, would become an Event of

12

https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2022051301162007

Default, Mortgagee may require that Mortgagor deposit with Mortgagee, in monthly installments, an amount equal to one-twelfth of the estimated aggregate annual insurance premiums on all policies of insurance required by this Mortgage. In such event, Mortgagor shall cause all bills, statements or other documents relating to such insurance premiums to be sent or mailed directly to Mortgagee. Upon receipt of such bills or statements, and providing Mortgagor has deposited sufficient funds with Mortgagee pursuant to this Section, Mortgagee shall pay such amounts as may be due under such bills or statements out of the funds so deposited with Mortgagee. If at any time and for any reason the funds deposited with Mortgagee are or will be insufficient to pay such amounts as may then or subsequently be due, Mortgagee shall notify Mortgagor and Mortgagor shall promptly deposit an amount equal to such deficiency with Mortgagee. Notwithstanding the foregoing, nothing contained in this Mortgage shall cause Mortgagee to be deemed a trustee of such funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Mortgagee pursuant to this Section. Mortgagee may commingle such reserve with its own funds and Mortgagor shall not be entitled to interest on any amounts so held. In no event shall the provisions of Section 254 of the Real Property Law of the State of New York with respect to the application of insurance proceeds apply to this Mortgage.

2.12    Casualties; Insurance Proceeds. Mortgagor shall give prompt written notice to Mortgagee of any casualty to the Property resulting in damage in an amount greater than $100,000, whether or not such casualty is covered by insurance. In the event of such casualty, all proceeds of insurance shall be payable to Mortgagee and Mortgagor authorizes and empowers Mortgagee, at Mortgagee's option and in Mortgagee's reasonable discretion as attorney-in-fact for Mortgagor, to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct from such proceeds Mortgagee's expenses incurred in their collection. In the event of any damage to or destruction of the Improvements, so long as no Event of Default has occurred and is continuing or no event has occurred and is continuing which, with the passage of time or the giving of notice, or both, would become an Event of Default, Mortgagee shall hold the balance of such proceeds to be used to reimburse Mortgagor for the costs of reconstruction of the Improvements if all of the following conditions are satisfied within 60 days from the date of the damage or destruction:

(a)    Mortgagor satisfies Mortgagee that after the reconstruction is completed, the loan to value of the Loan to the Property as reasonably determined by Mortgagee, will be equal to or less than the loan to value ratio of the aggregate of the Loan and the loan in the principal sum of up to $125,217,473.00 made by Holder to Mortgagor contemporaneously herewith to the Property on the date of this Mortgage, provided that in order to satisfy the requirements set forth in this clause (a), Mortgagee, may at its sole election, prepay such portion of the Loan to the extent necessary to satisfy the requirements set forth in this clause (a);

(b)    In Mortgagee's reasonable judgment, such insurance proceeds are sufficient to pay all costs of reconstruction of the Improvements, including make the payments required under the Note; or if such proceeds are not sufficient, Mortgagor deposits additional funds into the Mortgagor's Funds Account sufficient to pay such additional costs of reconstructing the Improvements;

13

FF 12511410.4

(c)     Mortgagor has delivered to Mortgagee a construction contract for the work of reconstruction in form and content reasonably satisfactory to Mortgagee with a contractor reasonably satisfactory to Mortgagee; and

(d)     Mortgagee in its reasonable discretion has determined that Construction of the Improvements will still be completed on or before the "Completion Date", as that term is defined in the Loan Agreement.

Upon Mortgagor's satisfaction of the conditions to disbursement of the insurance proceeds, Mortgagor shall promptly and diligently restore the Improvements to the equivalent of their condition immediately prior to the casualty or to such other improved condition as is necessary to comply with the requirements of this Mortgage or any applicable governmental entity. Disbursements of such insurance proceeds shall be in accordance with the disbursement procedures set forth in the Loan Agreement.   Any proceeds held by Mortgagee upon Mortgagor's failure to satisfy the conditions to disbursement within the time allowed above or those proceeds not required to reconstruct the Improvements, shall be applied to the obligations outstanding under the Note.  If after applying the insurance proceeds to the payment of the sums secured by this Mortgage, Mortgagee reasonably determines the remaining security to be inadequate to secure the remaining indebtedness, Mortgagor shall, upon written demand from Mortgagee, prepay such an amount of the loan evidenced by the Note as will reduce the principal amount outstanding under the Note to an amount for which Mortgagee's security is adequate in light of Mortgagee's underwriting standards in making the loan evidenced by the Note.

2.13    Condemnation and Other Awards.  Mortgagor shall give prompt notice to Mortgagee of the institution or, to the extent Mortgagor becomes aware, threatened institution of any condemnation proceeding affecting the Property.  Mortgagor shall undertake such acts as shall be reasonably necessary to protect its rights in any such proceeding and shall cause any awards or settlements to be paid over to Mortgagee.  Mortgagor may be the nominal party in such proceeding but Mortgagee shall be entitled to participate in and to control such proceeding and to be represented by counsel of its choice, and Mortgagor shall deliver, or cause to be delivered, to Mortgagee such instruments as may be requested by it from time to time to permit such participation.  If any part of the Property is taken or diminished in value, or if a consent settlement is entered, by or under threat of such proceeding, Mortgagor assigns to Mortgagee any award or settlement payable to Mortgagor by virtue of its interest in the Property to be held by Mortgagee, in trust, subject to the lien and security interest of this Mortgage.  Any such award or settlement shall be first applied to reimburse Mortgagee for all costs and expenses, including reasonable attorneys' fees, incurred in connection with the collection of such award or settlement.   Mortgagee shall disburse or apply, as applicable, the balance of the award or settlement upon the satisfaction of, or the failure to satisfy, the same conditions to the disbursement of insurance proceeds set forth in Section 2.12 above within 60 days after the payment of the award or settlement. If after applying the proceeds of any award or settlement to the payment of the sums secured by this Mortgage, Mortgagee reasonably determines the remaining security to be inadequate to secure the remaining indebtedness, Mortgagor shall, upon written demand from Mortgagee, prepay such an amount of the loan evidenced by the Note as will reduce the principal amount outstanding under the Note to an amount for which Mortgagee's security is adequate in light of Mortgagee's underwriting standards in making the loan evidenced by the Note.

14

FF 12511410 4

2.14 <u>Transfer</u>. Mortgagor agrees that if any Transfer other than a Permitted Transfer (each as defined in the Loan Agreement) occurs without the prior written consent of Mortgagee, Mortgagee shall have the right at its option, without prior demand or notice, to declare all sums secured by this Mortgage immediately due and payable. Mortgagee's consent to one such transaction shall not be deemed to be a waiver of the right to require consent to future or successive transactions.

2.15 <u>Lien Subrogation</u>. As further security, Mortgagee shall be subrogated to all liens superior to this Mortgage, whether or not released of record, to the extent paid out of the proceeds of the loan secured by this Mortgage.

2.16 <u>Tests and Studies</u>.

(a) Mortgagor agrees to permit Mortgagee and any prospective bidder at any foreclosure sale and their respective agents and contractors to enter upon the Property for the purpose of conducting such tests, inspections, studies, surveys and other information gathering activities (collectively, the "Tests and Studies") with respect to the Property as any of them may reasonably deem necessary or appropriate, including, without limitation, Tests and Studies with respect to the structural integrity of the Improvements, the presence of Hazardous Materials in or around the Property, the occurrence of any violation of any Hazardous Material Law in or around the Property and the status of leasing and occupancy of the Improvements. Except in case of an emergency, or when Mortgagor or any tenant has abandoned the Property, or if it is impracticable to do so, Mortgagee shall give Mortgagor reasonable advance notice of Mortgagee's intent to enter the Property and enter the Property only during normal business hours. Mortgagor agrees to fully cooperate with such parties in their efforts to conduct the Tests and Studies, and further agrees to make available such portions of the Property as any of them may designate. If Mortgagee or any such person is refused the right of entry and inspection by Mortgagor or any tenant of the Property, or is otherwise unable to enter and conduct Tests and Studies on the Property without a breach of peace, Mortgagee may obtain an order from a court of competent jurisdiction, the appointment of a receiver, or both, to enable Mortgagee or such other persons to exercise the rights under this Section.

