# EXHIBIT J

**FIRST AMENDMENT TO GROUND LEASE**

THIS FIRST AMENDMENT TO GROUND LEASE (this "First Amendment") is effective as of the 3rd day of January, 2023 (the "First Amendment Effective Date"), by and among **356W58 GROUND LESSOR LLC**, a Delaware limited liability company (together with its successors and assigns, "Landlord"), **HUDSON 1701/1706, LLC** ("Tenant 1"), and **HUDSON 1702, LLC** ("Tenant 2"; and together with Tenant 1, individually and collectively, as the context may require, joint and severally, and together with their respective successors or assigns permitted by the Lease, "Tenant"), each a Delaware limited liability company.

## WITNESSETH:

WHEREAS, Landlord and Tenant entered into that certain Ground Lease, dated as of May 4, 2022 (the "Original Lease"; as the same is amended by this First Amendment and as may be further amended, restated, assigned and/or modified from time to time, the "Lease"), pursuant to which Landlord ground leased to Tenant the Leased Premises described therein;

WHEREAS, in connection with Landlord's exercise of the Tenth Floor Purchase Option pursuant to Section 47 of the Original Lease and acquisition of the Tenth Floor Unit concurrently with the execution of this First Amendment, Landlord and Tenant desire to amend the Original Lease to memorialize such acquisition and make such other modifications as are further set forth herein; and

NOW, THEREFORE, in consideration of these presents, and for other good and valuable consideration, the mutual delivery of which is hereby acknowledged, Landlord and Tenant hereby agree as follows:

1.      Recitals Incorporated; Defined Terms. The foregoing recitals are hereby incorporated into this First Amendment as if fully set forth herein. Capitalized terms used herein but not defined herein shall have the meanings ascribed to such terms in the Original Lease.

2.      Tenth Floor Purchase Option.

(a)      Landlord and Tenant hereby acknowledge and agree that: (i) as of the First Amendment Effective Date, Landlord has exercised the Tenth Floor Purchase Option pursuant to Section 47 of the Original Lease, the closing of the Tenth Floor Purchase Option has occurred and Landlord is the current owner of the Tenth Floor Unit, (ii) in accordance with Section 47(j) of the Lease, as of the First Amendment Effective Date, the Tenth Floor Unit shall be and become part of the Leased Premises and all of the applicable terms and conditions of the Lease shall extend to the Tenth Floor Unit, (iii) Exhibit A to the Original Lease is hereby deleted and replaced with Exhibit A to this First Amendment, and (iv) Landlord and Tenant have executed and submitted for recording in the New York City Registrar's Office an amendment to the Memorandum of Lease in the form attached hereto as Exhibit B.

(b)      In furtherance of the foregoing, concurrently with the First Amendment Effective Date, (i) each of the Tenth Floor Lease and Tenth Floor Sublease have been terminated and are of no further force and effect (except for any provisions thereof that expressly survive termination thereof), (ii) all references and provisions in the Original Lease with respect to the Tenth Floor Lease and Tenth Floor Sublease are hereby deleted and of no further force and effect, and (iii) Landlord and Tenant shall have no further rights to exercise the Tenth Floor Purchase Option and Section 47 of the Original Lease shall, hereafter, be of no further force and effect (except for any such provisions that expressly survive the closing of the Tenth Floor Purchase Option or termination of the Lease).

(c)        Pursuant to Section 47(e) of the Original Lease, the Tenth Floor Tenant Purchase Contribution and certain out-of-pocket costs and expenses incurred by Landlord are characterized as the payment of Additional Rent that is treated as a loan pursuant to Section 467 of the Code. Landlord and Tenant have entered into a separate agreement setting forth the principal, interest and amortization of the loan in the form attached hereto as Exhibit C.

3.        Hotel Union Pension Fund Obligations.

(a)        Pursuant to Section 57 of the Original Lease, Tenant was required to satisfy the Hotel Union Pension Fund Obligations by payment of such obligations in a lump sum by the Hotel Union Pension Fund Obligations Date, which date was intended to be sixty (60) days following the date of receipt of a notice of withdrawal liability and demand for payment from the Hotel Union Pension Fund in accordance with the Union MOA (the "Hotel Union Pension Fund Demand Letter"). The Hotel Union Pension Fund Demand Letter dated July 20, 2022, was subsequently superseded by the Hotel Union Pension Fund Demand Letter dated September 29, 2022 (copies are attached hereto as Exhibit D), and, therefore, pursuant to the Original Lease, the Hotel Union Pension Fund Obligations Date occurred on November 28, 2022. Notwithstanding the foregoing, as of the First Amendment Effective Date, Tenant has not satisfied the Hotel Union Pension Fund Obligations in full in accordance with the Original Lease.

(b)        Landlord hereby acknowledges that (i) the Hotel Union Pension Fund Demand Letter dated September 29, 2022 demands payment of the full value of the withdrawal liability assessed by the Hotel Union Pension Fund set forth in the Hotel Union Pension Fund Demand Letter dated September 29, 2022 in fifty-one (51) quarterly installment payments, each in the amount of $490,888.25, with a final payment of $332,183.40 (each, a "Withdrawal Liability Installment Payment") rather than by remittance of a single lump sum payment as initially anticipated, (ii) the aggregate amount of the payments required to satisfy the Hotel Union Pension Fund Obligations as set forth in the Hotel Union Pension Fund Demand Letter dated September 29, 2022 is equal to $17,285,224, and (iii) as of the First Amendment Effective Date, Tenant has made the first Withdrawal Liability Installment Payment to the Hotel Union Pension Fund in the amount of $490,888.25, as evidenced by a copy of a check in such amount attached hereto as Exhibit E.

(c)        Accordingly, the Original Lease is hereby amended as follows:

(i)        The definitions of "Hotel Union Pension Fund Obligations" and "Hotel Union Pension Fund Obligations Date" are hereby deleted and replaced with the following:

"Hotel Union Pension Fund Obligations" means Tenant's obligations to timely pay each Withdrawal Liability Payment and to satisfy in full all withdrawal liability assessed by the Hotel Union Pension Fund and set forth in the Hotel Union Pension Fund Demand Letter dated September 29, 2022 (which amount may be reduced in accordance with Sections 4219 and 4221 of ERISA).

"Hotel Union Pension Fund Obligations Date" means the date that is the earlier of (x) fifteen (15) Business Days after Landlord delivers a Hotel Union Pension Fund Obligations Notice in accordance with this Lease, (y) the date upon which the Construction Loan is refinanced or otherwise repaid in full by Tenant, and (z) the date required for the final Withdrawal Liability Installment Payment to be made in accordance with the Hotel Union Pension Fund Demand Letter dated September 29, 2022.

(ii)        The following definitions are hereby added to Section 1 of the Original Lease:

4885-8090-5280, v. 9                              2

"First Amendment Effective Date" means January 3, 2023.

"First Amendment to Lease" means that certain First Amendment to Ground Lease, dated as of the First Amendment Effective Date, by and between Landlord and Tenant.

"Hotel Union Pension Fund Obligations Notice" has the meaning set forth in Section 57(b)(vi).

"Withdrawal Liability Installment Payment" has the meaning set forth in the First Amendment to Lease.

(iii)     The "and" at the end of clause (iii) of Section 57(b) and the "." at the end of clause (iv) of Section 57(b) of the Original Lease are hereby deleted. In addition, the following paragraphs are added as clauses (v), (vi) and (vii) of Section 57(b) of the Original Lease:

(v)     On or before February 1, 2023 and on every scheduled payment date thereafter, Tenant shall pay the applicable Withdrawal Liability Installment Payment in the amount of $490,888.25 and provide Landlord with written evidence demonstrating that such Withdrawal Liability Installment Payment has been paid in full by such date. Tenant shall pay the remainder of the Hotel Union Pension Fund Obligations in a single, lump sum on the Hotel Union Pension Fund Obligations Date;

(vi)     Notwithstanding anything to the contrary contained herein, Landlord may, at any time, if it determines in its sole but good faith discretion that there is a material risk to the Tenant's ability to proceed with and complete the Multifamily Project in accordance with the Lease (including, without limitation, by way of example only, due to an indication from Construction Lender that it will not fund proceeds of the Construction Loan, any event or communication that could indicate a potential Finding of Harassment or other circumstance that might materially impact Tenant's ability to satisfy the CONH Requirement by the CONH Requirement Outside Date, or any other event or circumstance that might materially increase projected Total Project Costs for the Multifamily Project), upon fifteen (15) Business Days' written notice to Tenant (any such notice, the "Hotel Union Pension Fund Obligations Notice"), require Tenant to pay to the Hotel Union Pension Fund the outstanding balance of the Hotel Union Pension Fund Obligations, in full; and

(vii)     From and after the First Amendment Effective Date until the Hotel Union Pension Fund Obligations Date, Tenant shall make commercially reasonable efforts to work with the Hotel Union Pension Fund to reduce the aggregate amount of the Hotel Union Pension Fund Obligations. Tenant shall keep Landlord reasonably informed as to all such efforts and the status of any such discussions with the Hotel Union Pension Fund, including, without limitation, by providing Landlord with any and all notices, written communications or other material provided to or from the Hotel Pension Union Fund regarding the Hotel Union Pension Fund Obligations.

4.     Governing Law; Ratification. This First Amendment shall be governed by the laws of the State of New York without regard to conflicts of laws principles. Except as otherwise specifically

4885-8090-5280, v. 9     3

amended by this First Amendment, all of the terms of the Original Lease shall remain in full force and effect and are hereby ratified and confirmed by the parties hereto. From and after the First Amendment Effective Date, all references in the Original Lease to the "Lease" shall be deemed references to the Original Lease, as amended by this First Amendment.

5.      Counterparts; Facsimile Signatures. This First Amendment may be executed in more than one counterpart, which, when taken together, shall constitute one instrument. This First Amendment may be executed and delivered by facsimile transmission, electronic mail (e-mail) transmission, or Portable Document Format ("PDF") transmission. Signature pages to this First Amendment delivered by facsimile transmission, electronic mail (e-mail) transmission, or PDF transmission shall be given the same legal force and effect as original signatures.

6.      Incorporation. Sections 41, 42, 43, 44, 45, 46, 53, 55 and 61 of the Original Lease are hereby incorporated by reference as if set forth in full in this First Amendment.

[The remainder of this page is intentionally left blank; signature pages follow]

IN WITNESS WHEREOF, Landlord and Tenant have caused this First Amendment to be executed as of the First Amendment Effective Date.

**LANDLORD**:

**356W58 GROUND LESSOR LLC,**
a Delaware limited liability company

By: _____
Name: Lulle Pah
Title: Authorized Signatory

*[signatures continue on following page]*

*[Signature Page to First Amendment to Ground Lease - Hudson Hotel]*

**TENANT**:

**HUDSON 1701/1706, LLC,**
a Delaware limited liability company

By: _____
Name:   Alberto Smeke Saba
Title:   Authorized Signatory

By: _____
Name:   Salomon Smeke Saba
Title    Authorized Signatory

**HUDSON 1702, LLC,**
a Delaware limited liability company

By: _____
Name:   Alberto Smeke Saba
Title:   Authorized Signatory

By: _____
Name:   Salomon Smeke Saba
Title:   Authorized Signatory

*[Signature Page to First Amendment to Ground Lease - Hudson Hotel]*

## EXHIBIT A

### TENTH FLOOR UNIT LEGAL DESCRIPTION

Lot 1706

**THE CONDOMINIUM UNIT** (hereinafter referred to as the "Unit") in the building (hereinafter referred to as the "Building") known as **353 West 57th Street Condominium** and by the street number **353-361 West 57th Street a/k/a 358-366 West 58th Street**, County of New York, State of New York, said Unit being designated and described as **Unit No. 6** in a Declaration **dated 4/11/1985** made by **Irving Schatz**, pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act") establishing a Plan for condominium ownership of the Building and the Land (hereinafter referred to as the "Land") upon which the Building is situate (which Land is more particularly described in Exhibit A annexed hereto and by this reference made a part hereof), which Declaration was recorded in the Office of the City Register of the City of New York, County of New York, on **4/24/1985 in Reel 902 Page 1** as amended by **First Amendment to Declaration** dated 1/29/1993 and recorded 5/11/1993 in Reel 1969 Page 2286, as amended by **Amended and Restated Declaration** made by Henry Hudson Holdings LLC, Irving Schatz, Adrienne Wechsler and Cheryl Hirsch dated as of 2/12/1999 and recorded 7/16/1999 in Reel 2913 Page 1753 and Amendment to Amended and Restated Declaration dated as of 9/30/1999 and recorded 10/27/1999 in Reel 2979 Page 2159 (which Declaration and Amendments thereto are hereinafter collectively referred to as the "Declaration").  This Unit is also designated as **Tax Lot 1706 in Block 1048** of the County of New York on the Tax Map of the Real Property Assessment Department and on the Floor Plans of the Building, certified by **Butler Rogers Baskett Architects**, and filed with the Real Property Assessment Department **as Condominium Plan No. 208** and also filed in the Office of the City Register of the City of New York, County of New York, on **4/24/1985 as Condominium Map No. 4326** and recorded 4/24/1985 as Reel 8500 Page 4326, as amended by **Amended Condominium Plan No. 208-A** filed 5/11/1993 as **Amended Condominium Map No. 5192** and recorded 5/11/1993 as Reel 9300 Page 5192.

