# EXHIBIT R

**PARKVIEW FINANCIAL REIT, LP**
11601 Wilshire Boulevard, Suite 2100
Los Angeles, California 90025


October 11, 2024

*VIA ELECTRONIC MAIL*
*AND VIA OVERNIGHT COURIER*


Hudson 1702, LLC and
Hudson 1701/1706, LLC
c/o CSC Coliving LLC
6 St. Johns Lane
New York, New York 10013
Attention: Saloman Smeke Saba and Alberto Smeke Saba
Email: SS@csc-coliving.com; AS@csc-coliving.com;
(collectively, "Borrower")

CSC Hudson, LLC
c/o CSC Coliving LLC
6 St. Johns Lane
New York, New York 10013
Attention: Saloman Smeke Saba and Alberto Smeke Saba
Email: SS@csc-coliving.com; AS@csc-coliving.com;
("Pledgor")

Alberto Smeke Saba
2008 East 3rd Street
Brooklyn, New York 11223
Email: AS@csc-coliving.com
      -and-
Salomon Smeke Saba
4 Lady Bess Drive
Deal, New Jersey 07723
Email: SS@csc-coliving.com
(collectively, "Guarantor")

    Re:    Notice of Events of Default Under Loan Agreement
           Building Loan Agreement dated as of May 4, 2022, as amended by Amendment to
           Building Loan Agreement dated as of May 1, 2023, the Omnibus Amendment to
           Loan Documents dated as of May 1, 2023, the Second Omnibus Amendment to
           Loan Documents dated as of May 10, 2024, and the Third Omnibus Amendment to
           Loan Documents dated as of June 5, 2024, by and among Administrative Agent,
           the Lender, Borrower, and Guarantor and Project Loan Agreement dated as of May
           4, 2022, as amended by the Omnibus Amendment, Second Omnibus Amendment,

> and Third Omnibus Amendment by and among Administrative Agent, the Lender, Borrower, and Guarantors

Ladies and Gentlemen,

Parkview Financial REIT, as lender ("Lender") is the owner and holder of (i) that certain building loan (the "Building Loan") in the maximum principal amount of $81,782,527.00 made by Lender to Hudson 1702, LLC and Hudson 1701/1706, LLC ("Borrower") evidenced by, *inter alia*, (1) that certain Building Loan Agreement dated as of May 4, 2022, as amended by that certain Amendment to Building Loan Agreement dated as of May 1, 2023, the Omnibus Amendment to Loan Documents (the "First Omnibus Amendment") dated as of May 2, 2023, the Second Omnibus Amendment to Loan Documents (the "Second Omnibus Amendment") dated as of May 10, 2024, and the Third Omnibus Amendment to Loan Documents (the "Third Omnibus Amendment") dated as of June 4, 2024, by and among Parkview Financial REIT, as Administrative Agent ("Administrative Agent"), Parkview Financial REIT, LP as Lender, Borrower, and Guarantor (as the same may be further amended, restated, replaced, supplemented, or otherwise modified, the "Building Loan Agreement") and (2) those certain building loan promissory notes in the aggregate maximum principal amount of $81,782,527.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, collectively, the "Building Note"), made by Borrower in favor of Lender, and (ii) that certain project loan (the "Project Loan"; together with the Building Loan, collectively, the "Loan") in the maximum principal amount of $125,217,473.00 made by Lender to Borrower and evidenced by, *inter alia*, (1) that certain Project Loan Agreement dated as of May 4, 2022, as amended by that certain First Omnibus Amendment, Second Omnibus Amendment, and Third Omnibus Amendment by and among Administrative Agent, the Lender, Borrower, and Guarantors (as the same may be further amended, restated, replaced, supplemented, or otherwise modified, collectively, the "Project Loan Agreement"; together with the Building Loan Agreement, collectively, the "Loan Agreement"), and (2) those certain project loan promissory notes in the aggregate maximum principal amount of $125,217,473.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, collectively, the "Project Note"; together with the Building Note, collectively, the "Note"), made by Borrower in favor of Lender.

The (i) Building Loan is secured by that certain Building Loan Leasehold Mortgage Security Agreement, Assignment of Leases and Rents and Fixture Filing dated as of May 4, 2022 made by Borrower in favor of Administrative Agent (as anytime amended, restated, replaced, supplemented, or otherwise modified, the "Building Security Instrument"), and (ii) the Project Loan is secured by that certain Project Loan Leasehold Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated as of May 4, 2022, made by Borrower in favor of Administrative Agent (as anytime amended, restated, replaced, supplemented, or otherwise modified, the "Project Security Instrument"; together with the Building Security Instrument, collectively, the "Security Instrument"), each of which encumbers certain real property, and improvements thereon, located at 353-361 West 57th Street, a/k/a 356 West 58th Street, Condominium Units 1, 2 and 6, New York, New York 10019, and certain personal property

2

owned by Borrower in connection therewith, all as described in the Security Instrument (collectively, the "Property").

