## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>          Hudson 1701/1706 LLC,<br>                    Debtors.[1] | Chapter 11<br><br>Case No. 25-11853 (KBO) |
| | (Jointly Administered) |
| HUDSON 1701/1706, LLC, a Delaware<br>limited liability company; and HUDSON<br>1702, LLC, a Delaware limited liability<br>company,<br>                    Plaintiffs,<br>          v.<br>356W58 GROUND LESSOR LLC, a<br>Delaware limited liability company,<br>                    Defendant. | Adv. Proc. No. 25-52471 (KBO) |

## 356W58 GROUND LESSOR LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

Dated:  February 18, 2026
          Wilmington, Delaware

**LANDIS RATH & COBB LLP**
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Katherine S. Dute (No. 6788)
Soumya P. Venkateswaran (No. 7278)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile:  (302) 467-4450
Email: landis@lrclaw.com
          mcguire@lrclaw.com
          dute@lrclaw.com
          venkateswaran@lrclaw.com

**ADLER & STACHENFELD LLP**
Kirk L. Brett (admitted *pro hac vice*)
Patrick O'Connor (admitted *pro hac vice*)
555 Madison Avenue, 6th floor
New York, New York 10022
Telephone: (212)883-1700
Facsimile: (212)883-8883
Email: kbrett@adstach.com
          poconnor@adstach.com

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190). The Debtors' headquarters and the mailing address for the Debtors is 11440 San Vicente Boulevard, 2nd Floor, Los Angeles, CA 90045.

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT .................................................................................................................... 3

    I.  Debtors Ignore the Requirement of Plausibility ................................................. 3

   II.  The Undisputedly Authentic Documents at the Heart of the Transaction Confirm
       that the Lease is What it Purports to be ............................................................ 4

  III.  Cases Relied Upon by Debtors are Off-Point ................................................... 6

  IV.  Quasi-Estoppel Precludes Plainly Inconsistent Positions by Parkview and Debtors ......... 8

   V.  Given Parkview's Consent, the Avoidance Claims are Equally Implausible..................... 9

  VI.  Counts IV and V should also be Dismissed ..................................................... 10

CONCLUSION................................................................................................................. 10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*631 N. Broad St., LP v. Commonwealth Land Title Ins. Co.*, No. CV 17-02805, 2018 WL 4051798 (E.D. Pa. Aug. 23, 2018) ........................................................................................ 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................... 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................... 3

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ................................... 4

*In re Integrated Health Servs., Inc.*, 260 B.R. 71 (Bankr. D. Del. 2001) .................................... 4

*In re Midway Games Inc.*, 428 B.R. 303 (Bankr. D. Del. 2010) ................................................... 6

*In re Montgomery Ward, L.L.C.*, 469 B.R. 522 (Bankr. D. Del. 2012) ........................................ 6

*In re PCH Assocs.*, 804 F.2d 193 (2d Cir. 1986) ......................................................................... 7

*In re Pittsburgh Sports Assocs. Holding Co.*, 239 B.R. 75 (Bankr. W.D. Pa. 1999) .................... 8

*In re Robb*, 23 F.3d 895 (4th Cir. 1994) ...................................................................................... 8

*In re SilverRock Dev. Co., LLC*, No. 24-11647 (MFW), 2025 WL 3492145 (D. Del. Dec. 5, 2025) ........................................................................................................................................ 7

*In re WorldCom, Inc.*, 339 B.R. 56 (Bankr. S.D.N.Y. 2006) ....................................................... 4

*In re Zohar III, Corp.*, 639 B.R. 73 (Bankr. D. Del. 2022) (Owens, J.) .............................. 3, 4, 10

*L A Apparel, Inc. v. Straight A Co.*, LP, No. MC 3:21-285, 2022 WL 17417173 (M.D. Pa. Dec. 5, 2022) ..................................................................................................................................... 8

**Statutes**

Fed. R. Bankr. P. 7012(b) ............................................................................................................ 1

