# EXHIBIT T

ADVERTISEMENT

# The Marketplace

To advertise: 800-366-3975 or WSJ.com/classifieds

## BANKRUPTCIES

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| FIRST MODE HOLDINGS, INC., *et al.*,[1] | ) Case No. 24-12794 (KBO) |
| Debtors. | ) (Jointly Administered) |

**NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT, (II) PLAN CONFIRMATION HEARING AND (III) DEADLINE TO VOTE ON AND OBJECT TO CONFIRMATION OF PLAN**

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOUR RIGHTS MAY BE AFFECTED BY THE PLAN. THEREFORE, YOU SHOULD READ THIS NOTICE CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

**TO: ALL HOLDERS OF CLAIMS AGAINST OR INTERESTS IN FIRST MODE HOLDINGS, INC., SYNCHRONOUS LLC, AND ALL OTHER PARTIES IN INTEREST IN THE ABOVE-CAPTIONED CHAPTER 11 CASES**

**PLEASE TAKE NOTICE THAT** on February 7, 2024, First Mode Holdings, Inc. and Synchronous LLC (together, the "**Debtors**"), filed the solicitation version of their (i) *First Amended Joint Chapter 11 Plan of First Mode Holdings, Inc. and its Debtor Affiliate under Chapter 11 of the Bankruptcy Code* [Docket No. 253] (as it may be amended, modified, or supplemented from time to time, the "**Plan**"), and (ii) Disclosure Statement for *First Amended Joint Chapter 11 Plan of First Mode Holdings, Inc. and its Debtor Affiliate under Chapter 11 of the Bankruptcy Code* [Docket No. 254] (as it may be amended, modified, or supplemented from time to time, the "**Disclosure Statement**").[2] On February 7, 2025, the Bankruptcy Court entered an order [Docket No. 252] (the "**Disclosure Statement Order**") that, among other things, approved the Disclosure Statement, established (i) **March 14, 2025, at 4:00 P.M. (prevailing Eastern time)** as the deadline for objecting to confirmation of the Plan (the "**Confirmation Objection Deadline**"), (ii) **March 14, 2025, at 4:00 P.M. (prevailing Eastern time)** as the deadline for voting to accept or reject the Plan (the "**Voting Deadline**"), and (iii) **March 26, 2025, at 9:30 A.M. (prevailing Eastern time)** as the date and time of the hearing to consider confirmation of the Plan (the "**Confirmation Hearing**").

**PLEASE TAKE FURTHER NOTICE THAT**, if you wish to review the Plan, you may receive a copy of the Plan free of charge from Omni Agent Solutions, Inc. ("**Omni**"), the voting and claims agent retained by the Debtors in these Chapter 11 Cases, by (i) calling the Debtors' restructuring hotline at 866-771-0558 (US & Canada Toll Free) or 747-288-6101 (international); (ii) visiting the Debtors' restructuring website at: https://omniagentsolutions.com/FirstMode; and/or (iii) sending an email to FirstModeInquiries@OmniAgnt.com. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: http://www.deb.uscourts.gov or free of charge at https://omniagentsolutions.com/FirstMode.

Please be advised that Omni is authorized to answer questions and provide additional copies of solicitation materials but may **not** advise you as to whether you should object to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the Bankruptcy Court can confirm the Plan and bind all Holders of Claims and Interests if, after approval of the Disclosure Statement and the solicitation of votes to accept or reject the Plan, it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of the Claims in each Impaired Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Plan if it finds that the Plan (i) provides fair and equitable treatment to, and does not unfairly discriminate against, each Class rejecting the Plan and (ii) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on all Holders of Claims and Interests whether or not a particular Holder was entitled to vote, voted, or affirmatively voted to reject the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the Confirmation Hearing to consider confirmation of the Plan will commence at **9:30 A.M. (prevailing Eastern time) on March 26, 2025**, before the Honorable Judge Karen B. Owens, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, 6th Floor, Courtroom 3, Wilmington, Delaware 19801. The Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on such parties as the Bankruptcy Court may order. Moreover, the Plan may be modified or amended, if necessary, pursuant to section 1127 of the Bankruptcy Code, prior to, during or as a result of the Confirmation Hearing, without further notice to parties in interest.

