# EXHIBIT X

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | . | Chapter 11 |
| | . | Case No. 25-11853 (KBO) |
| HUDSON 1701/1706, LLC, | . | |
| *et al.*, | . | (Jointly Administered) |
| | . | |
| Debtors. | . | |
| | . | |
| . . . . . . . . . . . . . . . | . | |
| | . | |
| HUDSON 1701/1706, LLC, A | . | Adversary Proceedings |
| DELAWARE LIMITED LIABILITY | . | No. 25-52471 (KBO) |
| COMPANY; AND HUDSON 1702, | . | |
| LLC, A DELAWARE LIMITED | . | |
| LIABILITY COMPANY, | . | |
| | . | |
| Plaintiff, | . | |
| | . | |
| v. | . | |
| | . | |
| 356W58 GROUND LESSOR LLC, | . | |
| A DELAWARE LIMITED | . | |
| LIABILITY COMPANY, | . | Courtroom No. 3 |
| | . | 824 Market Street |
| Defendant. | . | Wilmington, Delaware 19801 |
| | . | |
| | . | Friday, May 15, 2026 |
| . . . . . . . . . . . . . . . | . | 11:01 a.m. |

TRANSCRIPT OF ZOOM HEARING
BEFORE THE HONORABLE KAREN B. OWENS
CHIEF UNITED STATES BANKRUPTCY JUDGE

Audio Operator: Jadon Culp, ECRO

Transcription Company: Reliable
The Nemours Building
1007 N. Orange Street, Suite 110
Wilmington, Delaware 19801
Telephone: (302)654-8080
Email: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

INDEX


| MOTIONS: | | PAGE |
|---|---|---|
| Agenda Item 1: | Bench Ruling on Hudson 1701/1706, LLC, et al., v. 356W58 Ground Lessor LLC; Adv. Pro. No. 25-52471 (KBO) | 3 |
| | Court's Ruling: | 3 |
| Transcriptionist's Certificate | | 11 |

(Proceedings commenced at 11:30 a.m.)

THE COURT: Good morning, everyone.

This is Judge Owens. We are gathered for the pretrial conference in Hudson, but as I indicated to the parties earlier this week, I have decided to rule on the motion to dismiss that was pending and in doing so, cancel next week's trial.

I'll just get right into it. I'll start my ruling. If you can't hear me, you can interrupt, but it seems like everyone can, so let me get right to. When we left the hearing in April, I took under advisement the ground lessor's motion to dismiss the complaint. While I heard the argument on the motion, as I mentioned a few weeks ago, I did not intend to rule on the matter because the parties participated in mediation shortly thereafter. While ultimately, it proved unsuccessful, it left only a few weeks before the trial was to begin.

Given the consensus among the parties on the expedited trial schedule and their stated intention to ready the matter for trial, it did not seem an efficient use of the parties' or the Court's time to decide the motion to dismiss. That being said, it is clear to me that a more orderly path must be established in accordance with the Federal Rules before trial can proceed. To do so, I will be entering an order today dismissing the complaint, but granting the

debtors leave to amend.

While a claim for recharacterization is highly factual and is not typically amenable to a Rule 12(b)(6) dismissal, in this case, even assuming the truth of all the well-pled facts set forth in the complaint, the debtors have not stated a claim.

The debtors allege in Count 1 that the ground lease is a financing and not a true lease. True leases are, of course, forms of financing, but upon reviewing the complaint, it is fair to infer that the debtors seek a determination that the ground lease is an economic substance, alone, from the ground lessor to support their purchase of the property that is subject -- that is the subject of the ground lease.

After reviewing the facts alleged in the complaint and the documents that the Court is entitled to consider alongside those alleged facts, I cannot say that the debtors plausibly support such a determination. It is true that the complaint states facts that other courts have cited to support a recharacterization finding; however, the facts in those cases did not stand alone. They were always coupled with other facts, that when aggregated and considered together, led the courts to their conclusions that the purported leases at issue were an economic substance, something other than true leases.

Here, the facts alleged by the debtors support nothing other than the conclusion that the debtors entered into a commercial ground lease arrangement that has become economically unattractive due to the unexpected changes in circumstances. The debtors' own statement in paragraph 2 of the complaint supports this conclusion. In that paragraph, the debtors admit that they have, quote, "tried to recalibrate the purported ground lease to reflect the true value of the use of the Hudson directly with the defendant." Those efforts have failed and according to the debtors, they have been left with little choice, but to seek recharacterization.

The mere recognition in this statement that the debtors obtained the right to use the Hudson property through the purported ground lease conflicts with their theory that they have, in fact, financed the property's purchase and, of course, the clear implication that this lawsuit is a tactic for unsuccessful lease renegotiations is troubling.

But this is not the only problem with the complaint. It is important to note that the complaint alleges that the ground lessor purchased the property directly from a third-party seller and then leased it to the debtors for their use for a defined period. This is unlike other recharacterization cases in which the debtors purported to sell the property to a lessor and then lease it back.

