**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>Hudson 1701/1706 LLC,<br>Debtors.[1] | Chapter 11<br><br>Case No. 25-11853 (KBO) |
| HUDSON 1701/1706, LLC, a Delaware limited liability company; and HUDSON 1702, LLC, a Delaware limited liability company,<br>Plaintiffs,<br>v.<br>356W58 GROUND LESSOR LLC, a Delaware limited liability company,<br>Defendant. | (Jointly Administered)<br><br>Adv. Proc. No. 25-52471 (KBO) |

**356W58 GROUND LESSOR LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

Dated: August 13, 2026
Wilmington, Delaware

**LANDIS RATH & COBB LLP**
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Katherine S. Dute (No. 6788)
Soumya P. Venkateswaran (No. 7278)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
mcguire@lrclaw.com
dute@lrclaw.com
venkateswaran@lrclaw.com

**ADLER & STACHENFELD LLP**
Kirk L. Brett (admitted *pro hac vice*)
Patrick O'Connor (admitted *pro hac vice*)
555 Madison Avenue, 6th floor
New York, New York 10022
Telephone: (212) 883-1700
Facsimile: (212) 883-8883
Email: kbrett@adstach.com
poconnor@adstach.com

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190). The Debtors' headquarters and the mailing address for the Debtors is 11440 San Vicente Boulevard, 2nd Floor, Los Angeles, CA 90045.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 3

I. Debtors Only Pay Lip Service to the Required Plausibility Standard ........ 3

II. Debtors Failed to Add or Clarify Facts to Demonstrate that the Lease is Not What it Purports to Be ........ 4

III. Law of the Case Precludes Debtors from Relitigating Fact Findings ........ 8

IV. Quasi-Estoppel Precludes Plainly Inconsistent Positions by Parkview and Debtors ........ 9

V. Cases Relied Upon by Debtors are Either Off-Point or Supportive of Dismissal ........ 11

VI. Debtors' Fourth Amendment Avoidance Claims are Implausible ........ 14

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988) .......... 8

*Davis v. Wells Fargo*,
824 F.3d 333 (3d Cir. 2016) .......... 3

*Farmer v. Lanigan*,
2016 WL 4107693 (D.N.J. Aug. 1, 2016) .......... 8, 9

*Hamilton v. Leavy*,
322 F.3d 776 (3d Cir. 2003) .......... 8, 14

*In re Barney's, Inc.*,
206 B.R. 328 (Bankr. S.D.N.Y. 1997) .......... 7

*In re City of Philadelphia Litig.*,
158 F.3d 711 (3d Cir. 1998) .......... 8

*In re Integrated Health Servs., Inc.*,
260 B.R. 71 (Bankr. D. Del. 2001) .......... 7, 11, 12

*In re Montgomery Ward, L.L.C.*,
469 B.R. 522 (Bankr. D. Del. 2012) .......... 11, 13

*In re PCH Assocs.*,
804 F.2d 193 (2d Cir. 1986) .......... 14

*In re SilverRock Dev. Co., LLC*,
No. 24-11647 (MFW), 2025 WL 3492145 (D. Del. Dec. 5, 2025) .......... 12

*In re Zohar III, Corp.*,
639 B.R. 73 (Bankr. D. Del. 2022) .......... 3

*Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*,
936 F.2d 744 (2d Cir. 1991) .......... 12, 13

*L A Apparel, Inc. v. Straight A Co., LP*,
No. MC 3:21-285, 2022 WL 17417173 (M.D. Pa. Dec. 5, 2022)............................................ 10

*MOAC Mall Holdings LLC v. Transform Holdco LLC, (In re Sears Holdings Corp.)*,
2024 WL 5113165 (2d Cir. Dec. 16, 2024) .................................................................. 13

*Schmidt v. Skolas*,
770 F.3d 241 (3d Cir. 2014)........................................................................................ 3

*Tanksley v. Daniels*,
902 F.3d 165 (3d Cir. 2018)........................................................................................ 3

