**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>HUDSON 1701/1706, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-11853 (KBO)<br><br>(Jointly Administered) |
| HUDSON 1701/1706, LLC, a Delaware limited liability company; and HUDSON 1702, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>356W58 GROUND LESSOR LLC, a Delaware limited liability company,<br><br>Defendant. | Adv. Proc. No. 25-52471 (KBO) |

**THE DEBTORS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE EXPERT REPORTS AND TESTIMONY OF CAROLYN PIANIN**

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190). The Debtors' mailing address is c/o FTI Consulting, Inc. Attn: Alan Tantleff, 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

RELEVANT BACKGROUND ........ 2

LEGAL STANDARD ........ 4

ARGUMENT ........ 5

I. Ms. Pianin is Qualified to Testify as an Expert on Commercial Real Estate Transactions Generally and Ground Leases Specifically. ........ 5

II. Ms. Pianin Properly Does Not Reach the Ultimate Legal Conclusion in this Action. ........ 7

III. Ms. Pianin's Opinions are Based on a Reliable Methodology. ........ 10

CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Cases**

*360Heros, Inc. v. GoPro, Inc.*,
569 F. Supp. 3d 198 (D. Del. 2021) .......... 12

*Berckeley Investment Group, Ltd. v. Colkitt*,
455 F.3d 195 (3d Cir. 2006) .......... 8

*Cantor v. Perelman,*
2006 WL 3462596 (D. Del. Nov. 30, 2006) .......... 9

*Carnegie Mellon University v. Marvell Technology Group, Ltd.*,
2012 WL 6562221 (W.D. Pa. Dec. 15, 2012) .......... 6

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .......... 4

*Dow Chemical Canada Inc. v. HRD Corp.*,
656 F. Supp. 2d 427 (D. Del. 2009) .......... 7

*EMC Corp. v. Pure Storage, Inc.*,
154 F. Supp. 3d 81 (D. Del. 2016) .......... 4

*Flickinger v. Toys R Us, Inc.*,
2011 WL 2160493 (M.D. Pa. May 31, 2011) .......... 7, 9

*Flickinger v. Toys R Us-Delaware, Inc.*,
492 F. App'x 217 (3d Cir. 2012) .......... 8

*Holbrook v. Lykes Bros. S.S. Co.*,
80 F.3d 777 (3d Cir. 1996) .......... 7

*In re Montgomery Ward, L.L.C.*,
469 B.R. 522 (Bankr. D. Del. 2012) .......... 10

*In re Paoli R.R. Yard PCB Litig.*,
35 F.3d 717 (3d Cir. 1994) .......... 10

*Inline Connection Corp. v. AOL Time Warner Inc.*,
472 F. Supp. 2d 604 (D. Del. 2007) .......... 12

*Integra Lifescis. Corp. v. HyperBranch Med. Tech., Inc.*,
2018 WL 1785033 (D. Del. Apr. 4, 2018) .......... 11

*Masimo Corp. v. Philips Elec. N. Am. Corp.*,
62 F. Supp. 3d 368 (D. Del. 2014) .......... 4

*Morton v. BCAP GDI 1, Inc.*,
2026 WL 2056218 (D. Del. July 16, 2026) .......... 5

*Pulse Medical Instruments, Inc. v. Drug Impairment Detection Services, LLC*,
858 F. Supp. 2d 505 (D. Md. 2012) .......... 6

*Walker v. Gordon*,
46 F. App'x 691 (3d Cir. 2002) .......... 10

**Rules**

Fed. R. Evid. 702 .......... 4, 8

The Debtors/Plaintiffs Hudson 1701/1706, LLC and Hudson 1702, LLC (together, the "**Plaintiffs**" or the "**Debtors**") submit this memorandum of law in opposition to the motion (the "**Motion**") (Dkt. No. 117) of Defendant 356W58 Ground Lessor LLC ("**MSP**" or the "**Defendant**") to exclude the expert reports and testimony of Carolyn Pianin ("**Ms. Pianin**") in the above-captioned adversary proceeding (the "**Action**").

