**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>HUDSON 1701/1706, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-11853 (KBO)<br><br>(Jointly Administered) |
| HUDSON 1701/1706, LLC, a Delaware limited liability company; and HUDSON 1702, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>356W58 GROUND LESSOR LLC, a Delaware limited liability company,<br><br>Defendant. | Adv. Proc. No. 25-52471 (KBO) |

**THE DEBTORS' OPPOSITION TO DEFENDANT'S MOTION**
**TO EXCLUDE THE TESTIMONY OF GLENN BRILL**

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190). The Debtors' mailing address is c/o FTI Consulting, Inc. Attn: Alan Tantleff, 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

RELEVANT BACKGROUND ..... 2

LEGAL STANDARD ..... 3

ARGUMENT ..... 4

I. Mr. Brill Will Provide Testimony Regarding the Progress of the Project and the Projected NOI of the Project ..... 4

II. Mr. Brill Will Provide Testimony Regarding the Investment of the Debtors in the Project ..... 7

CONCLUSION ..... 9

# TABLE OF AUTHORITIES

**Cases**

*Biogen Inc. & Biogen Ma Inc. v. Sandoz Inc.*,
No. CV 22-1190-GBW, 2025 WL 1260954 (D. Del. May 1, 2025) .......... 9

*Forrest v. Parry*,
930 F.3d 93 (3d Cir. 2019) .......... 3, 8

*Hurley v. Atl. City Police Dep't*,
174 F.3d 95 (3d Cir. 1999) .......... 8

*MOAC Mall Holdings LLC v. Transform Holdco LLC (In re Sears Holdings Corp.)*,
2024 WL 5113165 (2d Cir. Dec. 16, 2024) .......... 7

*United States v. Copple*,
24 F.3d 535 (3d Cir. 1994) .......... 9

**Rules**

Fed. R. Evid. 401 .......... 3, 8

Fed. R. Evid. 402 .......... 3

The Debtors/Plaintiffs Hudson 1701/1706, LLC and Hudson 1702, LLC (together, the "**Plaintiffs**" or the "**Debtors**") submit this memorandum of law in opposition to the motion (the "**Motion**") (Dkt. No. 124) of Defendant 356W58 Ground Lessor LLC ("**MSP**" or the "**Defendant**") to exclude the testimony of Glenn Brill ("**Mr. Brill**") in the above-captioned adversary proceeding (the "**Action**").

## PRELIMINARY STATEMENT

MSP's Motion seeks to preclude the trial testimony of a highly relevant fact witness and should be denied. Mr. Brill, who is heavily involved in the day-to-day operations of the Debtors' redevelopment project (the "**Project**") and who has previously offered testimony on their behalf before this Court, has evidence concerning at least three matters at the heart of this dispute: the progress of the Project since October 2025; the Project's projected net operating income ("**NOI**"); and the sums that the Debtors have already invested in the Project. The Debtors expressly identified the scope of Mr. Brill's anticipated testimony for MSP. Yet during his brief deposition, MSP failed to question him about them. MSP cannot convert its failure to elicit testimony into proof that Mr. Brill has none to offer.

Mr. Brill's testimony readily clears the minimal relevance threshold of Rule 401 as it bears directly on the Debtors' claims. All parties recognize that projected NOI is central to this Action: it drives the enormous right-size payment (the "**Right-Size Payment**") that the Debtors will be obligated to pay to MSP—one of many debt-like features of the Ground Lease—and thus goes directly to whether the Fourth Amendment provided reasonably equivalent value ("**REV**") to the Debtors, one of the elements of the Debtors' fraudulent transfer claim. MSP intends to present two expert witnesses who will testify that the altered terms of the Right-Size Payment conferred a benefit to the Debtors. But Mr. Brill's testimony concerning the current plans and NOI projections for the property at issue will demonstrate that there is no possible way that the Debtors will be able

to avoid the Right-Size Payment or pay it when the obligation comes due, making the terms of the Fourth Amendment detrimental to the Debtors. Further, Mr. Brill has personal knowledge of the recent NOI projections—he personally helped create them.

Mr. Brill also has firsthand knowledge of the substantial expenditures the Debtors have already made on the Project (which he personally oversees) and that evidence is relevant to the magnitude of the forfeiture that the Debtors stand to suffer if the Ground Lease is not recharacterized. These matters go to the core of the Action, and MSP's decision not to explore them at Mr. Brill's deposition is no basis to exclude Mr. Brill's testimony at trial.