(b) Mortgagor authorizes Mortgagee to make available to any party (including, without limitation, any governmental authority and any prospective bidder at any foreclosure sale of the Property), all information which Mortgagee may have with respect to the Property, whether provided by Mortgagor or any third party or obtained as a result of Tests and Studies, including, without limitation, environmental reports, surveys and engineering reports. Mortgagor consents to Mortgagee's notifying any party (either as part of a notice of sale or otherwise) of the availability of any of the Tests and Studies and the information contained in them. Mortgagor acknowledges that Mortgagee cannot control or otherwise assure the truthfulness or accuracy of the Tests and Studies, and that the release of Tests and Studies, or any information contained in them, to prospective bidders at any foreclosure sale of the Property may have a material and adverse effect upon the amount which a party may bid at such sale. Mortgagor agrees that Mortgagee shall have no liability as a result of delivering any of the Tests and Studies or any information contained in them to any third party, and Mortgagor releases Mortgagee from all claims, damages or causes of action arising out of or incidental to the Tests and Studies or their delivery.

15

FF 12511410.4

(c)    All costs and expenses incurred by Mortgagee pursuant to this Section, including, without limitation, costs of consultants and contractors, costs of repair of any physical injury to the Property customarily incurred during the conduct of the Tests and Studies, court costs and attorneys' fees, whether incurred in litigation or not and whether before or after judgment, shall be payable by Mortgagor and, to the extent advanced or incurred by Mortgagee, shall be reimbursed to Mortgagee by Mortgagor upon demand. All costs and expenses incurred or advanced by Mortgagee pursuant to this Section, together with interest at the rate then applicable under the Note, shall be secured by this Mortgage and shall enjoy the same priority as the original principal amount of the Note.

Section 2.17    The Ground Lease.

(a)(i)    Mortgagor shall: (i) pay all rents, additional rents and other sums required to be paid by Mortgagor as lessee under and pursuant to the provisions of the Ground Lease, (ii) diligently perform and observe all of the terms, covenants and conditions of the Ground Lease on the part of Mortgagor, as lessee thereunder, to be performed and observed, unless such performance or observance shall be waived or not required in writing by the lessor under the Ground Lease, to the end that all things shall be done which are necessary to keep unimpaired the rights of Mortgagor, as lessee, under the Ground Lease, (iii) promptly notify Mortgagee in writing of any default by Mortgagor or lessor under the Ground Lease in the performance or observance of any of the terms, covenants or conditions on the part of, respectively, Mortgagor or lessor to be performed or observed under the Ground Lease, (iv) promptly notify Mortgagee of the giving of any notice by the lessor under the Ground Lease to Mortgagor (other than notices customarily sent on a regular basis) and of any notice noting or claiming any default by Mortgagor in the performance or observance of any of the terms, covenants or conditions of the Ground Lease on the part of Mortgagor, as lessee thereunder, to be performed or observed and deliver to Mortgagee a true copy of each such notice, (v) promptly notify Mortgagee in writing of any request made by either party to the Ground Lease for arbitration proceedings pursuant to the Ground Lease and of the institution of any arbitration proceedings, as well as of all proceedings thereunder, and promptly deliver to Mortgagee a copy of the determination of the arbitrators in each such arbitration proceeding, it being acknowledged and agreed that Mortgagee shall have the right to participate in such arbitration proceedings in association with Mortgagor or on its own behalf as an interested party, (vi) furnish to Mortgagee, within ten (10) days after demand, proof of payment of all items which are required to be paid by Mortgagor pursuant to the Ground Lease, and (vii) not consent to the subordination of the Ground Lease to any mortgage of the fee interest of the lessor under the Ground Lease in the Property except such as agreed to by Mortgagee.

(ii)    Mortgagor, shall not, without the prior written consent of Mortgagee, surrender the leasehold estate created by the Ground Lease or terminate or cancel the Ground Lease or modify, change, supplement, alter or amend the Ground Lease, in any respect, either orally or in writing, and Mortgagor hereby assigns to Mortgagee, as further security for the payment of the Debt and for the performance and observance of the terms, covenants and conditions of this Mortgage, all of the rights, privileges and prerogatives of Mortgagor, as lessee under the Ground Lease, to surrender the leasehold estate created by the Ground Lease or to terminate, cancel, modify, change, supplement, alter or amend the Ground Lease, and any such surrender of the leasehold estate created by the Ground Lease or termination, cancellation,

16

FF 12511410.4

modification, change, supplement, alteration or amendment of the Ground Lease without the prior written consent of Mortgagee shall be void and of no force and effect.

(iii)    Supplementing the provisions of subparagraph (a)(ii) above, it is understood and agreed that Mortgagor shall not, without Mortgagee's prior written consent, elect to treat the Ground Lease as terminated under Section 365(h)(1) of the Bankruptcy Code.  Any such election made without Mortgagee's prior written consent shall be void. Mortgagor hereby unconditionally assigns, transfers and sets over to Mortgagee all of Mortgagor's claims and rights to the payment of damages arising under the Bankruptcy Code from any rejection by the lessor under the Ground Lease.  Mortgagee shall have the right to proceed in its own name or in the name of Mortgagor in respect of any claim, suit, action or proceeding relating to the rejection of the Ground Lease, including, without limitation, the right to file and prosecute, to the exclusion of Mortgagor, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of such lessor .under the Bankruptcy Code. This assignment constitutes a present, irrevocable and unconditional assignment of the foregoing claims, rights and remedies, and shall continue in effect until all of the indebtedness and obligations secured by the Mortgage shall have been satisfied and discharged in full.  Any amounts received by Mortgagee as damages arising out of the rejection of the Ground Lease as aforesaid shall be applied first to all costs and expenses of Mortgagee (including, without limitation, reasonable attorneys' fees) incurred in connection with the exercise of any of its rights or remedies under this Section 2.17 and then shall be applied against the Debt in such order, priority and proportion as Mortgagee shall determine.  If any action, motion or notice shall be commenced or filed in respect of Mortgagor, as lessee under the Ground Lease, or all or any portion of the Property in connection with any case under the Bankruptcy Code, Mortgagor shall give Mortgagee prompt written notice thereof and Mortgagee shall have the option, to the exclusion of Mortgagor, exercisable upon notice from Mortgagee to Mortgagor, to conduct and control any such litigation with counsel of Mortgagee's choice. Mortgagee may proceed in its own name or in the name of Mortgagor in connection with any such litigation, and Mortgagor agrees to execute any and all powers, authorizations, consents and other documents required by Mortgagee in connection therewith.  Mortgagor shall, upon demand, pay to Mortgagee all costs and expenses (including attorneys' fees) paid or incurred by Mortgagee in connection with the prosecution or conduct of any such proceedings.  Any such costs or expenses not paid by Mortgagor as aforesaid shall be secured by the lien of the Mortgage and shall be added to the Debt.  Mortgagor shall not commence any action, suit, proceeding or case, or file any application or make any motion, in respect of the Ground Lease in any such case under the Bankruptcy Code without the prior written consent of Mortgagee. Mortgagor shall, immediately after obtaining knowledge thereof, notify Mortgagee and its counsel, by telecopy to the numbers set forth in Article II below, of any filing by or against the lessor under the Ground Lease of a petition under the Bankruptcy Code.  Mortgagor shall thereafter forthwith give written notice of such filing to Mortgagee, setting forth the date of such filing, the court in which the petition was filed and the relief sought therein.  Mortgagor shall promptly deliver to Mortgagee, following receipt, any and all notices, summonses, pleadings, applications and other documents received by Mortgagor in connection with any such petition and any proceedings relating thereto.