**TOGETHER** with an undivided **3.89067 %** interest in the Common Elements (as such term is defined in the Declaration).

**The Land** on which the Building and Unit are located is situated in the County of New York and State of New York and is more fully described in the Declaration.

4885-8090-5280, v. 9

## EXHIBIT B

## FORM OF AMENDMENT TO MEMORANDUM OF LEASE

(See Attached)

Record and Return to:

Duval & Stachenfeld LLP
555 Madison Avenue, 6th Floor
New York, NY 10022
Attention: Danielle Ash, Esq. & File Manager
File No.: 4308.0014

### FIRST AMENDMENT TO MEMORANDUM OF LEASE

THIS FIRST AMENDMENT TO MEMORANDUM OF LEASE (this "Amendment"), is made as of the _____ day of _____, 202__, between **356W58 GROUND LESSOR LLC**, a Delaware limited liability company ("Landlord"), having an office at Woodlawn Hall at Old Parkland, 3953 Maple Ave., Suite 350, Dallas, Texas 75219, and **HUDSON 1701/1706, LLC** ("Tenant 1") and **HUDSON 1702, LLC** ("Tenant 2"; together with Tenant 1, individually and collectively, "Tenant"), each a Delaware limited liability company, having an address c/o CSC Co-Living 6 St. Johns Lane, New York, New York 10013.

### RECITALS

WHEREAS, Landlord and Tenant entered into that certain Ground Lease, dated as of May 4, 2022, as amended by that certain First Amendment to Ground Lease, dated as of the date hereof (collectively, the "Lease"), which is evidenced by that certain Memorandum of Lease, dated as of May 4, 2022, which is recorded in the Real Estate Records on June 15, 2022 in CRFN 2022000240498 (the "Memorandum of Lease");

WHEREAS, Landlord and Tenant acknowledge that the Tenth Floor Purchase Option (as defined in the Lease) has been exercised and the Tenth Floor Unit (as defined in the Lease) is now part of the Leased Premises and all of the applicable terms and conditions of the Lease shall extend to the Tenth Floor Unit.

WHEREAS, Landlord and Tenant desire to amend the Memorandum of Lease; and

WHEREAS, Landlord and Tenant desire to enter into this Amendment to be recorded in order that third parties will have notice of this Amendment to the Memorandum of Lease .

NOW, THEREFORE, in consideration of the sum of Ten Dollars ($10.00) and for other good and valuable consideration, the receipt and sufficiency of which the parties hereby acknowledge, and intending to be legally bound hereby, Landlord and Tenant agree as follows:

1.    Recitals Incorporated. The foregoing recitals are incorporated by reference into this Section as if set forth in the Section in full.

2.    Legal Description. The legal description as set forth in Exhibit A of the Memorandum of Lease is hereby deleted in entirety and replaced with the legal description attached hereto as Exhibit A and made a part hereof.

4868-5291-7823, v. 4

IN WITNESS WHEREOF, Landlord and Tenant have executed this Amendment as of the day and year first above written.

**LANDLORD:**

**356W58 GROUND LESSOR, LLC,**
a Delaware limited liability company

By: _____
     Name:
     Title:

STATE OF _____ )
                   )   ss.:
COUNTY OF _____ )

On the ___ day of _____ in the year 2022 before me, the undersigned, _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

*[additional signature(s) follow]*

4868-5291-7823, v. 4

**TENANT:**

**HUDSON 1701/1706, LLC,**
a Delaware limited liability company

By: _____
        Name: Alberto Smeke Saba
        Title: Authorized Signatory

By: _____
        Name: Salomon Smeke Saba
        Title: Authorized Signatory

STATE OF _____ )
                            )   ss.:
COUNTY OF _____ )

On the ___ day of _____ in the year 2022 before me, the undersigned, _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

4868-5291-7823, v. 4

**TENANT:**

**HUDSON 1702, LLC,**
a Delaware limited liability company

By: _____
Name: Alberto Smeke Saba
Title: Authorized Signatory

By: _____
Name: Salomon Smeke Saba
Title: Authorized Signatory

STATE OF _____ )
                                          )   ss.:
COUNTY OF _____ )

On the ___ day of _____ in the year 2022 before me, the undersigned, _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

4868-5291-7823, v. 4

## EXHIBIT A

### Description of the Leased Premises

<u>Lots 1701 and 1702</u>

**THE CONDOMINIUM UNITS** (hereinafter referred to as the "Units") in the building (hereinafter referred to as the "Building") known as **353 West 57th Street Condominium** and by the street number **353-361 West 57th Street a/k/a 358-366 West 58th Street,** County of New York, State of New York, said Units being designated and described as **Units Nos. 1 and 2** in a Declaration **dated 4/11/1985** made by **Irving Schatz,** pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act") establishing a Plan for condominium ownership of the Building and the Land (hereinafter referred to as the "Land") upon which the Building is situate (which Land is more particularly described in Exhibit A annexed hereto and by this reference made a part hereof), which Declaration was recorded in the Office of the City Register of the City of New York, County of New York, on **4/24/1985 in** <u>Reel 902 Page 1</u> as amended by **First Amendment to Declaration** dated 1/29/1993 and recorded 5/11/1993 in <u>Reel 1969 Page 2286</u>, as amended by **Amended and Restated Declaration** made by Henry Hudson Holdings LLC, Irving Schatz, Adrienne Wechsler and Cheryl Hirsch dated as of 2/12/1999 and recorded 7/16/1999 in <u>Reel 2913 Page 1753</u> and Amendment to Amended and Restated Declaration dated as of 9/30/1999 and recorded 10/27/1999 in <u>Reel 2979 Page 2159</u> (which Declaration and Amendments thereto are hereinafter collectively referred to as the "Declaration"). These Units are also designated as **Tax Lots 1701 and 1702 in Block 1048** of the County of New York on the Tax Map of the Real Property Assessment Department and on the Floor Plans of the Building, certified by **Butler Rogers Baskett Architects,** and filed with the Real Property Assessment Department **as Condominium Plan No. 208** and also filed in the Office of the City Register of the City of New York, County of New York, on **4/24/1985 as Condominium Map No. 4326** and recorded 4/24/1985 as Reel 8500 Page 4326, as amended by **Amended Condominium Plan No. 208-A** filed 5/11/1993 as **Amended Condominium Map No. 5192** and recorded 5/11/1993 as Reel 9300 Page 5192.

**TOGETHER** with an undivided **44.05105 %** interest (as to Unit 1, Lot 1701) and **46.94011 %** interest (as to Unit 2, Lot 1702) in the Common Elements (as such term is defined in the Declaration).

**The Land** on which the Building and Units are located is situated in the County of New York and State of New York and is more fully described in the Declaration.

# EXHIBIT A

**ALL THAT CERTAIN** plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County of New York, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of West 57th Street, distant 20 feet easterly from the corner formed by the intersection of the easterly side of Ninth Avenue with the northerly side of West 57th Street;

RUNNING THENCE easterly along the said northerly side of West 57th Street, 155 feet;

THENCE northerly parallel with Ninth Avenue, 200 feet 10 inches to the southerly side of West 58th Street;

THENCE westerly along the said southerly side of West 58th Street, 135 feet to a point distant 40 feet easterly from the corner formed by the intersection of the southerly side of West 58th Street with the easterly side of Ninth Avenue;

THENCE southerly parallel with Ninth Avenue and part of the distance through a party wall, 100 feet 10 inches;

THENCE westerly parallel, more or less, with West 58th Street, 20 feet;

THENCE southerly and part of the way through a party wall, 100 feet to the northerly side of West 57th Street, the point or place of BEGINNING.

For Information Only:   Said premises are known as 353 West 57th Street Condominium, 353-361 West 57th Street a/k/a 356 West 58th Street, Units 1 and 2, New York, NY and designated as Block 1048 Lots 1701 and 1702 as shown on the Tax Map of the City of New York, County of New York

4868-5291-7823, v. 4

Lot 1706

**THE CONDOMINIUM UNIT** (hereinafter referred to as the "Unit") in the building (hereinafter referred to as the "Building") known as **353 West 57th Street Condominium** and by the street number **353-361 West 57th Street a/k/a 358-366 West 58th Street,** County of New York, State of New York, said Unit being designated and described as **Unit No. 6** in a Declaration **dated 4/11/1985** made by **Irving Schatz,** pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act") establishing a Plan for condominium ownership of the Building and the Land (hereinafter referred to as the "Land") upon which the Building is situate (which Land is more particularly described in Exhibit A annexed hereto and by this reference made a part hereof), which Declaration was recorded in the Office of the City Register of the City of New York, County of New York, on **4/24/1985 in** Reel 902 Page 1 as amended by **First Amendment to Declaration** dated 1/29/1993 and recorded 5/11/1993 in Reel 1969 Page 2286, as amended by **Amended and Restated Declaration** made by Henry Hudson Holdings LLC, Irving Schatz, Adrienne Wechsler and Cheryl Hirsch dated as of 2/12/1999 and recorded 7/16/1999 in Reel 2913 Page 1753 and Amendment to Amended and Restated Declaration dated as of 9/30/1999 and recorded 10/27/1999 in Reel 2979 Page 2159 (which Declaration and Amendments thereto are hereinafter collectively referred to as the "Declaration"). This Unit is also designated as **Tax Lot 1706 in Block 1048** of the County of New York on the Tax Map of the Real Property Assessment Department and on the Floor Plans of the Building, certified by **Butler Rogers Baskett Architects,** and filed with the Real Property Assessment Department **as Condominium Plan No. 208** and also filed in the Office of the City Register of the City of New York, County of New York, on **4/24/1985 as Condominium Map No. 4326** and recorded 4/24/1985 as Reel 8500 Page 4326, as amended by **Amended Condominium Plan No. 208-A** filed 5/11/1993 as **Amended Condominium Map No. 5192** and recorded 5/11/1993 as Reel 9300 Page 5192.

**TOGETHER** with an undivided **3.89067 %** interest in the Common Elements (as such term is defined in the Declaration).

**The Land** on which the Building and Unit are located is situated in the County of New York and State of New York and is more fully described in the Declaration.

## EXHIBIT C

## SECTION 467 LOAN SIDE LETTER

(Attached hereto)

**356W58 GROUND LESSOR LLC**
c/o MSP Capital Investments, L.L.C.
Woodlawn Hall at Old Parkland,
3953 Maple Ave., Suite 350
Dallas, Texas 75219

January __, 2023

**VIA ELECTRONIC MAIL**
HUDSON 1701/1706, LLC and
HUDSON 1702, LLC
[c/o CSC Co-Living
6 St. Johns Lane
New York, New York 10013
Attention: Salomon Smeke Saba and Alberto Smeke Saba
Email: ss@csc-coliving.com
        as@csc-coliving.com ]

> Re:    Ground Lease (as amended, restated, and/or supplemented from time to time, the "Lease")
> dated as of May 4, 2022, between 356W58 Ground Lessor LLC (together with its
> successors and assigns, "Landlord"), and Hudson 1701/1706, LLC and Hudson 1702, LLC
> (collectively, on a joint and several basis, "Tenant") with respect to 353 West 57th Street
> Condominium, Condominium Units No. 1 and 2, New York, New York, Block: 1048, Lots:
> 1701 and 1702; the Sublease Agreement dated as of May 4, 2022 between Landlord and
> Tenant (the "Sublease") and that certain Closing Agreement (the "Closing Agreement"),
> dated as of January __, 2023 between Landlord and Tenant with respect to the purchase of
> the Tenth Floor Unit (as defined in the Lease).