In connection with the Loan, Alberto Smeke Saba and Salomon Smeke Saba (individually, collectively, jointly and severally, "Guarantor") executed: (1) that certain Guaranty dated May 4, 2022 (as anytime amended, restated, replaced, supplemented, or otherwise modified, the "Recourse Guaranty"); and (2) that certain Completion Guaranty dated May 4, 2022 (as anytime amended, restated, replaced, supplemented, or otherwise modified, the "Completion Guaranty"; together with the Recourse Guaranty, the "Guaranty"), pursuant to which they jointly and severally guaranteed certain obligations of Borrower in connection with the Loan.

In connection with the Loan, CSC Hudson, LLC ("Pledgor") executed that certain Pledge and Security Agreement dated May 4, 2022 (as anytime amended, restated, replaced, supplemented, or otherwise modified, the "Pledge") in favor of Parkview Financial REIT, LP as Secured Party ("Secured Party"), pursuant to which Pledgor further secured the obligations of Borrower in connection with the Loan.

The Loan Agreement, Note, Security Instrument, Guaranty, Pledge, and all other documents evidencing, securing, or executed in connection with the Loan, together with all documents that now or hereafter modify, amend, extend, restate, replace, or otherwise affect the Loan or any of the foregoing documents, are hereinafter sometimes collectively referred to as the "Loan Documents." Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Loan Documents.

On or about May 1, 2023, NW Hudson Lender, LLC acquired an interest in the Loan and the Loan Documents from Parkview Financial REIT, LP, and became the Administrative Agent. On December 1, 2023, such interest was reassigned to Parkview Financial REIT, LP, and Parkview Financial REIT, LP reassumed the function of Administrative Agent.

Reference is further made to that certain Ground Lease, dated as of May 4, 2022, as amended by that certain First Amendment to Ground Lease dated as of January 3, 2023, as further amended by that certain Second Amendment to Ground Lease, dated as of May 1, 2023, as further amended by that certain Third Amendment to Ground Lease, dated as of December 1, 2023, as further amended by that certain Fourth Amendment to Ground Lease, dated March 29, 2024 (collectively, as the same may be further amended, restated, and/or supplemented from time to time, the "Ground Lease") by and among 356W58 Ground Lessor LLC as landlord ("Landlord") and Hudson 1702, LLC as tenant ("Tenant 1") and Hudson 1701/1706, LLC as tenant ("Tenant 2"; and together with Tenant 1, individually and collectively as the context may require, "Tenant"), as covering the Leased Premises as defined therein.

Reference is further made to that certain Notice of Default and Reservation of Rights dated October 8, 2024 sent by Landlord to Tenant (the "Ground Lease Default Notice").

PLEASE TAKE NOTICE that Events of Default have occurred and are continuing under the Loan Documents, including without limitation the following Events of Default described herein (the "Specified Events of Default").

*Ground Lease Default*

Pursuant to Section 9.1(r) of the Building Loan Agreement, it is an Event of Default for the Borrower to be "in default under the Ground Lease or Sublease beyond any applicable notice and cure period provided therein[.]"

Section 21(j) of the Ground Lease provides that "[a]ny fraud, embezzlement, willful misconduct, bad faith or gross negligence with respect to the Leased Premises or in any way related to [the] Lease on the part of Tenant, Guarantor, or any Tenant Key Person" constitutes an Event of Default under the Ground Lease.

Pursuant to Section 49(f) of the Ground Lease, Tenant was required to "[w]ithin five (5) Business Days of receipt of any communications (via e-mail, phone, fax or written notice) from DOB with respect to the Tenant Protection Plan, the Project or any SRO Tenant, notify Landlord of such communication and, if applicable, deliver a copy of any such communication to Landlord."

As described in the Ground Lease Default Notice, Tenant failed to notify Landlord that on or about August 21, 2023, the Department of Buildings denied Tenant's request to use the Leased Premises' windows on the northern portion of the western façade for natural light and air requirements.

As further described in the Ground Lease Default Notice, by virtue of the foregoing Tenant breached its obligations under Section 49(f) of the Ground Lease, and the Ground Lessor determined that "in view of the length of time that has passed and the multitude of events that have occurred since the DOB's denial, Tenant's breach is a product of Tenant's willful misconduct, bad faith or gross negligence."