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... passim

356W58 Ground Lessor LLC ("Landlord"), through its undersigned counsel, respectfully submits this reply memorandum of law in further support of its motion to dismiss (the "Motion to Dismiss") [D.I. 15][2] the Complaint filed by Debtors Hudson 1701/1706, LLC and Hudson 1702, LLC (together, the "Debtors") [D.I. 1][3] with prejudice pursuant to Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Parkview Financial REIT, LP ("Parkview"), as the pre-petition leasehold lender to the Debtors, is using its newfound control over the Debtors to attempt to unwind a series of transactions that Parkview itself would otherwise be estopped from attacking. As set forth in Landlord's moving brief, this is *not* a case in which only two parties privately agreed to structure a transaction in a manner prejudicial to creditors. Instead, the most significant creditor in this case – Parkview – willingly participated in structuring the transaction, including by extending a construction loan secured by the Debtors' leasehold interests. And over a period of more than three years, Parkview repeatedly represented to the outside world that the Debtors, in fact, only held a leasehold interest.

Although Parkview obviously directed the Debtors to file this action (and used its prior counsel to sign the Complaint), Parkview now seeks to have this Court ignore its involvement altogether. The Parkview-directed responsive brief barely discusses Parkview's role in these transactions, even though Parkview's actions are a primary driver in rendering the claims in the Complaint so thoroughly implausible. But it is appropriate to hold the Debtors accountable for

---

[2] Terms utilized but not otherwise defined herein shall the meanings ascriobed to them in the *356W58 Ground Lessor LLC's Memorandum of Law in Support of its Motion to Dismiss the Complaint* [D.I. 16].

[3] Unless otherwise stated, all docket references are to the Adversary Proceeding number 25-52471.

Parkview's actions in recognizing the Lease as a true lease because this is a Parkview-directed adversary proceeding. The impetus for this action is Parkview's desire to use the Debtor entities, and this Court, to accomplish what it could not do outside of bankruptcy: that is, extract economic concessions from Landlord.

If need be, Landlord is prepared to address the economic substance of the Lease to demonstrate that it is a true lease. The Lease terms are consistent with others in the multi-billion-dollar market for ground leases. And notwithstanding the "creative" arguments espoused in the Complaint and responsive brief, the critical factors articulated by courts lead to the inevitable conclusion that the Lease is a true lease. Among many other things, Landlord purchased the property from an unaffiliated third party at fair value, Landlord has the full reversionary interest in the property, and there is no purchase option for the Debtors whatsoever. Nevertheless, this kind of detailed analysis at trial should be unnecessary given the circumstances of this case.

For similar reasons, the Parkview-directed effort to avoid the Fourth Amendment should also be rejected. The avoidance claim is premised on the notion that the Fourth Amendment was somehow unfair to the Debtors – even though the amendment addressed Debtors' defaults, and Debtors' construction lender (Parkview) expressly endorsed the Fourth Amendment. Now, having had the benefit of the Fourth Amendment for nearly two years, that same lender is directing an effort to un-do the amendment as purportedly failing to provide reasonably equivalent value. On their face, therefore, these claims are contradicted by the parties' prior conduct, and should be readily rejected.

## **ARGUMENT**

**I.      Debtors Ignore the Requirement of Plausibility**

Debtors fail to describe or apply the correct pleading standard under FRCP 12(b)(6). Focusing entirely on the conventional imperative to construe allegations in a complaint in the light most favorable to the plaintiff, Debtors ignore that they are ***required to do more*** to survive a motion to dismiss: namely, they must plead facts that nudge the claims across the line from conceivable to plausible. Failure to do so necessitates dismissal on a Rule 12(b)(6) motion.

The Supreme Court pronounced this plausibility standard in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), as this Court well knows. *See In re Zohar III, Corp.*, 639 B.R. 73, 89–90 (Bankr. D. Del. 2022) (Owens, J.), *aff'd*, 620 F. Supp. 3d 147 (D. Del. 2022) (holding that Rule 12(b)(6) requires plaintiffs to plead facts that "nudge the claims 'across the line from conceivable to plausible'").

Debtors' opposition makes ***no*** reference to this plausibility standard – or to this Court's *In re Zohar III, Corp.* decision. Instead, Debtors' opposition rehashes the Complaint by outlining conclusory allegations and cataloguing legal citations to factually distinguishable cases that do not involve a leasehold lender seeking to recharacterize a lease that it repeatedly acknowledged. *See The Debtors' Opposition to Defendant's Motion to Dismiss* [D.I. 25] ("Opp. Br.") at 11-15. Such efforts, which serve to distract from the implausibility of their claims, ignores this Court's holding that a dismissal motion is not "a mini trial for parties to put forth their whole case and competing viewpoints of what the ultimate outcome should be[.]" *See In re Zohar III, Corp.*, 639 B.R. at 89-90.