**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**

**ARTICLE IX OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**PLEASE BE ADVISED THAT THE DEBTOR RELEASE CONTAINED IN ARTICLE IX.B OF THE PLAN WILL BE INCLUDED IN THE CONFIRMATION ORDER AND THAT IT IS SEPARATE FROM AND INDEPENDENT OF THE THIRD-PARTY RELEASES. IF YOU OBJECT TO THE DEBTOR RELEASE, YOU MUST FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE DISCLOSURE STATEMENT ORDER.**

Confirmation Objection Deadline. The deadline for filing objections to the Plan is **March 14, 2025 at 4:00 P.M. (prevailing Eastern time)**.

Objections to the Plan. Any objection to the Plan must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) state the name and address of the objecting party and the amount and nature of the Claim against or Interest in the Debtors; (iv) state with particularity the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (v) be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so that it is **actually received** no later than the Confirmation Objection Deadline by the parties listed below. CONFIRMATION OBJECTIONS NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.

(i) The Debtors: 3417 1st Ave S, Seattle, WA 98134, Attn: Will Smith (email: will.smith@firstmode.com); (ii) Counsel to the Debtors: (a) Latham & Watkins LLP (x) 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: Caroline Reckler, Esq. (email: caroline.reckler@lw.com); (y) 1271 Avenue of the Americas, New York, NY 10020, Attn: Annemarie V. Reilly, Esq. and Brian S. Rosen, Esq. (emails: annemarie.reilly@lw.com, and brian.rosen@lw.com); and (z) 355 South Grand Avenue, Suite 100, Los Angeles, CA 90071, Attn: Jeffrey T. Mispagel, Esq. (email: jeffrey.mispagel@lw.com) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Michael R. Nestor, Esq., Kara Hammond Coyle, Esq., and Joseph M. Mulvihill, Esq. (emails: MNestor@ycst.com, KCoyle@ycst.com, and JMulvihill@ycst.com); (iii) The U.S. Trustee: 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Jane Leamy (email: Jane.M.Leamy@usdoj.gov); (iv) Counsel for the DIP Lender, the Prepetition Facility Lender, and the Consenting Parent: (a) Davis Polk & Wardwell LLP, 450 Lexington Ave, New York, NY 10017, Attn: Darren S. Klein, Esq. and Aryeh Ethan Falk, Esq. (darren.klein@davispolk.com and aryeh.falk@davispolk.com) and (b) Morris, Nichols, Arsht & Tunnell LLP, 1201 N Market St # 1600, Wilmington, DE 19801, Attn: Robert J. Dehney, Sr., Esq. (rdehney@morrisnichols.com); and (v) Counsel to the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases: McDermott Will & Emery LLP, (a) One Vanderbilt Avenue, New York, NY 10017, Attn: Darren Azman, Esq. and Kristin Going, Esq. (emails: dazman@mwe.com and kgoing@mwe.com) and (z) 1000 N. West Street, Suite 1400, Wilmington, DE 19801, Attn: David R. Hurst, Esq. and Andrew Mark, Esq. (emails: dhurst@mwe.com and amark@mwe.com).

**ADDITIONAL INFORMATION**

**THE PLAN CONTAINS RELEASE, EXCULPATION AND INJUNCTION PROVISIONS. THE PROVISIONS ARE SET FORTH AT THE END OF THIS NOTICE. YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

**DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES ARE CONTAINED IN ARTICLE I OF THE PLAN.**

**RELEASES, DISCHARGES, INJUNCTIONS AND EXCULPATIONS.** Pursuant to Article IX of the Plan, the Debtors seek approval of the following release, injunction, and exculpation provisions.

***Certain Relevant Definitions Contained in Article I of the Plan Related to Release and Exculpation Provisions:***

"**Exculpated Party**" means (a) the Debtors, (b) any Committee, and (c) solely to the extent they are estate fiduciaries, each such Entity's current officers, directors (including any sub-committee of directors), members (including ex officio members), financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such on or after the Petition Date and prior to or on the Effective Date.