Debtors also argued during oral argument that they paid to the seller, a portion of the purchase price, but that is not what the complaint states. The paragraph 29 clearly states that the debtors made an up-front payment to the defendants in connection with the debtors' acquisition of personal property and the defendant's acquisition of the leased property.

It is also notable that the ground lease requires the reversion of all tenant rights to use the property and improvements back to the ground lessor, free and clear of all claims at the termination or expiration of the lease and that there is no alleged option for the debtors to buy the property at any time, let alone at the end of the lease for a *de minimis* amount. This is, yet, another distinguishing feature of this complaint, from the characterization cases relied upon by the debtors.

The ground lease is a triple-net, 99-year lease, but those are common features of true leases and cannot serve solely as the basis for recharacterization and the documents incorporated into the complaint show marketing materials prepared by the ground lessor that appear to indicate that this ground lease was a financing tool to be utilized by developers, such as the debtors, to avoid having to purchase the property in fee-simple, with supporting third-party financing, which would add to any necessary construction

financing.

Additionally, there are other provisions of the lease that are inconsistent with the debtors' theory of ownership; for instance, Section 8(a) requires the debtors' use of the property and subjects it to landlord consent; Section 11 allows the landlord the unconditional right to sell its fee interest in the leased property, subject to the lease, of course, without the consent of the debtors, and it gives the landlord the right to encumber the fee estate without the consent of the debtors.

This leaves me with the remaining facts of the complaint that address the debtors' monetary obligations under the lease. The terms, themselves, do not sufficiently support the conclusion, when viewed alongside the above-detailed facts that the lease represents, as the debtors suggest, a, quote, "return on defendant's investment," that is, quote, "not related to the market value of the tenancy," end quote.

I'll assume for purposes of deciphering the complaint that the investment to which the debtors refer is the ground lessor's purchase of the property and purported resale and financing to the debtors, but that is not made clear in the complaint; notwithstanding, if I am correct, the facts and terms of the lease do not support the conclusion that this purported investment occurred or what the intended

rate of return is. The terms of the lease suggest, when viewed with all other existing facts, that the payments compensate the lessor for its agreement to allow the debtors to develop the property and sublease it to residential tenants over the next 99 years.

In sum, nothing in the complaint points to a credit or a lending relationship between the ground lessor and the debtors or, quite frankly, any other relationship, except for lessor and lessee. Accordingly, the debtors have not stated a claim for recharacterization.

Counsel for the debtors told me a few hearings ago that this was a clear case for recharacterization and if that is the case, I would like the debtors to make it clearer when they amend their claim. Similarly, the debtors have not stated the remainder of the complaint's counts, which seek avoidance of the fourth amendment to the ground lease, recovery of increased rent payments they made thereunder, and the disallowance of any defendant claims until the recovery of those transfers. Debtors allege that they did not obtain a reasonable equivalent value for the obligations they incurred under the lease amendment, but they do not support that conclusion with any particularized facts.

Accordingly, it is appropriate under Rule 12(b)(6) to dismiss the complaint for failure to state a claim and as I mentioned, I will grant the debtors leave to re-plead the

claims under Rule 15 if they wish.

The trial is canceled and along with it, all further pretrial matters.

After reviewing the complaint and hearing the oral argument, it is clear to me that the proceeding, even if allowed to move forward in its current form, is not right for trial. Looking ahead, if the debtors choose to amend the complaint, I suggest that you include all forms of relief that you seek and require with respect to the ground lease, in order to move the Chapter 11 cases forward, including any counts to determine the validity, priority, or extent of any purported liens of the ground lessor under Rule 7001(b), and whether Parkview should be added as a necessary party is also an issues that needs to be considered.

Once the ground lessor answers the amended complaint and asserts any counterclaims, we'll be in a better position to determine the proper schedule for adjudicating the issues.

At the last hearing, I also took under advisement a work product dispute concerning the second DeSimone report. I've considered the issue and I'm ordering the debtors to turn the DeSimone report over to the Committee without a restriction that would prevent MSP from receiving it in its capacity as committee member. Simply put, the debtors have failed to meet their burden to establish that the document

was prepared in anticipation of litigation. The record is so-ordered on this issue and I expect the turnover to be made promptly.

I will enter an order that dismisses the complaint shortly after today's hearing. I don't think there's much we need to discuss because there's a lot of work that needs to be done, I think, to move this adversary proceeding forward if it continues, but I'll ask if anyone has any questions or any other matters we need to discuss before we adjourn today's hearing.

(No verbal response)

THE COURT: No? Okay.

All right. Thank you very much for your time and attention to this matter. I will look for the amended complaint and we'll move ahead as the parties wish to move forward and I will control that matter more carefully as we move forward to ensure that it can be efficiently brought to a conclusion, okay.

Thank you all very much. Have a good rest of your weekends. Take care.

UNIDENTIFIED MALE SPEAKER: Thank you, Your Honor.

(Proceedings concluded at 11:41 a.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

/s/ William J. Garling May 15, 2026

William J. Garling, CET-543
Certified Court Transcriptionist
For Reliable