**Rules**

Fed. R. Bankr. P. 7012(b) ............................................................................................. 1

Fed. R. Civ. P. 12(b)(6)........................................................................................... 1, 3, 12

356W58 Ground Lessor LLC ("Landlord"), through its undersigned counsel, respectfully submits this reply memorandum of law in further support of its motion to dismiss (the "Motion") [D.I. 93][2] the Amended Complaint filed by Debtors Hudson 1701/1706, LLC and Hudson 1702, LLC (together, the "Debtors") [D.I. 91] with prejudice pursuant to Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b)(6) and in response to the Debtors' Opposition to the Motion [D.I. 97] (the "Opposition").

## PRELIMINARY STATEMENT

Although the Debtors employed a different author for their Amended Complaint, the fundamental allegations are the same as those previously dismissed by this Court. This should come as no surprise. Both of the Debtors' complaints have sought to characterize (or recharacterize) the terms of a static, written document. The somewhat different words used in the Amended Complaint to describe the fixed nature of the Lease do not render Debtors' claims any more plausible than they were in the initial Complaint.

This Court has already observed that the Lease itself evidences no other relationship between Landlord and Debtors except for lessor and lessee. Like other true leases, the Lease here provides for the reversion of the Property to Landlord at the end of the lease term, and there is no purchase option for the tenant-Debtors. The Amended Complaint and the Debtors' responsive brief fail to address these critical facts at all. Other features of the Lease are also typical, including terms relating to use of the premises, the effect of a condemnation, and "triple net" features.

---

[2] Terms utilized but not otherwise defined herein shall have the meanings ascribed to them in *356W58 Ground Lessor LLC's Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint* [D.I. 94] (the "Memorandum" or "Mem."). Unless otherwise stated, all docket references are to the Adversary Proceeding number 25-52471.

Nor do the Debtors' allegations regarding the circumstances surrounding the execution of the Lease render their claims any more plausible. In the original Complaint and again in the Amended Complaint, Debtors have relied upon marketing materials to criticize the Lease. And both the original Complaint and the Amended Complaint try to attack the method used to establish rent. But these arguments were already considered and properly rejected by the Court, and they do not overcome the import of the terms of the Lease itself.

Similarly, the Debtors are unable to overcome the fact that all of the Lease documents were the result of arm's-length negotiations among at least *three* sophisticated parties. Parkview chose to enter into a leasehold loan and approved the Lease in writing on multiple occasions. Parkview also represented to the world that its collateral was a leasehold interest – including through public filings, a note sale to Northwind, and in publications of a UCC foreclosure sale. In their Amended Complaint and their response to the instant motion to dismiss, the Parkview-controlled Debtors fail to address these matters, even though they clearly demonstrate that the Debtors' claims are thoroughly implausible.

The Amended Complaint's deficiencies extend to the avoidance claims, too. The Amended Complaint only echoes the same cursory allegations as those in the initial Complaint. And the Amended Complaint fails to explain how the Fourth Amendment could be considered so fundamentally unfair to the Debtors in light of Parkview's express written approval (at a time when Parkview was unaffiliated with the Debtors).

The Amended Complaint represents not only a disregard for the contractual commitments of the Debtors and Parkview, but also of this Court's directive to articulate what, exactly, the Lease is (if it isn't a true lease). Instead, the Debtors offer a menu of options for the Court to consider. Moreover, by stating that they will reject the Lease if they do not prevail here, Debtors attempt to

force this Court into wrongly permitting their baseless claims in order to avoid a failed reorganization.

The reality is that the Parkview-controlled Debtors are unable to state plausible claims to recharacterize or avoid the Lease, and in effect, this adversary proceeding is now in a place no different than it was in May, when the Court cancelled the then-scheduled trial and dismissed the original Complaint. Accordingly, the Amended Complaint should be dismissed with prejudice.