## PRELIMINARY STATEMENT

The core issue in this Action is how to treat the Debtors' contract with MSP, an agreement entitled "Ground Lease" and dated May 4, 2022 (the "**Ground Lease**"). The Debtors' plan is to offer the testimony of Carolyn Pianin, a commercial real estate expert, to testify about the economic substance of the Ground Lease based on her experience. Despite more than ***three decades*** of experience negotiating and evaluating not only ground leases, but other commercial real estate instruments directly pertinent to evaluating the economic substance of the Ground Lease, MSP seeks to have Ms. Pianin's testimony excluded because it has unilaterally decided that she has not *personally negotiated* enough ground leases. MSP cites zero authority for its position and ignores huge portions of Ms. Pianin's experience. Ms. Pianin has analyzed over 50 ground leases in her career; nothing in the law says she has to create or negotiate those leases in order to testify. Would an expert on computer chips be properly excluded because he or she did not design and manufacture those chips but, instead, analyzed them in order to learn how they worked? Of course not.

The remainder of MSP's arguments are equally meritless. First, oddly, MSP faults Ms. Pianin for not reaching the ultimate legal conclusion in this case—whether the Ground Lease is a "true lease" under the Bankruptcy Code. But doing so would be improper, and it is in fact *MSP's experts* who inappropriately purport to opine on that ultimate legal conclusion. Instead of reaching

that issue, Ms. Pianin's testimony will assist the Court in understanding the real estate industry in New York City and how ground leases are traditionally structured and used in that industry.

Second, MSP claims that Ms. Pianin's opinions are unreliable because it disagrees with certain statements in her reports and her interpretation of the evidence. This, of course, may be the basis of cross-examination of Ms. Pianin, but it is not grounds to exclude her opinions and does not at all render her experience-based methodology unreliable.

MSP's motion should be denied in full.

## RELEVANT BACKGROUND

This Action arises from the financing of a real estate project, namely the conversion of three condominium units comprised by the real property known as 353 West 57th Street Condominium in New York, New York (the "**Property**"), from a hotel into a multifamily residential property (the "**Project**"). (Dkt. No. 91 ("**Am. Compl.**") ¶¶ 21–25.) As part of the Project, the Debtors entered into the Ground Lease with an affiliate of MSP. (*Id.* ¶¶ 14–15, 32–34.) In this Action, the Debtors seek, among other things, to recharacterize the Ground Lease under case law interpreting section 365 of the Bankruptcy Code. (*Id.* ¶¶ 98–101.)

The Debtors have designated Ms. Pianin, a commercial real estate professional with more than 35 years of experience on the equity, debt, and leasing sides of the industry, to testify about the economic substance of the Ground Lease transaction. (*See* Dkt. No. 117-7 ("**Pianin Tr.**") at 6:20–7:6.) Ms. Pianin is currently head of asset management for IZO Capital, a private debt fund that makes multifamily construction loans. (*Id.* at 7:3–5, 8:2–3.) Her work directly on ground leases includes negotiating a ground lease for a hotel development on Eighth Avenue in Manhattan, negotiating an extension of the ground lease beneath the Shoreham Hotel on West 58th Street, and evaluating a portfolio of about 30 triple-net ground-leased properties across New York City and Long Island. (*Id.* at 8:10–9:11, 11:20–23, 14:5–20.) In addition to those ground lease transactions

in which Ms. Pianin has been directly involved, she has read, analyzed, valued, or opined on over 50 ground leases during her 35-year career on behalf of entities such as AIG, Credit Suisse, Elliott Management, and Affinius Capital, and several ultra-high net worth clients. (Ex. A, Declaration of Carolyn Pianin ("**Pianin Decl**.").) In addition to her experience with ground leases specifically, Ms. Pianin has extensive experience in managing and underwriting equity and debt positions in the real estate market. (Dkt. No. 117-3 ("**Pianin Rep**.") at 2.)