## RELEVANT BACKGROUND

This Action arises from the financing of a real estate project, namely the conversion of three condominium units comprising the real property known as 353 West 57th Street Condominium in New York, New York (the "**Property**"), from a hotel into a multifamily residential property (the "**Project**"). (Dkt. No. 91 ("**Am. Compl.**") ¶¶ 21–25.) As part of the Project, the Debtors entered into the Ground Lease with an affiliate of MSP. (*Id.* ¶¶ 14–15, 32–34.) In this Action, the Debtors seek to recharacterize the Ground Lease under case law interpreting section 365 of the Bankruptcy Code and to avoid fraudulent transfers made under the Fourth Amendment to the Ground Lease. (*Id.* ¶¶ 98–115.)

On October 22, 2025, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code and retained FTI Consulting, Inc. ("**FTI**") for FTI personnel to act as Co-Chief Restructuring Officers for the Debtors. Mr. Brill is a Managing Director of Real Estate Solutions at FTI.[2] Since October 2025, Mr. Brill has been responsible for overseeing the

[2] Mr. Brill previously testified before the Court on April 21, 2026 in support of the Debtors' *Motion for an Order Determining that the Purported Ground Lease, if a True Lease, is a Lease of Residential Real Property under Section 365 of the Bankruptcy Code* (*In re Hudson 1701/1706, LLC, et al.*, No. 25-bk-11853 ("**Bankr. Dkt.**"), Dkt. No. 344) (the "**Section 365 Motion**") regarding the status of the Project and the

expenditures on the Project and otherwise supporting the Debtors in connection with their efforts to redevelop the Property. (*See* Dkt. No. 124-2 ("**Brill Tr.**") at 4:22–5:6, 5:12–6:7, 7:5–12.)

On November 13, 2026, the parties exchanged their witness lists pursuant to the Court's scheduling order. The Debtors identified Mr. Brill as a witness and noted that Mr. Brill would testify to "[t]he Debtors' investments in the project, the status of the project, the current revenue from the project, and the project's projected net operating income." (Dkt. No. 125-1 at 8.)

MSP deposed Mr. Brill on November 19, 2026. During his 45-minute deposition, MSP failed to ask Mr. Brill about the Debtors' investments in the Project, the current revenue from the Project, or the projected NOI for the Project, despite being on notice that Mr. Brill would offer testimony about those highly relevant issues at trial. MSP has also lodged baseless authenticity objections to various exhibits on the Debtors' exhibit list that the Debtors told MSP Mr. Brill would be able to authenticate, including documents about the Debtors' projected NOI and a summary exhibit of the Debtors' expenditures on the Project. (*See* Dkt. No. 125-2, Hudson Exs. 92, 95, 96, 97, 102, 104, 105.)

## LEGAL STANDARD

"Under the Federal Rules, relevant evidence is generally admissible, and irrelevant evidence is not. Yet the bar for what constitutes relevant evidence is low." *Forrest v. Parry*, 930 F.3d 93, 114 (3d Cir. 2019) (citing Fed. R. Evid. 402). "The test is whether the evidence has '*any tendency* to make a fact more or less probable than it would be without the evidence,' where 'the fact is of consequence in determining the action.'" *Id.* (quoting Fed. R. Evid. 401) (emphasis in original). Rule 602 permits a witness to offer testimony "if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.

---

Debtors' investment in the Property. Mr. Brill also submitted a declaration in support of the same motion. (Bankr. Dkt. No. 396 ("**Brill Decl.**").)

## ARGUMENT

MSP asserts that Mr. Brill's testimony must be excluded because he had no role in the negotiation of the Ground Lease or Fourth Amendment and has no view on the solvency of the Debtors at the time of the Fourth Amendment. Nowhere in the Debtors' witness disclosures did they state that Mr. Brill would offer testimony concerning those topics. Further, MSP's interpretation of relevance is far too narrow, ignoring that Mr. Brill has personal knowledge of the Project, the projected NOI of the Property, and the investments that the Debtors have made in the Project. These matters bear on the Debtors' recharacterization and fraudulent transfer claims. MSP's failure to explore these topics at Mr. Brill's deposition and its choice to remain willfully blind to his relevant, personal knowledge is not a sufficient reason to exclude Mr. Brill's testimony.

### I. Mr. Brill Will Provide Testimony Regarding the Progress of the Project and the Projected NOI of the Project

At trial, Mr. Brill will testify as to the progress of the Project post-petition and the projected NOI of the Project, a topic that MSP's experts opine on and which MSP references repeatedly in its pretrial brief. (*See, e.g.*, Dkt. No. 126 at 13, 23, 57.)