(iv)    If Mortgagor shall default in the performance or observance of any term, covenant or condition of the Ground Lease on the part of Mortgagor, as lessee

17

FF 12511410.4

https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2022051301162007

thereunder, to be performed or observed, after any applicable notice and cure period, then, without limiting the generality of the other provisions of this Mortgage, and without waiving or releasing Mortgagor from any of its obligations hereunder, Mortgagee shall have the right, but shall be under no obligation, to pay any sums and to perform any act or take any action as may be appropriate to cause all of the terms, covenants and conditions of the Ground Lease on the part of Mortgagor, as lessee thereunder, to be performed or observed to be promptly performed or observed on behalf of Mortgagor, to the end that the rights of Mortgagor in, to and under the Ground Lease shall be kept unimpaired and free from default. If Mortgagee shall make any payment or perform any act or take action in accordance with the preceding sentence, Mortgagee will notify Mortgagor of the making of any such payment, the performance of any such act, or the taking of any such action. All sums so paid by Mortgagee and all costs and expenses incurred by Mortgagee in connection with the performance of any such act shall be paid by Mortgagor to Mortgagee upon demand with interest at the Default Rate from the date of the payment or incurrence thereof, and the same shall be deemed to be secured by this Mortgage and shall be a lien on the Property prior to any right, title to, interest in or claim upon the Property attaching subsequent to the lien of this Mortgage. In any such event, subject to the rights, if any, of lessees and other occupants under the Leases, Mortgagee and any person designated by Mortgagee shall have, and are hereby granted, the right to enter upon the Property at any time and from time to time for the purpose of taking any such action. If the lessor under the Ground Lease shall deliver to Mortgagee a copy of any notice of default sent by said lessor to Mortgagor, as lessee under the Ground Lease, such notice shall constitute full protection to Mortgagee for any action taken or omitted to be taken by Mortgagee, in good faith, in reliance thereon.

(v)     Mortgagor hereby irrevocably appoints Mortgagee its true and lawful attorney in fact in its name or otherwise to do any and all acts and to execute any and all documents which in the reasonable opinion of Mortgagee may be necessary or desirable to preserve any rights of Mortgagor in, to or under the Ground Lease, or any occupancy lease, license or concession, including, without limitation, the right (but not the obligation) to cure any defaults of Mortgagor as lessee under the Ground Lease, preserve any rights of Mortgagor whatsoever in respect of any part of the Property or to execute an extension or renewal of the Ground Lease as hereinafter set forth. Mortgagor shall, within fifteen (15) days of request by Mortgagee, obtain from the lessor under the Ground Lease such certificates of estoppel with respect to compliance by Mortgagor with the terms of the Ground Lease as may be requested by Mortgagee. Mortgagor shall exercise each individual option, if any, to extend or renew the term of the Ground Lease upon demand by Mortgagee made at anytime within one (1) year of the last day upon which any such option may be exercised, and Mortgagor hereby expressly authorizes and appoints Mortgagee Mortgagor's attorney in fact to exercise, either jointly or individually, any such option in the name of and upon behalf of Mortgagor, which power of attorney shall be irrevocable and shall be deemed to be coupled with an interest.

(vi)     The generality of the provisions of this Section 2.17 relating to the Ground Lease shall not be limited by other provisions of this Mortgage or any other agreement between Mortgagee and Mortgagor, setting forth particular obligations of Mortgagor which are also required of Mortgagor as tenant under the Ground Lease.

(b)     If the Ground Lease shall terminate prior to the natural expiration of its term due to an event of default thereunder, and if, pursuant to any provision of the Ground

18

FF 12511410.4

Lease, Mortgagee or its designee shall acquire from the lessor under the Ground Lease a new lease of the Premises and the Improvements, and Mortgagor shall have no right, title or interest in or to such new lease or the leasehold estate created thereby, or renewal privileges therein contained.

(c)     So long as any portion of the Debt shall remain unpaid, and unless Mortgagee shall otherwise consent, the fee title to the Premises and the Improvements and the leasehold estate therein created pursuant to the provisions of the Ground Lease shall not merge, but shall always be kept separate and distinct, notwithstanding the union of such estates in Mortgagor or in any other person, by purchase, operation of law or otherwise.  If Mortgagee shall acquire the fee title to the Premises and the Improvements and the leasehold estate therein created pursuant to the provisions of the Ground Lease, by foreclosure of this Mortgage or otherwise, such estates shall not merge as a result of such acquisition and shall remain separate and distinct for all purposes after such acquisition unless and until Mortgagee shall elect to merge such estates.

Section 2.18    Condominium Provisions

(a)     As used herein, the following terms shall have the following meanings:

(i)     The term **"Condominium Declaration"** means the Declaration of Condominium of the 353 West 57th Street Condominium recorded in the Office of the City Register, New York on April 24, 1985, as amended as provided in the property description contained in Exhibit A attached hereto, as the same may hereafter be amended from time to time.

(ii)     The term **"Condominium"** means the 353 West 57th Street Condominium.

(iii)     The term **"Board of Managers"** shall mean the Board of Managers of the Condominium.

(iv)     The term **"Condominium Documents"** shall mean the Condominium Declaration, the by-laws of the Condominium and its Board of Managers, and all other documents creating or governing the Condominium.

(b)     This Mortgage is subject to the Condominium Declaration.

(c)     Notwithstanding anything to the contrary contained in Section 2.11 hereof, Mortgagor shall cause the Board of Managers to maintain a master policy of insurance for the Condominium and the Property for the benefit of Mortgagor and Mortgagee which satisfies the requirements of Section 2.11 hereof as to the Property.  Upon a termination of, or interruption in, the coverage of such master policy, Mortgagor shall promptly (i) notify Mortgagee thereof, and (ii) obtain the insurance required under Section 2.11 hereof for the Property.

19

FF\12511410.4

(d)     Mortgagor hereby represents, warrants and covenants to Mortgagee that:

(i)     To Mortgagor's actual knowledge, the Condominium Documents and all of the easements and other rights granted thereby are now valid and subsisting.

(ii)     Mortgagor will fully and faithfully pay when due and payable the assessments, common charges and other charges mentioned in and made payable by Mortgagor under the Condominium Documents, and shall fully and faithfully perform all obligations on the part of Mortgagor to be performed under the Condominium Documents in the time and manner therein prescribed.

(iii)     Mortgagor will do all things necessary to preserve and to keep unimpaired its rights, powers and privileges under the Condominium Documents and to prevent the termination or expiration of the Condominium Documents, or the withdrawal of the Property from a condominium form of ownership under Article 9-B of the Real Property Law of New York, to the end that Mortgagor may enjoy all of the rights granted to it as a party to the Condominium Documents.

(iv)     Mortgagor will promptly notify Mortgagee of any failure by Mortgagor to comply with the Condominium Documents in any material respect.