Dear Sal and Alberto:

Reference is hereby made to the Lease and the Closing Agreement. Capitalized terms used herein and not herein defined shall have the respective meanings given to them in the Lease, the Sublease and the Closing Agreement.

For good and valuable consideration (the receipt and sufficiency of which are hereby acknowledged), Landlord and Tenant hereby agree as follows:

(A) Tenant will receive a credit of $37,120.20 against the Tenth Floor Tenant Purchase Contribution under the Lease, representing an abatement of Net Rent under the Sublease for the short period of December [12th] through 31st of 2022.

(B) Pursuant to Section 4(a) of the Lease and Section [__] of the Closing Agreement, commencing on [December__, 2022], Tenant's Base Rent shall increase by $400,000 per year, attributable to the Tenant's lease of the Tenth Floor Unit and shall begin to accrue on such date. On [January __, 2023], Tenant shall pay Landlord [$21,505.38], representing the Base Rent accrued for the period beginning [December 12, 2022] and ending on December 31, 2022 (the "Accrued Rent") under the Lease.

4853-5123-7183, v. 7

(C) Pursuant to Section 47(e)-(f) of the Lease and Section [___] of the Closing Agreement:

1. For all U.S. federal, state and local tax purposes, Landlord and Tenant shall treat the Tenth Floor Tenant Purchase Contribution, together with Tenant's payment to Landlord of any out-of-pocket costs and expenses incurred by Landlord to exercise the Tenth Floor Purchase Option which are chargeable to capital account or basis (together with the Tenth Floor Tenant Purchase Contribution, the "Tenth Floor 467 Amount") as a payment of Additional Rent that is treated as a loan pursuant to Section 467 of the Code. The Tenth Floor 467 Amount shall be the initial principal balance of the loan. Interest on the outstanding principal balance of the loan shall accrue at a rate equal to 4.67%, compounded on a monthly basis (which rate is equal to 110% of the long-term Applicable Federal Rate for December 2022, compounded on a monthly basis). The Tenth Floor 467 Amount shall be allocated and accrued as specified on Exhibit A attached hereto, and such allocations of the Tenth Floor 467 Amount shall represent Tenant's accrued liability on account of the use of the Tenth Floor Unit during the Term. Such allocations are intended to constitute a specific allocation of fixed rent within the meaning of Treasury Regulations Section 1.467-1(c)(2)(ii)(A) to the applicable period and in the respective amounts set forth on Exhibit A. The principal amounts set forth in the column of Exhibit A entitled "Principal" shall be deemed paid on the date referenced in the column of Exhibit A entitled "Date" for the next succeeding period (other than the principal amount for the final period, which shall be deemed paid on July 1, 2054). The interest and rental amounts referenced in the columns of Exhibit A entitled "Interest" and "Rent" shall accrue in each period starting on the date referenced in the column of Exhibit A entitled "Date", and deemed paid as of the first date of the next succeeding period (other than the interest and rental payments that accrue in the final period, which shall be deemed paid on July 1, 2054).

2. As attached hereto, Exhibit A has been prepared so that the principal amounts set forth in the column of Exhibit A entitled "Principal" correspond to the notional depreciation that would be allowed on an investment in residential rental property that is placed in service in July 2024. If the placed in service date of the Tenth Floor Unit is delayed beyond that month, Landlord shall modify the date and rental amounts referenced in the "Date" and "Rent" columns of Exhibit A, to reflect the actual placed in service date (which modification shall be subject to Tenant's prior written approval, not to be unreasonably withheld, conditioned or delayed), and references in this letter (this "Letter") to Exhibit A shall thereafter refer to Exhibit A as so adjusted. Further, the Tenth Floor 467 Amount shall accrue interest only from the Effective Date of the Closing Agreement until the date the Tenth Floor Unit is placed in service.

3. In preparing Exhibit A, we have assumed a Closing Date of January 3, 2023 and an estimate of the Tenth Floor 467 Amount, which is subject to change. Thus, Exhibit A will be updated for the correct Closing Date and final Tenth Floor 467 Amount once confirmed.

4. For purposes of U.S. federal, state and local tax returns filed by Landlord and Tenant (as well as any income tax returns on which their respective incomes are included), Landlord and Tenant shall (i) accrue rental income and rental expense, respectively, during the Term in accordance with the column of Exhibit A entitled "Rent" and paragraph 1 of this Letter, and (ii) deduct interest expense and accrue interest income, respectively, in accordance with the column of Exhibit A entitled "Interest" and paragraph 1 of this Letter. Tenant shall reasonably

cooperate with Landlord with respect to any challenge by any tax authority of any of the positions set forth herein or Exhibit A.

5. Upon the request of Landlord, Tenant shall, to the extent it is legally entitled to do so, deliver to Landlord duly executed copies of any form prescribed by applicable Legal Requirements as a basis for claiming exemption from or a reduction in any U.S. federal withholding tax, together with such supplementary documentation as may be prescribed by applicable Legal Requirements, to permit Landlord to determine the withholding or deduction required to be made.

(D) Pursuant to Section 5(d) of the Lease and the Side Letter dated August 29, 2022 between Landlord and Tenant, Exhibit B, attached hereto, shall replace Exhibit A of the Side Letter, to reflect the interest accrued on the prepaid rent subject to that Side Letter from the date thereof.

This Letter shall inure to the benefit of, and be binding, upon Landlord, Tenant and their respective successors and assigns.

Tenant's failure to comply with any of the obligations set forth in this Letter shall constitute a Default under the Lease and, if not cured within thirty (30) days following delivery of Landlord's notice of such Default, shall be an immediate Event of Default under the Lease, entitling Landlord to all the rights and remedies set forth in the Lease.

Any dispute among the parties resulting from the implementation of this letter shall constitute a Dispute and be resolved by arbitration in accordance with Section 50 of the Lease.

This Letter may be executed in one or more counterparts, or by the parties executing separate counterpart signature pages, including facsimiles transmitted by telecopier or counterparts being sent by email or other electronic medium (including, without limitation, DocuSign and AdobeSign), all of which shall be deemed to be original counterparts of this letter and all of which taken together shall constitute one and the same agreement. This Letter shall be governed by the laws of the State of New York, without regard to conflicts of laws principles.

Please acknowledge your acceptance of, and agreement with, the foregoing by countersigning this Letter in the space provided below.

*[Remainder of Page Intentionally Left Blank; Signatures Follow]*

4853-5123-7183, v. 7

Sincerely,

356W58 GROUND LESSOR LLC,
a Delaware limited liability company


By: _____
Name:
Title:

Acknowledged and Agreed to by:

HUDSON 1701/1706, LLC,
a Delaware limited liability company


By: _____
Name:
Title:


HUDSON 1702, LLC,
a Delaware limited liability company


By: _____
Name:
Title:

Exhibit A: Additional Rent Accrual
and Section 467 Loan Amortization

| Date | 467 Loan Balance | Interest @ 4.67% | Principal | Rent |
|---|---|---|---|---|
| 1/3/2023 | 2,358,031.80 | 8,564.90 | 0.00 | 8,564.90 |
| 2/1/2023 | 2,358,031.80 | 9,176.67 | 0.00 | 9,176.67 |
| 3/1/2023 | 2,358,031.80 | 9,176.67 | 0.00 | 9,176.67 |
| 4/1/2023 | 2,358,031.80 | 9,176.67 | 0.00 | 9,176.67 |
| 5/1/2023 | 2,358,031.80 | 9,176.67 | 0.00 | 9,176.67 |
| 6/1/2023 | 2,358,031.80 | 9,176.67 | 0.00 | 9,176.67 |
| 7/1/2023 | 2,358,031.80 | 9,176.67 | 0.00 | 9,176.67 |
| 8/1/2023 | 2,358,031.80 | 9,176.67 | 0.00 | 9,176.67 |
| 9/1/2023 | 2,358,031.80 | 9,176.67 | 0.00 | 9,176.67 |
| 10/1/2023 | 2,358,031.80 | 9,176.67 | 0.00 | 9,176.67 |
| 11/1/2023 | 2,358,031.80 | 9,176.67 | 0.00 | 9,176.67 |
| 12/1/2023 | 2,358,031.80 | 9,176.67 | 0.00 | 9,176.67 |
| 1/1/2024 | 2,358,031.80 | 9,176.67 | 0.00 | 9,176.67 |
| 2/1/2024 | 2,358,031.80 | 9,176.67 | 0.00 | 9,176.67 |
| 3/1/2024 | 2,358,031.80 | 9,176.67 | 0.00 | 9,176.67 |
| 4/1/2024 | 2,358,031.80 | 9,176.67 | 0.00 | 9,176.67 |
| 5/1/2024 | 2,358,031.80 | 9,176.67 | 0.00 | 9,176.67 |
| 6/1/2024 | 2,358,031.80 | 9,176.67 | 0.00 | 9,176.67 |
| 7/1/2024 | 2,358,031.80 | 9,176.67 | 3,275.04 | 12,451.72 |
| 8/1/2024 | 2,354,756.76 | 9,163.93 | 6,550.09 | 15,714.02 |
| 9/1/2024 | 2,348,206.67 | 9,138.44 | 6,550.09 | 15,688.53 |
| 10/1/2024 | 2,341,656.58 | 9,112.95 | 6,550.09 | 15,663.04 |
| 11/1/2024 | 2,335,106.49 | 9,087.46 | 6,550.09 | 15,637.54 |
| 12/1/2024 | 2,328,556.40 | 9,061.97 | 6,550.09 | 15,612.05 |
| 1/1/2025 | 2,322,006.31 | 9,036.47 | 6,550.09 | 15,586.56 |
| 2/1/2025 | 2,315,456.23 | 9,010.98 | 6,550.09 | 15,561.07 |
| 3/1/2025 | 2,308,906.14 | 8,985.49 | 6,550.09 | 15,535.58 |
| 4/1/2025 | 2,302,356.05 | 8,960.00 | 6,550.09 | 15,510.09 |
| 5/1/2025 | 2,295,805.96 | 8,934.51 | 6,550.09 | 15,484.60 |
| 6/1/2025 | 2,289,255.87 | 8,909.02 | 6,550.09 | 15,459.11 |
| 7/1/2025 | 2,282,705.78 | 8,883.53 | 6,550.09 | 15,433.62 |
| 8/1/2025 | 2,276,155.70 | 8,858.04 | 6,550.09 | 15,408.13 |
| 9/1/2025 | 2,269,605.61 | 8,832.55 | 6,550.09 | 15,382.64 |
| 10/1/2025 | 2,263,055.52 | 8,807.06 | 6,550.09 | 15,357.15 |
| 11/1/2025 | 2,256,505.43 | 8,781.57 | 6,550.09 | 15,331.66 |
| 12/1/2025 | 2,249,955.34 | 8,756.08 | 6,550.09 | 15,306.16 |
| 1/1/2026 | 2,243,405.25 | 8,730.59 | 6,550.09 | 15,280.67 |
| 2/1/2026 | 2,236,855.17 | 8,705.09 | 6,550.09 | 15,255.18 |
| 3/1/2026 | 2,230,305.08 | 8,679.60 | 6,550.09 | 15,229.69 |
| 4/1/2026 | 2,223,754.99 | 8,654.11 | 6,550.09 | 15,204.20 |
| 5/1/2026 | 2,217,204.90 | 8,628.62 | 6,550.09 | 15,178.71 |
| 6/1/2026 | 2,210,654.81 | 8,603.13 | 6,550.09 | 15,153.22 |
| 7/1/2026 | 2,204,104.72 | 8,577.64 | 6,550.09 | 15,127.73 |