As further described in the Ground Lease Default Notice, by virtue of the foregoing, an Event of Default has occurred as provided in Section 21(j) of the Ground Lease.

PLEASE TAKE FURTHER NOTICE that by virtue of the foregoing, an Event of Default has occurred as provided in Section 9.1(r) of the Building Loan Agreement.

*Inadequate Insurance Coverage*

Pursuant to Section 9.1(c) of the Building Loan Agreement it is an Event of Default for Borrower to fail to "maintain the insurance required to be maintained under Section 2.11" of the Building Security Instrument. Section 2.11(e) of the Building Security Instrument requires that Borrower "shall cause each Subcontractor to maintain commercial general liability, commercial

automobile liability, workers' compensation, employers' liability, and excess umbrella liability coverage, in form and amount satisfactory to Lender[.]"

PLEASE TAKE FURTHER NOTICE that Borrower has failed to ensure that numerous Subcontractors maintain satisfactory insurance pursuant to Section 2.11(e) of the Building Security Instrument, including but not limited to the following:

1. Borrower has failed to cause CMBC LLC ("CMBC") to maintain insurance coverage satisfactory to Lender. These deficiencies include, but are not limited to, noncompliant exclusions for bodily injury of CMBC's employees, noncompliant exclusions for work performed by CMBC prior to the inception of the policy, and failure to obtain the required excess liability insurance. These deficiencies are identified in a Subcontractor Insurance Report Card dated July 9, 2024, which is attached hereto as Exhibit A.

2. Borrower has failed to cause Kabrit Corp. DBA DMV Mechanical ("Kabrit") to maintain insurance coverage satisfactory to Lender. These deficiencies include, but are not limited to, failure to endorse policy to provide insured coverage to all required project entities on primary and non-contributory bases, and failure to endorse the policy to provide for a waiver of subrogation in favor of all required project entities. These deficiencies are identified in a Subcontractor Insurance Report Card dated August 1, 2024, which is attached hereto as Exhibit B.

3. Borrower has failed to cause F.S. Site Corp ("F.S. Site") to maintain insurance coverage satisfactory to Lender. These deficiencies include, but are not limited to, failure to add all required additional insureds with all required insurance and indemnity requirements. These deficiencies are identified in a Subcontractor Insurance Report Card dated August 2, 2024, which is attached hereto as Exhibit C.

4. Borrower has failed to cause New Jersey Boom & Erectors, Inc. ("New Jersey Boom") to maintain insurance coverage satisfactory to Lender. These deficiencies include, but are not limited to, failure to endorse policy to provide insured coverage to all required project entities. These deficiencies are identified in a Subcontractor Insurance Report Card dated August 9, 2024, which is attached hereto as Exhibit D.

5. Borrower has failed to cause Alba Services, Inc. ("Alba") to maintain insurance coverage satisfactory to Lender. These deficiencies include, but are not limited to, failure to endorse policy to provide insured coverage to all required project entities on primary and non-contributory bases and inclusion of a prohibited Self-Insured Retention in excess of $50,000. These deficiencies are identified in a Subcontractor Insurance Report Card dated August 13, 2024, which is attached hereto as Exhibit E.

6. Borrower has failed to cause Jakobwits Hospitality Supply Corporation DBA Noble Stone ("Jakobwits") to maintain insurance coverage satisfactory to Lender. These

deficiencies include, but are not limited to, inclusion of a noncompliant exclusion for work on condominiums, noncompliant modifications to standard business risk exclusions, and failure to obtain the required excess liability insurance. These deficiencies are identified in a Subcontractor Insurance Report Card dated August 16, 2024, which is attached hereto as Exhibit F.

7. Borrower has failed to cause Rockledge Scaffold Corp. ("Rockledge") to maintain insurance coverage satisfactory to Lender. These deficiencies include, but are not limited to, failure to obtain the required excess liability insurance. These deficiencies are identified in a Subcontractor Insurance Report Card dated August 28, 2024, which is attached hereto as Exhibit G.

PLEASE TAKE FURTHER NOTICE that by virtue of the foregoing deficiencies in insurance coverage, an Event of Default has occurred as provided in Section 9.1(c) of the Building Loan Agreement.

### *Inability to Pay Debts When Due*

Pursuant to Section 9.1(h) of the Building Loan Agreement, it is an Event of Default when "Borrower shall be unable . . . to pay its debts when due[.]"

Pursuant to the Note, "the outstanding principal balance of [the] Note, together with all accrued and unpaid interest, shall be due and payable on November 1, 2024 ("Maturity Date") . . . or any earlier date on which [the] Note shall be required to be paid in full, whether by acceleration or otherwise." The outstanding principal balance of the Note as of September 30, 2024 is $178,373,490.29. The outstanding accrued and unpaid interest as of September 30, 2024 is $19,503,415.84.