Debtors apparently would rather pretend that the plausibility standard does not exist. And Debtors evidently would prefer that this Court take leave of its "judicial experience and common

sense" and ignore (i) settled law concerning Rule 12(b)(6) standards (*see Id*. (quoting *Iqbal*, 556 U.S. at 679)), and (ii) the fact that Parkview and Debtors repeatedly confirmed – and represented to the outside world – that the Lease is a true lease.

Debtors' mischaracterization of the Rule 12(b)(6) standard does not end there. Debtors protest Landlord's submission of documents with the Motion that were not "cited or referenced in the Complaint[.]" *See* Opp. Br. at 10, n.4. But courts may review documents not attached to a plaintiff's complaint "where plaintiff has actual notice ... and has relied upon these documents in framing the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Watterson v. Page*, 987 F.2d 1, 3–4 (3d Cir. 1993). Plaintiff undoubtedly had notice of all documents accompanying this Motion, including the leasehold financing documents and UCC foreclosure notices that resulted in Parkview's ownership of the Debtors. In any event, the "undisputedly authentic documents" concerning this Motion (including the governing agreements) clearly may be considered by the Court at this juncture. *See In re Zohar III, Corp.*, 639 B.R. at 89-90 (court may review integral, "undisputedly authentic documents" to analyze whether pleadings "make [] sense" or are "incoherent").

## II.    The Undisputedly Authentic Documents at the Heart of the Transaction Confirm that the Lease is What it Purports to be

The quantum of evidence necessary to satisfy Debtors' burden to characterize the Lease as something other than what it purports to be is "substantial." *See In re Integrated Health Servs., Inc.*, 260 B.R. 71, 75 (Bankr. D. Del. 2001); *In re Barney's, Inc.*, 206 B.R. 328, 332 (Bankr. S.D.N.Y. 1997); *In re WorldCom, Inc.*, 339 B.R. 56, 62 (Bankr. S.D.N.Y. 2006). The undisputedly authentic documents underlying the Complaint verify that the Lease is what it is. And those documents amply demonstrate that the significant players in this case – the Debtors' prior

4

ownership as well as Parkview and the Landlord – have manifested their intention to have a true lease, and have represented the Lease to be a true lease to the outside world.

At length, Landlord's Motion describes the undisputedly authentic documents at the heart of the parties' agreement, including the Lease (Ex. C), the Amendments (Exs. J, M, N, and Q), the Construction Loan (Exs. E, F, G, and H), the Leasehold Financing Agreements (Exs. I and L), and the UCC foreclosure public advertisements (Exs. T and W). Those documents demonstrate a critical fact: Parkview is not a stranger to the Lease. In their Complaint, Debtors (at Parkview's direction) pretend otherwise. *See* Complaint at ¶ 2 ("This action follows the Plaintiff's review of the Purported Ground Lease, as well as the facts and circumstances that led to the execution of the Purported Ground Lease").

Debtors' opposition attempts to create distance between Parkview and the Lease that it repeatedly acknowledged, and Debtors go on to argue that Parkview's foreclosure is irrelevant to this adversary proceeding. *See* Opp. Br. at 9-10. Neither of those contentions is convincing, and Debtors' cursory treatment of Parkview's role here is unintentionally revealing of its significance.

At Parkview's direction, Debtors cling to their invention by now arguing that "recharacterization claims necessarily arise from transactions papered as 'leases,'" and describe Parkview and Debtors' repeated acknowledgement of and reliance upon the Lease as a true lease as "a completely inconsequential point[.]" *See* Opp. Br. at 1.

But Parkview and Debtors did not merely "paper" the Lease as a lease. Rather, Parkview and Debtors repeatedly acknowledged that the Lease is a true lease by executing amendments to the Lease (Exs. J, M, N, and Q), the Leasehold Financing Agreements (Exs. I and L), and the Construction Loan documents (Exs. E, F, G, and H).