"**Released Party**" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Prepetition Secured Lender; (c) the DIP Lender; (d) the Consenting Parent; (e) Anglo (including, for the avoidance of doubt, Anglo American Services (UK) Limited); (f) with respect to each Entity in clauses (a) through (e), each such Entity's current and former Affiliates; and (g) with respect to each Entity in clause (a) through (f), each such Entity's Related Parties; provided, however, that, notwithstanding the foregoing, any Holder of a Claim or Interest that is not a Releasing Party shall not be a Released Party.

"**Releasing Party**" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Prepetition Secured Lender; (c) the DIP Lender; (d) the Consenting Parent; (e) Anglo (including, for the avoidance of doubt, Anglo American Services (UK) Limited); (f) all Holders of Claims and Interests in the Voting Class who either vote to accept the Plan or abstain from voting on the Plan, and, in each case, opt-in to the Third-Party Release; (g) all Holders of Claims and Interests in any Non-Voting Class who return an opt-in form pursuant to the procedures set forth in the Disclosure Statement Order; (h) with respect to each Entity in clauses (a) through (g), each such Entity's current and former Affiliates; and (i) with respect to each Entity in clause (a) through (h), each such Entity's Related Parties (solely to the extent such Releasing Party is legally entitled to bind such Related Party to the releases contained in the Plan under applicable non-bankruptcy law).

**ARTICLE IX RELEASE, INJUNCTION AND RELATED PROVISIONS**

**B. *Releases by the Debtors.*** Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed to be conclusively, absolutely, unconditionally, generally, individually, collectively, irrevocably, completely and forever released, acquitted, and discharged by the Debtors, their Estates, their assigns, and their successors in interest (including the Plan Administrator) from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Debtors, their Estates, their assigns, and their successors in interest (including the Plan Administrator) ever had, now has, or thereafter can, shall, or may have, including any derivative claims asserted or assertable on behalf of a Debtor, its Estate, its assigns, and its successors in interest (including the Plan Administrator), that such entities would have been legally entitled to assert in their own right (whether individually or collectively) or that any Holder of any Claim or Interest could have asserted on behalf of such entities, based on or relating to, or in any manner arising from, in whole or in part, (1) the Debtors, the Debtors' capital structure, the Prepetition Secured Loans or any documents related thereto, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor or Non-Debtor Subsidiary, the Umbrella Supply Agreement and the termination thereof, the HEV Purchase Order and the termination thereof, the Relationship Agreement, the marketing of the Debtors' assets, the Notice of Forbearance, the Chapter 11 Cases, (2) the formulation, preparation, dissemination, negotiation, or filing of the DIP Credit Agreement, the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Sale Transaction(s), or any contract, instrument, release, or other agreement or document created or entered into in connection with the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Chapter 11 Cases, the DIP Credit Agreement, the Prepetition Secured Loans, the Sale Transaction Documentation, the Sale Transaction(s), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, (3) the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, (4) the business or contractual arrangements between any Debtor and any Released Party, or (5) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, to the fullest extent permissible under applicable law, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, fraud or gross negligence.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, or (iii) release any Claims or Causes of Action against any non-Released Party.