## ARGUMENT

### I. Debtors Only Pay Lip Service to the Required Plausibility Standard

Debtors fail to describe or apply the correct pleading standard under FRCP 12(b)(6) and pay only lip service to the requirement of alleging plausible claims. Focusing on the conventional imperative to construe allegations in a complaint in the light most favorable to the plaintiff, Debtors ignore that courts may review documentary evidence and rely upon their own common sense to determine whether a plaintiff has pled facts that nudge the claims across the line from conceivable to plausible. *See In re Zohar III, Corp.*, 639 B.R. 73, 89–90 (Bankr. D. Del. 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014); *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018)).

As further discussed below, Debtors disregard the plain terms of the most significant documentary evidence – the Lease – and this Court's May 15 findings concerning the import of those plain terms. Instead, Debtors seek to stage a mini trial by putting forth their whole case in their opposition (ignoring this Court's *In re Zohar III, Corp.* decision) and repeatedly offer conclusory statements that their claims are plausible. But that effort must fail because the Lease disproves Debtors' claims, as this Court already knows. *See In re Zohar III, Corp.*, 639 B.R. at

89–90 (a "court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are ***contradicted*** either by statements in the complaint itself or ***by documents upon which its pleadings rely***, or by facts of which the court may take judicial notice.") (internal citations omitted) (emphasis added).

## II. Debtors Failed to Add or Clarify Facts to Demonstrate that the Lease is Not What it Purports to Be

The Amended Complaint does not meaningfully rely upon any factual allegations that were not considered by this Court when it dismissed the original Complaint. The Court has already reviewed the Lease and made specific findings as to its character. *See* Ex. X (May 15, 2026 Hr'g Tr.)[3] at 8:6-9 ("In sum, nothing in the complaint points to a credit or a lending relationship between the ground lessor and the debtors or, quite frankly, any other relationship, except for lessor and lessee."). And the Court has already considered the Fourth Amendment. *See id*. at 8:11-22. Debtors attach and rely upon both documents again in their Amended Complaint. *See* Amended Complaint Exs. A and C. But the purported "add[ed] and clarif[ied] numerous facts"[4] do not and cannot alter the plain terms of the Lease and this Court's May 15, 2026 observations because any new facts or arguments necessarily relate to *static* documents that this Court has already considered and has no reason to reevaluate now.

To illustrate the point: the Amended Complaint contains some information that was learned during discovery, including a statement attributed to Landlord's principal Max Nipon that MSP's ground lease product is "effectively an alternative form of financing to the market" (Amended

---

[3] Unless otherwise stated, all citations to exhibits are to those included in the McGuire Declaration [D.I. 95].

[4] Opp. at 1.

Complaint at ¶ 28), and deposition testimony that Landlord based the rent it required under the Lease in part on a yield on its investment in the Property. Amended Complaint at ¶¶ 61-62.

But Debtors offer these items to support facts that they already alleged in the original Complaint, were considered by the Court, and dismissed. Citing a one-page marketing piece, the original Complaint alleged that the Lease was an alternative financing arrangement. *See* Complaint at ¶ 34 ("Likewise, GLR touts its ground lease schemes to its investors and potential borrowers as 'A COMPELLING **FINANCING** SOLUTION' that is a 'return-enhancing alternative to conventional financing' offering 'a highly competitive cost of capital.'") (emphasis added by Debtors in Complaint). The Court and Debtors' counsel debated this one-page marketing piece at the April 21 oral argument on the motion to dismiss the Complaint, and the Court later held that "True leases are, of course, forms of financing…" *See* Ex. X (May 15, 2026 Hr'g Tr.) at 4:8-9; Ex. Y (Apr. 21, 2026 Hr'g Tr.) at 141:7–144:20.