Ms. Pianin has served four reports in this Action—two opening reports based on the Complaint and Amended Complaint, respectively, and two rebuttal reports to two different real estate experts put forth by MSP. (*See* Dkt. Nos. 117-3–117-6.) Her core opinion is that the Ground Lease has features "more in line with a debt-like financial instrument" than a "traditional ground lease." (Dkt. No. 117-5 ("**Pianin Supp. Rep**.") ¶ 9.) In support, Ms. Pianin compares the Ground Lease against the defining features and economic substance of a traditional ground lease. (Pianin Tr. at 18:2–20:18.) Among other things, she identifies key differences, including (1) the Debtors' upfront contribution to the purchase price (Pianin Supp. Rep. ¶¶ 23–27); (2) MSP's simultaneous acquisition and lease of the Property (*id.* ¶ 5); (3) the investor-yield-based rents, rather than market-based rents (*id.*); and (4) the debt-like Right-Size Payment clause that bears no relationship to a traditional ground lease (*id.*). Ms. Pianin also identifies other features of the Ground Lease that resemble debt-like instruments that she has negotiated during her career. (*Id.* ¶¶ 33–42.)

MSP has in turn designated Daniel Mizukovski ("**Mr. Mizukovski**"), a real estate advisor at Wells Hill Partners, to opine on "whether the Ground Lease reflects a true ground lease in the market today or whether the Ground Lease should be recharacterized as a loan or otherwise based on its characteristics." (Dkt. No. 120-3 ("**Mizukovski Rep.**") ¶ 2.) Ms. Pianin's November Rebuttal Report responds to that opinion and identifies features of the Ground Lease that the

Mizukovski Report does not address. (*See* Dkt. 117-6 ("**Pianin November Rebuttal**") ¶¶ 3–19.) Ms. Pianin notes that Mr. Mizukovski has himself acknowledged key features that set this transaction apart from a traditional ground lease. At his deposition, he testified that ground lessors are "[t]ypically" established owners who decide to ground lease real estate they already own, and he did not recall representing a ground lessor that had bought a property and leased it at the same time. (*Id.* ¶¶ 21–22.) At a prior hearing before this Court, he also described the Ground Lease's rent buydown feature as "unusual." (*Id.* ¶ 23.)

## LEGAL STANDARD

Under Rule 702, a qualified expert may testify "if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. A motion to exclude should be denied where the expert's opinion has a logical basis. *See EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 92 (D. Del. 2016). Challenges to "[t]he weight and credibility" of an expert's opinion go to cross-examination, not admissibility. *Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 388 (D. Del. 2014). The remedy for such challenges is "[v]igorous cross-examination" and "presentation of contrary evidence," not exclusion. *Id.* (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993)).

## ARGUMENT

### I. Ms. Pianin is Qualified to Testify as an Expert on Commercial Real Estate Transactions Generally and Ground Leases Specifically.

MSP first claims that Ms. Pianin is not an expert because she has not been directly involved in the negotiation of enough ground leases. (Mot. ¶ 10.) But the Defendant vastly understates Ms. Pianin's experience and minimizes the scope of her opinions—Ms. Pianin has spent decades reviewing and analyzing ground leases in various contexts (in addition to those ground leases that she has directly negotiated) and also has extensive experience in real estate financing that supports her opinions regarding the economic substance of the Ground Lease transaction at issue.