The thrust of this Action is the Debtors' allegation that the Ground Lease should be recharacterized as something other than a "true lease" under section 365 of the Bankruptcy Code because it contains terms that are characteristic of a disguised financing transaction rather than a lease. (*See* Am. Compl. ¶¶ 54–75; Dkt. No. 127 at 9–12, 18–26.) One such term is the Right-Size Payment that functions as a loan coverage ratio test—a tool used by lenders to monitor the adequacy of cash flow relative to debt service. This Right-Size Payment imposes a massive obligation (up to $65 million under the Fourth Amendment) on the Debtors if specified NOI-to-rent thresholds are not met.

Under the terms of the original Ground Lease, the Right-Size Payment was due in 2027—*i.e.*, five years after the effective date of the Ground Lease. The Fourth Amendment altered the terms of the Ground Lease so that the Right-Size Payment would be due five years later, in 2032. To establish their fraudulent transfer claims, the Debtors will show that at the time of the Fourth Amendment the Debtors were insolvent and that the terms of the Fourth Amendment, including the changes to the Right-Size Payment, did not provide the Debtors with REV.

Two of the expert witnesses engaged by MSP—Daniel Mizukovski and Matthew Dundon—separately opine that the alterations of the Right-Size Payment under the Fourth Amendment conferred a *benefit* on the Debtors. (*See, e.g.*, Dkt. No. 120-3 ("**Mizukovski Rep.**") ¶ 11 ("The Fourth Amendment gave Tenant real economic benefits. These include avoiding termination, additional time to pursue a business plan, a five-year deferral of the Right-Size Payment on more favorable terms to Tenant . . .").) It is the Debtors' position, however, that the Fourth Amendment did nothing to rectify the onerous, financing character of the Ground Lease and did not confer REV on the Debtors at the time it was entered into. Instead, the Fourth Amendment increased ground rent and made the already unaffordable Right-Size Payment *more expensive*. The amount of the Right-Size Payment (or the obligation to pay it at all) is entirely dependent on the NOI of the Project. As examples attached to the Fourth Amendment demonstrate (*see* Joint Ex. 19 (Mar. 29, 2024 Fourth Amendment) at Exhibit C), even with an aspirational annual NOI of $21 million in the tenth year (2032), the Debtors would owe MSP a payment of $65 million.

Mr. Dundon opines that the delay in the due date of the Right-Size Payment may have the effect of either eliminating the Right-Size Payment entirely (using a completely unrealistic NOI forecast of $36.8 million under the Debtors' unapproved January 2024 hotel fallback business plan

(Hudson Ex. 72)) or shrinking the obligation to $30.1 million (using an equally fanciful NOI forecast of $27.7 million under the Debtors' unapproved December 2023 multifamily project fallback business plan (Hudson Ex. 67)). These calculations support his assertion that the Debtors received REV under the terms of the Fourth Amendment.

For his part, Mr. Mizukovski testified at his deposition that he has no view as to a reasonable estimate of the Project's NOI (Declaration of William E. Chipman**,** Ex. A at 39:14–24), and that the only benefit conferred upon the Debtors would be "because it makes the lessee's leasehold more attractive in capital markets," (*id.* at 39:25–40:12)—*i.e.*, a benefit received by the Debtors *after paying* the burdensome $65 million Right-Size Payment, (*id.* at 42:6–16). MSP wants to be able to present evidence that the Fourth Amendment was a significant benefit to the Debtors, but at the same time wants to exclude testimony demonstrating that there is no world in which the Debtors can pay $65 million based on current NOI projections. It should not be able to do so.

In sum, there is no dispute that the projected NOI of the Project is a central issue in this Action. Mr. Brill has personal knowledge of previous NOI projections completed by the various appraisers of the Project, and critically, he has personal knowledge of the NOI projections completed ***by FTI*** in assessing the future potential of the Property because he was personally involved in preparing those projections. *See* Hudson Exs. 101, 102.[3] These projections demonstrate that NOI upon stabilization (at a very optimistic stabilization date of January 31, 2028) will be in the range of $11 million to $13 million—millions of dollars below the NOI threshold where the Debtors would receive any reduction to the full $65 million Right-Size Payment just four years later in 2032. Those projections—and Mr. Brill's testimony regarding those projections—are

[3] MSP has lodged authenticity objections to these exhibits, despite being expressly told that Mr. Brill could authenticate them and could answer any questions MSP had about them at his deposition. MSP nevertheless did not ask any questions about these exhibits at Mr. Brill's deposition.

critical evidence supporting the Debtors' position that the Debtors did not receive REV under the Fourth Amendment and that the Ground Lease is a forfeiture trap disguised as a lease.

## II. Mr. Brill Will Provide Testimony Regarding the Investment of the Debtors in the Project

As indicated by the Debtors on their witness list, Mr. Brill will also provide testimony concerning the amount of money that the Debtors have already poured into the Project and the Debtors' continuing expenditures. (*See* Dkt. No. 125-1 at 8.)