(v)     Mortgagor will:

(A)     promptly notify Mortgagee of the receipt by Mortgagor of any notice from the Board of Managers or owner of any other unit of the Condominium, asserting or claiming a default by Mortgagor under, or lack of compliance by Mortgagor with, the Condominium Documents,

(B)     promptly notify Mortgagee of the receipt by Mortgagor of any notice or request from the Board of Managers or owner of any unit of a termination or purported termination of the Condominium Documents or of the Condominium or of or for the commencement or taking of or intent to commence or take any action to terminate the Condominium or the Condominium Documents or to withdraw the Property from Condominium ownership pursuant to Article 9-B of the Real Property Law or to seek any action for partition of the Condominium,

(C)     promptly notify Mortgagee of the receipt by Mortgagor of any notice or request from the Board of Managers or owner of any unit of a modification or change or proposed modification or change of or to the Condominium Documents, and

(D)     promptly cause a copy of each such notice or request received by Mortgagor from the Board or any unit owner, or from the holder of a mortgage on such other unit, to be delivered to Mortgagee. Mortgagor will promptly notify Mortgagee of the institution by the Board of Managers or owner of any other unit or any other person of a proceeding to partition the Condominium or withdraw same from condominium

20

FF 12511410.4

ownership pursuant to Article 9-B of the Real Property Law, and of the institution of any such partition or withdrawal proceeding, and will permit Mortgagee to participate in any such partition or withdrawal proceeding to the extent permitted by law and the Condominium Documents (but Mortgagee shall not be obligated so to do). Mortgagor will promptly deliver to Mortgagee a copy of each notice, pleading, brief and preliminary, interim and final determination or decision and other papers received by it in each such partition or withdrawal proceeding.

(vi)    Mortgagor will not, without the prior consent of Mortgagee, wholly or partially terminate, modify, subordinate or surrender or suffer or permit in whole or in part any termination, modification, surrender or expiration of any of the Condominium Documents, or withdraw or cause or permit the withdrawal of the Condominium by operation of law or otherwise from condominium ownership pursuant to Article 9-B of the Real Property Law of New York, or commence or prosecute any action or proceeding to partition the Condominium or cause or permit the Condominium to be partitioned pursuant to such Article 9-B or otherwise, or enter into any agreement with respect to the common charges, assessments or other charges payable under the Condominium Documents.

(vii)    Mortgagor will, within twenty (20) days after demand from Mortgagee, obtain, if and to the extent that Mortgagor is entitled to the same under the Condominium Documents, and otherwise request from and make best efforts to obtain, from the Board of Managers and deliver to Mortgagee a duly signed and acknowledged certificate (signed also by Mortgagor) that the Condominium Documents are unmodified and in full force and effect (or, if the same have been modified in compliance with this agreement, that the Condominium Documents are in full force and effect as so modified and that there have been no other modifications), stating the dates to which the assessments, common charges and other charges payable under the Condominium Documents have been paid and stating whether to the certifying party's and Mortgagor's knowledge Mortgagor is in compliance with the Condominium Documents or, if not, specifying each default or failure of compliance of which the certifying party has knowledge. Mortgagor will, promptly upon receipt thereof by Mortgagor, furnish Mortgagee with a copy of all notices and statements, however characterized, issued by the Board of Managers relating to the Condominium including, without limitation, financial statements and projected budgets.

(e)    Mortgagor hereby irrevocably appoints and designates Mortgagee to receive insurance proceeds and condemnation proceeds to be held by Mortgagee as depositary or escrow agent or in any similar capacity, as may be consistent with or not prohibited by the Condominium Documents.

(f)    Mortgagor will not exercise any of its rights under the Condominium Documents, or, to the extent not prohibited by applicable laws, vote at any meeting of the Board of Managers, in any way that is inconsistent with its duties or obligations hereunder or with the terms and provisions hereof. Notwithstanding the foregoing, after the occurrence and during the continuance of an Event of Default hereunder, Mortgagor will notify Mortgagee of all meetings of the Board of Managers, at least five (5) business days prior thereto, and, to the extent not prohibited by applicable law, Mortgagor will exercise all of its rights under the Condominium Documents, and vote at all meetings of the Board of Managers in accordance with any instructions delivered to Mortgagor by Mortgagee.

21

FF 12511410.4

### ARTICLE III
### ASSIGNMENT OF LEASES AND RENTS

3.1     Assignment of Rents.   Mortgagor absolutely assigns to Mortgagee the Leases and Rents, together with all guaranties of any obligations of any lessee (the "Lessee") under any Lease and the right of Mortgagor to alter, modify or terminate the Leases or any of their terms.   Mortgagor irrevocably appoints Mortgagee its true and lawful attorney-in-fact, at the option of Mortgagee at any time and from time to time, to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, in the name of Mortgagor or Mortgagee, for all the Rents and to apply the Rents to the amounts secured by this Mortgage in such order as Mortgagee shall elect.   Notwithstanding the foregoing, so long as no Event of Default has occurred and is continuing, Mortgagor shall have the right and license to collect the Rents (but not more than one month in advance).   This assignment of the Rents is an absolute assignment from Mortgagor to Mortgagee and not merely the passing of a security interest.

3.2     Covenants Regarding Leases

(a)     Mortgagor shall timely perform all of its obligations under the Leases and give prompt notice to Mortgagee of any material failure on its part to do so and of any claim made by any Lessee of any such failure by Mortgagor.

(b)     Mortgagor shall, short of termination, enforce, or secure in the name of Mortgagee the performance of, each obligation of a Lessee or guarantor under any Lease, and Mortgagor shall appear in and defend any action or proceeding arising out of the Leases.   Upon request by Mortgagee after the occurrence and during the continuance of an Event of Default, Mortgagor will do so in the name and on behalf of Mortgagee but at the expense of Mortgagor.   Mortgagor shall pay all costs and expenses of Mortgagee, including, without limitation, attorneys' fees, in any action or proceeding in which Mortgagee may appear.

(c)     Mortgagor shall neither receive nor collect any Rents from any Lessee for a period of more than one month in advance (whether in cash or by evidence of indebtedness), nor pledge or otherwise encumber or assign future payments of Rents, nor waive, discount, setoff, compromise or in any manner release or discharge any Lessee of or from any obligations under such Lessee's Lease.

(d)     Without obtaining, in each instance, the prior written consent of Mortgagee, such consent not to be unreasonably withheld, conditioned or delayed, Mortgagor shall not:  enter into, modify, alter, cancel, terminate or consent to any surrender of any Lease; commence any action of ejectment or any summary proceedings for dispossession of any Lessee; exercise any right of recapture provided in any Lease; waive or release any Lessee or any guarantor from any obligation or condition to be performed by such Lessee or guarantor; or consent to any subletting of any part of the Property, or to any assignment of any Lease, or to any assignment or further subletting of any sublease.

(e)     This Mortgage is intended to be, and shall operate as, the agreement described in Section 291-f of the Real Property Law of the State of New York and shall be entitled to the benefits afforded thereby. Mortgagor shall (unless such notice is contained

22

FF 12511410.4

in such tenant's Lease) deliver notice of this Mortgage, which notice shall be to all present and future holders of any interest in any Lease, by assignment or otherwise, and shall take such other action as may now or hereafter be reasonably required to afford Mortgagee the full protections and benefits of such Section 291-f. Mortgagor shall request the recipient of any such notice to acknowledge the receipt thereof. Mortgagee shall have all of the rights against tenants of the Property as set forth in Section 291-f of the Real Property Law of New York

3.3     Survival.  The rights and powers of Mortgagee under the assignment of rents provided for above shall continue until expiration of the redemption period from any foreclosure sale under this Mortgage, whether or not any deficiency remains after a foreclosure sale.

3.4     Exculpation of Mortgagee.   The acceptance by Mortgagee of the assignment of the Rents provided for above with all of Mortgagee's rights under this Article III shall not, prior to entry upon and taking possession of the Property by Mortgagee, be deemed or construed to constitute Mortgagee a "mortgagee in possession" nor at any time obligate Mortgagee to appear in or defend any action or proceeding relating to the Leases, the Rents or the Property, or to take any action permitted under this Mortgage or to expend any money or incur any expenses or perform or discharge any obligation under any Lease or to assume any obligation or responsibility for any security deposits or other deposits delivered to Mortgagor by any Lessee and not assigned and delivered to Mortgagee, nor shall Mortgagee be liable for any injury or damage to person or property sustained by any person in connection with the Property.