Exhibit A: Additional Rent Accrual
and Section 467 Loan Amortization

| Date | 467 Loan Balance | Interest @ 4.67% | Principal | Rent |
|---|---|---|---|---|
| 8/1/2026 | 2,197,554.64 | 8,552.15 | 6,550.09 | 15,102.24 |
| 9/1/2026 | 2,191,004.55 | 8,526.66 | 6,550.09 | 15,076.75 |
| 10/1/2026 | 2,184,454.46 | 8,501.17 | 6,550.09 | 15,051.26 |
| 11/1/2026 | 2,177,904.37 | 8,475.68 | 6,550.09 | 15,025.77 |
| 12/1/2026 | 2,171,354.28 | 8,450.19 | 6,550.09 | 15,000.28 |
| 1/1/2027 | 2,164,804.19 | 8,424.70 | 6,550.09 | 14,974.78 |
| 2/1/2027 | 2,158,254.11 | 8,399.21 | 6,550.09 | 14,949.29 |
| 3/1/2027 | 2,151,704.02 | 8,373.71 | 6,550.09 | 14,923.80 |
| 4/1/2027 | 2,145,153.93 | 8,348.22 | 6,550.09 | 14,898.31 |
| 5/1/2027 | 2,138,603.84 | 8,322.73 | 6,550.09 | 14,872.82 |
| 6/1/2027 | 2,132,053.75 | 8,297.24 | 6,550.09 | 14,847.33 |
| 7/1/2027 | 2,125,503.66 | 8,271.75 | 6,550.09 | 14,821.84 |
| 8/1/2027 | 2,118,953.58 | 8,246.26 | 6,550.09 | 14,796.35 |
| 9/1/2027 | 2,112,403.49 | 8,220.77 | 6,550.09 | 14,770.86 |
| 10/1/2027 | 2,105,853.40 | 8,195.28 | 6,550.09 | 14,745.37 |
| 11/1/2027 | 2,099,303.31 | 8,169.79 | 6,550.09 | 14,719.88 |
| 12/1/2027 | 2,092,753.22 | 8,144.30 | 6,550.09 | 14,694.39 |
| 1/1/2028 | 2,086,203.13 | 8,118.81 | 6,550.09 | 14,668.90 |
| 2/1/2028 | 2,079,653.05 | 8,093.32 | 6,550.09 | 14,643.40 |
| 3/1/2028 | 2,073,102.96 | 8,067.83 | 6,550.09 | 14,617.91 |
| 4/1/2028 | 2,066,552.87 | 8,042.33 | 6,550.09 | 14,592.42 |
| 5/1/2028 | 2,060,002.78 | 8,016.84 | 6,550.09 | 14,566.93 |
| 6/1/2028 | 2,053,452.69 | 7,991.35 | 6,550.09 | 14,541.44 |
| 7/1/2028 | 2,046,902.60 | 7,965.86 | 6,550.09 | 14,515.95 |
| 8/1/2028 | 2,040,352.52 | 7,940.37 | 6,550.09 | 14,490.46 |
| 9/1/2028 | 2,033,802.43 | 7,914.88 | 6,550.09 | 14,464.97 |
| 10/1/2028 | 2,027,252.34 | 7,889.39 | 6,550.09 | 14,439.48 |
| 11/1/2028 | 2,020,702.25 | 7,863.90 | 6,550.09 | 14,413.99 |
| 12/1/2028 | 2,014,152.16 | 7,838.41 | 6,550.09 | 14,388.50 |
| 1/1/2029 | 2,007,602.07 | 7,812.92 | 6,550.09 | 14,363.01 |
| 2/1/2029 | 2,001,051.99 | 7,787.43 | 6,550.09 | 14,337.52 |
| 3/1/2029 | 1,994,501.90 | 7,761.94 | 6,550.09 | 14,312.02 |
| 4/1/2029 | 1,987,951.81 | 7,736.45 | 6,550.09 | 14,286.53 |
| 5/1/2029 | 1,981,401.72 | 7,710.96 | 6,550.09 | 14,261.04 |
| 6/1/2029 | 1,974,851.63 | 7,685.46 | 6,550.09 | 14,235.55 |
| 7/1/2029 | 1,968,301.54 | 7,659.97 | 6,550.09 | 14,210.06 |
| 8/1/2029 | 1,961,751.46 | 7,634.48 | 6,550.09 | 14,184.57 |
| 9/1/2029 | 1,955,201.37 | 7,608.99 | 6,550.09 | 14,159.08 |
| 10/1/2029 | 1,948,651.28 | 7,583.50 | 6,550.09 | 14,133.59 |
| 11/1/2029 | 1,942,101.19 | 7,558.01 | 6,550.09 | 14,108.10 |
| 12/1/2029 | 1,935,551.10 | 7,532.52 | 6,550.09 | 14,082.61 |
| 1/1/2030 | 1,929,001.01 | 7,507.03 | 6,550.09 | 14,057.12 |
| 2/1/2030 | 1,922,450.93 | 7,481.54 | 6,550.09 | 14,031.63 |

Exhibit A: Additional Rent Accrual
and Section 467 Loan Amortization

| Date | 467 Loan Balance | Interest @ 4.67% | Principal | Rent |
|---|---|---|---|---|
| 3/1/2030 | 1,915,900.84 | 7,456.05 | 6,550.09 | 14,006.14 |
| 4/1/2030 | 1,909,350.75 | 7,430.56 | 6,550.09 | 13,980.64 |
| 5/1/2030 | 1,902,800.66 | 7,405.07 | 6,550.09 | 13,955.15 |
| 6/1/2030 | 1,896,250.57 | 7,379.58 | 6,550.09 | 13,929.66 |
| 7/1/2030 | 1,889,700.48 | 7,354.08 | 6,550.09 | 13,904.17 |
| 8/1/2030 | 1,883,150.40 | 7,328.59 | 6,550.09 | 13,878.68 |
| 9/1/2030 | 1,876,600.31 | 7,303.10 | 6,550.09 | 13,853.19 |
| 10/1/2030 | 1,870,050.22 | 7,277.61 | 6,550.09 | 13,827.70 |
| 11/1/2030 | 1,863,500.13 | 7,252.12 | 6,550.09 | 13,802.21 |
| 12/1/2030 | 1,856,950.04 | 7,226.63 | 6,550.09 | 13,776.72 |
| 1/1/2031 | 1,850,399.95 | 7,201.14 | 6,550.09 | 13,751.23 |
| 2/1/2031 | 1,843,849.87 | 7,175.65 | 6,550.09 | 13,725.74 |
| 3/1/2031 | 1,837,299.78 | 7,150.16 | 6,550.09 | 13,700.25 |
| 4/1/2031 | 1,830,749.69 | 7,124.67 | 6,550.09 | 13,674.76 |
| 5/1/2031 | 1,824,199.60 | 7,099.18 | 6,550.09 | 13,649.27 |
| 6/1/2031 | 1,817,649.51 | 7,073.69 | 6,550.09 | 13,623.77 |
| 7/1/2031 | 1,811,099.42 | 7,048.20 | 6,550.09 | 13,598.28 |
| 8/1/2031 | 1,804,549.34 | 7,022.70 | 6,550.09 | 13,572.79 |
| 9/1/2031 | 1,797,999.25 | 6,997.21 | 6,550.09 | 13,547.30 |
| 10/1/2031 | 1,791,449.16 | 6,971.72 | 6,550.09 | 13,521.81 |
| 11/1/2031 | 1,784,899.07 | 6,946.23 | 6,550.09 | 13,496.32 |
| 12/1/2031 | 1,778,348.98 | 6,920.74 | 6,550.09 | 13,470.83 |
| 1/1/2032 | 1,771,798.89 | 6,895.25 | 6,550.09 | 13,445.34 |
| 2/1/2032 | 1,765,248.81 | 6,869.76 | 6,550.09 | 13,419.85 |
| 3/1/2032 | 1,758,698.72 | 6,844.27 | 6,550.09 | 13,394.36 |
| 4/1/2032 | 1,752,148.63 | 6,818.78 | 6,550.09 | 13,368.87 |
| 5/1/2032 | 1,745,598.54 | 6,793.29 | 6,550.09 | 13,343.38 |
| 6/1/2032 | 1,739,048.45 | 6,767.80 | 6,550.09 | 13,317.89 |
| 7/1/2032 | 1,732,498.36 | 6,742.31 | 6,550.09 | 13,292.39 |
| 8/1/2032 | 1,725,948.28 | 6,716.82 | 6,550.09 | 13,266.90 |
| 9/1/2032 | 1,719,398.19 | 6,691.32 | 6,550.09 | 13,241.41 |
| 10/1/2032 | 1,712,848.10 | 6,665.83 | 6,550.09 | 13,215.92 |
| 11/1/2032 | 1,706,298.01 | 6,640.34 | 6,550.09 | 13,190.43 |
| 12/1/2032 | 1,699,747.92 | 6,614.85 | 6,550.09 | 13,164.94 |
| 1/1/2033 | 1,693,197.83 | 6,589.36 | 6,550.09 | 13,139.45 |
| 2/1/2033 | 1,686,647.75 | 6,563.87 | 6,550.09 | 13,113.96 |
| 3/1/2033 | 1,680,097.66 | 6,538.38 | 6,550.09 | 13,088.47 |
| 4/1/2033 | 1,673,547.57 | 6,512.89 | 6,550.09 | 13,062.98 |
| 5/1/2033 | 1,666,997.48 | 6,487.40 | 6,550.09 | 13,037.49 |
| 6/1/2033 | 1,660,447.39 | 6,461.91 | 6,550.09 | 13,012.00 |
| 7/1/2033 | 1,653,897.30 | 6,436.42 | 6,550.09 | 12,986.51 |
| 8/1/2033 | 1,647,347.22 | 6,410.93 | 6,550.09 | 12,961.01 |
| 9/1/2033 | 1,640,797.13 | 6,385.44 | 6,550.09 | 12,935.52 |

Exhibit A: Additional Rent Accrual
and Section 467 Loan Amortization

| Date | 467 Loan Balance | Interest @ 4.67% | Principal | Rent |
|---|---|---|---|---|
| 10/1/2033 | 1,634,247.04 | 6,359.94 | 6,550.09 | 12,910.03 |
| 11/1/2033 | 1,627,696.95 | 6,334.45 | 6,550.09 | 12,884.54 |
| 12/1/2033 | 1,621,146.86 | 6,308.96 | 6,550.09 | 12,859.05 |
| 1/1/2034 | 1,614,596.77 | 6,283.47 | 6,550.09 | 12,833.56 |
| 2/1/2034 | 1,608,046.69 | 6,257.98 | 6,550.09 | 12,808.07 |
| 3/1/2034 | 1,601,496.60 | 6,232.49 | 6,550.09 | 12,782.58 |
| 4/1/2034 | 1,594,946.51 | 6,207.00 | 6,550.09 | 12,757.09 |
| 5/1/2034 | 1,588,396.42 | 6,181.51 | 6,550.09 | 12,731.60 |
| 6/1/2034 | 1,581,846.33 | 6,156.02 | 6,550.09 | 12,706.11 |
| 7/1/2034 | 1,575,296.24 | 6,130.53 | 6,550.09 | 12,680.62 |
| 8/1/2034 | 1,568,746.16 | 6,105.04 | 6,550.09 | 12,655.13 |
| 9/1/2034 | 1,562,196.07 | 6,079.55 | 6,550.09 | 12,629.63 |
| 10/1/2034 | 1,555,645.98 | 6,054.06 | 6,550.09 | 12,604.14 |
| 11/1/2034 | 1,549,095.89 | 6,028.56 | 6,550.09 | 12,578.65 |
| 12/1/2034 | 1,542,545.80 | 6,003.07 | 6,550.09 | 12,553.16 |
| 1/1/2035 | 1,535,995.71 | 5,977.58 | 6,550.09 | 12,527.67 |
| 2/1/2035 | 1,529,445.63 | 5,952.09 | 6,550.09 | 12,502.18 |
| 3/1/2035 | 1,522,895.54 | 5,926.60 | 6,550.09 | 12,476.69 |
| 4/1/2035 | 1,516,345.45 | 5,901.11 | 6,550.09 | 12,451.20 |
| 5/1/2035 | 1,509,795.36 | 5,875.62 | 6,550.09 | 12,425.71 |
| 6/1/2035 | 1,503,245.27 | 5,850.13 | 6,550.09 | 12,400.22 |
| 7/1/2035 | 1,496,695.18 | 5,824.64 | 6,550.09 | 12,374.73 |
| 8/1/2035 | 1,490,145.10 | 5,799.15 | 6,550.09 | 12,349.24 |
| 9/1/2035 | 1,483,595.01 | 5,773.66 | 6,550.09 | 12,323.75 |
| 10/1/2035 | 1,477,044.92 | 5,748.17 | 6,550.09 | 12,298.25 |
| 11/1/2035 | 1,470,494.83 | 5,722.68 | 6,550.09 | 12,272.76 |
| 12/1/2035 | 1,463,944.74 | 5,697.18 | 6,550.09 | 12,247.27 |
| 1/1/2036 | 1,457,394.65 | 5,671.69 | 6,550.09 | 12,221.78 |
| 2/1/2036 | 1,450,844.57 | 5,646.20 | 6,550.09 | 12,196.29 |
| 3/1/2036 | 1,444,294.48 | 5,620.71 | 6,550.09 | 12,170.80 |
| 4/1/2036 | 1,437,744.39 | 5,595.22 | 6,550.09 | 12,145.31 |
| 5/1/2036 | 1,431,194.30 | 5,569.73 | 6,550.09 | 12,119.82 |
| 6/1/2036 | 1,424,644.21 | 5,544.24 | 6,550.09 | 12,094.33 |
| 7/1/2036 | 1,418,094.12 | 5,518.75 | 6,550.09 | 12,068.84 |
| 8/1/2036 | 1,411,544.04 | 5,493.26 | 6,550.09 | 12,043.35 |
| 9/1/2036 | 1,404,993.95 | 5,467.77 | 6,550.09 | 12,017.86 |
| 10/1/2036 | 1,398,443.86 | 5,442.28 | 6,550.09 | 11,992.37 |
| 11/1/2036 | 1,391,893.77 | 5,416.79 | 6,550.09 | 11,966.87 |
| 12/1/2036 | 1,385,343.68 | 5,391.30 | 6,550.09 | 11,941.38 |
| 1/1/2037 | 1,378,793.59 | 5,365.81 | 6,550.09 | 11,915.89 |
| 2/1/2037 | 1,372,243.51 | 5,340.31 | 6,550.09 | 11,890.40 |
| 3/1/2037 | 1,365,693.42 | 5,314.82 | 6,550.09 | 11,864.91 |
| 4/1/2037 | 1,359,143.33 | 5,289.33 | 6,550.09 | 11,839.42 |