In view of recent events, including, but not limited to, the Borrower's obvious imminent failure to timely complete construction of the Improvements, it has become clear that Borrower is and will be unable to pay its debts when due, namely the outstanding principal balance of the Note and all accrued and unpaid interest on or before November 1, 2024.

PLEASE TAKE FURTHER NOTICE that by virtue of the foregoing, an Event of Default has occurred as provided in Section 9.1(h) of the Building Loan Agreement.

### *Reservation of Rights*

Lender and Administrative Agent have not waived, nor hereby waive, any Specified Events of Default or any other Default or Event of Default which may exist or arise under the Loan Agreement or any other Loan Documents. Lender and Administrative Agent hereby expressly reserve all rights, powers and remedies available to them under the Loan Agreement and any other Loan Documents or at law or in equity, any or all of which may be exercised by Lender or Administrative Agent at its discretion at any time or times, without any notice (except as otherwise

required by the terms of the Loan Documents). Such rights, powers, and remedies shall be available to Lender and Administrative Agent as a result of the Specified Events of Default and any other Event of Default that is now in existence or that may hereafter occur.

No failure on the part of Lender or Administrative Agent to exercise and no delay in exercising, and no course of dealing with respect to, any right, remedy, power or privilege available under any of the Loan Agreement, any Loan Documents, applicable law or otherwise, shall be deemed or constitute (x) a waiver of, or consent by Lender or Administrative Agent to any Specified Event of Default or any other Events of Default, whether now existing or hereafter arising under the Loan Documents, (y) a waiver by Lender or Administrative Agent of any rights, remedies, privileges, offsets, claims, or other causes of action that Lender or Administrative Agent may have against the Borrower, Guarantor, or Pledgor under the Loan Documents, all of which rights, remedies, privileges, offsets, claims, or other causes of action are hereby expressly reserved by Lender and Administrative Agent. Single or partial exercise of any rights, remedies, power or privilege under any of the Loan Documents shall preclude other or further exercise thereof or the exercise of any other right, remedy, power or privilege, all of which rights, remedies, powers, and privileges are hereby expressly reserved by Lender and Administrative Agent.

Lender and Administrative Agent expect the Borrower and Guarantor to strictly comply at all times with the terms and provisions of any Loan Documents, including all provisions thereof that restrict the rights of the Borrower and Guarantor from taking certain actions once an Event of Default occurs.

Additionally, negotiations, if any, between Borrower, Guarantor, Pledgor, their advisors or any other person or entity, and Lender or Administrative shall not constitute a waiver of any rights or remedies available to Lender or Administrative Agent under the Loan Documents, at law or in equity, including but not limited to those described in this letter. Borrower, Guarantor, and Pledgor shall not be entitled to rely upon any verbal statements made or purported to be made by or on behalf of Lender or Administrative Agent in connection with any alleged agreement by Lender or Administrative Agent to modify any provisions of the Loan Documents or to refrain from exercising any of its rights or remedies under the Loan Documents, at law or in equity, it being understood that any waiver, amendment or other variation of the terms, conditions, or provisions of any Loan Documents whatsoever, whether in connection with the Specified Events of Default or otherwise, shall only be effective if set forth in writing and executed by representatives of the persons required pursuant to Section 12.7 of the Loan Agreement duly authorized to do so, and then only to the extent specifically set forth in such writing. This letter shall be governed by and construed in accordance with the laws of the State of New York.

[*signature page follows*]

Very truly yours,

**Parkview Financial REIT, LP**

as Administrative Agent and Lender

By:_____

Name:          Ted Jung

Title:            Authorized Signatory

8

cc:    Cole Schotz P.C.
    1325 Avenue of the Americas, 19th Floor
    New York, New York 10019
    Attn: Jordan J. Metzger Esq.
    Email: jmetzger@coleschotz.com
    (*by email and overnight courier*)

    356W Ground Lessor LLC c/o
    GLR Capital Investments, LLC
    2801 North Harwood Street, Suite 1200
    Dallas, Texas 75201
    Attn: Max Nipon
    Email: nipon@mspcm.com
    (*by email and overnight courier*)

    Adler & Stachenfield LLP
    555 Madison Ave., 6th Floor
    New York, New York 10022
    Attn: Danielle Ash, Esq.
    dash@adstach.com
    (*by email and overnight courier*)

    Paul S. Rahimian (*by email only*)
    Neal Kronley (*by email only*)
    Lauren Manton (*by email only*)
    Stuart Brown (*by email only*)