More importantly, by recording documents and publishing UCC foreclosure notices in widely circulated periodicals, Parkview communicated to the whole world that the Lease is what it purports to be:

a. The Memorandum of Lease (Ex. D) (executed by Debtors and recorded by Parkview);

b. The Building Leasehold Mortgage (Ex. G) (executed by Debtors and Parkview and recorded);

c. The Project Leasehold Mortgage (Ex. H) (executed by Debtors and Parkview and recorded);

d. February 2025 UCC Notice of Public Sale (Ex. T) (published by Parkview);

e. June 2025 UCC Notice of Public Sale (Ex. W) (published by Parkview).

Debtors, at Parkview's direction, disregard these recorded and published documents and pray that this Court will do the same.

## III.    Cases Relied Upon by Debtors are Off-Point

Left with no choice but to direct attention away from the documentary evidence, Debtors incessantly cite and quote caselaw concerning the elements of an ordinary recharacterization claim. However, this is not an ordinary recharacterization claim because, unlike in the cases cited by Debtors, the plaintiff here is not a stranger to the Lease. Debtors are unable to cite any binding caselaw in which a leasehold lender or other party involved in structuring the lease successfully challenged an agreement purporting to be a lease. In fact, the only binding cases cited in Debtors' opposition concern challenges from genuine strangers to agreements that purport to be a true lease. *See In re Montgomery Ward, L.L.C.*, 469 B.R. 522, 526 (Bankr. D. Del. 2012) (bankruptcy plan administrator – not a party to the lease agreement – sought to recharacterize it); *In re Midway Games Inc.*, 428 B.R. 303, 322 (Bankr. D. Del. 2010) (Official Committee of Unsecured Creditors challenged prepetition loan); *In re SilverRock Dev. Co., LLC*, No. 24-11647 (MFW), 2025 WL

3492145, at *2 (D. Del. Dec. 5, 2025) ("By its plain terms, the Ground Lease is 'essentially a financing device rather than a traditional operating lease.'").[4]

While somewhat informative of the elements of a recharacterization analysis, the other cases cited by Debtors are inapposite as to Debtors' Rule 12(b)(6) plausibility burden because, aside from the fact that they are not binding precedent, they do not concern analogous facts. Parkview and Debtors communicated to the world that the Lease is a true lease through the undisputedly authentic documents that they recorded, and through the UCC foreclosure notices that they published. Debtors' caselaw contains no such parallels.

Still, caselaw cited by Debtors does explain the purpose of looking to the substance of a purported lease; that is, the label of a document should not constrain third party creditors who had nothing to do with the relevant transaction. *See In re PCH Assocs.*, 804 F.2d 193, 198 (2d Cir. 1986) ("it would be inherently inequitable to allow the parties' choice of label to affect the rights of third party creditors."). Here, Parkview's repeated confirmation and publication of documents verifying that the Lease is a lease obviates any equitable concerns as to Parkview. In other words, Parkview cannot complain that it would be inequitable to hold that the Lease is a lease because it was never a true third party to the Lease.

---

[4] Debtors inadvertently rely upon a case that actually supports Landlord's position here. In *In re SilverRock Dev. Co., LLC*, No. 24-11647 (MFW), 2025 WL 3492145, at *2 (D. Del. Dec. 5, 2025), the leasehold lender ***defended*** the relevant ground lease and sought to have the court treat the ground lease as a true lease (even though the text of the ground lease stated that it was a financing device, and the annual rent was only one dollar per year). This is the opposite fact pattern of the case at hand, in which the leasehold lender (Parkview) is ***attacking*** the characterization of the ground lease.

IV.    **Quasi-Estoppel Precludes Plainly Inconsistent Positions by Parkview and Debtors**

Because Parkview and Debtors have repeatedly acknowledged and relied upon the Lease as a true lease, and recorded documents and foreclosed on the equity ownership of the Debtors, the doctrine of quasi-estoppel applies and bars Parkview and Debtors from asserting a contradictory position here. *See 631 N. Broad St., LP v. Commonwealth Land Title Ins. Co.*, No. CV 17-02805, 2018 WL 4051798, at *8 (E.D. Pa. Aug. 23, 2018), *aff'd*, 778 F. App'x 164 (3d Cir. 2019) ("The doctrine of 'quasi-estoppel operates to bar a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by that party.'"); *L A Apparel, Inc. v. Straight A Co.*, LP, No. MC 3:21-285, 2022 WL 17417173, at *7 (M.D. Pa. Dec. 5, 2022) ("the doctrine of quasi-estoppel applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit."); *In re Robb*, 23 F.3d 895, 898 (4th Cir. 1994) ("quasi-estoppel forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid the corresponding obligations or effects.").