**C. *Releases by Holders of Claims and Interests.*** As of the Effective Date, except as otherwise provided herein, each Releasing Party, their Estates, their assigns and their successors in interest, is deemed to have conclusively, absolutely, unconditionally, generally, individually, collectively, irrevocably, completely and forever released each Debtor and Released Party from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties, their Estates, their assigns, and their successors in interest ever had, now has, or thereafter can, shall, or may have, including any derivative claims asserted or assertable on behalf of a Debtor, its Estate, its assigns, and its successors in interest (including the Plan Administrator), that the Releasing Parties, their Estates, their assigns, and their successors in interest would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, (1) the Debtors, the Debtors' capital structure, the Prepetition Secured Loans or any documents related thereto, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in-or-out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor or Non-Debtor Subsidiary, the Umbrella Supply Agreement and the termination thereof, the HEV Purchase Order and the termination thereof, the Relationship Agreement, the marketing of the Debtors' assets, the Notice of Forbearance, the Chapter 11 Cases, (2) the formulation, preparation, dissemination, negotiation, or filing of the DIP Credit Agreement, the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Sale Transaction(s), or any contract, instrument, release, or other agreement or document created or entered into in connection with the Wind-Down Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Chapter 11 Cases, the DIP Credit Agreement, the Prepetition Secured Loans, the Sale Transaction Documentation, the Sale Transaction(s), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, (3) the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, (4) the business or contractual arrangements between any Debtor and any Released Party, or (5) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, to the fullest extent permissible under applicable law, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, fraud or gross negligence.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, (iii) release any Claims or Causes of Action against any non-Released Party, or (iv) release any claims relating to or arising under the Wind-Down Support Agreement.

**D. *Exculpation.*** Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with, or related to, the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation, negotiation, preparation, and consummation of the Plan, making Distributions, the Disclosure Statement, the Sale Process, the Sale Order, or the solicitation of votes for, or Confirmation of, the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; the issuance of securities under or in connection with the Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions or documentation in furtherance of any of the foregoing, including any postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of any restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of the Plan; provided, however, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions. The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person. Notwithstanding the foregoing, nothing in this section shall or shall be deemed to prohibit the Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors, in each case unless otherwise expressly provided for in the Plan. The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

**E. *Injunction.*** Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims, interests, Causes of Action, or liabilities that: (a) are compromised or settled under the Plan (including pursuant to Articles II and III of the Plan); (b) have been released pursuant to the Plan; (c) are subject to exculpation pursuant to the Plan (but only to the extent of the exculpation provided in the Plan), or (d) are otherwise satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, on and after the Effective Date, from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) on account of any such claims, interests, Causes of Action, or liabilities against the Debtors or their successors (including the Plan Administrator) or any Entity released or exculpated (or the property or estate of any such Entity); (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order on account of any such claims, interests, Causes of Action, or liabilities against the Debtors or any Entity released or exculpated, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Entities (including the Plan Administrator), or any property of any such transferee or successor (including the Plan Administrator); (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind on account of any such claims, interests, Causes of Action, or liabilities against the Debtors or any Entity released or exculpated, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Entities (including the Plan Administrator), or any property of any such transferee or successor (including the Plan Administrator); (iv) or asserting any right of setoff, subrogation, or recoupment of any kind on account of any such claims, interests, Causes of Action, or liabilities against any obligation due from such Entities (including the Debtors or their successors (including the Plan Administrator)) or against the property of such Entities including the Debtors or their successors (including the Plan Administrator)) unless such Entity has filed a motion requesting the right to perform such setoff on or before the Effective Date or has filed a Proof of Claim or proof of Interest indicating that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise.

Dated: February 7, 2025, Wilmington, Delaware, Respectfully Submitted, */s/ Joseph M. Mulvihill* **YOUNG CONAWAY STARGATT & TAYLOR, LLP**, Michael R. Nestor (No. 3526), Kara Hammond Coyle (No. 4410), Joseph M. Mulvihill (No. 6061), Rodney Square, 1000 North King Street, Wilmington, DE 19801, Telephone: (302) 571-6600, Facsimile: (302) 571-1253, Email: mnestor@ycst.com, kcoyle@ycst.com, jmulvihill@ycst.com -and- **LATHAM & WATKINS LLP**, Ray C. Schrock (admitted *pro hac vice*), Annemarie V. Reilly (admitted *pro hac vice*), Brian S. Rosen (admitted *pro hac vice*), 1271 Avenue of the Americas, New York, New York 10020, Telephone: (212) 906-1200, Facsimile: (212) 751-4864, Email: ray.schrock@lw.com, annemarie.reilly@lw.com, brian.rosen@lw.com -and- Caroline Reckler (admitted *pro hac vice*), 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Telephone: (312) 876-7700, Facsimile: (312) 993-9767, Email: caroline.reckler@lw.com -and- Jeffrey T. Mispagel (admitted *pro hac vice*), 355 South Grand Avenue, Suite 100, Los Angeles, CA 90071, Telephone: (213) 485-1234, Facsimile: (213) 891-8763, Email: jeffrey.mispagel@lw.com, *Counsel for Debtors and Debtors in Possession*

1 The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: First Mode Holdings, Inc. (7177), and Synchronous LLC (1829). The Debtors' mailing address is 3417 1st Ave S, Seattle, WA 98134.