And the original Complaint devoted an entire section to the notion that the rent was calculated to "ensure [a] return on investment." *See* Complaint at ¶¶ 69-77. But again, the Court studied that yield allegation and made a specific finding that the rent compensated Landlord for the use of its property. *See* Ex. X (May 15, 2026 Hr'g Tr.) at 8:1-5 ("The terms of the lease suggest, when viewed with all other existing facts, that the payments compensate the lessor for its agreement to allow the debtors to develop the property and sublease it to residential tenants over the next 99 years."). The Court has also already recognized that landlords enter into leases to achieve a yield on its investment. *See* Ex. Y (April 21, 2026 Hr'g Tr.) at 144:9-11 (The Court: "Because leases are financing tools that are utilized by all parties to maximize their return on a project such as this.").

Debtors make perfunctory references to only two other documents in their opposition: the Closing Agreement (Amended Complaint, Ex. B) and the Bill of Sale (Amended Complaint, Ex. D). But neither document does anything to negate this Court's May 15 findings as to the meaning and import of the Lease and Fourth Amendment.[5]

A critical finding in the Court's May 15 decision was that the Lease requires the reversion of the Property and improvements back to Landlord at termination or expiration with no opportunity for Debtors to acquire the Property. *See* Ex. X (May 15, 2026 Hr'g Tr.) at 6:8-16. Debtors remain unable to explain how the Lease could be recharacterized given Landlord's reversionary interest. Neither of the proffered alternatives posited by Debtors – a loan or a joint venture – can accommodate Landlord's reversionary interest. Debtors' failure to address the reversion is telling.[6]

Debtors repeat their misguided argument that the Right-Size Payment feature of the Lease and Fourth Amendment could be evidence of a non-lease feature. This misrepresents the purpose and structure of the Right-Size Payment. The purpose of the Right-Size Payment was to address the possibility that Debtors might be unable to carry out their stated business plan. In that circumstance, rather than having an immediate default and lease termination, the Lease afforded

---

[5] Debtors bizarrely argue that Landlord stands to gain the full value of the Property even though it contributed only 43 percent of the total financing for the acquisition *and development* of the Property. *See* Amended Complaint at ¶ 5. This ignores the agreed-upon role of Debtors as developer of the Project, with responsibility for bearing the costs of development.

[6] The Court instructed Debtors to "include all forms of relief that you seek and require with respect to the ground lease, in order to move the Chapter 11 cases forward, including any counts to determine the validity, priority, or extent of any purported liens of the ground lessor under Rule 7001(b), and whether Parkview should be added as a necessary party is also an issues [sic] that needs to be considered." *See* Ex. X (May 15, 2026 Hr'g Tr.) at 9:8-14. Debtors ignored these instructions and instead offered "without limitation, two possible outcomes" as to the nature of the Lease (a joint venture or a loan). *See* Amended Complaint at ¶¶ 89-93. But either scenario makes no sense in light of this Court's express finding that the Property must revert to the Landlord at termination or expiration.

Debtors with a one-time opportunity to maintain possession of the property and pursue a Fallback Business Plan. The obligation to make the Right-Size Payment was to be triggered *only* by Debtors' pursuit of a Fallback Project following their failure to pursue the original Construction Project and their impending Event of Default under the Lease.[7] *See* Ex. C at § 60. And upon making the Right-Size Payment, the Base Rent would be reduced (based upon only a formula), so that ongoing rent would better accommodate projected income and thereby create value for the leasehold.

In any event, Debtors' recycled criticisms of the Right-Size Payment mechanism, as off-base as they are, were already raised in the original Complaint and rejected by the Court, and Debtors provide no reason for the Court to revisit that rejection.

New allegations or arguments concerning the plain terms of the Lease cannot modify those terms and should not be grounds for the Court to reevaluate its May 15 decision and order. As the party seeking to characterize the Lease as something other than what it purports to be, Debtors were already charged with the burden of proof, and the "quantum of evidence necessary to satisfy that burden is 'substantial.'" *In re Barney's, Inc.*, 206 B.R. 328, 332 (Bankr. S.D.N.Y. 1997); *In re Integrated Health Servs., Inc.*, 260 B.R. 71, 75 (Bankr. D. Del. 2001) ("The party challenging the bona fides of the lease carries a 'substantial' burden of proof."). Debtors failed to carry that burden in their original Complaint. Certainly, they cannot now carry their burden by simply offering evidence of facts that they already alleged and were judged insufficient to support a plausible claim.