First, MSP's attempt to simply count up the number of ground leases that Ms. Pianin has *directly negotiated* understates her relevant experience with ground leases. Ms. Pianin is not offering testimony specifically about how ground leases are negotiated—she is testifying more broadly about the real estate industry in New York City and the economic substance of the real estate transaction at issue in this Action. The fact that she has *evaluated and reviewed* more than 50 ground leases over the course of her 35-year career in real estate in advising her clients is relevant experience qualifying her to provide such opinions. *See Morton v. BCAP GDI 1, Inc.*, 2026 WL 2056218, at *8 (D. Del. July 16, 2026) (denying motion to exclude expert testimony where the expert's extensive experience in "preparation, review, analysis, and testimony related to claims submitted by contractors to US Government agencies" was sufficient to qualify her to opine on government contracts despite never being a "contracting officer"). MSP cites no case law suggesting that an expert must negotiate a specific number of ground leases to be able to testify as to what is contained in a traditional ground lease.[2]

---

[2] As explained in her accompanying declaration, Ms. Pianin interpreted counsel's questions at her deposition to be aimed at understanding how many ground leases Ms. Pianin had been *directly*

To the contrary, courts routinely reject such challenges to experts' qualifications. In the patent context, for example, courts routinely reject challenges to damages experts offered to testify about hypothetical patent license negotiations because they lack firsthand experience negotiating patent licenses. *See, e.g.*, *Carnegie Mellon University v. Marvell Technology Group, Ltd.*, 2012 WL 6562221, at *12, 14 (W.D. Pa. Dec. 15, 2012) (rejecting challenge to damages expert who had never "sat at the table" in patent-license negotiations, and holding that expert could testify about hypothetical negotiation "despite a lack of experience in actual negotiations"); *Pulse Medical Instruments, Inc. v. Drug Impairment Detection Services, LLC*, 858 F. Supp. 2d 505, 510–11 (D. Md. 2012) (holding that any deficiency in damages expert's negotiating experience went "to the weight of [his] testimony, not its admissibility"). These authorities underscore that whether an expert has sufficient expertise to analyze a transaction does not depend on whether the expert has personally negotiated that type of transaction.

And even if there were some requirement that an expert has experience personally negotiating the type of transaction about which the expert will offer opinions—there is none—Ms. Pianin *does* have such experience. In addition to having reviewed and evaluated more than 50 ground leases in her career, Ms. Pianin has also participated in the negotiations of a ground lease for a hotel development in New York City and negotiated an extension of the ground lease beneath another hotel in New York City. (Pianin Tr. at 8:14–9:11, 11:20–23, 14:8–20; Pianin Decl. ¶ 4.) MSP cites no authority that such experience is insufficient.

Second, MSP ignores that Ms. Pianin is not being offered as a witness on *only* the narrow issue of ground leases. Ms. Pianin testified that she has more than 35 years of experience in

---

involved in, and not how many ground leases she has more generally reviewed or analyzed over her career. (Pianin Decl. ¶ 2.)

commercial real estate across equity, debt, and leasing. (Pianin Tr. at 6:20–7:6, 7:17–8:6.) Her lending and underwriting experience informs her analysis of the debt-like features of the transaction at issue, such as origination fees, coverage metrics, and loan sizing, as these were all metrics that she herself used during her career when acting as a lender and advising lenders. (*See* Pianin Tr. at 61:2–12.) Ms. Pianin need not be exclusively a ground-lease originator to explain whether underwriting and rebalancing features resemble commercial lending practices, and her broader experience in commercial real estate in fact better qualifies her to testify about the economic substance of the transaction at issue. *See Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996) ("In light of our liberal standard governing the qualifications of a proffered expert witness, and our acceptance of more general qualifications, we hold that the district court erred by finding that Dr. Carpenter was not qualified to render a [cancer] diagnosis or to discuss the pathology report because he was not a pathologist, oncologist or expert in 'definitive cancer diagnosis.'"). MSP's arguments regarding Ms. Pianin's qualifications should be rejected outright.