The equitable considerations in this Action counsel heavily in favor of recharacterization. As the Debtors explained in their pretrial brief, a finding that the Ground Lease is a "true lease" for purposes of section 365 of the Bankruptcy Code would in all likelihood result in the Debtors' rejection of the Ground Lease. As a result, MSP would walk away with the $62 million in rent payments already made under the Ground Lease, the improvements made to the Property in the four and a half years since the Ground Lease was signed, and the hundreds of millions of dollars that the Debtors have invested into the Project to date. Other courts have determined that such an inequitable forfeiture weighs in favor of recharacterization. *See MOAC Mall Holdings LLC v. Transform Holdco LLC (In re Sears Holdings Corp.)*, 2024 WL 5113165, at *3 (2d Cir. Dec. 16, 2024); (Dkt. No. 127 at 15–16).

Mr. Brill's testimony will support the Debtors' position that a premature forfeiture of the Property is an inequitable outcome weighing in favor of recharacterization.[4] Mr. Brill has firsthand

[4] MSP claims in its Motion that Mr. Brill "could not testify regarding . . . whether the Debtors' rejection of the Ground Lease would result in a windfall recovery to the Ground Lessor." (Mot. ¶ 7.) But in Mr. Brill's deposition he testified that it was his "personal view" that the Ground Lease is "not economical," "onerous," and "prohibitive in terms of enabling an investor as it stands today to make profit." (*See* Brill Tr. at 20:17–21:14.) That testimony supports the Debtors' position that they would be unable to continue under the burdensome terms of the Ground Lease as amended by the Fourth Amendment if it is not recharacterized. Regardless, Mr. Brill does not need to offer lay opinion testimony regarding his personal view of the Ground Lease in order to present relevant, factual testimony about the Debtors' expenditures on the Project.

knowledge of the vast amount of money that the Debtors have spent operating the Property and pursuing the Project to date. (*See* Brill Tr. at 5:24–6:7 ("I also interact with FTI's treasury function on behalf of the debtor. I review accounts payable, for instance, to make sure they are in order and due and payable. That's definitely the task that I undertake and -- really sort of the eyes and ears of the debtor, of the chief restructuring officer to make sure that we are well-informed and understand what's going on.").) Indeed, Mr. Brill's declaration submitted in support of the Debtors' section 365 Motion provided the Court with an estimate of the hard costs from the project budget already spent by the Debtors. (*See* Brill Decl. ¶ 14.)

At trial, the Debtors intend to present a summary exhibit of the amounts spent by the Debtors on the Project so far pursuant to Rule 1006 (*see* Hudson Ex. 104) to demonstrate the full extent of the forfeiture that would result if the Ground Lease were not recharacterized. MSP has objected to that summary exhibit on authenticity grounds, but Mr. Brill will authenticate the exhibit and verify that it accurately reflects the Debtors' expenditures to date as the individual who personally oversees Project expenditures.

***

As MSP concedes, the threshold for relevancy under Rule 401 is an "admittedly low bar." (Mot. ¶ 14.) The Third Circuit and courts within it have repeatedly reaffirmed the minimal threshold for admissibility under the rule. *See Forrest*, 930 F.3d at 114–117 (noting that "what constitutes relevant evidence is low" and determining that the district court abused its discretion in excluding witness testimony under Rule 401); *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 109 (3d Cir. 1999) ("Rule 401 does not raise a high standard."); *Biogen Inc. & Biogen Ma Inc. v. Sandoz Inc.*, 2025 WL 1260954, at *3 (D. Del. May 1, 2025) ("[T]o meet its burden under Rule 401, the

proponent of evidence must overcome only a 'low threshold.'") (quoting *United States v. Copple*, 24 F.3d 535, 545 (3d Cir. 1994)).

Mr. Brill's testimony far exceeds the minimal showing required for admissibility at trial, and the Court should reject MSP's arguments in favor of exclusion.

## CONCLUSION

For all the reasons set forth above, the Motion should be denied in its entirety.

Dated: November 23, 2026
Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ William E. Chipman, Jr.*
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Adam Cole (admitted *pro hac vice*)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
Email: chipman@chipmanbrown.com
olivere@chipmanbrown.com
cole@chipmanbrown.com

**BOIES SCHILLER FLEXNER LLP**
Michael M. Fay (admitted *pro hac vice*)
Robert D. Gordon (admitted *pro hac vice*)
Sabina Mariella (admitted *pro hac vice*)
Jeffrey P. Waldron (admitted *pro hac vice*)
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300
Email: rgordon@bsfllp.com
mfay@bsfllp.com
smariella@bsfllp.com
jwaldron@bsfllp.com

*Counsel for the Debtors and Debtors in Possession*