3.5     Waiver.   Neither the collection of the Rents or their application by Mortgagee nor the entry upon and taking possession of the Property by Mortgagee shall be deemed to cure or waive any default or waive, modify or affect any notice of default under any of the other Loan Documents or invalidate any act done pursuant to any such notice.  The enforcement of any such right or remedy by Mortgagee, once exercised, shall continue for so long as Mortgagee shall elect, notwithstanding that the collection and application of the Rents may have cured the original default.  If Mortgagee shall after such enforcement elect to discontinue the exercise of any such right or remedy, the same or any other right or remedy under this Mortgage may be reasserted at any time and from time to time following any subsequent default.

3.6     Further Assignments.  Mortgagor agrees to give Mortgagee at any time upon demand any further or additional form of assignment or transfer of the Rents or of the Leases, as may be reasonably requested by Mortgagee, and to deliver to Mortgagee Mortgagor's executed copies of all Leases.

## ARTICLE IV
## EVENTS OF DEFAULT; REMEDIES

4.1     Default.   Any of the following events shall constitute an "Event of Default" under this Mortgage:

23

FF 12511410.4

(a)      Mortgagor's failure to pay when due any installment of principal or interest under the Note or any other sum required to be paid by the terms of any Loan Document or secured by this Mortgage;

(b)      The occurrence of an Event of Default under the Loan Agreement or any other Loan Document;

(c)      One hundred twenty (120) days after the ground lessor under the Ground Lease delivers the Fallback Business Plan Notice (as defined in the Ground Lease); or

(d)      The occurrence of an Event of Default under any mortgage encumbering the ground leasehold interest in the Property, whether superior or subordinate in lien to the lien of this Mortgage.

4.2      Actions by Mortgagee to Preserve Security.  Upon the occurrence and during the continuance of an Event of Default or an event which, with the lapse of time or the giving of notice, or both, would become an Event of Default, and irrespective of whether Mortgagee elects to accelerate the indebtedness evidenced by the Note as permitted in Section 4.3, Mortgagee, in its discretion, without obligation to do so and without further notice to or demand upon Mortgagor and without releasing Mortgagor from any obligation, may undertake such acts with respect to the Property as it may deem reasonably necessary to protect Mortgagee's security under this Mortgage, including, without limitation, any acts required by this Mortgage to be undertaken by Mortgagee.  Without limiting its general powers, Mortgagee shall have the right, but not the obligation, (a) to enter upon and take possession of the Property; (b) to make additions, alterations, repairs and improvements to the Property which they or either of them may consider necessary or proper to keep the Property in good condition and repair; (c) to appear and participate in any action or proceeding affecting or which may affect the security of this Mortgage or the rights or powers of Mortgagee; (d) to pay, purchase, contest or compromise any encumbrance, claim, charge, lien or debt which in the judgment of either may affect or appear to affect the security of this Mortgage or be or appear to be superior to the lien of this Mortgage; (e) pay any expenses incurred or which, in Mortgagee's judgment, should be incurred in connection with the ownership, use and operation of the Property, including, without limitation, Impositions, insurance premiums and charges for utilities and maintenance; and (f) in exercising such powers, to pay necessary expenses and employ necessary or desirable consultants.  Any amounts expended by Mortgagee pursuant to this Section shall bear interest at the rate then in effect under the Note and shall be secured by this Mortgage.

4.3      Remedies.  Upon the occurrence of any Event of Default, Mortgagee may do any of the following:

(a)      terminate its obligation to disburse any amounts under the Loan Agreement;

(b)      declare all sums secured by this Mortgage immediately due and payable without any presentment, demand, protest or notice of any kind;

(c)      terminate Mortgagor's right and license to collect the Rents and either in person or by agent, with or without bringing any action or proceeding, or by a receiver

24

FF 12511410.4

appointed by a court, and without regard to the adequacy of its security, enter upon and take possession of the Property, in its own name or in the name of Mortgagor, and do any acts which it deems necessary or desirable to preserve the value, marketability or rentability of the Property, make, modify, enforce, cancel or accept the surrender of any Lease, increase the income from any Lease or protect the security of this Mortgage and, with or without taking possession of the Property, sue for or otherwise collect the Rents, including those past due and unpaid, and apply them, less costs and expenses of operation and collection, including reasonable attorneys' fees, upon any indebtedness secured by this Mortgage, all in such order as Mortgagee may determine. The entering upon and taking possession of the Property, the collection of the Rents and the application of them as provided for above shall not cure or waive any Event of Default or notice of default or invalidate any act done in response to an Event of Default or pursuant to such notice of default and, notwithstanding the continuance in possession of the Property or the collection, receipt and application of Rents, Mortgagee shall be entitled to exercise every right provided for in any of the Loan Documents or by law upon occurrence of any Event of Default, including the right to exercise the power of sale provided below;

     (d)    commence an action to foreclose this Mortgage or specifically enforce any of the covenants contained in this Mortgage;

     (e)    exercise any of the remedies available to a secured party under the UCC in such order and in such manner as Mortgagee, in its sole discretion, may determine; provided, however, that the expenses of retaking, holding, preparing for sale or the like as provided in the UCC shall include reasonable attorneys' fees and other expenses of Mortgagee and shall be additionally secured by this Mortgage;

     (f)    exercise all other rights and remedies provided in this Mortgage, in any Loan Document, or provided by law; and or

     (g)    impose the Default Rate.

Upon request of Mortgagee, Mortgagor shall assemble and make available to Mortgagee at the Land any of the Property which is not located there.

    4.4    Intentionally Omitted.

    4.5    Intentionally Omitted.

    4.6    Appointment of Receiver. If an Event of Default shall have occurred and be continuing, Mortgagee, as a matter of right and without notice to Mortgagor or to anyone claiming under Mortgagor, and without regard to the then value of the Property or Mortgagor's interest in it, shall have the right to apply to any court having jurisdiction to appoint a receiver of the Property, and Mortgagor irrevocably consents to such appointment and waives notice of any application for any such receiver. Any such receiver shall have all the usual powers and duties of a receiver in like or similar cases and all the powers and duties of Mortgagee in case of entry as provided in Section 4.2 above, and shall continue as such and exercise all such powers until the date of confirmation of the sale of the Property, unless such receivership is sooner terminated.

25

FF 12511410.4

4.7   Intentionally Omitted.

4.8   Intentionally Omitted.

4.9   Remedies Not Exclusive; Waiver. Mortgagee shall be entitled to enforce the payment and performance of any indebtedness or obligations secured by this Mortgage and to exercise all rights and powers under this Mortgage or under any other Loan Document or other agreement or any laws now or later in force, notwithstanding the fact that some or all of the indebtedness and obligations secured by this Mortgage may now or later be otherwise secured, whether by mortgage, pledge, lien, assignment or otherwise. Neither the acceptance of this Mortgage nor its enforcement shall prejudice or in any manner affect Mortgagee's right to realize upon or enforce any other security held by Mortgagee. Mortgagee shall be entitled to enforce this Mortgage and any other security held by Mortgagee in such order and manner as they may in their absolute discretion determine. No remedy conferred in this Mortgage upon or reserved to Mortgagee is intended to be exclusive of any other permitted remedy, but each shall be cumulative and shall be in addition to every other remedy permitted by law, contract or otherwise. Every power or remedy given by any of the Loan Documents to Mortgagee or to which either of them may be otherwise entitled, may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by Mortgagee, and either of them may pursue inconsistent remedies. By exercising or by failing to exercise any right, option or election under this Mortgage, Mortgagee shall not be deemed to have waived any provision of this Mortgage or to have released Mortgagor from any of the obligations secured by this Mortgage unless such waiver or release is in writing and signed by Mortgagee. The waiver by Mortgagee of Mortgagor's failure to perform or observe any term, covenant, or condition referred to or contained in this Mortgage to be performed or observed by Mortgagor shall not be deemed to be a waiver of such term, covenant or condition or of any subsequent failure of Mortgagor to perform or observe the same or any other such term, covenant or condition referred to or contained in this Mortgage, and no custom or practice which may develop between Mortgagor and Mortgagee shall be deemed a waiver of or any way affect the right of Mortgagee to insist upon the performance by Mortgagor of the obligations secured by this Mortgage in strict accordance with the terms of such obligations or of any Loan Document..