Exhibit A: Additional Rent Accrual
and Section 467 Loan Amortization

| Date | 467 Loan Balance | Interest @ 4.67% | Principal | Rent |
|---|---|---|---|---|
| 5/1/2037 | 1,352,593.24 | 5,263.84 | 6,550.09 | 11,813.93 |
| 6/1/2037 | 1,346,043.15 | 5,238.35 | 6,550.09 | 11,788.44 |
| 7/1/2037 | 1,339,493.06 | 5,212.86 | 6,550.09 | 11,762.95 |
| 8/1/2037 | 1,332,942.98 | 5,187.37 | 6,550.09 | 11,737.46 |
| 9/1/2037 | 1,326,392.89 | 5,161.88 | 6,550.09 | 11,711.97 |
| 10/1/2037 | 1,319,842.80 | 5,136.39 | 6,550.09 | 11,686.48 |
| 11/1/2037 | 1,313,292.71 | 5,110.90 | 6,550.09 | 11,660.99 |
| 12/1/2037 | 1,306,742.62 | 5,085.41 | 6,550.09 | 11,635.50 |
| 1/1/2038 | 1,300,192.53 | 5,059.92 | 6,550.09 | 11,610.00 |
| 2/1/2038 | 1,293,642.45 | 5,034.43 | 6,550.09 | 11,584.51 |
| 3/1/2038 | 1,287,092.36 | 5,008.93 | 6,550.09 | 11,559.02 |
| 4/1/2038 | 1,280,542.27 | 4,983.44 | 6,550.09 | 11,533.53 |
| 5/1/2038 | 1,273,992.18 | 4,957.95 | 6,550.09 | 11,508.04 |
| 6/1/2038 | 1,267,442.09 | 4,932.46 | 6,550.09 | 11,482.55 |
| 7/1/2038 | 1,260,892.00 | 4,906.97 | 6,550.09 | 11,457.06 |
| 8/1/2038 | 1,254,341.92 | 4,881.48 | 6,550.09 | 11,431.57 |
| 9/1/2038 | 1,247,791.83 | 4,855.99 | 6,550.09 | 11,406.08 |
| 10/1/2038 | 1,241,241.74 | 4,830.50 | 6,550.09 | 11,380.59 |
| 11/1/2038 | 1,234,691.65 | 4,805.01 | 6,550.09 | 11,355.10 |
| 12/1/2038 | 1,228,141.56 | 4,779.52 | 6,550.09 | 11,329.61 |
| 1/1/2039 | 1,221,591.47 | 4,754.03 | 6,550.09 | 11,304.12 |
| 2/1/2039 | 1,215,041.39 | 4,728.54 | 6,550.09 | 11,278.62 |
| 3/1/2039 | 1,208,491.30 | 4,703.05 | 6,550.09 | 11,253.13 |
| 4/1/2039 | 1,201,941.21 | 4,677.55 | 6,550.09 | 11,227.64 |
| 5/1/2039 | 1,195,391.12 | 4,652.06 | 6,550.09 | 11,202.15 |
| 6/1/2039 | 1,188,841.03 | 4,626.57 | 6,550.09 | 11,176.66 |
| 7/1/2039 | 1,182,290.94 | 4,601.08 | 6,550.09 | 11,151.17 |
| 8/1/2039 | 1,175,740.86 | 4,575.59 | 6,550.09 | 11,125.68 |
| 9/1/2039 | 1,169,190.77 | 4,550.10 | 6,550.09 | 11,100.19 |
| 10/1/2039 | 1,162,640.68 | 4,524.61 | 6,550.09 | 11,074.70 |
| 11/1/2039 | 1,156,090.59 | 4,499.12 | 6,550.09 | 11,049.21 |
| 12/1/2039 | 1,149,540.50 | 4,473.63 | 6,550.09 | 11,023.72 |
| 1/1/2040 | 1,142,990.41 | 4,448.14 | 6,550.09 | 10,998.23 |
| 2/1/2040 | 1,136,440.33 | 4,422.65 | 6,550.09 | 10,972.74 |
| 3/1/2040 | 1,129,890.24 | 4,397.16 | 6,550.09 | 10,947.24 |
| 4/1/2040 | 1,123,340.15 | 4,371.67 | 6,550.09 | 10,921.75 |
| 5/1/2040 | 1,116,790.06 | 4,346.17 | 6,550.09 | 10,896.26 |
| 6/1/2040 | 1,110,239.97 | 4,320.68 | 6,550.09 | 10,870.77 |
| 7/1/2040 | 1,103,689.88 | 4,295.19 | 6,550.09 | 10,845.28 |
| 8/1/2040 | 1,097,139.80 | 4,269.70 | 6,550.09 | 10,819.79 |
| 9/1/2040 | 1,090,589.71 | 4,244.21 | 6,550.09 | 10,794.30 |
| 10/1/2040 | 1,084,039.62 | 4,218.72 | 6,550.09 | 10,768.81 |
| 11/1/2040 | 1,077,489.53 | 4,193.23 | 6,550.09 | 10,743.32 |

Exhibit A: Additional Rent Accrual
and Section 467 Loan Amortization

| Date | 467 Loan Balance | Interest @ 4.67% | Principal | Rent |
|---|---|---|---|---|
| 12/1/2040 | 1,070,939.44 | 4,167.74 | 6,550.09 | 10,717.83 |
| 1/1/2041 | 1,064,389.35 | 4,142.25 | 6,550.09 | 10,692.34 |
| 2/1/2041 | 1,057,839.27 | 4,116.76 | 6,550.09 | 10,666.85 |
| 3/1/2041 | 1,051,289.18 | 4,091.27 | 6,550.09 | 10,641.36 |
| 4/1/2041 | 1,044,739.09 | 4,065.78 | 6,550.09 | 10,615.86 |
| 5/1/2041 | 1,038,189.00 | 4,040.29 | 6,550.09 | 10,590.37 |
| 6/1/2041 | 1,031,638.91 | 4,014.79 | 6,550.09 | 10,564.88 |
| 7/1/2041 | 1,025,088.82 | 3,989.30 | 6,550.09 | 10,539.39 |
| 8/1/2041 | 1,018,538.74 | 3,963.81 | 6,550.09 | 10,513.90 |
| 9/1/2041 | 1,011,988.65 | 3,938.32 | 6,550.09 | 10,488.41 |
| 10/1/2041 | 1,005,438.56 | 3,912.83 | 6,550.09 | 10,462.92 |
| 11/1/2041 | 998,888.47 | 3,887.34 | 6,550.09 | 10,437.43 |
| 12/1/2041 | 992,338.38 | 3,861.85 | 6,550.09 | 10,411.94 |
| 1/1/2042 | 985,788.29 | 3,836.36 | 6,550.09 | 10,386.45 |
| 2/1/2042 | 979,238.21 | 3,810.87 | 6,550.09 | 10,360.96 |
| 3/1/2042 | 972,688.12 | 3,785.38 | 6,550.09 | 10,335.47 |
| 4/1/2042 | 966,138.03 | 3,759.89 | 6,550.09 | 10,309.98 |
| 5/1/2042 | 959,587.94 | 3,734.40 | 6,550.09 | 10,284.48 |
| 6/1/2042 | 953,037.85 | 3,708.91 | 6,550.09 | 10,258.99 |
| 7/1/2042 | 946,487.76 | 3,683.41 | 6,550.09 | 10,233.50 |
| 8/1/2042 | 939,937.68 | 3,657.92 | 6,550.09 | 10,208.01 |
| 9/1/2042 | 933,387.59 | 3,632.43 | 6,550.09 | 10,182.52 |
| 10/1/2042 | 926,837.50 | 3,606.94 | 6,550.09 | 10,157.03 |
| 11/1/2042 | 920,287.41 | 3,581.45 | 6,550.09 | 10,131.54 |
| 12/1/2042 | 913,737.32 | 3,555.96 | 6,550.09 | 10,106.05 |
| 1/1/2043 | 907,187.23 | 3,530.47 | 6,550.09 | 10,080.56 |
| 2/1/2043 | 900,637.15 | 3,504.98 | 6,550.09 | 10,055.07 |
| 3/1/2043 | 894,087.06 | 3,479.49 | 6,550.09 | 10,029.58 |
| 4/1/2043 | 887,536.97 | 3,454.00 | 6,550.09 | 10,004.09 |
| 5/1/2043 | 880,986.88 | 3,428.51 | 6,550.09 | 9,978.60 |
| 6/1/2043 | 874,436.79 | 3,403.02 | 6,550.09 | 9,953.10 |
| 7/1/2043 | 867,886.70 | 3,377.53 | 6,550.09 | 9,927.61 |
| 8/1/2043 | 861,336.62 | 3,352.03 | 6,550.09 | 9,902.12 |
| 9/1/2043 | 854,786.53 | 3,326.54 | 6,550.09 | 9,876.63 |
| 10/1/2043 | 848,236.44 | 3,301.05 | 6,550.09 | 9,851.14 |
| 11/1/2043 | 841,686.35 | 3,275.56 | 6,550.09 | 9,825.65 |
| 12/1/2043 | 835,136.26 | 3,250.07 | 6,550.09 | 9,800.16 |
| 1/1/2044 | 828,586.17 | 3,224.58 | 6,550.09 | 9,774.67 |
| 2/1/2044 | 822,036.09 | 3,199.09 | 6,550.09 | 9,749.18 |
| 3/1/2044 | 815,486.00 | 3,173.60 | 6,550.09 | 9,723.69 |
| 4/1/2044 | 808,935.91 | 3,148.11 | 6,550.09 | 9,698.20 |
| 5/1/2044 | 802,385.82 | 3,122.62 | 6,550.09 | 9,672.71 |
| 6/1/2044 | 795,835.73 | 3,097.13 | 6,550.09 | 9,647.22 |