Debtors' reliance on *In re Pittsburgh Sports Assocs. Holding Co.* in relation to quasi-estoppel is misplaced. That case concerned whether statements consisting of conclusions of law, made after commencement of a bankruptcy case, lie within the scope of ***judicial*** estoppel. *In re Pittsburgh Sports Assocs. Holding Co.*, 239 B.R. 75, 81 (Bankr. W.D. Pa. 1999). The court was careful to limit its findings to that particular situation. *See id.* ("For purposes of the present motion…" and "In the present context…"). The issue in the case at hand does not relate to post-petition statements of law to a court. Instead, the present case involves non-judicial, pre-bankruptcy statements and actions by the Debtors' leasehold lender. The wholly inconsistent positions concerning the Lease taken by Parkview (and the Debtors) prior to these bankruptcy

cases are clearly matters of fact, which preclude the Parkview-directed claims under principles of quasi-estoppel.

Debtors are also incorrect in arguing that they benefited only from the economic substance of the Lease. *See* Opp. Br. at 17-18 ("to the extent the Debtors benefited from anything, they benefited from the economic substance of the Purported Ground Lease, not from its labelling as a lease."). As Landlord has shown – and Parkview and Debtors have not refuted – Parkview and Debtors structured their relationship as ***leasehold*** financing, with a pledge of equity in the Debtors. And Parkview actually benefitted from the foreclosure of that equity following publication of documents affirming that Debtors owned a ***leasehold*** interest in the property. *See* Exs. T and W.[5] A review of those documents, and other undisputedly authentic documents, requires no fact-intensive inquiry to understand that Parkview benefitted from its own representations that the Lease is what it purports to be. Parkview and Debtors are thus subject to the doctrine of quasi-estoppel.

## V.     Given Parkview's Consent, the Avoidance Claims are Equally Implausible

Debtors argue that Section 548 permits avoidance of voluntary transfers because debtors sometimes agree to such transfers under financial duress. But this ignores the fact that Debtors' lender – Parkview – expressly consented to the Fourth Amendment and executed it. It is beyond dispute that, following the Debtors' inability to satisfy the CONH Requirement, they requested and negotiated the various accommodations reflected in the Fourth Amendment – and they received the consent of Parkview in doing so.

---

[5] It is unclear how Parkview could have conducted a commercially reasonable foreclosure sale if it misrepresented the nature of the assets owned by the Debtors. Parkview and Debtors know nothing about the Lease now that they did not know at the time of the foreclosure sale.

It is implausible that an amendment requested by Debtors and approved by Parkview as Debtors' lender is sufficiently unfair to be avoided. Such an argument "make[s] no sense,… [and is] contradicted… by documents upon which [Debtors'] pleadings rely, or by facts of which the court may take judicial notice." *In re Zohar III, Corp.*, 639 B.R. at 89–90. Again, a review of the undisputedly authentic documents (here, the Fourth Amendment (Ex. Q)) contradicts Debtors' claim.

**VI.    Counts IV and V should also be Dismissed**

Debtors' claims for recovery and disallowance (Counts IV and V) are predicated upon avoidance of the Fourth Amendment and should thus be dismissed along with Counts II and III.

<u>**CONCLUSION**</u>

For the foregoing reasons, Landlord respectfully requests that this Court dismiss each of Debtors' claims with prejudice, and for such other and further relief that the Court deems just and proper.

Dated: February 18, 2026
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Katherine S. Dute (No. 6788)
Soumya P. Venkateswaran (No. 7278)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile:  (302) 467-4450
Email: landis@lrclaw.com
      mcguire@lrclaw.com
      dute@lrclaw.com
      venkateswaran@lrclaw.com

– and –

**ADLER & STACHENFELD LLP**
Kirk L. Brett (admitted *pro hac vice*)
Patrick O'Connor (admitted *pro hac vice*)
555 Madison Avenue, 6th floor
New York, New York 10022
Telephone: (212)883-1700
Facsimile: (212)883-8883
Email: kbrett@adstach.com
      poconnor@adstach.com

*Counsel to 356W58 Ground Lessor LLC*