2 Capitalized terms used but not otherwise defined herein will have the meanings set forth in the Disclosure Statement or the Plan, as applicable.

## CLASS ACTION

**LEGAL NOTICE**

**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION**

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Civil Action No. 4:19-cv-00957 |

**SUMMARY NOTICE**

***IF YOU (1) HELD SHARES OF ALTA MESA RESOURCES, INC. ("ALTA MESA") F/K/A SILVER RUN ACQUISITION CORPORATION II ("SILVER RUN II") COMMON STOCK AND/OR SILVER RUN II UNITS ON JANUARY 22, 2018; OR (2) PURCHASED OR OTHERWISE ACQUIRED SECURITIES OF ALTA MESA/ SILVER RUN II FROM AUGUST 16, 2017 THROUGH MAY 17, 2019, INCLUSIVE (THE "CLASS PERIOD"), YOU COULD RECEIVE A PAYMENT FROM A CLASS ACTION SETTLEMENT. CERTAIN PERSONS ARE EXCLUDED FROM THE DEFINITION OF THE CLASS AS SET FORTH IN THE STIPULATIONS OF SETTLEMENT.***

PLEASE READ THIS NOTICE CAREFULLY. YOUR RIGHTS MAY BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of Texas, that in the above-captioned litigation (the "Action"), several separate settlements have been proposed totaling $126.3 million in cash (collectively, the "Settlement"). A hearing will be held on **April 30, 2025, at 11:00 am.**, before the Honorable George C. Hanks, Jr., at the United States District Court, Southern District of Texas, Houston Division, Bob Casey United States Courthouse, 515 Rusk Street, Houston, TX 77002, for the purpose of determining, among other things, whether: (i) the proposed Settlement should be approved by the Court as fair, reasonable, and adequate; (ii) the proposed Plan of Allocation for distribution of the Settlement proceeds is fair, reasonable, and adequate and therefore should be approved; and (iii) the application of Class Counsel for the payment of attorneys' fees and expenses from the Settlement Fund, including interest earned thereon, and awards to Class Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4), should be granted.

**IF YOU ARE A MEMBER OF THE CLASS DESCRIBED ABOVE, YOUR RIGHTS WILL BE AFFECTED BY THE SETTLEMENT OF THE LITIGATION, AND YOU MAY BE ENTITLED TO SHARE IN THE NET SETTLEMENT FUND.** You may obtain a copy of the Stipulations of Settlement, the Notice of Proposed Settlement of Class Action ("Notice"), and the Proof of Claim and Release Form ("Proof of Claim") at www.AltaMesaSecuritiesLitigation.com or by contacting the Claims Administrator: Alta Mesa Securities Litigation, c/o JND Legal Administration, P.O. Box 91218, Seattle, WA 98111; 1-855-208-4124.

If you are a Class Member, to be eligible to share in the distribution of the Net Settlement Fund, you must submit a Proof of Claim by mail postmarked **no later than May 7, 2025**, or electronically via the website by that date. If you are a Class Member and do not submit a valid Proof of Claim, you will not be eligible to share in the distribution of the Net Settlement Fund, but you will still be bound by any judgment entered by the Court in this Action (including the releases provided for therein).

To have excluded yourself from the Class, you must have mailed a written request for exclusion so that it was postmarked by May 17, 2024, in accordance with the instructions set forth in the notice of class certification disseminated pursuant to Court order. No further exclusion opportunity is being provided under the Settlement, and if you are a Class Member and did not previously exclude yourself from the Class, you will accordingly be bound by any judgment entered by the Court in this Action (including the releases provided for therein) whether or not you submit a Proof of Claim. If you submitted a valid request for exclusion, you are not a Class Member and have no right to recover money pursuant to the Settlement.