---

[7] Unlike a loan covenant to maintain a debt service coverage ratio (or any other loan feature), the Right-Size Payment is a one-time obligation, is not a fixed amount and serves to enhance the value and marketability of the leasehold interest. Tenant has no other obligation to adjust coverage ratios or to maintain any income levels under the Lease.

Debtors argue that Landlord's "Analysis Of The Ground Lease's Terms Is Fundamentally Flawed[.]" *See* Opp. at 17. But Landlord's analysis in its motion to dismiss the Amended Complaint matches the Court's analysis of the Lease, as the Court explained in its May 15 decision, and as Landlord recounted in the Motion. *See* Mem. at 15-16.

**III. Law of the Case Precludes Debtors from Relitigating Fact Findings**

The Court need not waste its time rethinking things it has already considered. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988); *In re City of Philadelphia Litig.*, 158 F.3d 711, 717–18 (3d Cir. 1998).

Debtors are certainly correct that this Court granted leave to file an amended complaint "if they wish." *See* Ex. X (May 15, 2026 Hr'g Tr.) at 8:23-9:1. However, implicit in the Court's order was the instruction to offer facts, supervening law, and clarifications that would show that the Court's May 15 findings were wrong. *See* Ex. X (May 15, 2026 Hr'g Tr.) at 8:11-14. ("Counsel for the debtors told me a few hearings ago that this was a clear case for recharacterization and if that is the case, I would like the debtors to make it clearer when they amend their claim."). As discussed above, Debtors have not done so. They instead repeat claims and arguments regarding the terms of the Lease that were already considered by the Court. None of the purported evidence relied upon by Debtors can change the terms of the Lease, even if Debtors describe the same Lease with different words. Law of the case thus applies. *See Hamilton v. Leavy*, 322 F.3d 776, 787 (3d Cir. 2003) ("[I]f the evidence at the two stages of litigation is 'substantially similar,' or if the evidence at the latter stage provides more support for the decision made earlier, the law of the case doctrine will apply.") (citation omitted).

Debtors' prominent reliance on *Farmer v. Lanigan*, 2016 WL 4107693, at *3 (D.N.J. Aug. 1, 2016) (*see* Opp. at 13-14) is surprising given that that case involves facts wholly dissimilar from

those at issue here. In that case, the court did not feel bound to an earlier determination that a prisoner's abuse claims against a corrections officer were plausible because the amended complaint "changed the factual allegations which are before this Court." *Farmer*, 2016 WL 4107693, at *3 ("where the facts of the case have essentially changed and the law as it applies to the facts as they now stand must be re-evaluated."). Unlike the amended complaint in the *Farmer* case, the fact allegations in the Amended Complaint in this case have not "essentially changed" and thus need not be "re-evaluated." *See id*. The Motion concerns the plain terms of static documents – not the ***conduct*** of a corrections officer that cannot be evaluated on a motion to dismiss.

Debtors' inability to allege plausible claims for the second time does not mean that "Bankruptcy Rule 7015's provision permitting parties to amend with leave of Court would be effectively written out of the Bankruptcy Rules." Opp. at 12.

## IV. Quasi-Estoppel Precludes Plainly Inconsistent Positions by Parkview and Debtors

Debtors argue that they cannot be estopped from bringing a recharacterization claim simply because Debtors referred to the Lease as a lease. *See* Opp. at 14-15. But that misses the point entirely as it ignores Parkview's role as a then-unaffiliated lender treating the Lease as a lease (and treating its collateral as a leasehold interest). The long history of Debtors, Parkview and Landlord (and several nonparties) repeatedly referring to the Lease as a lease – and more importantly, ***treating*** it as a lease – estops the Parkview-controlled Debtors from pretending now that it is something else because the economics of the lease have become unattractive.[8]