## II. **Ms. Pianin Properly Does Not Reach the Ultimate <u>Legal Conclusion in this Action.</u>**

MSP next bizarrely faults Ms. Pianin for "not adopting a position that the Ground Lease should be recharacterized" or addressing the legal conclusion of whether the Ground Lease is a "true lease" pursuant to section 365 of the Bankruptcy Code. (Mot. ¶ 12.) These are, of course, the ultimate legal conclusions that the Court is to reach in this Action. An expert's role is not to tell the Court how it should ultimately decide the case as a matter of law, and "[t]he Rules of Evidence do not permit expert testimony as to legal conclusions." *Dow Chemical Canada Inc. v. HRD Corp.*, 656 F. Supp. 2d 427, 435 (D. Del. 2009); *see also Flickinger v. Toys R Us, Inc.*, 2011 WL 2160493, at *4–5 (M.D. Pa. May 31, 2011) (granting in part motion in limine to exclude expert testimony

"as to the legal conclusions contained in their reports"), *aff'd sub nom., Flickinger v. Toys R Us-Delaware, Inc.*, 492 F. App'x 217 (3d Cir. 2012). Instead, an expert's role is to assist the trier of fact in understanding the evidence based on the expert's specialized knowledge and experience so that the trier of fact can then apply the evidence to the law. *See, e.g.*, Fed. R. Evid. 702; *Berckeley Investment Group, Ltd. v. Colkitt*, 455 F.3d 195, 217–19 (3d Cir. 2006) (permitting expert testimony concerning industry customs and practices that would assist the factfinder, while reserving governing law and legal conclusions to the court).

That is exactly what Ms. Pianin will do at trial, as she explained in her reports and at her deposition. Instead of telling the Court what legal conclusion it should reach, Ms. Pianin will provide testimony about the New York City real estate industry in order to assist the Court in reaching its recharacterization determination. She will opine on the economic substance of the transaction at issue, and whether the characteristics of that transaction are typical of traditional ground leases or debt-like instruments. (*See, e.g*., Pianin Supp. Rep. ¶ 5 (summarizing opinions about why the Ground Lease is unlike a typical ground lease in substance); *id.* ¶ 7 (summarizing opinions about the debt-like characteristics of the Ground Lease); Pianin Tr. at 60:12–16 ("I am pointing out the characteristics that the lawyers and the judge should use to draw whatever conclusion they draw."); *id*. at 61:2–12, 21–24 (identifying origination fees, coverage metrics, and loan sizing as metrics she had used as a lender and stating that such characteristics were consistent with a loan transaction, not a lease, and that the Ground Lease has "characteristics of a disguised loan").) Ms. Pianin will not, however, provide an ultimate legal opinion on whether the Ground Lease is a "true lease" under section 365 of the Bankruptcy Code because the law does not permit her to do so. (Pianin Tr. at 91:15–24 (confirming that whether the Ground Lease is a true lease is "for the Court to decide").) *See also Cantor v. Perelman,* 2006 WL 3462596, at *3 (D. Del. Nov.

30, 2006) (excluding expert testimony because the expert "offers a legal opinion regarding the proper interpretation of Delaware corporate law").[3]

In fact, it is ***MSP's expert***—Mr. Mizukovski—who violates these core principles in submitting an expert report that reaches the ultimate legal conclusion reserved for the Court: whether the Ground Lease is a "true lease" under the Bankruptcy Code. Despite attempting to claim at his deposition that he does not intend to opine on legal issues, repeatedly throughout his reports, Mr. Mizukovski states that he was engaged "to address whether the Ground Lease reflects a true ground lease," opines on what facts are relevant to "whether the underlying ground lease is a true lease," and tells the Court that it should ultimately conclude "that the Ground Lease is a true lease in every respect." (*See, e.g.*, Mizukovski Rep. ¶¶ 2, 14, 36, 37, 61, 65.) This is exactly the "usurp[ation of] the District Court's pivotal role" that "the Third Circuit has warned about." *Flickinger*, 2011 WL 2160493, at *5. For the reasons explained in the Debtors' motion to exclude the testimony of Richard Wolfe, MSP's tax law expert (a lawyer at Fried Frank) also improperly opines on the application of the Internal Revenue Code and how the Court should interpret tax case law (which is separately irrelevant to this Action). (Dkt. Nos. 118-120.)