## ARTICLE V
## MISCELLANEOUS

5.1   Successors. This Mortgage applies to, inures to the benefit of, and binds all parties and their successors and assigns.

5.2   Governing Law. The provisions of this Mortgage shall be construed according to the laws of the State of New York.

5.3   Permitted Contests. Mortgagor may contest or object in good faith to the amount or validity of any tax, assessment, claim, demand, levy, lien, encumbrance, charge or notice of noncompliance asserted by a third party (collectively, the "Claim"), the nonpayment or nonperformance of which would be a default under this Mortgage, but only in accordance with the following conditions:

26

FF:12511410.4

(a)    Mortgagor shall first give written notice to Mortgagee and deposit with Mortgagee a bond or cash satisfactory to Mortgagee in such amounts as Mortgagee shall reasonably require, up to 150% of the amount of any Claim or other sum in controversy, and, if the context of such Claim so requires, Mortgagor shall have provided such additional undertaking as may be required or permitted by law to accomplish a stay of any legal proceedings then pending in connection with any such Claim or controversy;

(b)    Mortgagor shall promptly and diligently proceed to cause such Claim to be settled and discharged in a manner not prejudicial to Mortgagee or its rights or security under this Mortgage;

(c)    if Mortgagor shall fail to discharge diligently any such Claim, then, in addition to any other right or remedy of Mortgagee, Mortgagee may, but shall not be obligated to, discharge the same, either by paying the amount claimed to be due, or by procuring the discharge of such Claim by promptly depositing in court a bond or the amount claimed or otherwise giving security for such Claim, or in such manner as is or may be prescribed by law;

(d)    Mortgagee may employ attorneys to protect its rights, and in the event of such employment, Mortgagor shall pay Mortgagee the reasonable attorneys' fees and expenses incurred by Mortgagee, whether or not an action is actually commenced against Mortgagor by reason of any default by Mortgagor under this Mortgage; and

(e)    Mortgagor has demonstrated to Mortgagee's reasonable satisfaction that no portion of the Property will be sold to satisfy any such Claim prior to final resolution of such Claim or permitted contest.

This Section 5.3 shall not apply to any tax appeals pending prior to the date hereof, which Mortgagor shall have the right to continue to prosecute without the consent of Mortgagee or having to satisfy any of the above requirements.

5.4    Severability. The invalidity of any provision of this Mortgage shall not affect the remaining portions of this Mortgage, and such remainder shall be construed as if the invalid provision had not been a part of this Mortgage. If the lien of this Mortgage is invalid or unenforceable as to any part of the indebtedness secured by the this Mortgage, or if the lien is invalid or unenforceable as to any part of the Property, the unsecured or partially secured portion of such indebtedness shall be completely paid prior to the payment of the remaining and secured or partially secured portion of such indebtedness, and all payments made on such indebtedness, whether voluntary or under foreclosure or other enforcement action or procedure, shall be considered to have been first paid on and applied to the full payment of that portion of such indebtedness which is not secured or fully secured by the lien of this Mortgage.

5.5    Notices. Any notice, demand or request required under this Mortgage shall be given in writing at the addresses set forth below by personal service; overnight courier; or registered or certified, first class mail, return receipt requested.

If to Mortgagor:

Hudson 1702, LLC

27

FF 12511410.4

Hudson 1701/1706, LLC
c/o CSC Coliving LLC
6 St. Johns Lane
New York, New York 10013
Attention: Alberto Smeke Saba
Email: AS@csc-coliving.com
Attention: Salomon Smeke Saba
Email: SS@csc-coliving.com

With a copy to:

Cole Schotz, P.C.
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Attention: Jordan Metzger, Esq.
Email: jmetzger@coleschotz.com

If to Mortgagee:

Parkview Financial REIT, LP
11601 Wilshire Boulevard, Suite 2100
Los Angeles, CA  90025
Attention: Paul S. Rahimian
Email: paul@parkviewfinancial.com

Such addresses may be changed by notice to the other parties given in the same manner as required above. Any notice, demand or request shall be deemed received as follows: (a) if sent by personal service, at the time such personal service is effected; (b) if sent by overnight courier, on the business day immediately following deposit with the overnight courier; and (d) if sent by mail, 48 hours following deposit in the mail.

5.6     Indemnification Procedures.

(a)     If Mortgagee notifies Mortgagor of any claim or notice of the commencement of any action, administrative or legal proceeding or investigation as to which Mortgagor's obligation to indemnify under this Mortgage applies, Mortgagor shall assume on behalf of Mortgagee or other person to be indemnified (each, an "Indemnitee"), and conduct with due diligence and in good faith, the investigation and defense of, and the response to, such claim, action, proceeding or investigation, with counsel reasonably satisfactory to the Indemnitee; provided, however, that such Indemnitee shall have the right to be represented by advisory counsel of its own selection and at its own expense; and provided, further, that if any such claim, action, proceeding, or investigation involves both Mortgagor and an Indemnitee, and such Indemnitee shall have reasonably concluded that there may be legal defenses available to it which are different from, additional to, or inconsistent with those available to Mortgagor, then the Indemnitee shall have the right to select separate counsel to participate in the investigation and defense of and response to such claim, action, proceeding or investigation on its own behalf at Mortgagor's expense.

28

FF-12511410.4

(b)    If any claim, action, proceeding, or investigation arises as to which Mortgagor's duty to indemnify under this Mortgage applies, and Mortgagor fails to assume promptly (and in any event within ten days after being notified of the claim, action, proceeding, or investigation) the defense of an Indemnitee, then such Indemnitee may contest and settle the claim, action, proceeding, or investigation at Mortgagor's expense using counsel selected by such Indemnitee; provided, however, that after any such failure by Mortgagor no such contest need be made by such Indemnitee and settlement or full payment of any claim may be made by such Indemnitee without Mortgagor's consent and without releasing Mortgagor from any obligations to such Indemnitee under this Mortgage.

5.7    Waiver of Remedies.  By accepting payment of any amount after its due date, or an amount which is less than the amount then due, or performance of any obligation required after the date required for such performance, Mortgagee does not waive its rights either to require prompt payment or performance when due of all other amounts or obligations, or to declare a default for the failure so to pay or perform.

5.8    Corrections and Further Assurances.  Mortgagor shall, upon request of Mortgagee, promptly correct any defect, error or omission which may be discovered in the contents of this Mortgage or in its execution or acknowledgment, and will execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or as may be reasonably requested by Mortgagee to carry out more effectively the purposes of this Mortgage, to subject to the lien and security interest of this Mortgage any of Mortgagor's properties, rights or interest covered or intended to be covered by this Mortgage, and to perfect and maintain such lien and security interest.

5.9    Performance Under Other Documents.  Subject to Mortgagee's rights under Section 2.3 above, Mortgagor shall faithfully perform each covenant to be performed by Mortgagor under any lien or encumbrance, lease, sublease, instrument, declaration, covenant, condition, restriction, license, order or other agreement which affects the Property, including, without limitation, each covenant to be performed by Mortgagor under any mortgages and any and all other instruments pertaining to such mortgages, including the respective obligations secured thereby.  A breach of or a default under any such lien, encumbrance or other instrument which Mortgagee reasonably believes may be prior and superior to the lien or charge of this Mortgage shall, at Mortgagee's option, constitute an event of default under this Mortgage.