## Exhibit A: Additional Rent Accrual
## and Section 467 Loan Amortization

| Date | 467 Loan Balance | Interest @ 4.67% | Principal | Rent |
|---|---|---|---|---|
| 7/1/2044 | 789,285.64 | 3,071.64 | 6,550.09 | 9,621.72 |
| 8/1/2044 | 782,735.56 | 3,046.15 | 6,550.09 | 9,596.23 |
| 9/1/2044 | 776,185.47 | 3,020.66 | 6,550.09 | 9,570.74 |
| 10/1/2044 | 769,635.38 | 2,995.16 | 6,550.09 | 9,545.25 |
| 11/1/2044 | 763,085.29 | 2,969.67 | 6,550.09 | 9,519.76 |
| 12/1/2044 | 756,535.20 | 2,944.18 | 6,550.09 | 9,494.27 |
| 1/1/2045 | 749,985.11 | 2,918.69 | 6,550.09 | 9,468.78 |
| 2/1/2045 | 743,435.03 | 2,893.20 | 6,550.09 | 9,443.29 |
| 3/1/2045 | 736,884.94 | 2,867.71 | 6,550.09 | 9,417.80 |
| 4/1/2045 | 730,334.85 | 2,842.22 | 6,550.09 | 9,392.31 |
| 5/1/2045 | 723,784.76 | 2,816.73 | 6,550.09 | 9,366.82 |
| 6/1/2045 | 717,234.67 | 2,791.24 | 6,550.09 | 9,341.33 |
| 7/1/2045 | 710,684.58 | 2,765.75 | 6,550.09 | 9,315.84 |
| 8/1/2045 | 704,134.50 | 2,740.26 | 6,550.09 | 9,290.35 |
| 9/1/2045 | 697,584.41 | 2,714.77 | 6,550.09 | 9,264.85 |
| 10/1/2045 | 691,034.32 | 2,689.28 | 6,550.09 | 9,239.36 |
| 11/1/2045 | 684,484.23 | 2,663.78 | 6,550.09 | 9,213.87 |
| 12/1/2045 | 677,934.14 | 2,638.29 | 6,550.09 | 9,188.38 |
| 1/1/2046 | 671,384.05 | 2,612.80 | 6,550.09 | 9,162.89 |
| 2/1/2046 | 664,833.97 | 2,587.31 | 6,550.09 | 9,137.40 |
| 3/1/2046 | 658,283.88 | 2,561.82 | 6,550.09 | 9,111.91 |
| 4/1/2046 | 651,733.79 | 2,536.33 | 6,550.09 | 9,086.42 |
| 5/1/2046 | 645,183.70 | 2,510.84 | 6,550.09 | 9,060.93 |
| 6/1/2046 | 638,633.61 | 2,485.35 | 6,550.09 | 9,035.44 |
| 7/1/2046 | 632,083.52 | 2,459.86 | 6,550.09 | 9,009.95 |
| 8/1/2046 | 625,533.44 | 2,434.37 | 6,550.09 | 8,984.46 |
| 9/1/2046 | 618,983.35 | 2,408.88 | 6,550.09 | 8,958.97 |
| 10/1/2046 | 612,433.26 | 2,383.39 | 6,550.09 | 8,933.47 |
| 11/1/2046 | 605,883.17 | 2,357.90 | 6,550.09 | 8,907.98 |
| 12/1/2046 | 599,333.08 | 2,332.40 | 6,550.09 | 8,882.49 |
| 1/1/2047 | 592,782.99 | 2,306.91 | 6,550.09 | 8,857.00 |
| 2/1/2047 | 586,232.91 | 2,281.42 | 6,550.09 | 8,831.51 |
| 3/1/2047 | 579,682.82 | 2,255.93 | 6,550.09 | 8,806.02 |
| 4/1/2047 | 573,132.73 | 2,230.44 | 6,550.09 | 8,780.53 |
| 5/1/2047 | 566,582.64 | 2,204.95 | 6,550.09 | 8,755.04 |
| 6/1/2047 | 560,032.55 | 2,179.46 | 6,550.09 | 8,729.55 |
| 7/1/2047 | 553,482.46 | 2,153.97 | 6,550.09 | 8,704.06 |
| 8/1/2047 | 546,932.38 | 2,128.48 | 6,550.09 | 8,678.57 |
| 9/1/2047 | 540,382.29 | 2,102.99 | 6,550.09 | 8,653.08 |
| 10/1/2047 | 533,832.20 | 2,077.50 | 6,550.09 | 8,627.59 |
| 11/1/2047 | 527,282.11 | 2,052.01 | 6,550.09 | 8,602.09 |
| 12/1/2047 | 520,732.02 | 2,026.52 | 6,550.09 | 8,576.60 |
| 1/1/2048 | 514,181.93 | 2,001.02 | 6,550.09 | 8,551.11 |

Exhibit A: Additional Rent Accrual
and Section 467 Loan Amortization

| Date | 467 Loan Balance | Interest @ 4.67% | Principal | Rent |
|---|---|---|---|---|
| 2/1/2048 | 507,631.85 | 1,975.53 | 6,550.09 | 8,525.62 |
| 3/1/2048 | 501,081.76 | 1,950.04 | 6,550.09 | 8,500.13 |
| 4/1/2048 | 494,531.67 | 1,924.55 | 6,550.09 | 8,474.64 |
| 5/1/2048 | 487,981.58 | 1,899.06 | 6,550.09 | 8,449.15 |
| 6/1/2048 | 481,431.49 | 1,873.57 | 6,550.09 | 8,423.66 |
| 7/1/2048 | 474,881.40 | 1,848.08 | 6,550.09 | 8,398.17 |
| 8/1/2048 | 468,331.32 | 1,822.59 | 6,550.09 | 8,372.68 |
| 9/1/2048 | 461,781.23 | 1,797.10 | 6,550.09 | 8,347.19 |
| 10/1/2048 | 455,231.14 | 1,771.61 | 6,550.09 | 8,321.70 |
| 11/1/2048 | 448,681.05 | 1,746.12 | 6,550.09 | 8,296.21 |
| 12/1/2048 | 442,130.96 | 1,720.63 | 6,550.09 | 8,270.71 |
| 1/1/2049 | 435,580.87 | 1,695.14 | 6,550.09 | 8,245.22 |
| 2/1/2049 | 429,030.79 | 1,669.64 | 6,550.09 | 8,219.73 |
| 3/1/2049 | 422,480.70 | 1,644.15 | 6,550.09 | 8,194.24 |
| 4/1/2049 | 415,930.61 | 1,618.66 | 6,550.09 | 8,168.75 |
| 5/1/2049 | 409,380.52 | 1,593.17 | 6,550.09 | 8,143.26 |
| 6/1/2049 | 402,830.43 | 1,567.68 | 6,550.09 | 8,117.77 |
| 7/1/2049 | 396,280.34 | 1,542.19 | 6,550.09 | 8,092.28 |
| 8/1/2049 | 389,730.26 | 1,516.70 | 6,550.09 | 8,066.79 |
| 9/1/2049 | 383,180.17 | 1,491.21 | 6,550.09 | 8,041.30 |
| 10/1/2049 | 376,630.08 | 1,465.72 | 6,550.09 | 8,015.81 |
| 11/1/2049 | 370,079.99 | 1,440.23 | 6,550.09 | 7,990.32 |
| 12/1/2049 | 363,529.90 | 1,414.74 | 6,550.09 | 7,964.83 |
| 1/1/2050 | 356,979.81 | 1,389.25 | 6,550.09 | 7,939.33 |
| 2/1/2050 | 350,429.73 | 1,363.76 | 6,550.09 | 7,913.84 |
| 3/1/2050 | 343,879.64 | 1,338.26 | 6,550.09 | 7,888.35 |
| 4/1/2050 | 337,329.55 | 1,312.77 | 6,550.09 | 7,862.86 |
| 5/1/2050 | 330,779.46 | 1,287.28 | 6,550.09 | 7,837.37 |
| 6/1/2050 | 324,229.37 | 1,261.79 | 6,550.09 | 7,811.88 |
| 7/1/2050 | 317,679.28 | 1,236.30 | 6,550.09 | 7,786.39 |
| 8/1/2050 | 311,129.20 | 1,210.81 | 6,550.09 | 7,760.90 |
| 9/1/2050 | 304,579.11 | 1,185.32 | 6,550.09 | 7,735.41 |
| 10/1/2050 | 298,029.02 | 1,159.83 | 6,550.09 | 7,709.92 |
| 11/1/2050 | 291,478.93 | 1,134.34 | 6,550.09 | 7,684.43 |
| 12/1/2050 | 284,928.84 | 1,108.85 | 6,550.09 | 7,658.94 |
| 1/1/2051 | 278,378.75 | 1,083.36 | 6,550.09 | 7,633.45 |
| 2/1/2051 | 271,828.67 | 1,057.87 | 6,550.09 | 7,607.95 |
| 3/1/2051 | 265,278.58 | 1,032.38 | 6,550.09 | 7,582.46 |
| 4/1/2051 | 258,728.49 | 1,006.89 | 6,550.09 | 7,556.97 |
| 5/1/2051 | 252,178.40 | 981.39 | 6,550.09 | 7,531.48 |
| 6/1/2051 | 245,628.31 | 955.90 | 6,550.09 | 7,505.99 |
| 7/1/2051 | 239,078.22 | 930.41 | 6,550.09 | 7,480.50 |
| 8/1/2051 | 232,528.14 | 904.92 | 6,550.09 | 7,455.01 |

## Exhibit A: Additional Rent Accrual
## and Section 467 Loan Amortization

| Date | 467 Loan Balance | Interest @ 4.67% | Principal | Rent |
|---|---|---|---|---|
| 9/1/2051 | 225,978.05 | 879.43 | 6,550.09 | 7,429.52 |
| 10/1/2051 | 219,427.96 | 853.94 | 6,550.09 | 7,404.03 |
| 11/1/2051 | 212,877.87 | 828.45 | 6,550.09 | 7,378.54 |
| 12/1/2051 | 206,327.78 | 802.96 | 6,550.09 | 7,353.05 |
| 1/1/2052 | 199,777.69 | 777.47 | 6,550.09 | 7,327.56 |
| 2/1/2052 | 193,227.61 | 751.98 | 6,550.09 | 7,302.07 |
| 3/1/2052 | 186,677.52 | 726.49 | 6,550.09 | 7,276.58 |
| 4/1/2052 | 180,127.43 | 701.00 | 6,550.09 | 7,251.08 |
| 5/1/2052 | 173,577.34 | 675.51 | 6,550.09 | 7,225.59 |
| 6/1/2052 | 167,027.25 | 650.01 | 6,550.09 | 7,200.10 |
| 7/1/2052 | 160,477.16 | 624.52 | 6,550.09 | 7,174.61 |
| 8/1/2052 | 153,927.08 | 599.03 | 6,550.09 | 7,149.12 |
| 9/1/2052 | 147,376.99 | 573.54 | 6,550.09 | 7,123.63 |
| 10/1/2052 | 140,826.90 | 548.05 | 6,550.09 | 7,098.14 |
| 11/1/2052 | 134,276.81 | 522.56 | 6,550.09 | 7,072.65 |
| 12/1/2052 | 127,726.72 | 497.07 | 6,550.09 | 7,047.16 |
| 1/1/2053 | 121,176.63 | 471.58 | 6,550.09 | 7,021.67 |
| 2/1/2053 | 114,626.55 | 446.09 | 6,550.09 | 6,996.18 |
| 3/1/2053 | 108,076.46 | 420.60 | 6,550.09 | 6,970.69 |
| 4/1/2053 | 101,526.37 | 395.11 | 6,550.09 | 6,945.20 |
| 5/1/2053 | 94,976.28 | 369.62 | 6,550.09 | 6,919.70 |
| 6/1/2053 | 88,426.19 | 344.13 | 6,550.09 | 6,894.21 |
| 7/1/2053 | 81,876.10 | 318.63 | 6,550.09 | 6,868.72 |
| 8/1/2053 | 75,326.02 | 293.14 | 6,550.09 | 6,843.23 |
| 9/1/2053 | 68,775.93 | 267.65 | 6,550.09 | 6,817.74 |
| 10/1/2053 | 62,225.84 | 242.16 | 6,550.09 | 6,792.25 |
| 11/1/2053 | 55,675.75 | 216.67 | 6,550.09 | 6,766.76 |
| 12/1/2053 | 49,125.66 | 191.18 | 6,550.09 | 6,741.27 |
| 1/1/2054 | 42,575.57 | 165.69 | 6,550.09 | 6,715.78 |
| 2/1/2054 | 36,025.49 | 140.20 | 6,550.09 | 6,690.29 |
| 3/1/2054 | 29,475.40 | 114.71 | 6,550.09 | 6,664.80 |
| 4/1/2054 | 22,925.31 | 89.22 | 6,550.09 | 6,639.31 |
| 5/1/2054 | 16,375.22 | 63.73 | 6,550.09 | 6,613.82 |
| 6/1/2054 | 9,825.13 | 38.24 | 6,550.09 | 6,588.32 |
| 7/1/2054 | 3,275.04 | 12.75 | 3,275.04 | 3,287.79 |
| Total | | 1,660,977.95 | 2,358,031.80 | 4,019,009.75 |

Exhibit A: Additional Rent Accrual
and Section 467 Loan Amortization

| Date | 467 Loan Balance | Interest @ 4.67% | Principal | Rent |
|------|------------------|------------------|-----------|------|

**Assumptions**

1) The amortization of the Additional Rent is over 30 years (360 months), and corresponds to depreciation Landlord is entitled to based on the assumption that the Tenth Floor is 100% residential rental property and an electing real property business for purposes of the business interest expense limitation (See IRC Section 163(j)(7) and Section 168(g)(1)(F)).