Any objection to the proposed Settlement, the Plan of Allocation, and/or the fee and expense application must be filed with the Court and sent to Class Counsel and Defendants' counsel **no later than April 9, 2025**, in the manner and form explained in the Notice.

**PLEASE DO NOT CONTACT THE COURT, THE CLERK'S OFFICE, DEFENDANTS, OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE.** If you have any questions about the Settlement, or your eligibility to participate in the Settlement, you may contact Class Counsel at the following addresses:

ENTWISTLE & CAPPUCCI LLP
ANDREW J. ENTWISTLE
ROBERT N. CAPPUCCI
500 W. 2nd Street, Suite 1900
Austin, TX 78701
aentwistle@entwistle-law.com
rcappucci@entwistle-law.com
Telephone: 1-512-710-5960

ROBBINS GELLER RUDMAN & DOWD LLP
TRIG R. SMITH
655 W. Broadway, Suite 1900
San Diego, CA 92101
settlementinfo@rgrdlaw.com
Telephone: 1-800-449-4900

DATED: January 17, 2025

BY ORDER OF THE COURT
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

**www.AltaMesaSecuritiesLitigation.com** **1-855-208-4124**

**Did you purchase shares of Aphria Inc. ("Aphria") after January 29, 2018 and hold them until March 23, 2018 and/or December 3, 2018?**

A Settlement has been reached in the global class action (the "**Class Action**") against Aphria and certain of its former officers and directors ("**Individual Defendants**"). The Settlement requires Court approval at an upcoming hearing.

The Class Action alleges that, between January 29, 2018 and December 3, 2018, Aphria and the Individual Defendants made public misrepresentations to the capital markets, including in an Aphria Prospectus Offering in June 2018, in connection with two significant international business acquisitions made by Aphria during 2018, namely: (i) Aphria's acquisition of a company called Nuuvera Inc. which was publicly announced on January 29, 2018; and (ii) Aphria's acquisition of a company called LATAM Holdings Inc. which was publicly announced on July 17, 2018. The Class Action alleges that the substantial drop in Aphria's share price following certain public disclosures about Aphria's business on March 22 and on December 3, 2018, amounted to a public correction of misrepresentations about Aphria's business.

Aphria and the Individual Defendants deny all allegations pleaded against them in the Class Action.

The Settlement, if approved by the Court, provides for the payment by the Defendants of the total amount of CAD $30,000,000 to resolve the Class Action. The Settlement is a compromise of disputed claims and is not an admission of liability or wrongdoing by Aphria or the Individual Defendants.

The Settlement will be considered for approval by the Ontario Superior Court of Justice at a Settlement Approval Hearing which has been set for March 26, 2025 in Toronto at 11:30 am. At the Hearing, the Court will also address a motion to approve Class Counsel's fees, which will not exceed 30% of the settlement amount plus reimbursement for expenses incurred in the Class Action.

Persons who purchased Aphria shares on or after January 29, 2018 and held them on March 23 and/or December 3, 2018 ("**Class Members**") may object to or support the Settlement, by making a submission in writing prior to March 14, 2025. Class Members may also attend the Settlement Approval Hearing in person or remotely *via* Zoom. For more information about your rights and how to speak to the Settlement, please see the Long-Form Notice available online at www.AphriaSettlement.com or call toll-free: 1-888-700-9930.