---

[8] Debtors argue that "cases recharacterizing leases often involve considerations beyond the factors discussed in *PCH I* and its progeny." *See* Opp. at 9. This Court expressed a similar view. *See* Ex. X (May 15, 2026 Hr'g Tr.) at 4:18-25 ("It is true that the complaint states facts that other courts have cited to support a recharacterization finding; however, the facts in those cases did not stand alone. They were always coupled with other facts, that when aggregated and considered together,

By entering into the Lease and the related leasehold financing agreements, Debtors and Parkview benefitted from the Lease, as this Court acknowledged at the April 21 hearing and again in its decision dismissing the Complaint. *See* Ex. Y (April 21 Hr'g Tr.) at 141:7-23 (the Court: "I'm holding up what is called a compelling finance solution… That seems to indicate there's two possible scenarios and one is fee-simple and one is what you did. It seems to imply that you chose not to go with the fee-simple deal and you went with the other deal."); Ex. X (May 15, 2026 Hr'g Tr.) at 6:19-7:1 ("the documents incorporated into the complaint show marketing materials prepared by the ground lessor that appear to indicate that this ground lease was a financing tool to be utilized by developers, such as the debtors, to avoid having to purchase the property in fee-simple, with supporting third-party financing, which would add to any necessary construction financing."). "Under Delaware law, the doctrine of quasi-estoppel applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *L A Apparel, Inc. v. Straight A Co., LP*, No. MC 3:21-285, 2022 WL 17417173, at *7 (M.D. Pa. Dec. 5, 2022).

Debtors are also incorrect in arguing that they benefited only from the economic substance of the Lease. *See* Opp. Br. at 15 ("the Debtors dealt with the Ground Lease based on its economic substance, which is not that of a true lease.").[9] As Landlord has shown – and Parkview and Debtors have not refuted – Parkview and Debtors structured their relationship as ***leasehold*** financing, with

---

led the courts to their conclusions that the purported leases at issue were an economic substance, something other than true leases."). Certainly, one of the facts worthy of this Court's consideration is the parties' (and unaffiliated third-parties') consistent treatment of the Lease as a lease.

[9] Debtors' counsel took the opposite view in a colloquy with the Court concerning this very issue. *See* Ex Y. (April 21, 2026 Hr'g Tr.) at 141:18–142:12 (Fay) (admitting that the Lease was structured as a lease because "there are benefits from doing it, doing the financing the way that is structured in their document versus just doing a straight-up fee simple. . . . They chose to do this financing because it had benefits[.]"

a pledge of equity in the Debtors. And Parkview actually benefitted from the foreclosure of that equity following publication of documents affirming that Debtors owned a ***leasehold*** interest in the property. *See* Exs. T and W.[10] A review of those documents, and other undisputedly authentic documents, requires no fact-intensive inquiry to understand that Parkview benefitted from its own representations that the Lease is what it purports to be.

Finally, Debtors' criticism that none of the quasi-estoppel cases cited by Landlord involved a recharacterization claim underscores the absurdity of the Amended Complaint. It is not surprising that leasehold lenders (and entities they control) have not previously attempted to recharacterize the leases which serve as their collateral.

## V. Cases Relied Upon by Debtors are Either Off-Point or Supportive of Dismissal

Left with no choice but to direct attention away from the documentary evidence, Debtors incessantly rely upon caselaw concerning the elements of an ordinary recharacterization claim. However, this is not an ordinary recharacterization claim because, unlike in the cases cited by Debtors, the plaintiff here is not a stranger to the Lease. The Parkview-controlled Debtors are unable to cite any binding caselaw in which a leasehold lender or other party involved in structuring the lease successfully challenged an agreement purporting to be a lease. In fact, the only binding cases cited in Debtors' opposition concern challenges from genuine strangers to agreements that purport to be a true lease. *See In re Montgomery Ward, L.L.C.*, 469 B.R. 522, 526 (Bankr. D. Del. 2012) (bankruptcy plan administrator – not a party to the lease agreement – sought to recharacterize it); *In re Integrated Health Servs., Inc.*, 260 B.R. 71, 76 (Bankr. D. Del. 2001);

[10] It is unclear how Parkview could have conducted a commercially reasonable foreclosure sale if it misrepresented the nature of the assets owned by the Debtors. Parkview and Debtors know nothing about the Lease now that they did not know at the time of the foreclosure sale.