MSP's Motion also states—without any citation or explanation—that Ms. Pianin "does not address the economic substance of the Ground Lease transaction or address the critical elements of the analysis that the Court is being asked to consider." (Mot. ¶ 11.) This is plainly wrong. Ms. Pianin addresses precisely that subject: the economic substance of the transaction at issue, and whether it resembles a traditional lease or debt-financing arrangement. Ms. Pianin's reports, for example, address characteristics such as the Debtors' nearly $40 million contribution to MSP's

---

[3] Nor does Ms. Pianin reach the ultimate conclusion of what the Ground Lease is if not a "true lease" because the Debtors have requested that that question be addressed in a separate proceeding in which all interested parties can participate. (Dkt. No. 97 at 16–17.)

purchase of the Property; MSP's acquisition of the Property within one day of leasing it to the Debtors; the Ground Lease's rent being based on required investor returns rather than comparable ground rents; the treatment of MSP's contributions to Ground Lease proceeds as project capital; underwriting reflected in MSP's Investment Committee Memorandum; and loan-like rebalancing in the Ground Lease. (*See, e.g*., Pianin Supp. Rep. ¶¶ 5, 7–9, 20–32; Pianin November Rebuttal ¶¶ 14–17.) Those subjects bear on the economic substance of the transaction and factors that Courts have directly considered in recharacterization cases, including whether rent compensates for property use or provides a targeted investment return and whether the property was acquired for the lessee's use. *See, e.g*., *In re Montgomery Ward, L.L.C*., 469 B.R. 522, 529–30 (Bankr. D. Del. 2012). MSP's argument that Ms. Pianin's opinions will not be helpful to the Court is also meritless.

## III. <u>Ms. Pianin's Opinions are Based on a Reliable Methodology.</u>

Finally, MSP claims that there are "errors and mischaracterizations" in Ms. Pianin's reports that make her opinions unreliable. (Mot. ¶ 14.) MSP, however, appears to misunderstand the standard of reliability under Rule 702. The reliability inquiry does not require the Court to decide whether Ms. Pianin's conclusions about the evidence in this case are *correct*. As the Third Circuit has explained:

> In performing its gatekeeping function, and, in particular, in deciding whether an expert's report meets the reliability factor of a *Daubert* and Rule 702 analysis, the District Court is not to weigh the evidence relied upon or determine whether it agrees with the conclusions reached therein. To the contrary, the role of the District Court is simply to evaluate whether the methodology utilized by the expert is reliable, i.e., whether, when correctly employed, that methodology leads to testimony helpful to the trier in fact.

*Walker v. Gordon*, 46 F. App'x 691, 695 (3d Cir. 2002); *see also In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717, 744 (3d Cir. 1994) (explaining that plaintiffs "do not have to demonstrate to the judge

by a preponderance of the evidence that the assessments of their experts are correct" and that "[t]he evidentiary requirement of reliability is lower than the merits standard of correctness").

Here, Ms. Pianin's methodology is plainly reliable, and MSP does not seriously argue otherwise. Ms. Pianin identified concrete materials underlying her analysis: the Ground Lease and its exhibits showing the Ground Lease's terms and the project's capital structure, MSP's public descriptions of its business model, MSP's investment committee memorandum, the circumstances through which MSP entered the transaction, and other evidence that will be offered at trial. (*See* Pianin Tr. at 76:2–17.) She then connected this underlying evidence to her experience by, for example, (i) comparing the economic substance of the transaction to the traditional ground leases she has reviewed and analyzed over her career (*see* Pianin Rep. ¶¶ 43–59, Ex. 1) and (ii) pointing to her use of metrics like origination fees, coverage metrics, and loan sizing as a lender to conclude that those features of the Ground Lease transaction were debt-like. (Pianin Tr. at 61:2–12.) The Defendant has not seriously challenged this experience-based methodology as unreliable—nor could it, because its own real estate expert relies on the very same methodology by citing his own real estate experience in drawing conclusions about the evidence. (*See, e.g.*, Mizukovski Rep. ¶ 33 (opining that the "origination model is market norm" because "[i]n [his] experience, th[at] is how ground leases are most often originated.").)[4] Further, "[t]he Third Circuit and district courts within