5.10    Amendments.  Neither this Mortgage nor any of its terms can be waived, changed, discharged or terminated orally, except by an instrument in writing signed by the party against whom enforcement of any waiver, change, discharge or termination is sought.

5.11    Filing of Mortgage, etc.  The Mortgagor, forthwith upon the execution and delivery of this Mortgage and thereafter, from time to time, will cause this Mortgage, and any security instrument creating a lien or evidencing the lien hereof upon the Property and each instrument of further assurance, to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect, preserve and perfect the lien hereof upon, and the interest of the Mortgagee in, the Property.  The Mortgagor will pay all filing, registration and recording fees, and all expenses incident to the preparation, execution and acknowledgment of this Mortgage, any mortgage

29

FF 12511410.4

supplemental hereto, any security instrument with respect to the Property, and any instrument of further assurance, and all Federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Property or any instrument of further assurance. The Mortgagor shall hold harmless and indemnify the Mortgagee, its successors and assigns, against any liability incurred by reason of the imposition of any tax on the making and recording of this Mortgage.

5.12 Usury Laws. This Mortgage and the Note are subject to the express condition that at no time shall the Mortgagor be obligated or required to pay interest on the principal balance due under the Note at a rate which could subject the holder of the Note to either civil or criminal liability as a result of being in excess of the maximum interest rate which the Mortgagor is permitted by law to contract or agree to pay. If, by the terms of this Mortgage or the Note, the Mortgagor is at any time required or obligated to pay interest on the principal balance due under the Note at a rate in excess of such maximum rate, the rate of interest under the Note shall be deemed to be immediately reduced to such maximum rate, and the interest payable shall be computed at such maximum rate and all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the principal balance of the Note.

5.13 Sole Discretion of Mortgagee. Except as may otherwise be expressly provided to the contrary, wherever pursuant to the Note, this Mortgage, or any other document or instrument now or hereafter executed and delivered in connection therewith or otherwise with respect to the loan secured hereby, the Mortgagee exercises any right given to it to consent or not consent, or to approve or disapprove, or any arrangement or term is to be satisfactory to the Mortgagee, the decision of the Mortgagee to consent or not consent, or to approve or disapprove, or to decide that arrangements or terms are satisfactory or not satisfactory, shall be in the sole and absolute discretion of the Mortgagee and shall be final and conclusive.

5.14 Reasonableness. If at any time the Mortgagor believes that the Mortgagee has not acted reasonably in granting or withholding any approval or consent under the Note, this Mortgage, or any other document or instrument now or hereafter executed and delivered in connection therewith or otherwise with respect to the loan secured hereby, as to which approval or consent either (i) the Mortgagee has expressly agreed to act reasonably, or (ii) absent such agreement, applicable law would nonetheless require the Mortgagee to act reasonably, then the Mortgagor's sole remedy shall be to seek injunctive relief or specific performance, and no action for monetary damages or punitive damages shall in any event or under any circumstance be maintained by the Mortgagor against the Mortgagee.

5.15 Recovery of Sums Required To Be Paid. The Mortgagee shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of the Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by the Mortgagor existing at the time such earlier action was commenced.

30

FF 12511410.4

5.16    Actions and Proceedings. The Mortgagee shall have the right to appear in and defend any action or proceeding brought with respect to the Property and to bring any action or proceeding, in the name and on behalf of the Mortgagor, which the Mortgagee, in its discretion, determines should be brought to protect its interest in the Property.

5.17    Waiver of Notice. The Mortgagor shall not be entitled to any notices of any nature whatsoever from the Mortgagee except with respect to matters for which this Mortgage specifically and expressly provides for the giving of notice by the Mortgagee to the Mortgagor, and the Mortgagor hereby expressly waives to the extent permitted by law the right to receive any notice from the Mortgagee with respect to any matter for which this Mortgage does not specifically and expressly provide for the giving of notice by the Mortgagee to the Mortgagor.

5.18    Absolute and Unconditional Obligation. The Mortgagor acknowledges that the Mortgagor's obligation to pay the Debt in accordance with the provision of the Note and this Mortgage is, and shall at all times continue to be, absolute and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise constitute a defense to the Note or this Mortgage or the obligation of the Mortgagor thereunder to pay the Debt or the obligations of any other person relating to the Note or this Mortgage or the obligations of the Mortgagor under the Note or this Mortgage or otherwise with respect to the loan secured hereby, and the Mortgagor absolutely, unconditionally and irrevocably waives any and all right to assert any defense, setoff, counterclaim or crossclaim of any nature whatsoever with respect to the obligation of the Mortgagor to pay the Debt in accordance with the provisions of the Note and this Mortgage or the obligations of any other person relating to the Note or this Mortgage or obligations of the Mortgagor under the Note or this Mortgage or otherwise with respect to the loan secured hereby in any action or proceeding brought by the Mortgagee to collect the Debt, or any portion thereof, or to enforce, foreclose and realize upon the lien and security interest created by this Mortgage or any other document or instrument securing repayment of the Debt, in whole or in part; (provided, however, that the foregoing shall not be deemed a waiver of the Mortgagor's right to assert any compulsory counterclaim maintained in a court of the United States, or of the State of New York if such counterclaim is compelled under local law or rule of procedure, nor shall the foregoing be deemed a waiver of the Mortgagor's right to assert any claim which would constitute a defense, setoff, counterclaim or crossclaim of any nature whatsoever against the Mortgagee in any separate action or proceeding).

5.19    Waiver of Statutory Rights. The Mortgagor shall not and will not apply for or avail itself of any appraisement, valuation, stay, extension or exemption laws, or any so-called "Moratorium Laws," now existing or hereafter enacted, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, but hereby waives the benefit of such laws to the full extent that the Mortgagor may do so under applicable law. The Mortgagor, for itself and all who may claim through or under it, waives any and all right to have the property and estates comprising the Property marshaled upon any foreclosure of the lien of this Mortgage and agrees that any court having jurisdiction to foreclose such lien may order the Property sold as an entirety. The Mortgagor hereby waives, for itself and all who may claim through or under it, and to the full extent the Mortgagor may do so under applicable law, any and all rights of redemption

31

FF 12511410.4

from sale under any order of decree of foreclosure of this Mortgage or granted under any statute now existing or hereafter enacted.

5.20 <u>Satisfaction or Assignment.</u> Upon payment in full of the Debt and the performance of all obligations secured by this Mortgage in accordance with the terms and conditions of this Mortgage and the other Loan Documents, Mortgagee shall deliver a satisfaction or release of this Mortgage, or at Mortgagor's option to be exercised in writing, an assignment (if such assignment is then permitted by law), all without recourse, covenant or warranty of any nature, express or implied, to any party designated by Mortgagor (other than Mortgagor, an affiliate of Mortgagor or a nominee of Mortgagor), in either case in proper form for recording. As a condition to any such assignment, Mortgagor covenants and agrees to pay Mortgagee's reasonable fees and expenses, including an administrative fee not to exceed $5,000.00 and reasonable attorney's fees and out-of-pocket expenses in connection therewith. Upon any such satisfaction or assignment, Mortgagee shall, automatically and without the need for any further documentation, be absolutely and unconditionally released from any and all claims or liabilities in connection with the loan secured by this Mortgage. In addition, Mortgagor hereby indemnifies and agrees to hold Mortgagee harmless from and against any and all claims and liabilities arising out of the satisfaction or assignment of this Mortgage, such indemnification to survive any such satisfaction or assignment.