2) Landlord is entitled to depreciation until July 1, 2024, when the Tenth Floor is anticipated to be placed in service as residential rental property. This accrual schedule is subject to revision if the Tenth Floor is placed in service after July 2024. The mid-month convention shall apply for the month in which the property is placed in service (See IRC Section 168(d)(2)).

3) In accordance with Treas. Reg. Section 1.467-2(b)(1), the Additional Rent shall accrue interest only from December 2022 to June 2024.

4) The interest rate is 110% of the long-term Applicable Federal Rate for December 2022, with monthly compounding.

Page 10

EXHIBIT D

HOTEL UNION PENSION FUND DEMAND LETTER

(Attached hereto)



THE NEW YORK HOTEL TRADES COUNCIL
# PENSION FUND
THE HOTEL ASSOCIATION OF NEW YORK CITY, INC.

305 West 44ᵗʰ Street • New York, NY 10036 • (212) 586-6400 • Fax: (212) 581-6107 • www.HotelFunds.org

September 29, 2022

**By Certified Mail – Return Receipt Requested**

The Hudson
356 West 58th Street
New York, NY 10019

Mr. Sal Smeke
Principal
CSC Coliving
6 St. Johns Lane
New York, NY 10013
ss@csc-coliving.com

Peter Moss, Esq.
Jackson Lewis PC
666 3rd Avenue, 29th Floor
New York, NY 10017
mossp@jacksonlewis.com

Re:    Notice of Withdrawal Liability and Demand for Payment
       New York Hotel Trades Council and Hotel Association
       of New York City, Inc. Pension Fund
       The Hudson

Dear Gentlemen:

According to our records, the Hudson (the "Company") has permanently ceased operations requiring contributions to the New York Hotel Trades Council and Hotel Association of New York City, Inc. Pension Fund (the "Fund") as of December 31, 2022. As a result, the Company has effected a complete withdrawal from the Fund, within the meaning of Section 4203(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Consequently, the Company is liable for withdrawal liability to the Fund and, in accordance with the requirements of Section 4202 of ERISA, the Board of Trustees of the Fund hereby makes demand for payment of withdrawal liability, as described below.

In accordance with the Fund's method of computing withdrawal liability, the Fund's actuary has determined the Company's withdrawal liability to the Fund to be $17,285,224. Under Sections 4219(c)(1)(C) and (c)(3) of ERISA, the Company is required to pay the full value of its withdrawal liability in fifty-one (51) quarterly installment payments, each in the amount of $490,888.25, with a final payment of $332,183.40. The payment schedule is limited to 20 years as prescribed in ERISA 4219. Enclosed is a payment schedule setting forth the Company's required withdrawal liability payments. Pursuant to Section 4219(c) (4) of ERISA, the Company

{00701869-1}

The Hudson
September 29, 2022
Page 2 of 3

may elect to prepay the outstanding amount, plus accrued interest, in whole or in part, without penalty.

In accordance with Section 4219(c)(2) of ERISA, payment of withdrawal liability to the Fund is required to commence no later than 60 days after the date of this Notice and continue quarterly thereafter, "notwithstanding any request for review or appeal of determinations of the amount of such liability." Thus, the Company's initial monthly withdrawal liability payment is due on or before November 28, 2022 and thereafter on the first of February, May, August and November of each year until final payment. Payment of withdrawal liability should be made directly to the order of "New York Hotel Trades Council and Hotel Association of New York City, Inc. Pension Fund" and forwarded to the undersigned at the address above.

Please be advised that, as noted above, the liability and payment schedule set forth above and in the enclosure maybe subject to adjustment due to a change in withdrawal liability resulting from, for example (but not limited to), finalization of the Fund's actuarial valuation for the plan year preceding the date of the Company's withdrawal liability, any actuarial change in the amount of unfunded vested benefits, the final results of any audit of the Company's books and records that has been or may be conducted by the Fund, or any other information received concerning the Company. If a change becomes necessary, the Fund will submit an amended withdrawal liability statement and payment schedule to the Company.

Failure to commence payment of withdrawal liability or to make timely subsequent payments, as required under ERISA, will constitute a "default" within the meaning of Section 4219(c)(5) of ERISA, and will entitle the Fund to require immediate payment of the full amount of withdrawal liability owed to the Fund by the Company, plus accrued interest. The Fund will assess such default penalties on the entire amount of the Company's withdrawal liability, as well as any court costs and attorneys' fees incurred in collecting such delinquency.

Under Section 4219(b) (2) (A) of ERISA, the Company has the right, within 90 days after the receipt of this Notice, to:

(1)     Request the Trustees to review any specific matter relating to the determination of the Company's withdrawal liability and the schedule of payments described herein;

(2)     Identify any inaccuracy in the determination of the amount of unfunded vested benefits allocable to the Company; and

(3)     Furnish any additional relevant information to the Trustees.

Pursuant to Section 4221 of ERISA, any dispute arising out of the Fund's determination and review must be resolved through arbitration. Either party may initiate the arbitration proceeding herein within a 60-day period after the earlier of:

{00701869-1}

The Hudson
September 29, 2022
Page 3 of 3

      (a)     The date of the Fund's notification to the Company under Section 4219(b)(2)(B) of ERISA, or

      (b)     120 days after the date of the Company's request under Section 4219(b)(2)(A) of ERISA.

*Under Section 4219(c)(2) of ERISA, the Company must commence payments demanded herein in accordance with the terms and schedule set forth above, notwithstanding any request for review or appeal of withdrawal liability determinations.*

Pursuant to Section 4219(a) of ERISA, it is hereby requested that the Company advise the undersigned, within 30 days of the date of this Notice, whether the Company is or was a member of a trade or business "under common control" within the meaning of Sections 414 and 1563 of the Internal Revenue Code of 1986, as amended (i.e., a "controlled group"). If the Company is or was a member of a controlled group, it is hereby requested that the Company furnish the undersigned with the corporate (or business) names and addresses of each organization within the controlled group. Please also note whether any of these organizations contributed to the Fund at any time.

If you have any questions, please contact me directly.

Sincerely,

Board of Trustees of the New York Hotel
Trades Council and Hotel Association
of New York City, Inc. Pension Fund

By: _____
John Heim, CFO

cc:    Dr. David Jacobson, CEO
       Mr. Richard Maroko
       Mr. Vijay Dandapani
       Vincent F. Pitta, Esq.
       David Rothfeld, Esq.
       Marcelle Henry, Esq.
       Robert Sacks, Esq.
       Barry N. Saltzman, Esq.
       Noelia E. Hurtado, Esq.

Enc.

{00701869-1}

September 29, 2022

The Hudson

## SCHEDULE OF PENSION WITHDRAWAL LIABILITY PAYMENTS

Total Pension withdrawal Liability $17,285,224.

Fifty-one (51) quarterly installment payments of $490,888.25, with a final payment of $332,183.40. The payment schedule is limited to 20 years as prescribed in ERISA 4219. Payment shall commence on or before November 28, 2022 and continue to be paid every quarter on the 1st of the month until the balance is paid in full, i.e. February 1st, May 1st, August 1st and November 1st.

(00701869-1)

# New York Hotel Trades Council and Hotel Association of New York City, Inc. Pension Fund

Report on Employer Withdrawal Liability for:
Hudson Hotel

Based on Withdrawal During the Year Ending December 31, 2022

© 2022 by The Segal Group, Inc.

 **Segal**

# Table of Contents

I. General – Method of Calculation and Allocation of Withdrawal Liability ................................... 2

II. Actuary's Assumptions and Methods for Withdrawal Liability Valuations ............................... 4

III. The Plan's Unfunded Vested Liability ....................................................................................... 5

IV. Calculation of Employer's Allocable Share of Unfunded Vested Benefits ............................. 7

V. Determination of Payment Amount and Length of Payment Period ........................................ 9

# I. General – Method of Calculation and Allocation of Withdrawal Liability

This is a general description of complex calculations required by federal law and pursuant to the Plan's rules. In the case of any inconsistency, the law and the Plan rules will govern.

The Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), signed into law on September 26, 1980, requires assessment of withdrawal liability on an employer that withdraws from the Plan. Under the law, an employer has withdrawn completely if it has permanently ceased operations under the Plan or has permanently ceased to have an obligation to contribute to the Fund.

The amount of withdrawal liability is based on the Fund's unfunded vested benefits at the time of withdrawal. The withdrawal formula assigns a share of that unfunded liability to the employer that has withdrawn.

The Trustees of the New York Hotel Trades Council and Hotel Association of New York City, Inc. Pension Fund adopted the statutory method, as defined in Section 4211(b)(1) of ERISA, for the calculation and allocation of unfunded vested benefit liability for withdrawal purposes.

The statutory formula distinguishes between the employers who are participating now and employers who participate in the future. It prorates the current unfunded liability for vested benefits only among employers currently contributing. To be more specific, the unfunded vested liability as of December 31, 1979, is prorated among employers contributing during the next Plan year. The proration for each employer is based on its contributions in relation to the total made by all continuing employers over the preceding 5 years.

An employer coming into the plan in future years will not have a share, should it withdraw, in liabilities accumulated before it entered. Beginning January 1, 1980, the plan must determine the annual change in its unfunded vested liability. It then prorates each year's change to each of the then participating employers in proportion to their contributions in the preceding 5 years. If at some point an employer withdraws, the amount of its liability is the sum of what remains of the annual allocations plus the employer's share, if any, of the original December 31, 1979 liability. Each portion, including the original liability, is reduced to the point of withdrawal by 5% a year.

In addition, withdrawing employers are charged with prorated shares of the "non-assessable" or "uncollectible" liabilities that are reallocated. Each annual reallocated amount is also written down by 5% of the original amount for each full year from the date that it was originally determined to the end of the Plan year preceding withdrawal.

The proration to the employer is based on the ratio of (a) the contributions for which the employer was obligated for the five plan years to (b) total employer contributions to the Fund for that same five-year period. The total amount of employer contributions with respect to an apportionment base period is reduced by any contributions otherwise included in the total that were made by employers that withdrew from the Fund on or before the apportionment base period and were assessed withdrawal liability.

This report reflects the withdrawal liability for Hudson Hotel based on a withdrawal during the year ending December 31, 2022. This calculation assumes the employer is not part of a larger control group.

Determination of the value of the liability for vested benefits has to be based on a set of actuarial assumptions. The law prescribes that the assumptions and methods used must be reasonable in the aggregate and "offer the actuary's best estimate of anticipated experience under the plan." It also authorizes the Pension Benefit Guaranty Corporation (PBGC) to promulgate assumptions and methods for use by the Plan's actuary. However, the PBGC has not promulgated assumptions.

The total amount of an employer's withdrawal liability is not ordinarily payable in a lump sum. The law fixes annual payment amounts, to be paid in quarterly installments, unless the Fund has fixed some other schedule.
The annual amount (for complete withdrawal) is fixed by multiplying:

1.  the highest rate the employer was obligated to pay during the last 10 plan years in which it participated including the year of withdrawal

2.  the employer's average contribution base units for the three consecutive plan years (within the 10 preceding withdrawal) in which its contribution base units were highest.

Payments cease when the total liability and interest have been paid (the law imposes a 20-year maximum, except in the case of mass withdrawal). Interest is included at the rate used for funding (7.25% as of December 31, 2021).

✳ **Segal**  3

# II. Actuary's Assumptions and Methods for Withdrawal Liability Valuations

For withdrawal liability purposes, the Plan uses the same actuarial assumptions used in the valuation for Plan funding with the exception of the assumed rate of investment return and administrative expenses.