## PUBLIC NOTICES

PLEASE TAKE NOTICE that the Court-appointed Receiver for the estate of Direct Lending Investments, LLC, Direct Lending Income Fund, L.P., ("DLIF"), Direct Lending Income Feeder Fund, Ltd., ("DLIFF"), DLI Capital, Inc., DLI Lending Agent, LLC, DLI Assets Bravo LLC (in Receivership) (collectively "DLI Receivership Entities"), the Joint Official Liquidators of Direct Lending Income Feeder Fund, Ltd. (in official liquidation) (together with DLI Receivership Entities "DLI Entities"), and the Party Investors of the DLI Entities (collectively "Claimants") have reached an agreement to settle all claims asserted or that could have been asserted against certain directors and officers of the DLI Entities ("D&Os") by Claimants or any DLIF Investor (that does not exclude itself from the Settlement ("Participating DLIF Investors"), that are based upon, related to, or in connection with the professional services provided by the D&Os to the DLI Entities, among other Released Claims (the "Settlement Agreement"). All capitalized terms not defined in this notice are defined in the Settlement Agreement.

Pursuant to the Settlement Agreement, the D&O Policy Insurers will pay the amount of $18,000,000 ("Settlement Amount") to be deposited into escrow account(s) for DLIF Investors, DLIFF, and Party Investors, from which will be paid a reserve of $1,200,000 for the sole benefit of the Ross Parties, a reserve of $500,000 for the sole benefit of the D&Os other than Ross, $2,000,000 to the Receiver for DLIF Investors and DLIFF, Court approved attorneys' fees which have been requested by counsel for the Receiver and Party Investors of up to 30% or $5,400,000, and $8.9 million (the "Net Settlement Amount") to be distributed to the Receiver for DLIFF and Participating DLIF Investors and to the Party Investors.

As part of the Settlement Agreement, the Receiver has requested entry of a final order approving the Settlement Agreement from the United States District Court, Central District of California, Securities and Exchange Commission v. Direct Lending Investments, LLC, Case No. 19-cv-2188 ("SEC Action").

If the Court in the SEC Action approves the Settlement Agreement, Claimants and Participating DLIF Investors will be eligible to receive their portion of the Net Settlement Amount as determined by the distribution method approved by the Court in the SEC Action. A separate portion of the Net Settlement Amount will be distributed by the JOLs of DLIFF in accordance with Cayman Islands law.

Investors have the right to exclude themselves from the Settlement Agreement pursuant to the procedures described in the notices to be sent to Investors ("Opt-out Notices"). The deadline to opt-out is March 31, 2025.

Claimants and Participating DLIF Investors will release any claim or cause of action of every nature and description against the Released Parties whether arising under federal, state, statutory, regulatory, common, foreign, or other law, based upon, arising out of, or related in any way to (a) professional services provided to the DLI Entities by the D&Os; (b) the conduct, transactions, or occurrences set forth in any of the pleadings in the Underlying Litigations, or that could have been brought in or which arise out of or relate in any way to the institution, prosecution, or settlement of any of the Underlying Litigations; and (c) the conduct and subject matter of the Mediations between the Parties, the Settlement negotiations, and the negotiation of the Settlement Agreement. Claimants and Participating Investors will be barred from pursuing a lawsuit or seeking monetary or other relief against the D&Os in the United States related in any way to the Released Claims.

Additionally, Claimants and Participating DLIF Investors agree, and by order of the Court in the SEC Action will be required to, reduce the amount of any final verdict or judgment they obtain against any Third Party by an amount that corresponds to the percentage of responsibility of the Released Parties for damages. However, where the law governing such final verdict or judgment ("Other Governing Law") requires a reduction in a different amount, the final verdict or judgment shall be reduced by an amount as provided by Other Governing Law.

If a DLIF Investor excludes itself, that Investor will not be entitled to receive any portion of the Settlement Amount but keeps any right to sue or continue to sue the D&Os on claims related in any way to the Released Claims. If a DLIFF Investor excludes itself, that Investor will retain any claims it may have against the D&Os and any rights it has to share in the distribution proceeds as determined under Cayman Islands law. Specific information regarding these rights and options, and how to exercise them, is provided in the applicable Opt-out Notices.