*In re SilverRock Dev. Co., LLC*, No. 24-11647 (MFW), 2025 WL 3492145, at *2 (D. Del. Dec. 5, 2025).

*In re Integrated Health Servs., Inc.* and *In re SilverRock Dev. Co., LLC* – two cases cited by Debtors – support dismissal. The *Integrated Health* court denied a recharacterization claim because “the documents themselves do not support the Debtors’ position.” *See* 260 B.R. at 77. Those documents confirmed that the tenants did not have an option to purchase the property at the end of the lease term, which outweighed the lease’s “triple-net” feature[11] and the fact that the properties were acquired by landlord for tenants’ use. *Id*. Critically, the leasehold lender testified that it lent to the tenants “in reliance on the leases being true leases” irrespective of debtors’ intent to treat the leases as something else. *See id*.

In *SilverRock*, the leasehold lender *defended* the relevant ground lease and sought to have the court treat the ground lease as a true lease (even though the text of the ground lease expressly stated that it was “essentially a financing device rather than a traditional operating lease”, and the annual rent was only one dollar per year). 2025 WL 3492145, at *2 (D. Del. Dec. 5, 2025). This is the opposite fact pattern of the case at hand, in which the leasehold lender (Parkview) is ***attacking*** the characterization of a lease that professes that it is a true lease.

While somewhat relevant to a recharacterization analysis, the other cases cited by Debtors are inapposite as to Debtors’ Rule 12(b)(6) plausibility burden because, aside from the fact that they are not binding precedent, they do not concern analogous facts. For example, the purported lease in *Int’l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744 (2d Cir. 1991) (“*RPI*”) required tenant to pre-pay all rent due throughout the 99-year lease term in the first three years.

[11] “[A] triple net lease is not an unusual term in a true lease.” *In re Integrated Health Servs., Inc.*, 260 B.R. at 77. This Court agreed. *See* Ex. X, 6:17-19 (“The ground lease is a triple-net, 99-year lease, but those are common features of true leases . . ..”).

*See* 936 F.2d at 749-50. The 99-year term alone did not signal that the agreement was not a true lease. *Id*. at 749. However, the fact that "tenant's obligation to pay basic rent had [] ceased" after the first three years of the term indicated that the transaction was a disguised sale. *Id*. at 749-50. The court noted that the lease's triple-net feature was common in true leases. *Id*. at 751.[12]

Similar to *RPI*, the tenant in *MOAC Mall Holdings LLC v. Transform Holdco LLC, (In re Sears Holdings Corp.)* prepaid rent for the 100-year term over the first thirty years, after which tenant owed only ten dollars per year. *See* No. 24-1354-BK, 2024 WL 5113165, at *3 (2d Cir. Dec. 16, 2024). And after only fifteen years, tenant could sublease or assign the entire lease *without* landlord's consent. *Id*. The landlord had already "received the substance of its bargained for consideration" at the time of the dispute (*id*.), as this Court pointed out while discussing the *MOAC* case at the April 21 hearing. *See* Ex. Y (April 21, 2026 Hr'g Tr.) at 146:19-147:5 ("Well, it's because [tenant] prepaid the entire right of occupancy, so it wouldn't have been fair for the landlord to get the property that the debtor had prepaid the right to occupy for all those years. That was the story in that case.").

Parkview and Debtors communicated to the world that the Lease is a true lease through the undisputedly authentic documents that they recorded, and through the UCC foreclosure notices that they published. Debtors' caselaw contains no such parallels.