[4] MSP also faults Ms. Pianin for using the phrases "in my experience" or "in my opinion," without explaining why doing so should result in excluding her testimony. (Mot. ¶ 13.) Again, an expert's experience can serve as a reliable methodology as long as the expert explains how that experience informs the expert's conclusions. *See Integra Lifescis. Corp. v. HyperBranch Med. Tech., Inc.*, 2018 WL 1785033, at *6 (D. Del. Apr. 4, 2018) (rejecting plaintiff's argument that an expert's opinion should be excluded because it was based on his own experience, where the expert "provided some explanation in his expert report as to why he came to this conclusion based on his personal experience"). And the Defendant's own expert, Mr. Mizukovski, extensively relies on his own experience in drawing conclusions about the evidence.

the Circuit have made clear that an expert's personal, relevant experience can serve as a foundation for reliability." *360Heros, Inc. v. GoPro, Inc.*, 569 F. Supp. 3d 198, 204 (D. Del. 2021).

MSP lists purported errors in Ms. Pianin's report in Schedule I to its Motion (Dkt. No. 117-1), but each of those "errors" at most amounts to a disagreement with Ms. Pianin's conclusions, a differing interpretation of the evidence, or an immaterial parsing of language. While MSP is free to cross-examine Ms. Pianin on these issues at trial or to offer rebuttal expert testimony on them, none of them warrant exclusion of Ms. Pianin's opinions. *See Inline Connection Corp. v. AOL Time Warner Inc.*, 472 F. Supp. 2d 604, 613 (D. Del. 2007) ("Defendants may not agree with his conclusions, but that is not a basis to strike an expert's opinion under FRE 702 or 703."). As just a few examples:

- MSP states that Ms. Pianin's statement that the acquisition price for Unit 1706 was "budgeted" at $13 million is misleading because the "final price" was $10 million. (Sched. I at 2.) But Ms. Pianin's statement is entirely correct and based on a presentation *MSP itself created* for its investors[5] projecting that a potential future acquisition of Unit 1706 would cost $13 million. The projected $13 million purchase price also appears in the Project Budget attached as Schedule 1 to the Ground Lease itself.[6] And Ms. Pianin's report is clear that she is discussing a *budget* and not a *final price*. Furthermore, Ms. Pianin notes the $10 million *actual* price paid in her other reports, which MSP ignores. (Pianin Supp. Rep. ¶ 26.) If MSP wants to introduce evidence of the final acquisition price for Unit 1706, it is free to do so.

- MSP disputes Ms. Pianin's interpretation of the same MSP presentation as demonstrating that MSP intended to exit its position in the Ground Lease within five years. (Sched. I at 2.) Ms. Pianin's conclusion that MSP intended to exit its investment within five years is based on a statement in the presentation that it "assumes a 2.75% *exit cap rate upon disposition in Year 5*" and "GLR projects earning a project level unlevered IRR and MOIC of 9.8% and 1.58x … over the *five-year hold period*." (Hudson Ex. 26 at p.5 (emphases added).) In fact, all the metrics in MSP's presentation are based on a five-year hold period. MSP is free to introduce evidence that it was not, in fact, planning on exiting the investment in five years, but it has not done so to date and Ms. Pianin's conclusion is based on her interpretation of MSP's own document.

---

[5] The presentation is Hudson Ex. 26, 356W58GROUNDLESSOR_00034459.

[6] The Ground Lease is Joint Ex. 6, 356W58GROUNDLESSOR_00028678.

- MSP appears to contend that Ms. Pianin's conclusions about Safehold ground leases are unreliable because Ms. Pianin has not reviewed Safehold's ground leases themselves. (Sched. I at 5; *see also* Mot. ¶ 14.) But Ms. Pianin never stated in any of her reports that she reviewed Safehold's ground leases—which are not public—in reaching her conclusions. Instead, as she disclosed in her reports and at her deposition, her research regarding Safehold ground leases involved reviewing Safehold's publicly available financial reports and analyst reports, including its descriptions of its ground leases and their features. (Pianin Tr. at 24:9–20, 24:24–25:4; Pianin Supp. Rep. at App. B (listing Safehold-related documents Ms. Pianin relied on).)