5.21 <u>Building Loan Agreement.</u> This is a building loan mortgage, the proceeds of which are loaned for the purpose of financing the construction of certain improvements on the Premises. This Mortgage is subject to all of the terms, covenants and conditions of the Loan Agreement, which Loan Agreement and all of the terms, covenants and conditions thereof are by this reference incorporated herein and made a part hereof with the same force and effect as if set forth at length herein. The proceeds of the loan secured hereby are to be advanced by the Mortgagee to the Mortgagor in accordance with the provisions of the Loan Agreement. The Mortgagor shall observe and perform all of the terms, covenants, conditions, provisions and agreements of the Loan Agreement on the Mortgagor's part to be observed or performed. All advances made and all indebtedness arising and accruing under the Loan Agreement from time to time shall be secured hereby. In the event of any conflict or ambiguity between the terms, covenants and conditions of this Mortgage and the Loan Agreement, the terms, covenants and conditions which shall enlarge the rights and remedies of the Mortgagee and the interest of the Mortgagee in the Property, afford the Mortgagee greater financial security in the Property and better assure payment of the Debt in full, shall control.

5.22 <u>Non-Residential Property.</u> This Mortgage does not cover real property principally improved by one or more structures containing in the aggregate six (6) or less residential dwelling units having their own separate cooking facilities.

5.23 <u>Trust Fund.</u> Pursuant to Section 13 of the Lien Law of the State of New York, Mortgagor shall receive the advances secured hereby and shall hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of any improvement and shall apply such advances first to the payment of the cost of any such improvement on the Property before using any part of the total of the same for any other purpose.

[NO FURTHER TEXT ON THIS PAGE]

32

FF\12511410.4

IN WITNESS WHEREOF, Mortgagor executes this Mortgage as of the date first above written

MORTGAGOR:
HUDSON 1702, LLC,
a Delaware limited liability company,

By_____
     Name: Alberto Smeke Saba
     Title:  Authorized Signatory

By_____
     Name: Salomon Smeke Saba
     Title:  Authorized Signatory


HUDSON 1701/1706, LLC
a Delaware limited liability company

By_____
     Name: Alberto Smeke Saba
     Title:  Authorized Signatory

By_____
     Name: Salomon Smeke Saba
     Title:  Authorized Signatory


*Signature Page to Building Loan Mortgage*

STATE OF NEW YORK                )
                                 ss.:
COUNTY OF NEW YORK               )


On the 18 day of April in the year 2022, before me, the undersigned, a Notary Public in and for said State, personally appeared Alberto Smeke Saba, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

DEVIKA S. RAGHOOBAR
Notary Public, State of New York
No. 01RA6421861
Qualified in Queens County
Commission Expires 9/13/2025


STATE OF NEW YORK                )
                                 ss.:
COUNTY OF NEW YORK               )


On the 28 day of April in the year 2022, before me, the undersigned, a Notary Public in and for said State, personally appeared Salomon Smeke Saba, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

DEVIKA S. RAGHOOBAR
Notary Public, State of New York
No. 01RA6421861
Qualified in Queens County
Commission Expires 9/13/2025


Notary Page to Building Loan Mortgage

EXHIBIT "A"

Legal Description

37

FF\12511410.4

**THE CONDOMINIUM UNITS** (hereinafter referred to as the "Units") in the building (hereinafter referred to as the "Building") known as **353 West 57th Street Condominium** and by the street number **353-361 West 57th Street a/k/a 356 West 58th Street**, County of New York, State of New York, said Units being designated and described as **Units Nos. 1, 2 and 6** in a Declaration **dated 4/11/1985** made by **Irving Schatz**, pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act") establishing a Plan for condominium ownership of the Building and the Land (hereinafter referred to as the "Land") upon which the Building is situate (which Land is more particularly described in Exhibit A annexed hereto and by this reference made a part hereof), which Declaration was recorded in the Office of the City Register of the City of New York, County of New York, on **4/24/1985 in Reel 902 Page 1** as amended by **First Amendment to Declaration** dated 1/29/1993 and recorded 5/11/1993 in Reel 1969 Page 2286, as amended by **Amended and Restated Declaration** made by Henry Hudson Holdings LLC, Irving Schatz, Adrienne Wechsler and Cheryl Hirsch dated as of 2/12/1999 and recorded 7/16/1999 in Reel 2913 Page 1753 and **Amendment to Amended and Restated Declaration** dated as of 9/30/1999 and recorded 10/27/1999 in Reel 2979 Page 2159 (which Declaration and Amendments thereto are hereinafter collectively referred to as the "Declaration"). These Units are also designated as **Tax Lots 1701, 1702, and 1706 in Block 1048** of the County of New York on the Tax Map of the Real Property Assessment Department and on the Floor Plans of the Building, certified by **Butler Rogers Baskett Architects**, and filed with the Real Property Assessment Department **as Condominium Plan No. 208** and also filed in the Office of the City Register of the City of New York, County of New York, on **4/24/1985 as Condominium Map No. 4326** and recorded 4/24/1985 as Reel 8500 Page 4326, as amended by **Amended Condominium Plan No. 208-A** filed 5/11/1993 as **Amended Condominium Map No. 5192** and recorded 5/11/1993 as Reel 9300 Page 5192.

**TOGETHER** with an undivided **44.05105 %** interest (as to Unit 1, Lot 1701), **46.94011 %** interest (as to Unit 2, Lot 1702), and **3.89067 %** interest (as to Unit 6, Lot 1706) in the Common Elements (as such term is defined in the Declaration).

**The Land** on which the Building and Units are located is situated in the County of New York and State of New York and is more fully described in the Declaration.

As to Unit 1706, the premises encumbered by the Insured Mortgage is the leasehold interest demised by that <u>Lease dated as of 2/11/1999</u> made by and between Irving Schatz, as landlord and Ian Schrager Hotels LLC, as tenant, Amended and Restated Memorandum of Lease made between Ian Schrager Hotels LLC and Irving Schatz dated as of 2/12/1999 and recorded 3/23/1999 in Reel 2841 Page 1872, Assignment and Assumption of Lease made by and between Ian Schrager Hotels LLC (f/k/a West 57th LLC) to Henry Hudson Holdings LLC dated as of 2/12/1999 and recorded 3/23/1999 in Reel 2841 Page 1882, Unrecorded Amendment to Lease made by and between Irving Schatz, as landlord, and Henry Hudson Holdings LLC, as tenant, dated as of 8/17/2004, as evidenced by Assignment and Assumption of Ground Lease in Lieu of Foreclosure made by Henry Hudson Holdings LLC to EC 58th Street LLC dated as of 11/24/2020 and recorded 12/4/2020 as CRFN 2020000344630, Assignment and Assumption of Ground Lease in Lieu of Foreclosure made by Henry Hudson Holdings LLC to EC 58th Street LLC dated as of 11/24/2020 and recorded 12/4/2020 as CRFN 2020000344630, Assignment and Assumption of Ground Lease made by EC 58th Street LLC to 356W58 Ground Lessor, LLC, dated as of May 4, 2022 and to be recorded

contemporaneously herewith in the Office of the Register of the City of New York, County of New York, and the Sublease Agreement, by and between 356W58 Ground Lessor LLC, as sublandlord, and Hudson 1701/1706, LLC, as subtenant, dated as of May 4, 2022, as evidenced by a Memorandum of Sublease dated as of May 4, 2022 and to be recorded contemporaneously herewith in the Office of the Register of the City of New York, County of New York.

## EXHIBIT B

### [Description of Ground Lease]

Ground Lease dated as of May _4__, 2022 between Hudson 1701/1706, LLC and Hudson 1702, LLC, collectively, as Tenant, and 356W58 Ground Lessor LLC, as Landlord.

38

FF 12511410.4