Specifically, the withdrawal liability valuation assumptions and methods are:

**Investment return:**

The present value of vested benefits is based on a blend of two liability calculations. The first calculation is performed on a market value basis, using discount rates selected based on estimated annuity purchase rates available for benefits being settled, because withdrawal liability essentially settles an employer's obligation to the Plan. The second calculation uses the interest rate determined by the plan actuary for minimum funding, based on the expected return on current and future assets. For benefits that could be settled immediately, because assets on hand are sufficient to cover their market value, the first calculation basis is used: annuity purchase rates promulgated by PBGC under ERISA Sec. 4044 for multiemployer plans terminating by mass withdrawal on the measurement date. At December 31, 2021, the PBGC rates are 2.4% for the first 20 years and an ultimate rate of 2.11%. For benefits that cannot be settled immediately because they are not currently funded, the calculation uses the second basis: the interest rate used for plan funding calculations. At December 31, 2021, the plan funding rate is 7.25%.

**Administrative Expenses:**

A separate expense charge only for that portion of the benefits that is matched by assets. For that portion, an expense load equal to that prescribed in Appendix C to PBGC Reg. Part 4044 is used.

**Valuation of Assets:**

Valued at fair market value as reported in the Plan's financial statements filed with the IRS adjusted to exclude withdrawal liability receivables.

**Other Assumptions:**

The same as used for minimum funding purposes as of the date of determination of unfunded vested benefits. The Plan's funding assumptions are shown in the attachments to the Schedule MB of the Form 5500.

# III. The Plan's Unfunded Vested Liability

**Basic Pools**

The Plan's unfunded vested liabilities, as calculated for withdrawal liability purposes, for each of the past 20 years are detailed in Table 1. Any pools established more than 20 years ago have been fully amortized. The chargeable change for each year and the remaining unamortized balance as of the valuation date are also shown.

The chargeable change amount is determined as the unfunded vested liability for a given year less the greater of the sum of the previous unamortized balances or zero. The unamortized balance of each chargeable change is equal to the initial amount with a 5% write-down each year since the establishment of said amount.

These figures are the basis and contains the figures on which withdrawal liability for employers who withdraw on or after January 1, 2022 and on or before December 31, 2022 is determinable.

### Table 1 - Withdrawal Liability Pools

| "Year" | Unfunded vested Liability at December 31, "Year" | Chargeable change at December 31, "Year"* | Unamortized balance of chargeable change at December 31, 2021 |
|---|---|---|---|
| 2002 | $291,571,315 | $108,180,283 | $5,409,014 |
| 2003 | 320,485,202 | 45,155,423 | 4,515,542 |
| 2004 | 415,040,348 | 112,477,999 | 16,871,700 |
| 2005 | 455,271,560 | 66,537,319 | 13,307,464 |
| 2006 | 406,937,418 | (18,572,693) | (4,643,173) |
| 2007 | 406,581,791 | 28,822,908 | 8,646,872 |
| 2008 | 437,033,610 | 61,245,618 | 21,435,966 |
| 2009 | 611,673,305 | 208,100,056 | 83,240,022 |
| 2010 | 621,146,816 | 54,392,609 | 24,476,673 |
| 2011 | 681,639,449 | 106,565,680 | 53,282,840 |
| 2012 | 833,754,599 | 202,711,337 | 111,491,235 |
| 2013 | 754,726,857 | (19,086,994) | (11,452,196) |
| 2014 | 756,324,603 | 58,974,057 | 38,333,137 |
| 2015 | 896,014,753 | 199,881,482 | 139,917,037 |
| 2016 | 1,005,672,441 | 176,776,465 | 132,582,349 |
| 2017 | 914,277,344 | (16,825,609) | (13,460,487) |
| 2018 | 976,879,212 | 135,792,095 | 115,423,281 |
| 2019 | 1,445,080,870 | 547,926,661 | 493,133,995 |
| 2020 | 1,764,937,670 | 425,595,267 | 404,315,504 |
| 2021 | 1,664,898,564 | 28,071,789 | 28,071,789 |

**Reallocated Amounts**

The total amount, if any, of unfunded vested liability determined in any Plan year after 1979 to be nonassessable or uncollectible with respect to employers that withdrew is established as an amount to be prorated among each of the participating employers as an additional withdrawal liability amount. Nonassessable amounts consist of amounts deducted under the de minimis rule (§4209), amounts not payable because of the 20-year limit (§4219(c)(1)(B)), and amounts not payable because of the limitations in the event of sale of all of the employer's assets (§4225). Uncollectible amounts consist of amounts that are uncollectible for reasons arising out of cases under federal bankruptcy law or similar proceedings. They also include any other amount of assessed liability determined by the Plan's Trustees to be uncollectible.

The following table, shows the reallocated uncollectibles for the indicated year. Each annual amount of reallocable nonassessables and uncollectibles is written down by 5 percent of the original amount for each full year from the date as of which it was originally determined to the end of the Plan year preceding withdrawal.

**Table 2 - Reallocated Pools as of December 31, 2021**

| "Year" | Reallocated Amounts at December 31, "Year" | Unamortized balance of chargeable change at December 31, 2021 |
|---|---|---|
| 2002 | $0 | $0 |
| 2003 | 179,969 | 17,997 |
| 2004 | 0 | 0 |
| 2005 | 4,615,649 | 923,130 |
| 2006 | 6,886 | 1,722 |
| 2007 | 0 | 0 |
| 2008 | 0 | 0 |
| 2009 | 0 | 0 |
| 2010 | 0 | 0 |
| 2011 | 0 | 0 |
| 2012 | 0 | 0 |
| 2013 | 50,000 | 30,000 |
| 2014 | 0 | 0 |
| 2015 | 0 | 0 |
| 2016 | 0 | 0 |
| 2017 | 0 | 0 |
| 2018 | 0 | 0 |
| 2019 | 0 | 0 |
| 2020 | 0 | 0 |
| 2021 | 21,738,585 | 21,738,585 |

✳ **Segal**   6

# IV. Calculation of Employer's Allocable Share of Unfunded Vested Benefits

**Contribution Information**

Contribution information for Hudson Hotel was received from the Fund Office as follows:

| Year ending December 31 | Obligated Employer Contributions |
|---|---|
| 1999 | $43,222.69 |
| 2000 | 16,195.84 |
| 2001 | 14,262.16 |
| 2002 | 76,521.76 |
| 2003 | 383,323.02 |
| 2004 | 545,206.13 |
| 2005 | 522,181.83 |
| 2006 | 610,214.52 |
| 2007 | 858,364.51 |
| 2008 | 894,493.37 |
| 2009 | 876,720.05 |
| 2010 | 981,810.84 |
| 2011 | 1,488,749.49 |
| 2012 | 1,462,354.62 |
| 2013 | 1,508,522.73 |
| 2014 | 1,638,384.83 |
| 2015 | 1,402,302.16 |
| 2016 | 493,417.32 |
| 2017 | 1,480,844.82 |
| 2018 | 2,013,971.16 |
| 2019 | 1,704,797.79 |
| 2020 | 426,268.88 |
| 2021 | 61,314.22 |
| Total | $19,503,444.74 |

## Allocable Share of Unfunded Vested Benefits
## Hudson Hotel
### Date of withdrawal:  Year Ending December 31, 2022

| | (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|---|
| | Change in unfunded vested benefits for year ended December 31, "Year" amortized to December 31, 2021[1] | Uncollectibles for "Year" amortized to December 31, 2021 | Total contributions for the 5-year period ending December 31, "Year" | | Allocable share of liability ((1) + (2)) × (3) / (4) |
| "Year" | | | Withdrawing employer | All employers | |
| 2002 | $5,409,014 | $0 | $150,202 | $195,682,573 | $4,152 |
| 2003 | 4,515,542 | 17,997 | 533,525 | 217,328,932 | 11,129 |
| 2004 | 16,871,700 | 0 | 1,035,509 | 239,631,381 | 72,907 |
| 2005 | 13,307,464 | 923,130 | 1,541,495 | 250,370,718 | 87,616 |
| 2006 | (4,643,173) | 1,722 | 2,137,447 | 285,714,341 | (34,723) |
| 2007 | 8,646,872 | 0 | 2,919,290 | 337,252,808 | 74,848 |
| 2008 | 21,435,966 | 0 | 3,430,460 | 389,221,645 | 188,929 |
| 2009 | 83,240,022 | 0 | 3,761,974 | 429,620,388 | 728,892 |
| 2010 | 24,476,673 | 0 | 4,221,603 | 473,331,586 | 218,305 |
| 2011 | 53,282,840 | 0 | 5,100,138 | 507,452,649 | 535,518 |
| 2012 | 111,491,235 | 0 | 5,704,128 | 541,592,539 | 1,174,241 |
| 2013 | (11,452,196) | 30,000 | 6,318,158 | 573,586,713 | (125,817) |
| 2014 | 38,333,137 | 0 | 7,079,823 | 618,297,965 | 438,934 |
| 2015 | 139,917,037 | 0 | 7,500,314 | 634,521,139 | 1,653,880 |
| 2016 | 132,582,349 | 0 | 6,504,982 | 579,997,833 | 1,486,981 |
| 2017 | (13,460,487) | 0 | 6,523,472 | 595,112,405 | (147,550) |
| 2018 | 115,423,281 | 0 | 7,028,920 | 643,214,055 | 1,261,324 |
| 2019 | 493,133,995 | 0 | 7,095,333 | 689,262,538 | 5,076,368 |
| 2020 | 404,315,504 | 0 | 6,119,300 | 603,027,499 | 4,102,844 |
| 2021 | 28,071,789 | 21,738,585 | 5,687,197 | 594,571,739 | 476,446 |
| 6. Total allocable share of unfunded vested benefits (sum of column (5), not less than zero) | | | | | $17,285,224 |
| 7. De minimis amount[2] | | | | | - |
| 8. Net allocable share of unfunded vested benefits (6) - (7) | | | | | $17,285,224 |

[1] The withdrawal liability pools established prior to 2002 have been fully amortized as of December 31, 2021.
[2] The de minimis deductible is $50,000 (but not more than 3/4 of 1 percent of the Plan's unfunded liability for vested benefits).  This deductible amount is reduced, dollar for dollar, by the amount by which the total of charges prorated to the employer exceeds $100,000.

✶ Segal    8

# V. Determination of Payment Amount and Length of Payment Period

A withdrawn employer's withdrawal liability assessment is payable in quarterly installments. The quarterly installment is calculated as one-fourth of the product of:

- The average base units in the three consecutive years that produce the highest average within the 10-year period ended before the plan year of withdrawal, and

- The highest contribution rate in the 10-year period ended with the plan year of withdrawal.

The number of quarterly installments is calculated on the basis of the amount of withdrawal liability and interest at the actuarial valuation rate used for funding purposes. Payments are limited to a maximum of 20 years, including contributions owed but not yet paid.

**Hudson Hotel**

1. Total estimated payroll for the years ended December 31:

| | | | | |
|---|---|---|---|---|
| 2012 | $15,393,207 | 2017 | $18,510,560 | |
| 2013 | 16,308,354 | 2018 | 19,648,499 | |
| 2014 | 17,246,156 | 2019 | 16,236,169 | |
| 2015 | 18,094,221 | 2020 | 6,089,556 | |
| 2016 | 17,942,448 | 2021 | 1,751,835 | |

| | | |
|---|---|---|
| 2. | Highest consecutive three-year average units | $18,700,502 |
| 3. | Highest contribution rate | 10.5% |
| 4. | Required annual payment (2) x (3) | $1,963,553 |
| 5. | Net allocable share of unfunded vested benefits | $17,285,224 |
| 6. | Plan funding investment return assumption | 7.25% |
| 7. | Amount of quarterly payments (4) ÷ 4 quarters | $490,888.25 |
| 8. | Number of full payments | 51 |
| 9. | Final payment | $332,183.40 |

Payment Schedule: $490,888.25 per quarter for 51 quarters plus a final payment of $332,183.40

Note: Total payroll is estimated by dividing total contributions for the year by the average contribution rate for the year.

The calculations were performed under the supervision of Joshua Kaplan, FSA, FCA, MAAA, EA, Senior Vice President and Actuary.

EXHIBIT E

WITHDRAWAL LIABILITY INSTALLMENT PAYMENT CHECK

(Attached hereto)

**CSC HUDSON, LLC**
6 SAINT JOHNS LN FL 7
NEW YORK, NY 10013-2115

3662

1-2/210

DATE 11/14/22

PAY TO THE ORDER OF New York Hotel Trades Council - Pension $490,888.25/100

Four Hundred Ninety Thousand Eight Hundred Eighty Eight DOLLARS

**CHASE**
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO Quarterly Installment Hudson

⑆021000021⑆    836525722⑈3662