The Court in the SEC Action will hold a hearing to consider whether to approve the Settlement Agreements and enter the Final Approval Orders at 1:30 p.m. on April 14, 2025, in Courtroom 7D of the United States District Court for the Central District of California, First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012. The Court will consider whether the Settlement Agreement is adequate, fair, and reasonable. If you wish to object to the Settlement Agreement or appear at the hearing, you must email any objections in writing to TeamDLI@stretto.com on or before March 24, 2025. Specific information on objecting is provided in the Optout Notices and the Notices of Proposed Settlement (collectively "Notices").

A complete copy of the Settlement Agreement, the proposed Final Approval Order, and other Settlement documents are available on the Receiver's website: http://case.stretto.com/dli or by emailing: TeamDLI@stretto.com or by calling: 855-885-1564. PLEASE DO NOT CONTACT THE COURT DIRECTLY

## COMMERCIAL REAL ESTATE

***NOTICE OF PUBLIC SALE OF COLLATERAL***
**Current Principal Balance: 193,806,115.34**

**PLEASE TAKE NOTICE** that in accordance with the applicable provisions of the Uniform Commercial Code of the State of New York, Parkview Financial REIT, LP, as the agent under certain loan agreements and a pledge agreement ("Secured Party"), will offer at public auction the limited liability company interests (the "Collateral") in Hudson 1702, LLC ("1702") and Hudson 1701/1706, LLC (together with 1702, the "Company"), which entities, upon Secured Party's information and belief, own a leasehold estate in certain condominium units in the building known as 353 West 57th Street Condominium and by the street number 353-361 West 57th Street a/k/a 356 West 58th Street, New York, New York, said condominium units being designated and described as Unit Nos. 1, 2 and 6 in the Declaration relating to such Condominium, as amended, recorded in the Office of the City Register of The City of New York, County of New York. The sale of the Collateral involves the sale of the equity interests of the Company and does not involve the direct sale of the leasehold estate described above. The Collateral has not been and will not be registered under the Securities Act of 1933 (the "Act") and is being offered for sale in a transaction exempt from the requirements of the Act. The Collateral will be offered for sale as a single unit or in separate lots.

The public auction will be held in person at the offices of DLA Piper LLP (US) located at 1251 Avenue of the Americas, New York, New York, 10020 and virtually via Zoom Meetings, on April 10, 2025 at 10:30 a.m. (ET). The Collateral secures indebtedness owing by the Company to Secured Party in an amount of not less than $193,806,115.34 plus unpaid interest and all other sums due under the applicable loan documents. The Collateral will be sold to the highest qualified bidder; provided, however, Secured Party reserves the right to cancel the sale in its entirety or to adjourn the sale to a future date at any time. Secured Party also reserves the right to bid, including by credit bid.

Additional documentation and information regarding the Collateral will be made available, including the terms of the public sale, to interested parties that execute a confidentiality agreement. To review and execute such confidentiality agreement, please visit our website at: https://tinyurl.com/m9njnnnx.

Interested parties that intend to bid on the Collateral must contact Brock Cannon of Newmark, Secured Party's broker, at brock.cannon@nmrk.com or (212)-372-2066 no later than five (5) business days before the date scheduled for the auction to receive information on how to register for the auction. For questions and inquiries, please contact Brock Cannon or Neal Kronley of DLA Piper LLP (US), counsel to Secured Party, at neal.kronley@us.dlapiper.com. Interested parties who do not comply with the foregoing or any other requirement of the applicable terms of sale, including, without limitation, any deadlines set forth herein or therein, will not be permitted to enter a bid.

THE WALL STREET JOURNAL.

THE MARKETPLACE

ADVERTISE TODAY
(800) 366-3975
For more information visit:
wsj.com/classifieds




© 2025 Dow Jones & Company, Inc. All Rights Reserved. DOW JONES

## COMMERCIAL REAL ESTATE

N. MIAMI
Sports Bar
7500 sqft. with Patio Seating.
$3.25 Million
Pat Burnside Realty
Call Julie Negovan: 305-595-9522

THE WALL STREET JOURNAL.

NOTABLE COMMERICAL PROPERTIES

ADVERTISE TODAY
(800) 366-3975 | sales.realestate@wsj.com

© 2025 Dow Jones & Company, Inc. All Rights DOW JONES