Still, caselaw cited by Debtors does explain the purpose of looking to the substance of a purported lease; that is, the label of a document should not constrain third party creditors who had

---

[12] Debtors cite to certain language in *RPI* to support their argument that a rejection would grant Landlord a windfall. *See* Opp. at 10. But Debtors' *RPI* block quote is misleading because it omits the premise of the truncated quote. The full quote begins: "The tenant has pre-paid the lease and constructed a manufacturing facility on the leased premises. [Landlord] RPI has received the substance of its bargained for consideration." *See* 936 F.2d at 751. Those circumstances are vastly different from those at issue here given that the Property is a stalled construction site and rent is due throughout the term of the Lease.

nothing to do with the relevant transaction. *See In re PCH Assocs.*, 804 F.2d 193, 198 (2d Cir. 1986) ("it would be inherently inequitable to allow the parties' choice of label to affect the rights of third party creditors."). Here, Parkview's repeated confirmation and publication of documents verifying that the Lease is a lease obviates any equitable concerns as to Parkview. In other words, Parkview cannot complain that it would be inequitable to hold that the Lease is a lease because it was never a true third party to the Lease.

## VI. Debtors' Fourth Amendment Avoidance Claims are Implausible

Debtors were specifically directed by the Court to allege particularized facts supporting its claim seeking avoidance of the Fourth Amendment. *See* Ex. X (May 15, 2026 Hr'g Tr.) at 8:11-22. Yet the Amended Complaint, in only five paragraphs rather than four – simply repeats the same allegations contained in the original Complaint. *Compare* Complaint at ¶¶ 56-59 with Amended Complaint ¶¶ 83-87. The Amended Complaint merely re-alleges that the rent increased following the execution of the Fourth Amendment.

Given another opportunity by way of their Opposition to this motion, Debtors again failed to point to new particularized facts. Debtors thus have not complied with the Court's directive, and the Court's dismissal of the avoidance claims should not be disturbed. *See Hamilton*, 322 F.3d at 787 ("[I]f the evidence at the two stages of litigation is 'substantially similar,' or if the evidence at the latter stage provides more support for the decision made earlier, the law of the case doctrine will apply.") (citation omitted).

In the Amended Complaint and again in their Opposition brief, Debtors refuse to grapple with all of the benefits they received under the Fourth Amendment even though Landlord raised those benefits in its Motion. *See* Mem. at 28-29. Those benefits include but are not limited to (i) avoiding termination of the Lease, (ii) time to pursue a Cure Agreement, (iii) time to fix the

Fallback Business Plan deficiencies and pursue it, (iv) time to renegotiate the Construction Loan with Parkview, (v) time to cure liens, (vi) a five year extension of time to make the Right-Size Payment, (vii) a more favorable formula for calculating the reduction in rent following a Right-Size Payment, and (viii) a twelve-month partial abatement of Base Rent. *Id*.

Debtors' failure to confront these facts and allege new or clarified facts in support of its avoidance claims necessitates dismissal of Counts II, III, IV and V of the Amended Complaint.

## CONCLUSION

For the foregoing reasons, Landlord respectfully requests that this Court dismiss each of Debtors' claims with prejudice, and for such other and further relief that the Court deems just and proper.

Dated: August 13, 2026
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*<u>/s/ Matthew B. McGuire</u>*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Katherine S. Dute (No. 6788)
Soumya P. Venkateswaran (No. 7278)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
mcguire@lrclaw.com
dute@lrclaw.com
venkateswaran@lrclaw.com

– and –

**ADLER & STACHENFELD LLP**
Kirk L. Brett (admitted *pro hac vice*)
Patrick O'Connor (admitted *pro hac vice*)
555 Madison Avenue, 6th floor
New York, New York 10022
Telephone: (212) 883-1700
Facsimile: (212) 883-8883
Email: kbrett@adstach.com
poconnor@adstach.com

*Counsel to 356W58 Ground Lessor LLC*