- MSP quibbles with how Ms. Pianin describes Safehold's disclosures in its 10-K forms that its ground leases could be subject to recharacterization. (Pianin Supp. Rep. ¶¶ 6, 60.) But it is entirely true that Safehold discloses recharacterization risk to its investors. Indeed, Safehold's 2024 10-K says, for example: "It is also possible that a bankruptcy court could re-characterize our Ground Leases as secured lending transactions depending on its interpretation of the terms of the lease."[7] MSP's parsing of Ms. Pianin's language is not a basis to exclude her opinions, especially given that it does not dispute that Safehold indeed makes such a disclosure to its investors.

- MSP disputes Ms. Pianin's conclusion that the Debtors' significant contribution to the purchase price of the property at closing was not a buydown of ground rent, as Mr. Mizukovski attempts to claim. But Ms. Pianin and Mr. Mizukovski simply disagree, and this will be a core issue litigated at trial. Numerous pieces of evidence suggest that the nearly $40 million contribution towards the purchase price that the Debtors paid to the seller of the Property *did not* in fact result in any reduction in or pre-payment of annual ground rent. That evidence includes testimony from the Debtors' former manager that the Debtors received no credit for prepaid rent, a side letter between the parties showing that MSP was going to treat only $11.95 million as pre-paid rent for tax purposes, and the very language in the Ground Lease that MSP points to that says that the Debtors' contributions "*shall not offset*" their rent obligations. (*See* Sched. I at 6; Pianin Supp. Rep. ¶ 23 (citing A. Smeke deposition testimony).)[8] The fact that MSP and its expert disagree with the Debtors and Ms. Pianin about this disputed fact does not render Ms. Pianin's opinions unreliable.[9]

---

[7] Safehold Inc., Annual Report (Form 10-K) at 16 (Feb. 6, 2025), *available at* https://www.sec.gov/Archives/edgar/data/1095651/000109565125000006/safe-20241231x10k.htm.

[8] Alberto Smeke's deposition testimony is included in the Debtors' deposition designations at 65:3–66:23. The side letter is Joint Ex. 13, 356W58GROUNDLESSOR_00029903 at 2, Ex. A.

[9] MSP also cites purported issues with Ms. Pianin's May 4, 2026 rebuttal report to its former expert, David Eyzenberg. (Sched. I at 3–4.) But the Defendant has replaced Mr. Eyzenberg with Mr. Mizukovski and has confirmed Mr. Eyzenberg will not be testifying at trial—meaning Ms. Pianin will not be offering rebuttal opinions to Mr. Eyzenberg's report and any purported disputes regarding those rebuttal opinions are moot.

At base, the issues with Ms. Pianin's report described in Schedule I are mere disagreements between the parties about how the evidence in this case should be interpreted. Nothing about those disagreements warrants excluding any of Ms. Pianin's opinions, let alone precluding her from testifying altogether.

**CONCLUSION**

For all the reasons set forth above, the Motion should be denied in its entirety.

DATED: Wilmington, Delaware
November 20, 2026

CHIPMAN BROWN CICERO & COLE, LLP

*/s/ William E. Chipman, Jr.*
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Adam Cole (admitted *pro hac vice*)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
Email: chipman@chipmanbrown.com
olivere@chipmanbrown.com
cole@chipmanbrown.com

BOIES SCHILLER FLEXNER LLP
Michael M. Fay
Robert Gordon
Sabina Mariella
Jeffrey Waldron
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300
Email: rgordon@bsfllp.com
mfay@bsfllp.com
smariella@bsfllp.com
jwaldron@bsfllp.com

*Counsel for the Debtors and Debtors in Possession*